UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION<br>125 Broad Street<br>New York, NY 10004,<br><br>    and<br><br>AMERICAN CIVIL LIBERTIES UNION<br>      FOUNDATION<br>125 Broad Street<br>New York, NY 10004,<br><br>    and<br><br>AMERICAN-ARAB ANTI DISCRIMINATION<br>      COMMITTEE<br>4201 Connecticut Avenue, NW, Suite 300<br>Washington, DC  20008,<br><br>    and<br><br>GREENPEACE,<br>702 H Street, NW, Suite 300,<br>Washington, D.C. 20001,<br><br>    and<br><br>PEOPLE FOR THE ETHICAL TREATMENT<br>      OF ANIMALS<br>501 Front Street<br>Norfolk, VA  23510,<br><br>    and<br><br>UNITED FOR PEACE AND JUSTICE<br>322 8th Avenue, 9th Floor<br>New York, NY 10001,<br><br>            Plaintiffs,<br><br>    v.<br><br>FEDERAL BUREAU OF INVESTIGATION<br>935 Pennsylvania Avenue, NW<br>Washington, DC 20535-0001, | Civil Action |

and

UNITED STATES DEPARTMENT OF
    JUSTICE
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

      Defendants.

# COMPLAINT FOR INJUNCTIVE RELIEF

## Preliminary Statement

1. This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for injunctive and other appropriate relief, seeking the immediate processing and release of agency records requested by plaintiffs from defendant Federal Bureau of Investigation ("FBI").

2. In December 2004, plaintiffs made FOIA requests seeking the release of records related to the FBI's monitoring, surveillance, and infiltration of political and religious organizations, as well as records related to the functions and activities of the FBI's Joint Terrorism Task Forces ("JTTFs"), a primary mechanism by which the FBI may be carrying out such activity.

3. Plaintiffs requested expedited processing of their FOIA requests on the ground that the records sought pertained to "[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence." 28 C.F.R. § 16.5(d)(1)(iv). Plaintiffs also requested expedited processing of their FOIA requests on the ground that the ACLU is "an organization primarily engaged in the dissemination of information" acting with "urgency to inform the public about an actual or alleged federal government activity." 28 C.F.R. § 16.5(d)(1)(ii). As of the date of this filing, plaintiffs have received no response to their request for expedited processing.

**Jurisdiction and Venue**

4. This Court has subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. §§ 552(a)(4)(B) and 552(a)(6)(E)(iii). This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 5 U.S.C. §§ 701-706. Venue lies in this district under 5 U.S.C. § 552(a)(4)(B).

**Parties**

5. Plaintiffs American Civil Liberties Union and American Civil Liberties Union Foundation (collectively, "the ACLU") are national organizations that work to protect civil rights and civil liberties. The American Civil Liberties Union Foundation is a 501(c)(3) organization that provides free legal representation and educates the public about civil rights and civil liberties issues. The American Civil Liberties Union is a separate non-profit, non-partisan, 501(c)(4) membership organization engaged in public education and analysis of pending and proposed legislation. As the leading defender of freedom, equality, privacy, and due process rights in the United States, the ACLU has provided direct representation to individuals and organizations targeted by the FBI and state and local police for exercising their First Amendment right to criticize the government, including people who participated in numerous rallies and marches to protest the war in Iraq, who were excluded from the audience at public presidential speeches, and who protested at the 2004 Republican and Democratic National Conventions.

6. Plaintiff American-Arab Anti Discrimination Committee ("ADC") is a non-profit civil rights advocacy organization committed to eradicating discrimination against people of Arab descent and promoting their rich cultural heritage. ADC, the largest Arab-American grassroots organization in the United States, has documented government abuse of Arab-Americans in the aftermath of September 11, and protested new immigration procedures, interrogation techniques, and the detention of Arab-Americans. In particular, ADC has offered guidance and advice to

3

individuals who have been targeted as a result of the FBI's sweeping surveillance and interrogation of Arab and Muslim Americans, and has publicly protested the FBI's use of race, national origin, and religion as a basis for selecting persons for questioning.

