Exhibit A

LEGAL DEPARTMENT



December 2, 2004

Federal Bureau of Investigation
J. Edgar Hoover Building
935 Pennsylvania Avenue, NW
Washington, D.C. 20535-0001

Federal Bureau of Investigation
New York Division
26 Federal Plaza, 23rd Floor
New York, NY 10278-0004

Federal Bureau of Investigation
Detroit Field Office
26th. Floor
P. V. McNamara FOB
477 Michigan Avenue
Detroit, MI 48226[1]

Federal Bureau of Investigation
Boston Field Office
One Center Plaza
Suite 600
Boston, MA 02108[2]

Federal Bureau of Investigation
Los Angeles Division
Suite 1700, FOB
11000 Wilshire Boulevard
Los Angeles, CA 90024-3672

Federal Bureau of Investigation
Washington Metropolitan
Field Office
601 4th Street, N.W.
Washington, D.C. 20535

Federal Bureau of Investigation
Richmond Field Office
1970 E. Parham Road
Richmond, VA 23228[3]

Federal Bureau of Investigation
San Francisco Field Office
450 Golden Gate Avenue
13th Floor
San Francisco, CA 94102-9523[4]

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
LEGAL DEPARTMENT
NATIONAL OFFICE
125 BROAD STREET, 18TH FL.
NEW YORK, NY 10004-2400
T/212.549.2500
F/212.549.2651
WWW.ACLU.ORG

OFFICERS AND DIRECTORS
NADINE STROSSEN
PRESIDENT

ANTHONY D. ROMERO
EXECUTIVE DIRECTOR

KENNETH B. CLARK
CHAIR, NATIONAL
ADVISORY COUNCIL

RICHARD ZACKS
TREASURER

Re:   **REQUEST UNDER FREEDOM OF INFORMATION ACT/
Expedited Processing Requested**

This letter constitutes a request under the Freedom of Information Act,
5 U.S.C. § 552 ("FOIA"), and the Department of Justice implementing

---

[1] This Request is addressed to the Detroit Field Office only as it relates to Requestor
American-Arab Anti-Discrimination Committee.

[2] This Request is addressed to the Boston Field Office only as it relates to Requestors Code
Pink and United for Peace and Justice.

[3] This Request is addressed to the Richmond Field Office only as it relates to Requestor
People for the Ethical Treatment of Animals.

[4] This Request is addressed to the San Francisco Field Office only as it relates to Requestors
American-Arab Anti-Discrimination Committee.

regulations, 28 C.F.R. § 16.11, by the American Civil Liberties Union and the American Civil Liberties Union Foundation ("ACLU"), on its own behalf, and on behalf of the American-Arab Anti-Discrimination Committee, Code Pink, Greenpeace, the Muslim Public Affairs Conference, People for the Ethical Treatment of Animals and United for Peace and Justice (collectively, "the Requestors").

## I.    The Requestors

1.    The American Civil Liberties Union and the American Civil Liberties Union Foundation (collectively, "ACLU")[5] is a national organization that works to protect civil rights and civil liberties.  As the leading defender of freedom, equality, privacy, and due process rights in the United States, the ACLU has challenged the United States government's broad targeting and surveillance of innocent people as part of the war on terrorism, the government's crackdown on criticism and dissent, the secret and unchecked surveillance powers of the USA PATRIOT Act, the excessive restriction of government information available through the Freedom of Information Act, the unfair questioning and targeting of immigrants, the unfair detention and treatment of people arrested in the U.S. as part of the war on terrorism, and the unlawful detention and abuse of prisoners held by the U.S. government in detention facilities overseas.

In particular, ACLU attorneys around the country have provided direct representation to individuals and organizations targeted by the FBI and state and local police for exercising their First Amendment right to criticize the government, including people who participated in numerous rallies and marches to protest the war in Iraq, who were excluded from meaningful participation at public presidential speeches, and who protested at the 2004 Republican and Democratic National Conventions.  ACLU advocates have also used litigation, lobbying, and public education to limit oppressive FBI and state and local police monitoring, interrogation, and arrest of people at public rallies, marches, and meetings.

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

---

[5] The American Civil Liberties Union Foundation is a 501(c)(3) organization that provides legal representation free of charge to individuals and organizations in civil rights and civil liberties cases, and educates the public about civil rights and civil liberties issues.  The American Civil Liberties Union is a separate non-profit, non-partisan, 501(c)(4) membership organization that educates the public about the civil rights and civil liberties implications of pending and proposed state and federal legislation, provides analyses of pending and proposed legislation, directly lobbies legislators, and mobilizes its members to lobby their legislators.

ACLU attorneys also have filed lawsuits challenging three of the most controversial surveillance provisions of the USA PATRIOT Act: Section 215, which authorizes the FBI to obtain an unlimited array of personal records about innocent people through secret court orders; Section 505, which authorizes the FBI to issue National Security Letters demanding certain kinds of personal records without court oversight; and Section 218, which greatly expands the FBI's power to obtain wiretaps. In the lawsuit challenging the National Security Letter (NSL) power, ACLU attorneys represent an anonymous Internet Service Provider that received an NSL from the FBI, and remain under a strict gag order that prevents them from disclosing certain information about the case.

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

ACLU attorneys have also provided direct representation to thousands of individuals interrogated by the FBI as part of its "voluntary" interview and special registration programs for Muslims and people of Arab and South Asian descent. The ACLU has also prepared and distributed a "Know Your Rights" brochure in English, Spanish, Arabic, Urdu, Hindi, Punjabi, Farsi, and Somali to educate the public about the rights of individuals during encounters with the police, the FBI, and agents of the Department of Homeland Security.

The ACLU regularly holds public membership meetings at which a wide range of civil liberties issues are discussed and debated. FBI Director Robert Mueller spoke at the ACLU annual membership conference in June 2003. FBI whistleblower Colleen Rowley and former national security advisor Richard Clarke spoke at the ACLU annual membership conference in July 2004. The ACLU also routinely provides information to the public and the media through print and online communications about the erosion of civil rights and civil liberties after September 11, and encourages ACLU members and activists to oppose government anti-terrorism policies that unnecessarily violate civil rights and civil liberties.

The FBI has a history of surveillance of the ACLU. For example, declassified documents, some released pursuant to previous FOIA requests, reveal that the FBI engaged in extensive spying on the national ACLU and its growing number of regional affiliates throughout the 1940s, 1950s and 1960s, generating tens of thousands of pages of information.

2.      The American-Arab Anti-Discrimination Committee ("ADC") is a non-profit civil rights advocacy organization committed to eradicating discrimination against people of Arab descent and promoting their rich cultural heritage. ADC, the largest Arab-American grassroots organization in the United States, has documented government abuse of Arab-Americans in

3

the aftermath of September 11, and protested new immigration procedures, interrogation techniques, and the detention of Arab-Americans.

In particular, ADC has offered guidance and advice to individuals who have been targeted as a result of the FBI's sweeping surveillance and interrogation of Arab and Muslim Americans, and has publicly protested the FBI's use of race, national origin, and religion as a basis for selecting persons for questioning. ADC directly confronted the Department of Justice over its use of secret evidence to detain Dr. Mazen Al-Najjar, a former University of South Florida professor who was detained for over three years, never charged with any criminal defense, and ultimately deported. ADC also confronted DOJ in the case of Rabih Haddad, a community leader in Ann Arbor, Michigan, who was detained for over nineteen months and deported, despite never being charged with any criminal offense.

