IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION, *et al.*, | ) <br> ) <br> ) Civ. A. No. 1:05-CV-1004 (ESH) |
| Plaintiffs, | ) <br> ) |
| v. | ) <br> ) |
| FEDERAL BUREAU OF INVESTIGATION, <br> UNITED STATES DEPARTMENT OF JUSTICE, | ) <br> ) <br> ) |
| Defendants. | ) <br> ) |

Exhibit I to Coppolino Declaration

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JUDICIAL WATCH OF FLORIDA, INC.,

    Plaintiff,

v.

UNITED STATES JUSTICE
DEPARTMENT,

    Defendant.

Civil Action No. 97-cv-2869 (RMU)

Document Nos: 17 & 19

FILED

AUG 25 1998

NANCY MAYER-WHITTINGTON, CLERK
U.S. DISTRICT COURT

## MEMORANDUM OPINION AND ORDER

Granting The Plaintiff's Motion for Fee Waiver; and
Granting The FBI's Motion to Stay Proceedings

### I. INTRODUCTION

Plaintiff, Judicial Watch of Florida, Inc. ("Judicial Watch"), filed this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. §552 et seq., seeking disclosure of documents concerning the United States Attorney General's decision not to appoint an independent counsel to investigate alleged improper campaign finance activities in the Clinton Administration. This matter comes before the court on the plaintiff's motion for fee waiver under 5 U.S.C. §552 (a)(4)(A), and a motion for a partial stay of proceedings until the year 2000 filed by the Federal Bureau of Investigation ("FBI"). Upon consideration of the parties' submissions and the relevant law, the court grants the plaintiff's motion for fee waiver and grants the FBI's motion to stay proceedings.

### II. BACKGROUND

On July 15, 1997, the plaintiff served a FOIA request to the United States Department of Justice ("DOJ"). Although the request named the DOJ as the sole defendant, the request in fact requires six agencies within the DOJ to process the plaintiff's request. These six agencies are divided into three groups. The FBI constitutes the first group which has filed the current motion

to stay proceedings. The second group consists of three agencies: (1) the Office of Information and Privacy ("OIP"), (2) the Executive Office for the United States Attorneys ("EOUSA"), and (3) the Civil Division. This group of agencies has denied the plaintiff's request for a fee waiver. In response, the plaintiff is seeking judicial <u>de novo</u> review of that denial. Finally, the third group of agencies includes the Office of Legal Counsel and the Criminal Division which has provided the plaintiff with a <u>Vaughn</u> Index of the documents.[1]

### III. DISCUSSION

A. Plaintiff's Motion for Fee Waiver

Invoking the FOIA's public interest provision, the plaintiff requests a blanket fee waiver of all applicable charges related to its FOIA request. The plaintiff asserts that it is entitled to the fee waiver as a non-profit, public interest organization which seeks to provide the public with information on government activities that allegedly violate the law. The defendant, on the other hand, contends that the plaintiff fails to satisfy the fee waiver requirements because its FOIA request is overly broad and includes documents that will not contribute to the public's understanding of government activities. The defendant also asserts that some of the documents requested by the plaintiff are already in the public domain.[2]

FOIA mandates a <u>de novo</u> review of agency decisions regarding fee waivers. 5 U.S.C. §552 (a)(4)(A)(iii). The court's review is limited, however, "to the record before the agency" at the time a decision was rendered. <u>Id</u>. The requestor bears the initial burden of satisfying the fee waiver standard. <u>Schrecker v. Department of Justice</u>, 970 F. Supp. 49, 50 (D.C. Cir. 1997); <u>Fitzgibbon v. Agency for International Development</u>, 724 F. Supp. 1048, 1051 (D.C. Cir. 1989); <u>Larson v. Central Intelligence Agency</u>, 843 F.2d 1481, 1483 (D.C. Cir. 1988); <u>National Treasury Employees Union v. Griffin</u>, 811 F.2d 644, 648 (D.C. Cir. 1987).

