IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AMERICAN CIVIL LIBERTIES UNION, et al., )
)
   Plaintiffs, )
)
         v. )    Civil Action No. 05-CV-1004
)
FEDERAL BUREAU OF INVESTIGATION, )
et al., )
)
   Defendants. )

# EXHIBIT A

LEGAL DEPARTMENT



December 2, 2004

David M. Hardy
Chief, Freedom of Information-Privacy Acts Section
Records Management Division
Federal Bureau of Investigation
Department of Justice
935 Pennsylvania Avenue, N.W.
Washington, DC 20535-0001

Dear Mr. Hardy,

    Please find two attached requests under the Freedom of Information Act. We are seeking expedited processing of both requests.

Sincerely,

Ann Beeson
Associate Legal Director
American Civil Liberties Union

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
LEGAL DEPARTMENT
NATIONAL OFFICE
125 BROAD STREET, 18TH FL.
NEW YORK, NY 10004-2400
T/212.549.2500
F/212.549.2651
WWW.ACLU.ORG

OFFICERS AND DIRECTORS
NADINE STROSSEN
PRESIDENT

ANTHONY D. ROMERO
EXECUTIVE DIRECTOR

KENNETH B. CLARK
CHAIR, NATIONAL
ADVISORY COUNCIL

RICHARD ZACKS
TREASURER

LEGAL DEPARTMENT



R (ACLU/Ann Beeson)

December 2, 2004

Federal Bureau of Investigation
J. Edgar Hoover Building
935 Pennsylvania Avenue, NW
Washington, D.C. 20535-0001

Re: **REQUEST UNDER FREEDOM OF INFORMATION ACT / Expedited Processing Requested**

Attention:

This letter constitutes a request by the American Civil Liberties Union and the American Civil Liberties Union Foundation ("ACLU") under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), and the Department of Justice implementing regulations, 28 CFR § 16.11.[1]

### I. The Request for Information

The ACLU seeks disclosure of any record(s),[2] document(s), file(s), communications, memorandum(a), order(s), agreement(s) and/or instruction(s), created from January 1, 2000 to the present, about:

1. the creation of the National Joint Terrorism Task Force (NJTTF);

2. the creation of all state and local Joint Terrorism Task Forces (JTTFs);

3. the general purpose and mission of the NJTTF;

4. the general purpose and mission of all state and local JTTFs;

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
LEGAL DEPARTMENT
NATIONAL OFFICE
125 BROAD STREET, 18TH FL
NEW YORK, NY 10004-2400
T/212 549.2500
F/212 549 2651
WWW.ACLU.ORG

OFFICERS AND DIRECTORS
NADINE STROSSEN
PRESIDENT

ANTHONY D. ROMERO
EXECUTIVE DIRECTOR

KENNETH B. CLARK
CHAIR, NATIONAL
ADVISORY COUNCIL

RICHARD ZACKS
TREASURER

---

[1] The American Civil Liberties Union Foundation is a 501(c)(3) organization that provides legal representation free of charge to individuals and organizations in civil rights and civil liberties cases, and educates the public about civil rights and civil liberties issues. The American Civil Liberties Union is a separate non-profit, non-partisan, 501(c)(4) membership organization that educates the public about the civil liberties implications of pending and proposed state and federal legislation, provides analyses of pending and proposed legislation, directly lobbies legislators, and mobilizes its members to lobby their legislators.

[2] The term "records" as used herein includes all records or communications preserved in electronic or written form, including but not limited to correspondence, documents, data, videotapes, audio tapes, faxes, files, guidance, guidelines, evaluations, instructions, analyses, memoranda, agreements, notes, orders, policies, procedures, protocols, reports, rules, technical manuals, technical specifications, training manuals, or studies.