7. Plaintiff Greenpeace is an international advocacy organization dedicated to combating the most serious threats to the planet's biodiversity and environment. Since 1971, Greenpeace has been at the forefront of environmental activism through non-violent protest, research, and public education. In the past several years, Greenpeace has repeatedly engaged the Bush administration through public protest and activism. In 2001, Greenpeace held public demonstrations outside the personal residences of President Bush and Vice President Cheney, attacking the administration's environmental and energy policies. Greenpeace has also actively publicized the Bush administration's ties to the oil industry, especially Exxon Mobil. In 2002, Greenpeace protestors chained themselves to gas pumps at Exxon Mobil stations in New York and Los Angeles, carrying banners that called on the Bush administration to stop favoring the oil industry over the environment. More recently, a team of Greenpeace experts exposed the United States' military's failure to secure and contain nuclear waste facilities in Iraq.

8. Plaintiff People for the Ethical Treatment of Animals ("PETA") is the largest animal rights organization in the world. Since 1980, PETA has been actively involved in public education and activism regarding the abuse of animals on factory farms, in laboratories, in the fashion industry, and in the entertainment industry. PETA's public protests and demonstrations against fur traders, fast-food chains, and meat producers have generated substantial publicity and resulted in major changes in industry practices. More recently, PETA has participated in protest against the USA PATRIOT Act. Current and former PETA staff and volunteers have been visited and interrogated by FBI agents in their own homes and at work in several cities around

the country, and at least one person has been singled out for questioning by the FBI for lawful contributions to PETA.

9. Plaintiff United for Peace and Justice ("UFPJ") is a coalition of more than 800 local and national groups throughout the United States that have joined together to oppose the war in Iraq. Since its founding in October 2002, UFPJ has spurred hundreds of anti-war protests and rallies around the country, and co-sponsored the two largest demonstrations against the Iraq war. On February 15, 2003, UFPJ organized a global day of protest against the war, including a rally outside the United Nations in New York City that drew more than 500,000 participants. Two days after the bombing of Iraq began, on March 22, 2003, UFPJ helped mobilize more than 300,000 people for another protest march in New York City. UFPJ also organized the largest anti-war march in New York City during the Republican National Convention.

10. Defendant Federal Bureau of Investigation ("FBI") is a Department of the Executive Branch of the United States Government. The FBI is an agency within the meaning of 5 U.S.C. § 552(f)(1).

11. Defendant United States Department of Justice ("DOJ") is a Department of the Executive Branch of the United States Government. The DOJ is an agency within the meaning of 5 U.S.C. § 552(f)(1). The DOJ is responsible for the FBI's compliance with the FOIA.

**Plaintiffs' Entitlement to Expedited Processing**

12. Plaintiffs are entitled to expedited processing of their FOIA requests on two grounds. First, the requests stem from "an urgency to inform the public about an actual or alleged federal government activity . . . made by" the ACLU, an organization "primarily engaged in the dissemination of information." 28 C.F.R. § 16.5(d)(1)(ii). Second, the requests pertain to "a matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence." 28 C.F.R. § 16.5(d)(1)(iv).

5

**Urgency to Inform the Public About Alleged Government Activity**

13. Plaintiffs' FOIA request implicates a matter of urgent public concern; namely, the consequences of a recent change in government policy that has likely resulted in increased surveillance and infiltration of political, religious, and community organizations by the FBI. Such government activity may infringe upon the public's free speech, free association, and privacy rights, which are guaranteed by the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. Requests for information bearing upon potential Constitutional violations require an immediate response so that any violations cease, future violations are prevented, and any chilling effect on public participation in potentially targeted groups and/or political activity be halted.

14. Plaintiff ACLU is primarily engaged in the dissemination of information to the public. The ACLU publishes newsletters, news briefings, right-to-know handbooks, and other materials that are disseminated to the public. Its material is widely available to everyone, including tax-exempt organizations, not-for-profit groups, and law students and faculty, for no cost or for a nominal fee through its public education department. The ACLU also disseminates information through its website <www.aclu.org>. The web site addresses civil rights and civil liberties issues in depth, provides features on civil rights and civil liberties issues in the news, and contains many thousands of documents relating to the issues on which the ACLU is focused. The website specifically includes features on information obtained through the FOIA. The ACLU also publishes an electronic newsletter, which is distributed to subscribers by e-mail.