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

3.    Code Pink is a women-initiated grassroots peace and social justice movement that has been actively mobilizing women in opposition to United States' policies in Iraq and the USA PATRIOT Act, as well as other human rights, civil liberties, and environmental issues. To protest United States' policies in Iraq, Code Pink organized a march in Washington, D.C., in November of 2002, and undertook a four-month peace vigil in front of the White House. Code Pink organized a second march in Washington, DC, in March of 2003, involving more than ten thousand people. During both the Republican and Democratic National Conventions, members of Code Pink were arrested for protesting the war in Iraq on the convention floor.

4.    Greenpeace is an international advocacy organization dedicating to combating the most serious threats to the planet's biodiversity and environment. Since 1971, Greenpeace has been at the forefront of environmental activism through non-violent protest, research, and public education. In the past several years, Greenpeace has repeatedly engaged the Bush administration through public protest and activism. In 2001, Greenpeace held public demonstrations outside the personal residences of President Bush and Vice President Cheney, attacking the administration's environmental and energy policies. Greenpeace has also actively publicized the Bush administration's ties to the oil industry, especially Exxon Mobil. In 2002, Greenpeace protestors chained themselves to gas pumps at Exxon Mobil stations in New York and Los Angeles, carrying banners that called on the Bush administration to stop favoring the oil industry over the environment. More recently, a team of Greenpeace experts exposed the United States' military's failure to secure and contain nuclear waste facilities in Iraq.

4

The Department of Justice has publicly targeted Greenpeace's advocacy efforts. In 2003, DOJ filed criminal charges against Greenpeace protestors who had peacefully boarded a ship to protest illegal logging, based on an obscure 1872 law against "sailormongering" that that was designed to prevent 19th-century innkeepers from luring sailors to their establishments. A federal district court judge dismissed those charges in May of 2004.

5.    The Muslim Public Affairs Council ("MPAC") is a not-for-profit, national advocacy organization working on behalf of the American Muslim community with a focus on public policy. Since 1988, MPAC has worked diligently to offer the public a portrayal of Muslims that goes beyond stereotypes to reveal that Muslims worship God, abhor global terrorism, stand against oppression, and do not represent an alien existence. MPAC has published numerous studies on U.S. counter-terrorism policy, and is currently conducting the National Grassroots Campaign to Fight Terrorism and Protect Civil Liberties, which aims to institutionalize good-governance measures in 600 mosques throughout the country. MPAC has led the call for the repeal and reform of the USA PATRIOT Act and has been publicly critical of the FBI's sweeping interrogation and surveillance of American Muslims. MPAC officials have also engaged in public education and advocacy on foreign policy issues, including Iraq, India, Pakistan, Palestine, Afghanistan. Currently, MPAC is advocating on behalf of Muslim charities and charitable givers, searching for a way to protect American Muslims' exercise of their First Amendment right to worship through giving in light of the government's targeting of Muslim charities as part of the war on terrorism.

6.    People for the Ethical Treatment of Animals ("PETA") is the largest animal rights organization in the world. Since 1981, PETA has been actively involved in public education and activism regarding the abuse of animals on factory farms, in laboratories, in the fashion industry, and in the entertainment industry. PETA's highly effective public protests and demonstrations against fur traders, fast-food chains, and meat producers have generated substantial publicity and resulted in major changes in industry practices. More recently, PETA has participated in protest against the USA PATRIOT ACT. The FBI has specifically targeted PETA employees and volunteers for harassment and surveillance. PETA staff have been visited and interrogated by FBI agents in their own homes and in PETA offices around the country, and at least one prominent donor has been targeted by the FBI for his lawful contributions to PETA.

7.    United for Peace and Justice ("UFPJ") is a coalition of more than 800 local and national groups throughout the United States that have joined together to oppose the war in Iraq. Since its founding in October 2002,

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

UFPJ has spurred hundreds of anti-war protests and rallies around the country, and sponsored the two largest demonstrations against the Iraq war.  On February 15, 2003, UFPJ organized a global day of protest against the war, including a rally outside the United Nations in New York City that drew more than 500,000 participants.  Two days after the bombing of Iraq began, on March 22, 2003, UFPJ mobilized more than 300,000 people for another protest march in New York City.  UFPJ also organized in the largest anti-war march in New York City during the Republican National Convention.

## II.    The Request for Information

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

The Requestors[6] seek disclosure of any records[7] created from January 1, 2000 to the present, that were prepared, received, transmitted, collected and/or maintained by the FBI, the National Joint Terrorism Task Force, or any Joint Terrorism Task Force relating or referring to the following:

1.    Any records relating or referring to the Requestors, including but not limited to records that document any collection of information about, monitoring, surveillance, observation, questioning, interrogation, investigation and/or infiltration of any of the Requestors or their activities;[8]

2.    Any orders, agreements, or instructions to collect information about, monitor, conduct surveillance of, observe, question, interrogate, investigate, and/or infiltrate any of the Requestors;

3.    Any records relating or referring to how, why or when any of the Requestors was selected for collection of information,

---

[6] The term "Requestors" as used herein is defined as all of the organizations identified in Section I of this letter, as well as their employees, members, and board of directors.

[7] The term "records" as used herein includes all records or communications preserved in electronic or written form, including but not limited to correspondence, documents, data, videotapes, audio tapes, faxes, files, guidance, guidelines, evaluations, instructions, analyses, memoranda, agreements, notes, orders, policies, procedures, protocols, reports, rules, technical manuals, technical specifications, training manuals, or studies.

[8] The term "activities" as used herein includes, but is not limited to, any activities of the Requestors described in Section I above, and any advocacy, provision of services, litigation, lobbying, organizing, fundraising, meetings, marches, rallies, protests, conventions, or campaigns, and any media or communications to, from or about the Requestors in any form (including any oral, written, electronic or online communications, including but not limited to any books, pamphlets, brochures, newsletters, fundraising letters, correspondence, action alerts, e-mail, web communications, discussion groups, or listservs).

monitoring, surveillance, observation, questioning,
interrogation, investigation, and/or infiltration;

4.    Any records relating or referring to how collection of
      information about, monitoring, surveillance, observation,
      questioning, interrogation, investigation, and/or infiltration of
      any of the Requestors was or will be conducted;

5.    Any records relating or referring to the names of any other
      federal, state, or local government agencies participating in any
      collection of information about, monitoring, surveillance,
      observation, questioning, interrogation, investigation and/or
      infiltration of any of the Requestors;

6.    Any records relating or referring to the specific role of the
      National Joint Terrorism Task Force or any local Joint
      Terrorism Task Force in any collection of information about,
      monitoring, surveillance, observation, questioning,
      interrogation, investigation and/or infiltration of any of the
      Requestors;

7.    Any records relating or referring to the specific role of any
      federal, state, or local government agency participating in any
      collection of information about, monitoring, surveillance,
      observation, questioning, interrogation, investigation, and/or
      infiltration of any of the Requestors;