---

[1] Pursuant to the court's May 19, 1998 order, the defendant produced an index of responsive documents consistent with <u>Vaughn v. Rosen</u>, 484 F.2d 820 (D.C. Cir. 1973).

[2] Defendant's Opposition at 27.

2

Congress amended the FOIA fee waiver provision so that it can "be liberally construed in favor of fee waivers for noncommercial requestors." <u>McClellan Ecological Seepage Situation v. Carlucci</u>, 835 F.2d 1282, 1284 (9th Cir. 1987) (quoting 132 Cong. Rec. S14298 (Sept. 30, 1986) (statement of Sen. Leahy)). The amendment's main purpose is to "remove the roadblocks and technicalities which have been used by various Federal agencies to deny waivers or reductions of fees under the FOIA." <u>Id</u>. (quoting 132 Cong. Rec. S16496 (Oct. 15, 1986) (statement of Sen. Leahy)). Although FOIA generally requires requestors to pay search and duplication costs, it provides for fee waivers "if *disclosure of the information is in the public interest* because it is likely to contribute significantly to the public understanding of the operations or activities of the government and it is *not primarily in the commercial interest of the requestor*." 5 U.S.C. §552 (a)(4)(A) (emphasis added). Thus, FOIA sets forth a two prong test to determine whether a fee waiver is appropriate. First, the court must ascertain whether the disclosure is in the public interest because it contributes significantly to the public's understanding of the operations of the government. <u>Schrecker</u>, 970 F.2d F. Supp. at 50; <u>Fitzgibbon</u>, 724 F.2d at 1050; <u>Larson</u>, 843 F.2d at 1483. Second, the court must also determine whether or not the disclosure is primarily in the commercial interest of the requestor. <u>Schrecker</u>, 970 F.2d at 50; <u>Fitzgibbon</u>, 724 F.2d at 1050; <u>Larson</u>, 843 F.2d at 1483. The court addresses below each of these prongs.

1.  Public Interest

In order to qualify for a fee waiver, the plaintiff's requested information must serve the public interest. 5 U.S.C. §552 (a)(4)(A)(iii). To meet this standard, the disclosure of the requested information must contribute significantly to the public's understanding of the operations of the government. <u>Id</u>. The defendant does not dispute that the subject matter of the plaintiff's request, Attorney General Janet Reno's decision not to appoint an independent counsel to investigate President Clinton's campaign finance activities, is of public interest. The defendant, however, contends that the requested documents are already in the public domain or are available from other public sources. The defendant asserts that the Attorney General's decision has received substantial press coverage and publicity thus disclosure of the plaintiff's

3

request will not add to the general public's current understanding of the operations or activities of the government.[3]

Disclosure of information that is already in the public domain, in either a duplicative or a substantially identical form, is not likely to contribute to the public understanding, as nothing new is added to the public interest. 28 C.F.R. §16.10 (1992). If the requested documents are available from other sources, further disclosure will not significantly contribute to the public's understanding. Carney, 19 F.2d 815. However, the mere fact that particular records have been released to other requestors does not mean that the information contained in those records is readily available to the public. Id.; Fitzgibbon, 724 F. Supp. at 1050. In Fitzgibbon, the D.C. Circuit held that information is not in the public domain even when the reports were sent to Congress, the information received media attention, and the documents were available in a public reading room. 724 F.2d at 1051. Similarly, in Schrecker, this court held that information released to journalists, academics, and newspapers is not readily available to the public; it simply shows that other individuals have seen the information. 970 F.2d at 51.