1

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

5. the relationship between the NJTTF and all state and local JTTFs;

6. the funding of the NJTTF;

7. the funding of all state and local JTTFs;

8. the names and job descriptions of all management level employees of the NJTTF;

9. the name and job description of the special agent in charge of each state and local JTTF;

10. the names and job descriptions of all NJTTF employees primarily responsible for coordinating the work of special agents in charge of state and local JTTFs;

11. the names of all agencies participating in the NJTTF;

12. the names of all agencies participating in any state and local JTTF;

13. the role of each agency participating in the NJTTF;

14. the role of each agency participating in any state and local JTTF;

15. the names and titles of all state and local law enforcement officials participating in the NJTTF;

16. the names and titles of all state and local law enforcement officials participating in state and local JTTFs;

17. the names and titles of all state and local law enforcement officials who have been deputized as special federal agents in the NJTTF and/or any state or local JTTF;

18. the policies, procedures and/or practices of the NJTTF and all state and local JTTFs for identifying "potential threat elements" (PTEs);

19. the policies, procedures and/or practices of the NJTTF and all state and local JTTFs for monitoring, surveillance, questioning, interrogation, and/or investigation of individuals, organizations, or groups identified as PTEs;

2

AMERICAN CIVIL LIBERTIES UNION FOUNDATION

20. the policies, procedures and/or practices of the NJTTF and all state and local JTTFs for monitoring, surveillance, questioning, interrogation, and/or investigation of students, faculty, or staff on college or university campuses;

21. the policies, procedures, and/or practices of the NJTTF and all state and local JTTFs for monitoring, surveillance, questioning, interrogation, and/or investigation of individuals based in whole or in part on one or more of the following factors: national origin; race and/or ethnicity; religious affiliation; organizational membership; political views or affiliation; and/or participation in protest activities or demonstrations;

22. the policies, procedures, and/or practices of the NJTTF and all state and local JTTFs for monitoring, surveillance, questioning, interrogation, and/or investigation of organizations or groups based in whole or in part on one or more of the following factors: political views; participation in demonstrations or protest activities; the national origin, race, ethnicity, or religious affiliation of the organization's or group's staff, members, and/or constituents;

23. the policies, procedures, and/or practices of the NJTTF and all state and local JTTFs for using undercover agents to infiltrate organizations or groups based in whole or in part on one or more of the following factors: political views; participation in demonstrations or protest activities; the national origin, race, ethnicity, or religious affiliation of the organization's or group's staff, members, and/or constituents;

24. the criteria used by the NJTTF and all state and local JTTFs to initiate monitoring, surveillance, questioning, interrogation, investigation, and/or infiltration, as described in paragraphs 19-23 above;

25. the techniques used by the NJTTF and all state and local JTTFs for monitoring, surveillance, questioning, interrogation, investigation, and/or infiltration, as described in paragraphs 19-23 above;

26. the policies, procedures, and/or practices of the NJTTF and all state and local JTTFs for gathering information through monitoring, surveillance, questioning, interrogation, investigation, and/or infiltration, as described in paragraphs 19-23 above;

27. the types of information gathered by the NJTTF and all state and local JTTFs through monitoring, surveillance, questioning, interrogation, investigation, and/or infiltration, as described in paragraphs 19-23 above;

28. the policies, procedures, and/or practices of the NJTTF and all state and local JTTFs governing the maintenance and/or storage of information described in paragraph 26 above;

29. the policies, procedures, and/or practices of the NJTTF and all state and local JTTFs for analyzing and using information described in paragraph 26 above;

30. the policies, procedures and/or practices of the NJTTF and all state and local JTTFs for sharing information described in paragraph 26 above;

31. the policies, procedures, and/or practices of the NJTTF and all state and local JTTFs for cross-referencing information described in paragraph 26 above with information about other individuals, organizations, or groups;

32. the policies, procedures, and/or practices of the NJTTF and all state and local JTTFs for cross-referencing information described in paragraph 26 above with information in any database;

33. the policies, procedures, and/or practices used to suspend and/or terminate monitoring, surveillance, questioning, interrogation, investigation, and/or infiltration by the NJTTF and all state and local JTTFs, as described in paragraphs 19-23 above;

34. the policies, procedures, and/or practices of the NJTTF and all state and local JTTFs governing the destruction of information described in paragraph 26 above;

35. the policies, procedures, and/or practices of the NJTTF and all state and local JTTFs for protecting the privacy of individuals who are monitored, surveilled, questioned, interrogated, investigated, and/or infiltrated, as described in paragraphs 19-23 above;

36. the constitutionality, legality, and/or propriety of monitoring, surveillance, questioning, interrogation, investigation, and/or

AMERICAN CIVIL LIBERTIES UNION FOUNDATION

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

infiltration by the NJTTF and all state and local JTTFs, as described in paragraphs 19-23 above;