**Widespread Public Concern About FBI Surveillance and Infiltration of Organizations on the Basis of Political or Religious Affiliation**

15. In November of 2003, a front-page article in the New York Times reported that the FBI had advised local law enforcement officials to step up surveillance and monitoring of peaceful political protesters, and to report any suspicious activity to the FBI's counterterrorism

6

squads. *See* Eric Lichtblau, *FBI Scrutinizes Antiwar Rallies*, NY Times A1, November 23, 2003. The article cited an FBI memorandum sent to local law enforcement agencies in preparation for upcoming anti-war demonstrations in Washington, D.C. and San Francisco. "The FBI memorandum," according to the article, "appears to offer the first corroboration of a coordinated, nationwide effort to collect intelligence regarding demonstrations." The article went on to note that the FBI's "recent strategy in policing demonstrations is an outgrowth of" former Attorney General John Ashcroft's 2002 decision to relax decades-old guidelines on FBI investigations of political activities.

16. Those guidelines had been promulgated in response to scandalous revelations about widespread political surveillance by the FBI under the leadership of J. Edgar Hoover. Following those revelations, Congress convened hearings and established a commission to investigate the FBI's abuses and to explore how best to prevent future excesses. The final report of the commission, chaired by Idaho Senator Frank Church, revealed that the FBI had infiltrated civil rights and peace groups, had burglarized political groups to gain information about their members and activities, and had "swept in vast amounts of information about the personal lives, views, and associations of American citizens." In 1976, in response to the Church Commission's findings, Attorney General Edward Levi issued a series of guidelines to regulate FBI activity in domestic intelligence gathering, and to make clear that constitutionally protected advocacy of politically unpopular ideas or political dissent alone could not serve as bases for FBI investigation. Rather, the FBI was to commence investigations only when "specific and articulable facts" indicated criminal activity. These guidelines were later amended slightly to permit investigations when the FBI possessed information pointing to a "reasonable indication" of criminal activity.

17. The guidelines remained in place until May 30, 2002, when Attorney General John Ashcroft amended them to remove restrictions on FBI domestic investigations. Attorney General Ashcroft publicly maintained that under the existing guidelines, "FBI investigators cannot surf the web the way you or I can. Nor can they simply walk into a public event or a public place to observe ongoing activities." He explained that he had previously authorized the FBI to "waive the guidelines, with headquarters approval, in extraordinary cases to prevent and investigate terrorism. That authority has been used, but I am disappointed that it was not used more widely." To ensure that the authority to operate outside the parameters of the guidelines would be used "more widely," the Attorney General eliminated those parameters and authorized agents to enter any public place, including political meetings or houses of worship, without any basis to believe that criminal activity was afoot. In a press release issued the same day, plaintiff ACLU warned: "Under the new Ashcroft guidelines, the FBI can freely infiltrate mosques, churches and synagogues and other houses of worship, listen in on online chat rooms and read message boards even if it has no evidence that a crime might be committed."

18. There has been growing public concern about the FBI's monitoring, surveillance, and infiltration of organizations on the basis of national origin, racial and/or ethnic background, religious affiliation, organizational membership, political views or affiliation, or participation in protest activities or demonstrations. In addition to the November 2003 front page New York Times report on cooperation between the FBI and local law enforcement to monitor peaceful political demonstrations, there have been numerous published reports of FBI agents questioning or spying on peace activists, anti-war activists, and persons of Arab or Muslim background. *See, e.g.,* Eric Lichtblau, *Subpoena Seeks Records About Delegate Lists on Web*, NY Times A10, August 30, 2004; Eric Lichtblau, *Protesters At Heart of Debate on Security vs. Civil Rights*, NY Times A9, August 28, 2004; Eric Lichtblau, *FBI Goes Knocking for Political Troublemakers*,

NY Times A1, August 16, 2004; Jayashri Srikantiah, *Few Benefits to Questioning Targeted Groups*, SF Chronicle, August 6, 2004; Kerri Ginis, *Peace Fresno Seeks Damages*, The Fresno Bee, Feb. 28, 2004; Monica Davey, *An Antiwar Forum in Iowa Brings Federal Subpoenas,* NY Times A14, Feb. 10, 2004; Susan Greene, *Activists Decry Pre-Convention Security Tactics*, Denver Post, August 26, 2004; Amy Herdy, *Teaching the Silent Treatment*, Denver Post, August 8, 2004; Kelly Thornton, *FBI's Home Visits Have Some Muslims Feeling Harassed, Alienated*, Signonsandiego.com, August 4, 2004; David Shepardson, *FBI Agents Hunt for Terror Leads*, The Detroit News, Oct. 1, 2004; Daily Star Staff, *American Arabs Concerned Over FBI's 'October Plan'*, The Daily Star, October 6, 2004; Richard Schmitt & Donna Horowitz, *FBI Starts to Question Muslims in U.S. About Possible Attacks*, latimes.com, July 18, 2004; Mary Beth Sheridan, *Interviews of Muslims to Broaden*, www.washingtonpost.com, July 17, 2004.