8.    Any records relating or referring to how records about any of
      the Requestors have been, will be, or might be used;

9.    Any policies or procedures for analyzing records about any of
      the Requestors;

10.   Any policies or procedures for cross-referencing records about
      any of the Requestors with information contained in any
      database;

11.   Any policies or procedures for cross-referencing records about
      any of the Requestors with information about any other
      organizations or individuals;

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

7

12.   Any policies or procedures for cross-referencing records about any of the Requestors with any other information not covered in numbers 10 and 11 above;

13.   Any policies or procedures regarding retention of records about any of the Requestors;

14.   Any records referring or relating to the destruction of records about any of the Requestors, including any policies permitting or prohibiting the destruction of records;

15.   Any records referring or relating to how records about any of the Requestors were destroyed or might be destroyed in the future;

16.   Any records referring or relating to the recipient(s) of records about any of the Requestors;

17.   Any policies or procedures in place to protect the privacy of records that refer or relate to the employees, members, and/or board of directors of any of the Requestors;

18.   Any records relating or referring to how, why or when collection of information about, monitoring, surveillance, observation, questioning, interrogation, investigation, and/or infiltration of any of the Requestors was or will be suspended or terminated.

## III.   Limitation of Processing Fees

The ACLU requests a limitation of processing fees pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(II) ("fees shall be limited to reasonable standard charges for document duplication when records are not sought for commercial use and the request is made by . . . a representative of the news media . . .") and 28 C.F.R. §§ 16.11(c)(1)(i), 16.11(d)(1) (search and review fees shall not be charged to "representatives of the news media."). As a "representative of the news media," the ACLU fits within this statutory and regulatory mandate. Fees associated with the processing of this request should, therefore, be limited accordingly.

The ACLU meets the definition of a "representative of the news media" because it is "an entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn raw materials into a

8

distinct work, and distributes that work to an audience." <u>National Security Archive v. Department of Defense</u>, 880 F.2d 1381, 1387 (D.C. Cir. 1989).

The ACLU is a national organization dedicated to the defense of civil rights and civil liberties. Dissemination of information to the public is a critical and substantial component of the ACLU's mission and work. Specifically, the ACLU publishes newsletters, news briefings, right-to-know documents, and other educational and informational materials that are broadly disseminated to the public. Such material is widely available to everyone, including individuals, tax-exempt organizations, not-for-profit groups, law students and faculty, for no cost or for a nominal fee through its public education department. The ACLU also disseminates information through its heavily visited web site: http://www.aclu.org/. The web site addresses civil rights and civil liberties issues in depth, provides features on civil rights and civil liberties issues in the news, and contains many thousands of documents relating to the issues on which the ACLU is focused. The website specifically includes features on information obtained through the FOIA. <u>See, e.g.,</u> www.aclu.org/patriot_foia; www.aclu.org/torturefoia. The ACLU also publishes an electronic newsletter, which is distributed to subscribers by e-mail.

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

In addition to the national ACLU offices, there are 53 ACLU affiliate and national chapter offices located throughout the United States and Puerto Rico. These offices further disseminate ACLU material to local residents, schools and organizations through a variety of means including their own websites, publications and newsletters. Further, the ACLU makes archived material available at the American Civil Liberties Union Archives, Public Policy Papers, Department of Rare Books and Special Collections, Princeton University Library. ACLU publications are often disseminated to relevant groups across the country, which then further distribute them to their members or to other parties.

Depending on the results of the Request, the ACLU plans to "disseminate the information" gathered by this Request "among the public" through these kinds of publications in these kinds of channels. The ACLU is therefore a "news media entity." <u>Cf. Electronic Privacy Information Ctr. v. Department of Defense</u>, 241 F.Supp.2d 5, 10-15 (D.D.C. 2003) (finding non-profit public interest group that disseminated an electronic newsletter and published books was a "representative of the media" for purposes of FOIA).

Finally, disclosure is not in the ACLU's commercial interest. The ACLU is a "non-profit, non-partisan, public interest organization." <u>See Judicial Watch Inc. v. Rossotti</u>, 326 F.3d 1309, 1310 (D.C. Cir. 2003). Any

information disclosed by the ACLU as a result of this FOIA will be available to the public at no cost.

## IV.     Waiver of all Costs

The ACLU additionally requests a waiver of all costs pursuant to 5 U.S.C. §552(a)(4)(A)(iii) ("Documents shall be furnished without any charge . . . if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."). Disclosure in this case meets the statutory criteria, and a fee waiver would fulfill Congress's legislative intent in amending FOIA. See Judicial Watch, Inc. v. Rossotti, 326 F.3d 1309, 1312 (D.C. Cir. 2003) ("Congress amended FOIA to ensure that it be 'liberally construed in favor of waivers for noncommercial requesters.'").

Disclosure of the requested information is in the public interest. This request will further public understanding of government conduct; specifically, the FBI's monitoring, surveillance, and infiltration of organizations on the basis of national origin, racial and/or ethnic background, religious affiliation, organizational membership, political views or affiliation, or participation in protest activities or demonstrations. This type of government activity concretely affects many individuals and groups and implicates basic privacy, free speech, and associational rights protected by the Constitution.

Moreover, disclosure of the requested information will aid public understanding of the implications of the Department of Justice's recent decision to relax guidelines that previously restricted the FBI's ability to spy on organizations without a threshold showing of suspected criminal activity. These restrictions were created in response to the Hoover-era FBI's scandalous spying on politically active individuals and organizations, despite the complete lack of evidence that such individuals and organizations had been involved in any unlawful behavior. Understanding the current scope of the FBI's surveillance and infiltration of law-abiding organizations is, therefore, crucial to the public's interest in understanding the consequences of the Department of Justice's important change in policy.

As a nonprofit 501(c)(3) organization and "representative of the news media" as discussed in Section III, the ACLU is well-situated to disseminate information it gains from this request to the general public as well as to immigrant, religious, politically active, and other targeted communities, and to groups that protect constitutional rights. Because the ACLU meets the test for

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

a fee waiver, fees associated with responding to FOIA requests are regularly waived for the ACLU.[9]

The records requested are not sought for commercial use, and the Requestors plan to disseminate the information disclosed as a result of this FOIA request through the channels described in Section III. As also stated in Section III, the ACLU will make any information disclosed as a result of this FOIA available to the public at no cost.

## V.   **Expedited Processing Request**

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

Expedited processing is warranted because there is "an urgency to inform the public about an actual or alleged federal government activity" by organizations "primarily engaged in disseminating information" 28 C.F.R. § 16.5(d)(1)(ii).[10] This request implicates a matter of urgent public concern; namely, the consequences of a recent change in government policy that has likely resulted in increased surveillance and infiltration of political, religious, and community organizations by the FBI. Such government activity may infringe upon the public's free speech, free association, and privacy rights, which are guaranteed by the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. Requests for information bearing upon potential Constitutional violations require an immediate response so that any violations cease, future violations are prevented, and any chilling effect on public participation in potentially targeted groups and/or political activity be halted.