In this case, the information requested by the plaintiff is not necessarily all new information, however, the information has high potential for contribution to public understanding and will add to the public oversight of the government's activities. See McClellan, 835 F.2d at 1286. At the very least, the information sought can contribute to the public's understanding by supplementing the information currently available to the public. See Project on Military Procurement v. Department of the Navy, 710 F. Supp. 362, 366 (D.C. Cir. 1989). The disclosure will enhance the public's understanding by shedding light on the Attorney General's decision. Indeed, after the disclosure of the documents, the general public will have more knowledge about that decision than before the information is disclosed. Accordingly, the court concludes that the plaintiff's request satisfies the public interest element for a fee waiver.[4]

---

[3]     Defendant's Opposition at 27-30.

[4]     Establishing a public interest in the subject matter is itself not sufficient, the requestor must also demonstrate that it has the ability to disseminate the information to the public. Larson, 843 F.2d at 1483; Griffin, 811 F.2d at 647. The requestor must have either expertise in the subject or the ability to

4

2. Commercial Interest

In addition to demonstrating that the requested information serves the public interest, the information also must not primarily be in the commercial interest of the requestor. 5.U.S.C. §552(a)(4)(A)(iii). Depending on the circumstances, profit-making as well as not-for-profit organizations may have a commercial interest in the requested documents. <u>Critical Mass Energy Project v. Nuclear Regulatory Commission</u>, 830 F.2d 278, 281 (D.C. Cir. 1987). A requestor's non-profit status does not determine the character of the information it requests. <u>Id</u>. Information is commercial if the requestor seeks the information for a use or purpose that furthers the commercial trade, or profit interest of the requestor. 28 C.F.R. §1610. When the requested information produces both public and private benefits, the court must determine which benefit is primary. <u>Griffin</u>, 811 F. 2d at 648. If the public interest is greater, a fee waiver or reduction must be granted. <u>Id</u>.

Here, the defendant contends that the plaintiff has a commercial interest in the requested documents because it intends to use the information to further its litigation against the government. Contrary to the defendant's assertion, allowing the plaintiff to disclose the government records primarily serves the public, rather than its own commercial interest. By requesting the records for the purpose of litigation, the plaintiff serves the public interest by exposing government actions through litigation and increasing the public's knowledge of government activities. The plaintiff's commercial interest, therefore, is considerably less than the interest of exposing government activities through litigation. Accordingly, the court concludes

---

disseminate the information effectively to the public. <u>McClellan</u>, 835 F.2d at 1286. In this case, the plaintiff has demonstrated that it has the ability to disseminate the requested information to the public. The plaintiff has identified specific methods of dissemination including releases to the news media and posting the information on the Internet. The plaintiff also intends to use the information in publications and educational institutions which benefit a broad audience. Furthermore, the plaintiff, as an organization, maintains its objective as providing the general public with information about government activities. Accordingly, the court concludes that the plaintiff has demonstrated both the intent and the ability to disseminate.

that the ultimate purpose of the request is to serve the public interest rather than the plaintiff's commercial interest, and grants the plaintiff's motion for fee waiver.

B.  FBI's Motion to Stay Proceedings

The FBI seeks to stay the plaintiff's FOIA request until June 2000 claiming that it does not have the resources to process the large number of FOIA requests it receives annually. The FBI asserts that it is making a good faith effort and is exercising due diligence in facilitating FOIA requests by using a three-queue "first in/first out" processing method. It claims that it has streamlined the processing method and has hired additional employees to handle the requests. According to the FBI, this effort has reduced its backlog by 25%. The FBI contends, however, even with this progress it cannot process the plaintiff's request prior to June 2000. The FBI also contends that the delay is partly attributable to the plaintiff because it refused to narrow the scope of its FOIA request, thus prolonging the FBI's search.[3] The plaintiff, on the other hand, contends that the FBI is attempting to delay the production of politically sensitive documents which are of public interest. The plaintiff asserts that there is a need for timely dissemination since the documents would shed light on the Attorney General's decision.