37. any actual or potential violations of, or deviations from, any policy, procedure or practice related to monitoring, surveillance, questioning, interrogation, investigation, and/or infiltration by the NJTTF and all state and local JTTFs, as described in paragraphs 19-23 above;

38. any investigation, inquiry, or disciplinary proceeding initiated in response to any actual or potential violations of, or deviations from, any policy, procedure or practice related to monitoring, surveillance, questioning, interrogation, investigation, and/or infiltration by the NJTTF and all state and local JTTFs, as described in paragraphs 19-23 above;

39. the number of college or university campuses on which the NJTTF has conducted monitoring, questioning, interrogation, and/or surveillance, as described in paragraph 20 above, for each year starting with year 2000;

40. the number of college or university campuses on which each state or local JTTF has conducted monitoring, questioning, interrogation, and/or surveillance, as described in paragraph 20 above, for each year starting with year 2000.

## II. Limitation of Processing Fees

The ACLU requests a limitation of processing fees pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(II) ("fees shall be limited to reasonable standard charges for document duplication when records are not sought for commercial use and the request is made by . . . a representative of the news media . . .") and 28 C.F.R. §§ 16.11(c)(1)(i), 16.11(d)(1) (search and review fees shall not be charged to "representatives of the news media."). As a "representative of the news media," the ACLU fits within this statutory and regulatory mandate. Fees associated with the processing of this request should, therefore, be limited accordingly.

The ACLU meets the definition of a "representative of the news media" because it is "an entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn raw materials into a distinct work, and distributes that work to an audience." National Security Archive v. Department of Defense, 880 F.2d 1381, 1387 (D.C. Cir. 1989).

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

The ACLU is a national organization dedicated to the defense of civil rights and civil liberties. Dissemination of information to the public is a critical and substantial component of the ACLU's mission and work. Specifically, the ACLU publishes newsletters, news briefings, right-to-know documents, and other educational and informational materials that are broadly disseminated to the public. Such material is widely available to everyone, including individuals, tax-exempt organizations, not-for-profit groups, law students and faculty, for no cost or for a nominal fee through its public education department. The ACLU also disseminates information through its heavily visited web site: http://www.aclu.org/. The web site addresses civil rights and civil liberties issues in depth, provides features on civil rights and civil liberties issues in the news, and contains many thousands of documents relating to the issues on which the ACLU is focused. The website specifically includes features on information obtained through the FOIA. See, e.g., www.aclu.org/patriot_foia; www.aclu.org/torturefoia. The ACLU also publishes an electronic newsletter, which is distributed to subscribers by e-mail.

In addition to the national ACLU offices, there are 53 ACLU affiliate and national chapter offices located throughout the United States and Puerto Rico. These offices further disseminate ACLU material to local residents, schools and organizations through a variety of means including their own websites, publications and newsletters. Further, the ACLU makes archived material available at the American Civil Liberties Union Archives, Public Policy Papers, Department of Rare Books and Special Collections, Princeton University Library. ACLU publications are often disseminated to relevant groups across the country, which then further distribute them to their members or to other parties.

Depending on the results of the Request, the ACLU plans to "disseminate the information" gathered by this Request "among the public" through these kinds of publications in these kinds of channels. The ACLU is therefore a "news media entity." Cf. Electronic Privacy Information Ctr. v. Department of Defense, 241 F.Supp.2d 5, 10-15 (D.D.C. 2003) (finding non-profit public interest group that disseminated an electronic newsletter and published books was a "representative of the media" for purposes of FOIA).

Finally, disclosure is not in the ACLU's commercial interest. The ACLU is a "non-profit, non-partisan, public interest organization." See Judicial Watch Inc. v. Rossotti, 326 F.3d 1309, 1310 (D.C. Cir. 2003). Any

information disclosed by the ACLU as a result of this FOIA will be available to the public at no cost.

### III. Waiver of all Costs

The ACLU additionally requests a waiver of all costs pursuant to 5 U.S.C. §552(a)(4)(A)(iii) ("Documents shall be furnished without any charge . . . if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."). Disclosure in this case meets the statutory criteria, and a fee waiver would fulfill Congress's legislative intent in amending FOIA. See Judicial Watch, Inc. v. Rossotti, 326 F.3d 1309, 1312 (D.C. Cir. 2003) ("Congress amended FOIA to ensure that it be 'liberally construed in favor of waivers for noncommercial requesters.'").