     19.   The issue of FBI domestic surveillance has been of concern to members of Congress, as well.  *See, e.g.*, Eric Lichtblau, *Inquiry into F.B.I. Question Is Sought,* NY Times A16, August 18, 2004; Joe Feuerherd, *September 11—A Year Later, Congress Questions Patriot Act Policies*, National Catholic Reporter, September 6, 2002; *Key Republican Blasts New FBI Guidelines,* http://archives.cnn.com/2002/ALLPOLITICS/06/01/fbi.guidelines/, June 1, 2002.

     20.   The FBI conducts domestic surveillance in part through the so-called Joint Terrorism Task Forces ("JTTFs").  According to defendant FBI's website: "JTTFs are teams of state and local law enforcement officers, FBI Agents, and other federal agents and personnel who work shoulder-to-shoulder to investigate and prevent acts of terrorism . . . .  Although the first JTTF came into being in 1980, the total number of task forces has nearly doubled since September 11, 2001.  Today, there are 66 JTTFs, including one in each of the FBI's 56 main field offices and ten in smaller offices."  In 2002, the FBI created a National JTTF, in which, according to the

9

FBI,"[n]early 30 agencies are represented, spanning the fields of intelligence, public safety, and federal, state, and local law enforcement."

21.  Much of the public concern surrounding the FBI's renewed political surveillance has focused on the role of JTTFs in those activities.  *See, e.g.,* The Associated Press, *Judge Subpoenas Demonstrator Info*, Newsday, February 8, 2004 (reporting surveillance of political demonstrators by JTTF); Camille T. Taiara, *New FBI Witch-Hunt*, San Francisco Bay Guardian, August 4-10, 2004 (detailing JTTF role in targeting Muslims and Arabs for FBI monitoring); Karen Abbott, *FBI Queries Rattle Activist*, Rocky Mountain News, July 27, 2004 (describing JTTF infiltration and investigation of political activists); Jeff Eckhoff & Mark Siebert, *Group Fights Anti-War Inquiry*, Des Moines Register, Feb. 7, 2004 (noting JTTF investigation of anti-war groups); Jeff Eckhoff & Mark Siebert, *Anti-War Inquiry Unrelated to Terror*, Des Moines Register, February 10, 2004 (same); Alex Bradley & John Mayer, *The War at Home*, www.saveourcivilliberties.com, Sept. 2, 2004 (reporting JTTF role in monitoring peace groups and political activists); Michelle Goldberg, *Outlawing Dissent*, Salon.com, Feb. 11, 2004; Stephanie Craft, *Advocate and ACLU Probe Terrorism Task Forces*, The Valley Advocate, November 27, 2003.

**Plaintiffs' FOIA Requests
and Request for Expedited Processing**

22.  On December 2, 2004, Plaintiffs submitted two FOIA requests, one addressed to FBI national headquarters, and the other addressed to the FBI national headquarters and to seven FBI field offices.  Both requests sought records that are critical to the public's ability to evaluate whether the government has abused its recently broadened surveillance authority to target organizations on the basis of national origin, racial and/or ethnic background, religious affiliation, organizational membership, political views or affiliation, or participation in protest activities or demonstrations.

10

23. The first request sought records relating to the FBI's monitoring, surveillance, observation, questioning, interrogation, investigation and/or infiltration of any of the plaintiffs in this action. The plaintiffs – ACLU, American-Arab Anti Discrimination Committee, Greenpeace, PETA, and United for Peace and Justice – are membership organizations engaged in political and/or religious advocacy. The request sought information regarding orders to monitor, interrogate, investigate, or infiltrate these organizations, the collection and maintenance of records on these organizations, and the role of JTTFs in any such activities.

24. The second request sought records relating to the purpose, mission, and activities of JTTFs. In particular, the request sought records relating to domestic surveillance by the JTTFs on the basis of political views, participation in demonstrations or protest activities, or the national origin, race, ethnicity, or religious affiliation of an organization's or group's staff, members, and/or constituents. The request further sought records relating to the investigation and infiltration of campus groups, religious organizations, or political protest groups by JTTFs; the maintenance and dissemination of information by any JTTF about such groups and organizations; the methods employed by JTTFs engaged in such activity; and any potentially abusive or unlawful practices undertaken by any JTTF.