In addition, this request deals with potential disparate treatment of groups on the basis of categories such as religion, nationality and political viewpoint. Such potential unequal treatment is a matter necessitating immediate attention. There is also intense public concern, particularly among potentially targeted groups, about the actual or alleged federal government

---

[9] For example, the Department of Health and Human Services granted a fee waiver to the ACLU with regard to a FOIA request submitted in August of 2004. In addition, the Office of Science and Technology Policy in the Executive Office of the President said it would waive the fees associated with a FOIA request submitted by the ACLU in August 2003. In addition, three separate agencies – the Federal Bureau of Investigation, the Office of Intelligence Policy and Review, and the Office of Information and Privacy in the Department of Justice – did not charge the ACLU fees associated with a FOIA request submitted by the ACLU in August 2002.

[10] The ACLU is "primarily engaged in disseminating information," as discussed in Sections III and IV.

11

activity addressed by this request. This intense public concern is illustrated by the selection of news coverage detailed in the paragraph below.

A requestor may also demonstrate the need for expedited processing by showing that the information sought relates to "a matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence." 28 C.F.R. § 16.5(d)(1)(iv). The instant request clearly meets these standards as the request relates to possible violations of Constitutional rights by federal law enforcement and potential targeting of groups by federal law enforcement based on illicit categories of political viewpoint, race, religion and nationality. The exceptional media interest in this issue is reflected in widespread news coverage at both the local and national level. *See* e.g. Daily Star Staff, *American Arabs Concerned Over FBI's 'October Plan,'* www.dailystar.com.lb, October 6, 2004; David Shepardson, *FBI Agents Hunt for Terror Leads: Agency Combs Muslim Neighborhoods for Help in Preventing Election Day Attack*, The Detroit News, October 1, 2004; Eric Lichtblau, *Subpoena Seeks Records About Delegate Lists on Web*, NY Times, August 30, 2004 at P10; Alex Bradley and John Mayer, *The War at Home: Nationwide Crackdown on Activists Part*, www.saveourliberties.com, September 2, 2004; Eric Lichtblau, *Protestors at Heart of Debate on Security vs. Civil Rights*, NY Times, August 27, 2004 at A9; Larry Abramson, *FBI Questioning Political Demonstrators*, NPR.org; Susan Greene, *Activists Decry Pre-Convention Security Tactics: Questions by FBI, The Feds Say They're Trying to Avoid Terror Threats, But Many People Say the Steps Veer Toward Intimidation*, The Denver Post, August 26, 2004 at A-08; Eric Lichtblau, *F.B.I. Goes Knocking for Political Troublemakers*, NY Times, August 16, 2004 at A1; Amy Herder, *Teaching the Silent Treatment*, The Denver Post, August 8, 2004 at C-01; Jayashri Srikantiah, *Few Benefits to Questioning Targeted Groups*, San Francisco Chronicle, August 6, 2004; Camille T. Taiara, *New F.B.I. Witch-Hunt*, San Francisco Bay Guardian, August 4-10, 2004; Kelly Thornton, *F.B.I.'s Home Visits Have Some Muslims Feeling Harrassed, Alienated*, Signonsandiego.com, August 4, 2004; Richard Schmitt and Donna Horowitz, *FBI Starts to Question Muslims in U.S. About Possible Attacks*, latimes.com, July 18, 2004; Karen Abbott, *FBI's Queries Rattle Activist*, www.rockymountainnews.com, July 27, 2004; Mary Beth Sheridan, *Interviews of Muslims to Broaden*, www.washingtonpost.com, July 17, 2004; Jeff Eckhoff and Mark Siebert, *Group Fights Anti-war Inquiry*, The Des Moines Register, February 7, 2004; Jeff Eckhoff and Mark Siebert, *Anti-war Inquiry Unrelated to Terror, The Des Moines Register*, February 10, 2004 at 1A; Jeff Eckhoff and Mark Siebert, *Group Fights Anti-war Inquiry*, The Des Moines Register, February 7, 2004; Monica Davey, *An Antiwar Forum in Iowa Brings Federal Subpoenas*, NY Times, February 10, 2004 at A14;

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

Monica Davey, *Subpoenas on Antiwar Protest Are Dropped*, NY Times, February 11, 2004 at A18; Michelle Goldberg, *A Thousand J. Edgar Hoovers*, www.salon.com, February 12, 2004; Michelle Goldberg, *Outlawing Dissent*, www.salon.com, February 11, 2004; Kerri Ginis, *Peace Fresno Seeks Damages*, The Fresno Bee, February 28, 2004; Eric Lichtblau, *F.B.I. Scrutinizes Antiwar Rallies*, www.nytimes.com, November 23, 2003.

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

The potential targeting of individuals and groups by the federal government on the basis of group membership, religion, political protest, nationality, and other similar categories raises many questions about the government's integrity and affects public confidence in a profound way. The government's – and particularly the FBI's – treatment of persons on the basis of their political viewpoints is a critical issue with a long history dating back to the founding of the nation. Questions about the government's integrity in these areas substantially affect the public's confidence in the government's ability to protect all of its citizens, and in law enforcement and the legal system. This issue has been of concern to lawmakers, including three members of the House of Representatives. *See, e.g.*, Eric Lichtblau, *Inquiry into F.B.I. Question Is Sought*, NY Times A16, August 18, 2004.

Finally, pursuant to applicable regulations and statute, the ACLU expects the determination of this request for expedited processing within 10 calendar days and the determination of this request for documents within 20 days. See 28 C.F.R. 16.5(d)(4); 5 U.S.C. § 552(a)(6)(A)(i).

If this request is denied in whole or in part, we ask that you justify all deletions by reference to specific exemptions to FOIA. The ACLU expects the release of all segregable portions of otherwise exempt material. The ACLU reserves the right to appeal a decision to withhold any information or to deny a waiver of fees.

Thank you for your prompt attention to this matter. Please furnish all applicable records to:

Ann Beeson
Associate Legal Director
American Civil Liberties Union
125 Broad Street, 18th floor
New York, NY 10004

I affirm that the information provided supporting the request for expedited processing is true and correct to the best of my knowledge and belief.

Sincerely,

Ann Beeson
Associate Legal Director
American Civil Liberties Union

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

14

Exhibit B

LEGAL DEPARTMENT



December 2, 2004

Federal Bureau of Investigation
J. Edgar Hoover Building
935 Pennsylvania Avenue, NW
Washington, D.C. 20535-0001

Re:    **REQUEST UNDER FREEDOM OF INFORMATION ACT /**
       **Expedited Processing Requested**

Attention:

This letter constitutes a request by the American Civil Liberties Union
and the American Civil Liberties Union Foundation ("ACLU") under the
Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), and the Department of
Justice implementing regulations, 28 CFR § 16.11.[1]

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
LEGAL DEPARTMENT
NATIONAL OFFICE
125 BROAD STREET, 18TH FL.
NEW YORK, NY 10004-2400
T/212.549.2500
F/212.549.2651
WWW.ACLU.ORG

OFFICERS AND DIRECTORS
NADINE STROSSEN
PRESIDENT

ANTHONY D. ROMERO
EXECUTIVE DIRECTOR

KENNETH B. CLARK
CHAIR, NATIONAL
ADVISORY COUNCIL

RICHARD ZACKS
TREASURER

I.    **The Request for Information**

The ACLU seeks disclosure of any record(s),[2] document(s), file(s),
communications, memorandum(a), order(s), agreement(s) and/or
instruction(s), created from January 1, 2000 to the present, about:

1.  the creation of the National Joint Terrorism Task Force (NJTTF);

2.  the creation of all state and local Joint Terrorism Task Forces (JTTFs);

3.  the general purpose and mission of the NJTTF;

4.  the general purpose and mission of all state and local JTTFs;

---

[1] The American Civil Liberties Union Foundation is a 501(c)(3) organization that provides
legal representation free of charge to individuals and organizations in civil rights and civil
liberties cases, and educates the public about civil rights and civil liberties issues. The
American Civil Liberties Union is a separate non-profit, non-partisan, 501(c)(4) membership
organization that educates the public about the civil liberties implications of pending and
proposed state and federal legislation, provides analyses of pending and proposed legislation,
directly lobbies legislators, and mobilizes its members to lobby their legislators.