Under the FOIA, agencies must respond to a request for information within 20 working days. 5 U.S.C. §552(a)(6)(A)(i). If the government can show, however, that exceptional circumstances exist and the agency is exercising due diligence in responding to the request, the court may retain jurisdiction and allow the agency additional time to complete its processing of the request. 5 U.S.C. §552(a)(6)(C). On the other hand, a stay is not appropriate where the requestor has shown a genuine need and reason for urgency. Open America v. Watergate Special Prosecution Force, 547 F.2d 605, 616 (D.C. Cir. 1976). Here, the FBI has satisfied its burden, but the plaintiff fails to meet its burden.

---

[3]  FBI's Motion at 14-19.

1. The FBI Exercised Due Diligence

The plaintiff asserts that the FBI has not exercised the required due diligence to warrant granting it additional time to respond to the plaintiff's FOIA request. Although the plaintiff does not dispute that exceptional circumstances exist in this case, it argues that the FBI fails to exercise due diligence in processing its request. Due diligence is established when an agency demonstrates a good faith effort and due diligence to comply with all lawful demands under the FOIA in as short a time as possible. Open America, 547 F.2d at 614-16. An agency establishes due diligence by assigning all requests on a first in/first out basis, except those where exceptional need or urgency is shown by the requestor. Id.; Kuffel v. United States Bureau of Prisons, 882 F. Supp. 1116, 1127 (D.D.C. 1995) (holding that delay in processing is acceptable if the agency is making a good faith effort and exercising due diligence). Further, good faith processing of FOIA requests on a "first in/first out" basis is sufficient to establish due diligence. Open America, 547 F.2d at 615.

In this case, the FBI has demonstrated due diligence by assigning and processing all requests, including the plaintiff's, on a first in/first out basis. The FBI's "first in/first out" method uses a three-queue system based on the estimated page count of responsive documents. The three-queue system consists of (1) the Small Queue which contains requests of 500 pages or less; (2) the Medium Queue which contains requests of 500-2,500 pages; and (3) the Large Queue which contains requests of more than 2,501 pages. The FBI estimated the plaintiff's request to contain less than 500 pages and thus placed it in the small queue. The FBI claims that even placing the plaintiff's request in the small queue, it cannot process the request until the year 2000. Given these facts, the court concludes that the FBI has shown due diligence thereby warranting a stay of proceedings until June 2000.

2. Plaintiff Fails to Show Urgent Need to Warrant Prioritization of Its Request

The plaintiff has failed to establish an exceptional need or urgency which would warrant prioritization of its request over others' requests. The plaintiff has the burden of showing that there are exigent circumstances to warrant expediting its request. Open America, 547 F.2d at 615-6; Edmond v. United States Attorney, 959 F. Supp. 1, 3 (D.D.C. 1997); Ohaegbu v. FBI, 936

7

F. Supp. 8, 9 (D.D.C. 1996); Lisee v. CIA, 741 F. Supp. 988, 989 (D.D.C. 1990). The court may deny a stay where a request is necessary and urgent. Open America, 547 F.2d at 616. A requestor cannot merely claim an urgent need,[6] but must demonstrate the requestor's life, personal safety, or substantial due process rights are jeopardized if the request is not processed immediately. Edmond, 959 F. Supp. at 3; Cleaver v. Kelley, 427 F. Supp 80, 81 (D.D.C. 1976).[7]

---

[6] Id. at 615; Jiminez v. FBI, 938 F. Supp. 21, 31 (D.D.C. 1996); Chaegbu v. FBI, 936 F. Supp. 7, 9 (D.D.C. 1996)