Disclosure of the requested information is in the public interest. This request will further public understanding of government conduct; specifically, the FBI's monitoring, surveillance, and infiltration of organizations on the basis of national origin, racial and/or ethnic background, religious affiliation, organizational membership, political views or affiliation, or participation in protest activities or demonstrations. This type of government activity concretely affects many individuals and groups and implicates basic privacy, free speech, and associational rights protected by the Constitution.

Moreover, disclosure of the requested information will aid public understanding of the implications of the Department of Justice's recent decision to relax guidelines that previously restricted the FBI's ability to spy on organizations without a threshold showing of suspected criminal activity. These restrictions were created in response to the Hoover-era FBI's scandalous spying on politically active individuals and organizations, despite the complete lack of evidence that such individuals and organizations had been involved in any unlawful behavior. Understanding the current scope of the FBI's surveillance and infiltration of law-abiding organizations is, therefore, crucial to the public's interest in understanding the consequences of the Department of Justice's important change in policy.

As a nonprofit 501(c)(3) organization and "representative of the news media" as discussed in Section II, the ACLU is well-situated to disseminate information it gains from this request to the general public as well as to immigrant, religious, politically active, and other targeted communities, and to groups that protect constitutional rights. Because the ACLU meets the test for

AMERICAN CIVIL LIBERTIES UNION FOUNDATION

7

a fee waiver, fees associated with responding to FOIA requests are regularly waived for the ACLU.[3]

The records requested are not sought for commercial use, and the requesters plan to disseminate the information disclosed as a result of this FOIA request through the channels described in Section II. As also stated in Section II, the ACLU will make any information disclosed as a result of this FOIA available to the public at no cost.

### IV.   Expedited Processing Request

Expedited processing is warranted because there is "[a]n urgency to inform the public about an actual or alleged federal government activity" by organizations "primarily engaged in disseminating information." 28 CFR § 16.5(d)(1)(ii).[4] This request implicates an urgent matter of public concern; namely, the FBI's and JTTF's potentially extensive monitoring and surveillance of individual citizens, as well as political, religious, and community organizations throughout the nation. Such government activity may infringe upon the public's free speech, free association, and privacy rights, which are guaranteed by the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. Requests for information bearing upon potential Constitutional violations require an immediate response so that any violations cease, future violations are prevented, and any chilling effect on public participation in potentially targeted groups and/or political activity be halted.

In addition, this request deals with potential disparate treatment of groups on the basis of categories such as religion, nationality and political viewpoint. Such potential unequal treatment is a matter necessitating immediate attention. There is also intense public concern, particularly among potentially targeted groups, about the actual or alleged federal government activity addressed by this request. This intense public concern is illustrated by the selection of news coverage detailed in the paragraph below.

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

---

[3] For example, the Department of Health and Human Services granted a fee waiver to the ACLU with regard to a FOIA request submitted in August of 2004. In addition, the Office of Science and Technology Policy in the Executive Office of the President said it would waive the fees associated with a FOIA request submitted by the ACLU in August 2003. In addition, three separate agencies – the Federal Bureau of Investigation, the Office of Intelligence Policy and Review, and the Office of Information and Privacy in the Department of Justice – did not charge the ACLU fees associated with a FOIA request submitted by the ACLU in August 2002.

[4] The ACLU is "primarily engaged in disseminating information," as discussed in Sections II and III.