25. In the same letters, plaintiffs requested expedited processing of their FOIA requests, stating that the requests pertained to "a matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence." 28 C.F.R. § 16.5(d)(1)(iv).

26. In addition, plaintiffs requested expedited processing on the basis of "compelling need." 5 U.S.C. § 552(a)(6)(E)(i). Specifically, plaintiffs stated that the requests stemmed from "an urgency to inform the public about an actual or alleged federal government activity . . . made

by" the ACLU, an organization "primarily engaged in the dissemination of information." 28 C.F.R. § 16.5(d)(1)(ii).

27. On February 8, 2005, nearly six weeks after plaintiffs filed their requests, plaintiff ACLU wrote to defendants to inquire about the status of the requests for expedited processing. Plaintiff ACLU noted that defendants were in violation of 28 C.F.R. § 16.5(d)(4), which requires that a decision to grant or deny expedited processing be made within ten (10) calendar days of the date of a FOIA request. Defendants did not respond to that letter.

28. On March 23, 2005, plaintiffs received a letter from defendant FBI stating that its Boston field office could not locate any records related to plaintiff UFPJ. As of the date of this filing, plaintiffs have not received any response regarding any of the other plaintiffs, nor have plaintiffs received any response relating to their second FOIA request regarding the structure, methods, and activities of the JTTFs.

29. On April 28, 2005, plaintiff ACLU wrote again to defendant DOJ regarding the status of plaintiffs' request for expedited processing, and requested a response no later than May 6, 2005. Defendant DOJ did not respond to this letter.

30. As of the date of this filing, plaintiffs have not received any response to their request for expedited processing.

### Defendants' Failure to Disclose the Records Sought

31. To date, defendants have not disclosed any record in response to plaintiffs' FOIA requests nor stated which records, if any, they intend to disclose. It has now been more than five months since plaintiffs submitted their request.

32. Defendants are improperly withholding the records sought by plaintiffs' FOIA requests.

33. Plaintiffs have exhausted the applicable administrative remedies.

## CAUSES OF ACTION

First Cause of Action:<br>
<u>Violation of the FOIA for Failure to Make Promptly<br>
Available the Records Sought by Plaintiffs' Request</u>

34. Defendants' failure to make promptly available the records sought by plaintiffs' request violates the FOIA, 5 U.S.C. § 552(a)(3)(A).

Second Cause of Action:<br>
<u>Violation of the FOIA for Failure Timely to<br>
Respond to Plaintiffs' Request</u>

35. Defendants' failure timely to respond to plaintiffs' request violates the FOIA, 5 U.S.C. § 552(a)(6)(A)(i), and DOJ's own regulation promulgated thereunder, 28 C.F.R. § 16.6(b).

Third Cause of Action:<br>
<u>Violation of the FOIA for Failure to Expedite<br>
the Processing of Plaintiffs' Request</u>

36. Defendants' failure to expedite the processing of plaintiffs' request violates the FOIA, 5 U.S.C. § 552(a)(6)(E)(iii), and DOJ's own regulation promulgated thereunder, 28 C.F.R § 16.5(d).

## Requested Relief

WHEREFORE, Plaintiffs pray that this Court:

   A. Order defendants immediately to process the requested records in their entirety;

   B. Order defendants, upon completion of such expedited processing, to disclose the requested records in their entirety and make copies available to plaintiffs;

   C. Award plaintiffs their costs and reasonable attorneys' fees incurred in this action; and

D. Grant such other relief as the Court may deem just and proper.

Respectfully submitted,

_____
ARTHUR B. SPITZER
D.C. Bar No. 235960
American Civil Liberties Union
 of the National Capital Area
1400 20th Street, NW, Suite 119
Washington, D.C. 20036
Phone: (202) 457-0800
Fax: (202) 452-1868

ANN BEESON
BEN WIZNER
COREY STOUGHTON
D.C. Bar No. 472867
American Civil Liberties Union Foundation
125 Broad Street
New York, NY 10004
Phone: (212) 549-2500
Fax: (202) 452-1868

Counsel for Plaintiffs

14