[2] The term "records" as used herein includes all records or communications preserved in
electronic or written form, including but not limited to correspondence, documents, data,
videotapes, audio tapes, faxes, files, guidance, guidelines, evaluations, instructions, analyses,
memoranda, agreements, notes, orders, policies, procedures, protocols, reports, rules,
technical manuals, technical specifications, training manuals, or studies.

5. the relationship between the NJTTF and all state and local JTTFs;

6. the funding of the NJTTF;

7. the funding of all state and local JTTFs;

8. the names and job descriptions of all management level employees of the NJTTF;

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

9. the name and job description of the special agent in charge of each state and local JTTF;

10. the names and job descriptions of all NJTTF employees primarily responsible for coordinating the work of special agents in charge of state and local JTTFs;

11. the names of all agencies participating in the NJTTF;

12. the names of all agencies participating in any state and local JTTF;

13. the role of each agency participating in the NJTTF;

14. the role of each agency participating in any state and local JTTF;

15. the names and titles of all state and local law enforcement officials participating in the NJTTF;

16. the names and titles of all state and local law enforcement officials participating in state and local JTTFs;

17. the names and titles of all state and local law enforcement officials who have been deputized as special federal agents in the NJTTF and/or any state or local JTTF;

18. the policies, procedures and/or practices of the NJTTF and all state and local JTTFs for identifying "potential threat elements" (PTEs);

19. the policies, procedures and/or practices of the NJTTF and all state and local JTTFs for monitoring, surveillance, questioning, interrogation, and/or investigation of individuals, organizations, or groups identified as PTEs;

2

20. the policies, procedures and/or practices of the NJTTF and all state and local JTTFs for monitoring, surveillance, questioning, interrogation, and/or investigation of students, faculty, or staff on college or university campuses;

21. the policies, procedures, and/or practices of the NJTTF and all state and local JTTFs for monitoring, surveillance, questioning, interrogation, and/or investigation of individuals based in whole or in part on one or more of the following factors: national origin; race and/or ethnicity; religious affiliation; organizational membership; political views or affiliation; and/or participation in protest activities or demonstrations;

22. the policies, procedures, and/or practices of the NJTTF and all state and local JTTFs for monitoring, surveillance, questioning, interrogation, and/or investigation of organizations or groups based in whole or in part on one or more of the following factors: political views; participation in demonstrations or protest activities; the national origin, race, ethnicity, or religious affiliation of the organization's or group's staff, members, and/or constituents;

23. the policies, procedures, and/or practices of the NJTTF and all state and local JTTFs for using undercover agents to infiltrate organizations or groups based in whole or in part on one or more of the following factors: political views; participation in demonstrations or protest activities; the national origin, race, ethnicity, or religious affiliation of the organization's or group's staff, members, and/or constituents;

24. the criteria used by the NJTTF and all state and local JTTFs to initiate monitoring, surveillance, questioning, interrogation, investigation, and/or infiltration, as described in paragraphs 19-23 above;

25. the techniques used by the NJTTF and all state and local JTTFs for monitoring, surveillance, questioning, interrogation, investigation, and/or infiltration, as described in paragraphs 19-23 above;

26. the policies, procedures, and/or practices of the NJTTF and all state and local JTTFs for gathering information through monitoring, surveillance, questioning, interrogation, investigation, and/or infiltration, as described in paragraphs 19-23 above;

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

3

27. the types of information gathered by the NJTTF and all state and local JTTFs through monitoring, surveillance, questioning, interrogation, investigation, and/or infiltration, as described in paragraphs 19-23 above;

28. the policies, procedures, and/or practices of the NJTTF and all state and local JTTFs governing the maintenance and/or storage of information described in paragraph 26 above;

29. the policies, procedures, and/or practices of the NJTTF and all state and local JTTFs for analyzing and using information described in paragraph 26 above;

30. the policies, procedures and/or practices of the NJTTF and all state and local JTTFs for sharing information described in paragraph 26 above;

31. the policies, procedures, and/or practices of the NJTTF and all state and local JTTFs for cross-referencing information described in paragraph 26 above with information about other individuals, organizations, or groups;

32. the policies, procedures, and/or practices of the NJTTF and all state and local JTTFs for cross-referencing information described in paragraph 26 above with information in any database;

33. the policies, procedures, and/or practices used to suspend and/or terminate monitoring, surveillance, questioning, interrogation, investigation, and/or infiltration by the NJTTF and all state and local JTTFs, as described in paragraphs 19-23 above;

34. the policies, procedures, and/or practices of the NJTTF and all state and local JTTFs governing the destruction of information described in paragraph 26 above;

35. the policies, procedures, and/or practices of the NJTTF and all state and local JTTFs for protecting the privacy of individuals who are monitored, surveilled, questioned, interrogated, investigated, and/or infiltrated, as described in paragraphs 19-23 above;

36. the constitutionality, legality, and/or propriety of monitoring, surveillance, questioning, interrogation, investigation, and/or

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

4

infiltration by the NJTTF and all state and local JTTFs, as described in paragraphs 19-23 above;

37. any actual or potential violations of, or deviations from, any policy, procedure or practice related to monitoring, surveillance, questioning, interrogation, investigation, and/or infiltration by the NJTTF and all state and local JTTFs, as described in paragraphs 19-23 above;

38. any investigation, inquiry, or disciplinary proceeding initiated in response to any actual or potential violations of, or deviations from, any policy, procedure or practice related to monitoring, surveillance, questioning, interrogation, investigation, and/or infiltration by the NJTTF and all state and local JTTFs, as described in paragraphs 19-23 above;

39. the number of college or university campuses on which the NJTTF has conducted monitoring, questioning, interrogation, and/or surveillance, as described in paragraph 20 above, for each year starting with year 2000;

40. the number of college or university campuses on which each state or local JTTF has conducted monitoring, questioning, interrogation, and/or surveillance, as described in paragraph 20 above, for each year starting with year 2000.

## II.    Limitation of Processing Fees

The ACLU requests a limitation of processing fees pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(II) ("fees shall be limited to reasonable standard charges for document duplication when records are not sought for commercial use and the request is made by . . . a representative of the news media . . .") and 28 C.F.R. §§ 16.11(c)(1)(i), 16.11(d)(1) (search and review fees shall not be charged to "representatives of the news media."). As a "representative of the news media," the ACLU fits within this statutory and regulatory mandate. Fees associated with the processing of this request should, therefore, be limited accordingly.

The ACLU meets the definition of a "representative of the news media" because it is "an entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn raw materials into a distinct work, and distributes that work to an audience." National Security Archive v. Department of Defense, 880 F.2d 1381, 1387 (D.C. Cir. 1989).

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

5

The ACLU is a national organization dedicated to the defense of civil rights and civil liberties. Dissemination of information to the public is a critical and substantial component of the ACLU's mission and work. Specifically, the ACLU publishes newsletters, news briefings, right-to-know documents, and other educational and informational materials that are broadly disseminated to the public. Such material is widely available to everyone, including individuals, tax-exempt organizations, not-for-profit groups, law students and faculty, for no cost or for a nominal fee through its public education department. The ACLU also disseminates information through its heavily visited web site: http://www.aclu.org/. The web site addresses civil rights and civil liberties issues in depth, provides features on civil rights and civil liberties issues in the news, and contains many thousands of documents relating to the issues on which the ACLU is focused. The website specifically includes features on information obtained through the FOIA. See, e.g., www.aclu.org/patriot_foia; www.aclu.org/torturefoia. The ACLU also publishes an electronic newsletter, which is distributed to subscribers by e-mail.

In addition to the national ACLU offices, there are 53 ACLU affiliate and national chapter offices located throughout the United States and Puerto Rico. These offices further disseminate ACLU material to local residents, schools and organizations through a variety of means including their own websites, publications and newsletters. Further, the ACLU makes archived material available at the American Civil Liberties Union Archives, Public Policy Papers, Department of Rare Books and Special Collections, Princeton University Library. ACLU publications are often disseminated to relevant groups across the country, which then further distribute them to their members or to other parties.

Depending on the results of the Request, the ACLU plans to "disseminate the information" gathered by this Request "among the public" through these kinds of publications in these kinds of channels. The ACLU is therefore a "news media entity." Cf. Electronic Privacy Information Ctr. v. Department of Defense, 241 F.Supp.2d 5, 10-15 (D.D.C. 2003) (finding non-profit public interest group that disseminated an electronic newsletter and published books was a "representative of the media" for purposes of FOIA).

Finally, disclosure is not in the ACLU's commercial interest. The ACLU is a "non-profit, non-partisan, public interest organization." See Judicial Watch Inc. v. Rossotti, 326 F.3d 1309, 1310 (D.C. Cir. 2003). Any

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

information disclosed by the ACLU as a result of this FOIA will be available to the public at no cost.

## III.     Waiver of all Costs

The ACLU additionally requests a waiver of all costs pursuant to 5 U.S.C. §552(a)(4)(A)(iii) ("Documents shall be furnished without any charge . . . if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester.").  Disclosure in this case meets the statutory criteria, and a fee waiver would fulfill Congress's legislative intent in amending FOIA.  <u>See Judicial Watch, Inc. v. Rossotti</u>, 326 F.3d 1309, 1312 (D.C. Cir. 2003) ("Congress amended FOIA to ensure that it be 'liberally construed in favor of waivers for noncommercial requesters.'").

Disclosure of the requested information is in the public interest.  This request will further public understanding of government conduct; specifically, the FBI's monitoring, surveillance, and infiltration of organizations on the basis of national origin, racial and/or ethnic background, religious affiliation, organizational membership, political views or affiliation, or participation in protest activities or demonstrations.  This type of government activity concretely affects many individuals and groups and implicates basic privacy, free speech, and associational rights protected by the Constitution.

Moreover, disclosure of the requested information will aid public understanding of the implications of the Department of Justice's recent decision to relax guidelines that previously restricted the FBI's ability to spy on organizations without a threshold showing of suspected criminal activity.  These restrictions were created in response to the Hoover-era FBI's scandalous spying on politically active individuals and organizations, despite the complete lack of evidence that such individuals and organizations had been involved in any unlawful behavior.  Understanding the current scope of the FBI's surveillance and infiltration of law-abiding organizations is, therefore, crucial to the public's interest in understanding the consequences of the Department of Justice's important change in policy.

As a nonprofit 501(c)(3) organization and "representative of the news media" as discussed in Section II, the ACLU is well-situated to disseminate information it gains from this request to the general public as well as to immigrant, religious, politically active, and other targeted communities, and to groups that protect constitutional rights.  Because the ACLU meets the test for

AMERICAN CIVIL LIBERTIES UNION FOUNDATION

a fee waiver, fees associated with responding to FOIA requests are regularly waived for the ACLU.[3]

The records requested are not sought for commercial use, and the requesters plan to disseminate the information disclosed as a result of this FOIA request through the channels described in Section II. As also stated in Section II, the ACLU will make any information disclosed as a result of this FOIA available to the public at no cost.

## IV.    Expedited Processing Request

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

Expedited processing is warranted because there is "[a]n urgency to inform the public about an actual or alleged federal government activity" by organizations "primarily engaged in disseminating information." 28 CFR § 16.5(d)(1)(ii).[4] This request implicates an urgent matter of public concern; namely, the FBI's and JTTF's potentially extensive monitoring and surveillance of individual citizens, as well as political, religious, and community organizations throughout the nation. Such government activity may infringe upon the public's free speech, free association, and privacy rights, which are guaranteed by the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. Requests for information bearing upon potential Constitutional violations require an immediate response so that any violations cease, future violations are prevented, and any chilling effect on public participation in potentially targeted groups and/or political activity be halted.

In addition, this request deals with potential disparate treatment of groups on the basis of categories such as religion, nationality and political viewpoint. Such potential unequal treatment is a matter necessitating immediate attention. There is also intense public concern, particularly among potentially targeted groups, about the actual or alleged federal government activity addressed by this request. This intense public concern is illustrated by the selection of news coverage detailed in the paragraph below.

---

[3] For example, the Department of Health and Human Services granted a fee waiver to the ACLU with regard to a FOIA request submitted in August of 2004. In addition, the Office of Science and Technology Policy in the Executive Office of the President said it would waive the fees associated with a FOIA request submitted by the ACLU in August 2003. In addition, three separate agencies – the Federal Bureau of Investigation, the Office of Intelligence Policy and Review, and the Office of Information and Privacy in the Department of Justice – did not charge the ACLU fees associated with a FOIA request submitted by the ACLU in August 2002.

[4] The ACLU is "primarily engaged in disseminating information," as discussed in Sections II and III.

8

A requestor may also demonstrate the need for expedited processing by showing that the information sought relates to "a matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence." 28 C.F.R. § 16.5(d)(1)(iv). The instant request clearly meets these standards as the request relates to possible violations of Constitutional rights by federal law enforcement and potential targeting of groups by federal law enforcement based on illicit categories of political viewpoint, race, religion and nationality. The exceptional media interest in this issue is reflected in widespread news coverage at both the local and national level. *See, e.g.,* Daily Star Staff, *American Arabs Concerned Over FBI's 'October Plan,'* www.dailystar.com.lb, October 6, 2004; David Shepardson, *FBI Agents Hunt for Terror Leads: Agency Combs Muslim Neighborhoods for Help in Preventing Election Day Attack,* The Detroit News, October 1, 2004; CBS News Transcript, *FBI's Anti-Terror 'October Plan,'* www.cbsnews.com, September 17, 2004; Alex Bradley and John Mayer, *The War at Home: Nationwide Crackdown on Activists Part,* www.saveourliberties.com, September 2, 2004; Eric Lichtblau, *Subpoena Seeks Records About Delegate Lists on Web,* NY Times, August 30, 2004 at P10; Eric Lichtblau, *Protestors at Heart of Debate on Security vs. Civil Rights,* NY Times, August 27, 2004 at A9; Larry Abramson, *FBI Questioning Political Demonstrators,* NPR.org; Susan Greene, *Activists Decry Pre-Convention Security Tactics: Questions by FBI, The Feds Say They're Trying to Avoid Terror Threats, But Many People Say the Steps Veer Toward Intimidation,* The Denver Post, August 26, 2004 at A-08; Eric Lichtblau, *F.B.I. Goes Knocking for Political Troublemakers,* NY Times, August 16, 2004 at A1; Amy Herder, *Teaching the Silent Treatment,* The Denver Post, August 8, 2004 at C-01; Jayashri Srikantiah, *Few Benefits to Questioning Targeted Groups,* San Francisco Chronicle, August 6, 2004; Camille T. Taiara, *New F.B.I. Witch-Hunt,* San Francisco Bay Guardian, August 4-10, 2004; Kelly Thornton, *F.B.I.'s Home Visits Have Some Muslims Feeling Harrassed, Alienated,* Signonsandiego.com, August 4, 2004; Karen Abbott, *FBI's Queries Rattle Activist,* www.rockymountainnews.com, July 27, 2004; Richard Schmitt and Donna Horowitz, *FBI Starts to Question Muslims in U.S. About Possible Attacks,* latimes.com, July 18, 2004; Mary Beth Sheridan, *Interviews of Muslims to Broaden,* ww.washingtonpost.com, July 17, 2004; Kerri Ginis, *Peace Fresno Seeks Damages,* The Fresno Bee, February 27, 2004; Michelle Goldberg, *A Thousand J. Edgar Hoovers,* www.salon.com, February 12, 2004; Monica Davey, *Subpoenas on Antiwar Protest Are Dropped,* NY Times, February 11, 2004 at A18; Michelle Goldberg, *Outlawing Dissent,* www.salon.com, February 11, 2004; Jeff Eckhoff and Mark Siebert, *Anti-war Inquiry Unrelated to Terror, The Des*

AMERICAN CIVIL LIBERTIES UNION FOUNDATION

9

*Moines Register*, February 10, 2004 at 1A; Monica Davey, *An Antiwar Forum in Iowa Brings Federal Subpoenas*, NY Times, February 10, 2004 at A14; Jeff Eckhoff and Mark Siebert, *Group Fights Anti-war Inquiry*, The Des Moines Register, February 7, 2004; Eric Lichtblau, *F.B.I. Scrutinizes Antiwar Rallies*, www.nytimes.com, November 23, 2003.

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

The potential targeting of individuals and groups by the federal government on the basis of group membership, religion, political protest, nationality, and other similar categories raises many questions about the government's integrity and affects public confidence in a profound way. The government's – and particularly the FBI's – treatment of persons on the basis of their political viewpoints is a critical issue with a long history dating back to the founding of the nation. Questions about the government's integrity in these areas substantially affect the public's confidence in the government's ability to protect all of its citizens, and in law enforcement and the legal system. This issue has been of concern to lawmakers, including three members of the House of Representatives. *See, e.g.*, Eric Lichtblau, *Inquiry into F.B.I. Question Is Sought*, NY Times A16, August 18, 2004.

Finally, pursuant to applicable regulations and statute, the ACLU expects the determination of this request for expedited processing within 10 calendar days and the determination of this request for documents within 20 days. *See* 28 CFR § 16.5(d)(4); 5 U.S.C. § 552(a)(6)(A)(i).

If this request is denied in whole or in part, we ask that you justify all deletions by reference to specific exemptions to FOIA. The ACLU expects the release of all segregable portions of otherwise exempt material. The ACLU reserves the right to appeal a decision to withhold any information or to deny a waiver of fees.

Thank you for your prompt attention to this matter. Please furnish all applicable records to:

Ann Beeson
Associate Legal Director
American Civil Liberties Union
125 Broad Street, 18th floor
New York, NY 10004

I affirm that the information provided supporting the request for expedited processing is true and correct to the best of my knowledge and belief.

Sincerely,

Ann Beeson
Associate Legal Director
American Civil Liberties Union

**AMERICAN CIVIL LIBERTIES
UNION FOUNDATION**

11

Exhibit C

**ANN BEESON**
*ASSOCIATE LEGAL DIRECTOR*



February 8, 2005

**AMERICAN CIVIL LIBERTIES**
**UNION FOUNDATION**
NATIONAL OFFICE
125 BROAD STREET, 18TH FL.
NEW YORK, NY 10004-2400
T/212.549.2601
F/212.549.2651
ABEESON@ACLU.ORG
WWW.ACLU.ORG

Mark Corallo
Director, Office of Public Affairs
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

David M. Hardy
Chief, Freedom of Information-Privacy Acts Section
Records Management Division
Federal Bureau of Investigation
U.S. Department of Justice
935 Pennsylvania Avenue, N.W.
Washington, DC 20535-0001

RE:   **REQUEST FOR EXPEDITED PROCESSING**
      **FOIA Requests No. 1010249-000; 1010242-000; 1010243-000;**
      **1010244-000; 1010245-000; 1010246-000; 1010247-000;**
      **1010248-000**

Dear Mr. Corallo and Mr. Hardy:

This letter concerns two Freedom of Information Act ("FOIA") requests submitted on December 2, 2004 by the American Civil Liberties Union and the American Civil Liberties Union Foundation ("ACLU") on behalf of the ACLU and several political and religious organizations. These FOIA requests seek information regarding: (1) the activities, operations, and organization of national and local Joint Terrorism Task Forces ("JTTFs"); and (2) any monitoring, surveillance, observation, questioning, investigation and/or infiltration of the requesting organizations by the FBI.

Both FOIA requests included a request for expedited processing pursuant to 28 C.F.R. § 16.5(d)(1).  DOJ regulations provide that a decision to grant or deny expedited processing shall be made within ten (10) calendar days of the date of a FOIA request.  28 C.F.R. § 16.5(d)(4).  As that deadline passed nearly six weeks ago, on December 19, 2004, you are in violation of the regulations.

Please inform us as soon as possible, but no later than February 21, 2005, of your determination regarding our request for expedited processing for the two above-referenced FOIA requests.

**AMERICAN CIVIL LIBERTIES
UNION FOUNDATION**

Sincerely,

Ann Beeson

Exhibit D

**ACLU**

AMERICAN CIVIL LIBERTIES UNION FOUNDATION

April 28, 2005

Tasia Scolinos
Director, Office of Public Affairs
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
LEGAL DEPARTMENT
NATIONAL OFFICE
125 BROAD STREET, 18TH FL.
NEW YORK, NY 10004-2400
T/212.549.2500
F/212.549.2651
WWW.ACLU.ORG

OFFICERS AND DIRECTORS
NADINE STROSSEN
PRESIDENT

ANTHONY D. ROMERO
EXECUTIVE DIRECTOR

KENNETH B. CLARK
CHAIR, NATIONAL
ADVISORY COUNCIL

RICHARD ZACKS
TREASURER

RE:    **REQUEST FOR EXPEDITED PROCESSING
FOIA Requests No. 1010249-000; 1010242-000; 1010243-000;
1010244-000; 1010245-000; 1010246-000; 1010247-000;
1010248-000**

Dear Ms. Scolinos:

This letter concerns two Freedom of Information Act ("FOIA")
requests submitted on December 2, 2004 by the American Civil Liberties
Union and the American Civil Liberties Union Foundation ("ACLU") on
behalf of the ACLU and several political and religious organizations.
These FOIA requests seek information regarding: (1) the activities,
operations, and organization of national and local Joint Terrorism Task
Forces ("JTTFs"); and (2) any monitoring, surveillance, observation,
questioning, investigation and/or infiltration of the requesting
organizations by the FBI.  Both FOIA requests included a request for
expedited processing pursuant to 28 C.F.R. § 16.5(d)(1).

On February 8, 2005, in a letter to your predecessor, the ACLU
reported that the Department of Justice had violated regulations requiring
the Department to grant or deny requests for expedited processing within
ten calendar days of the date of a FOIA request.  28 C.F.R. § 16.5(d)(4).
The Department did not respond to our letter, and to date has not
responded to our request for expedited processing.

As a consequence of the Department's failure to respond to our
requests, the ACLU is prepared to seek judicial enforcement of our
entitlement to expedited processing and to receipt of the responsive
documents.  We would prefer to resolve this matter without recourse to the
courts, and we are prepared to negotiate in good faith a schedule for the

processing of our requests and the release of responsive documents. Please contact us as soon as possible, and no later than May 6, 2005, if the Department wishes to discuss alternatives to litigation.

Sincerely,

Ben Wizner
Staff Attorney
(212) 519-7860

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

Ann Beeson
Associate Legal Director

Exhibit E



**U.S. Department of Justice**

Federal Bureau of Investigation

Washington, D. C. 20535-0001

May 25, 2005

Ms. Ann Beeson
American Civil Liberties Union
18th Floor
125 Broad Street                  Request Nos: 1010242, 1010243, 1010245,
New York, NY 1004-2400                         1010246, 1010248

Dear Ms. Beeson:

        This is in reference to your letter dated December 2, 2004, directed to FBI Headquarters
in which you requested expedited processing for the above-referenced Freedom of Information
requests.

        You have requested expedited processing of your request pursuant to the Department's
standard permitting expedition for requests involving "[a]n urgency to inform the public about an
actual or alleged federal government activity, if made by a person primarily engaged in
disseminating information." 28 C.F. R. § 16.5 (d) (1)(ii). Based on the information you have
provided, I cannot find that there is a particular urgency to inform the public about an actual or
alleged federal government activity beyond the public's right to know about government activity
generally. Additionally, the primary activity of the American Civil Liberties Union is not
information dissemination, which is required for a requester to qualify for expedited processing
under this standard. You have also requested expedited processing of your request pursuant to the
Department's standard permitting expedition for requests involving "[a] matter of widespread and
exceptional media interest in which there exists possible questions about the government's integrity
which affect public confidence." 28 C.F. R. § 16.5 (d) (1)(iv). Pursuant to Department policy, we
forwarded your request to the Director of Public Affairs, who makes the decision whether to grant
or deny expedited processing under this standard. See id § 16.5(d)(2). The Director of Public
Affairs did not detect "widespread and exceptional media interest," nor questions concerning the
government's integrity regarding the issues raised in your request, and therefore, has denied your
request for expedited processing. Accordingly, your requests have been placed in our regular
processing queue.

        With respect to the portion of your letter seeking a waiver of the customary fees, we will
make a decision once our records search is completed. You will be notified of any applicable fees
prior to the processing of any responsive records.

Ms. Ann Beeson

     If you are not satisfied with the denial of your request for expedited processing, you may administratively appeal by writing to the Co-Director, Office of Information and Privacy, United States Department of Justice, Flag Building, Suite 570, Washington, D. C. 20530-0001, within sixty days from the date of this letter. Both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."

                         Sincerely yours,

                         David M. Hardy
                         Section Chief
                         Record/Information
                           Dissemination Section
                         Records Management Division

2

Exhibit F



**U.S. Department of Justice**

Federal Bureau of Investigation

Washington, D. C. 20535-0001

June 6, 2005

Ms. Ann Beeson
American Civil Liberties Union
18th Floor
125 Broad Street
New York, NY 10004-2400

RE: Request No. 1010249
National Joint Terrorism Task Force

Dear Ms. Beeson:

This is in reference to your letter dated December 2, 2004, directed to Federal Bureau of Investigation (FBI) Headquarters, in which you requested expedited processing for the above-referenced Freedom of Information Act request. This response is being made both on behalf of the FBI and the U.S. Department of Justice (DOJ) Office of Public Affairs (OPA).

You have requested expedited processing of your request pursuant to the DOJ standard permitting expedition for requests involving "[a]n urgency to inform the public about an actual or alleged federal government activity, if made by a person primarily engaged in disseminating information." 28 C.F. R. §16.5 (d)(1)(ii). Based on the information you have provided, I cannot find that there is a particular urgency to inform the public about an actual or alleged federal government activity beyond the public's right to know about government activity generally. Additionally, the primary activity of the American Civil Liberties Union is not information dissemination, which is required for a requester to qualify for expedited processing under this standard.

You have also requested expedited processing of your request pursuant to the DOJ standard permitting expedition for request involving "[a] matter of widespread and exceptional media interest in which there exists possible questions about the government's integrity which affect public confidence." 28 C.F. R. §16.5 (d)(1)(iv). Pursuant to DOJ policy, we forwarded your request to the Director of DOJ OPA, who makes the decision whether to grant or deny expedited processing under this standard. See §16.5 (d)(2). The Director of OPA did not detect "widespread and exceptional media interest," nor questions concerning the government's integrity regarding the issues raised in your request. The Director of OPA has therefore denied your request for expedited processing. Accordingly, your requests have been placed in the FBI's regular processing queue.

Ms. Ann Beeson

With respect to the portion of your letter seeking a waiver of the customary fees, we will make a decision once our records search is completed. In the event that your request for a fee waiver is denied, you will be notified of any applicable fees prior to the processing of any responsive records.

If you are not satisfied with the denial of your request for expedited processing, you may administratively appeal by writing to the Co-Director, Office of Information and Privacy, United States Department of Justice, Flag Building, Suite 570, Washington, D. C. 20530-0001, within sixty (60) days from the date of this letter. Both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."

Sincerely yours,

David M. Hardy
Section Chief
Record/Information
  Dissemination Section
Records Management Division

2