[7] Courts have found an urgent need in cases where the requestor has no opportunity or ability to influence or control the events which have created the urgency. Lisee, 741 F. Supp. at 989. In some criminal proceedings courts have found an exceptional need to obtain information that could prove exculpatory. See e.g. Cleaver, 427 F. Supp. at 80 (holding documents to be used in an upcoming criminal trial on murder and assault charges which could result in loss of freedom or life, constitute exceptional circumstances requiring expedited processing); Freeman v. United States Department of Justice, No. 92-557 (D.D.C. Oct. 2, 1992) (recognizing more compelling due process concerns are raised in criminal trials that justify expedition); Aguilera v. FBI, 941 F. Supp. 144, 150 (D.D.C. 1996) (finding an urgent need where the plaintiff was facing a grave punishment, has reason to believe that the information produced will aid in the individual's defense, and that criminal litigation is presently pending). A request may also be expedited to avoid deportation since it is out of the requestor's control. See Mayock v. INS, 714 F. Supp. 1558 (N.D. Cal. 1989) (holding information needed for deportation and exclusion proceedings were entitled to expedited processing); Ray v. Department of Justice, 770 F. Supp. 1544 (S.D. Fla. 1990) (finding pending deportation and exclusion hearings constitute urgent need).

Courts, on the other hand, have not found urgency in some criminal proceedings when the documents were not shown to contain exculpatory information. Billington v. United States Department of Justice, No. 92-462 (D.D.C. July 21, 1992) (granting stay because the plaintiff had not shown the documents were likely to be of use to the defendant); Edmond, 959 F. Supp. at 4 (holding a mere challenge to a criminal conviction which might subsequently release a prisoner for incarceration does not warrant expedited processing). Additionally, courts have not found expedition necessary where the urgency is the sole result of the requestor's own action. For example, publishing deadlines do not justify expedited treatment. See Lisee v. CIA, 741 F. Supp. at 988 (D.D.C. 1990) (holding writing or publishing deadlines is not urgent because they are controlled by the author or publisher), Summers v. Department of Justice, 733 F. Supp. 443

8

Here, there is no evidence showing that the plaintiff's life, personal safety, or due process is in jeopardy. The plaintiff, however, argues that it seeks documents of public importance and require timely dissemination while the Clinton administration is still in office. This is not a proper basis for expedited processing of the plaintiff's request. In fact, in <u>Assassination Archives and Research Center, Inc. v. CIA</u>, the court declined expedited processing of a request concerning President Bush and his alleged connection to the Kennedy assassination even though the presidential election was approaching and the plaintiff in that case argued that the information should be disseminated to the public before voters cast their ballots. 720 F. Supp. 217, 218-19 (D.D.C. 1989). Furthermore, the plaintiff has not explained why immediate disclosure of the request is necessary since appropriate action could still be brought even after the conclusion of the Clinton administration.

Moreover, expedited treatment of the plaintiff's requests will delay the processing of many other requests made prior to the plaintiff's filing. See <u>National Magazine</u>, 805 F. Supp. at 74. While the court acknowledges the importance of disseminating information to the public regarding the operations and activities of the government consistent with the purpose of FOIA, other requestors also have an interest in obtaining the information they seek from government agencies in a timely manner. <u>Id</u>. Additionally, ordering the FBI to expedite the plaintiff's request would jeopardize the efficiency of FOIA processing as all information regarding presidential affairs would then be qualified for expedited processing. Thus, the plaintiff fails to demonstrate an "exceptional need or urgency" to warrant departure from the FBI's current standard in processing FOIA requests. The court, therefore, grants the FBI's motion to stay proceedings.

---

(D.D.C. 1990) (finding an author or publisher cannot set FOIA deadlines by invoking their own production schedules).

## IV. CONCLUSION

For the foregoing reasons, the court grants the plaintiff's motion for fee waiver and also grants the FBI's motion to stay proceedings.

Accordingly, it is this 25th day of August, 1998

ORDERED that Plaintiff's Motion for Fee Waiver be and is hereby GRANTED; it is

FURTHER ORDERED that the Defendant FBI's Motion for Stay of Proceedings be and is hereby GRANTED; it is

ORDERED that the parties to submit a joint status report on September 4, 1998; and it is

FURTHER ORDERED that a status hearing be held on September 10, 1998, at 10:30 A.M.

SO ORDERED.

Ricardo M. Urbina
United States District Judge