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION

A requestor may also demonstrate the need for expedited processing by showing that the information sought relates to "a matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence." 28 C.F.R. § 16.5(d)(1)(iv). The instant request clearly meets these standards as the request relates to possible violations of Constitutional rights by federal law enforcement and potential targeting of groups by federal law enforcement based on illicit categories of political viewpoint, race, religion and nationality. The exceptional media interest in this issue is reflected in widespread news coverage at both the local and national level. *See, e.g.*, Daily Star Staff, *American Arabs Concerned Over FBI's 'October Plan,'* www.dailystar.com.lb, October 6, 2004; David Shepardson, *FBI Agents Hunt for Terror Leads: Agency Combs Muslim Neighborhoods for Help in Preventing Election Day Attack*, The Detroit News, October 1, 2004; CBS News Transcript, *FBI's Anti-Terror 'October Plan,'* www.cbsnews.com, September 17, 2004; Alex Bradley and John Mayer, *The War at Home: Nationwide Crackdown on Activists Part*, www.saveourliberties.com, September 2, 2004; Eric Lichtblau, *Subpoena Seeks Records About Delegate Lists on Web*, NY Times, August 30, 2004 at P10; Eric Lichtblau, *Protestors at Heart of Debate on Security vs. Civil Rights*, NY Times, August 27, 2004 at A9; Larry Abramson, *FBI Questioning Political Demonstrators*, NPR.org; Susan Greene, *Activists Decry Pre-Convention Security Tactics: Questions by FBI, The Feds Say They're Trying to Avoid Terror Threats, But Many People Say the Steps Veer Toward Intimidation*, The Denver Post, August 26, 2004 at A-08; Eric Lichtblau, *F.B.I. Goes Knocking for Political Troublemakers*, NY Times, August 16, 2004 at A1; Amy Herder, *Teaching the Silent Treatment*, The Denver Post, August 8, 2004 at C-01; Jayashri Srikantiah, *Few Benefits to Questioning Targeted Groups*, San Francisco Chronicle, August 6, 2004; Camille T. Taiara, *New F.B.I. Witch-Hunt*, San Francisco Bay Guardian, August 4-10, 2004; Kelly Thornton, *F.B.I.'s Home Visits Have Some Muslims Feeling Harrassed, Alienated*, Signonsandiego.com, August 4, 2004; Karen Abbott, *FBI's Queries Rattle Activist*, www.rockymountainnews.com, July 27, 2004; Richard Schmitt and Donna Horowitz, *FBI Starts to Question Muslims in U.S. About Possible Attacks*, latimes.com, July 18, 2004; Mary Beth Sheridan, *Interviews of Muslims to Broaden*, ww.washingtonpost.com, July 17, 2004; Kerri Ginis, *Peace Fresno Seeks Damages*, The Fresno Bee, February 27, 2004; Michelle Goldberg, *A Thousand J. Edgar Hoovers*, www.salon.com, February 12, 2004; Monica Davey, *Subpoenas on Antiwar Protest Are Dropped*, NY Times, February 11, 2004 at A18; Michelle Goldberg, *Outlawing Dissent*, www.salon.com, February 11, 2004; Jeff Eckhoff and Mark Siebert, *Anti-war Inquiry Unrelated to Terror*, The Des

*Moines Register*, February 10, 2004 at 1A; Monica Davey, *An Antiwar Forum in Iowa Brings Federal Subpoenas*, NY Times, February 10, 2004 at A14; Jeff Eckhoff and Mark Siebert, *Group Fights Anti-war Inquiry*, The Des Moines Register, February 7, 2004; Eric Lichtblau, *F.B.I. Scrutinizes Antiwar Rallies*, www.nytimes.com, November 23, 2003.

The potential targeting of individuals and groups by the federal government on the basis of group membership, religion, political protest, nationality, and other similar categories raises many questions about the government's integrity and affects public confidence in a profound way. The government's – and particularly the FBI's – treatment of persons on the basis of their political viewpoints is a critical issue with a long history dating back to the founding of the nation. Questions about the government's integrity in these areas substantially affect the public's confidence in the government's ability to protect all of its citizens, and in law enforcement and the legal system. This issue has been of concern to lawmakers, including three members of the House of Representatives. *See, e.g.*, Eric Lichtblau, *Inquiry into F.B.I. Question Is Sought*, NY Times A16, August 18, 2004.

Finally, pursuant to applicable regulations and statute, the ACLU expects the determination of this request for expedited processing within 10 calendar days and the determination of this request for documents within 20 days. *See* 28 CFR § 16.5(d)(4); 5 U.S.C. § 552(a)(6)(A)(i).

If this request is denied in whole or in part, we ask that you justify all deletions by reference to specific exemptions to FOIA. The ACLU expects the release of all segregable portions of otherwise exempt material. The ACLU reserves the right to appeal a decision to withhold any information or to deny a waiver of fees.

Thank you for your prompt attention to this matter. Please furnish all applicable records to:

Ann Beeson
Associate Legal Director
American Civil Liberties Union
125 Broad Street, 18th floor
New York, NY 10004

AMERICAN CIVIL LIBERTIES UNION FOUNDATION

I affirm that the information provided supporting the request for expedited processing is true and correct to the best of my knowledge and belief.

Sincerely,

Ann Beeson
Associate Legal Director
American Civil Liberties Union

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION