IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION, *et al.*, | ) <br> ) <br> ) Civ. A. No. 1:05-CV-1004 (ESH) <br> ) <br> ) Judge Ellen S. Huvelle <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |
| Plaintiffs, | |
| v. | |
| FEDERAL BUREAU OF INVESTIGATION, <br> UNITED STATES DEPARTMENT OF JUSTICE, | |
| Defendants. | |

**DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND
DEFENDANTS' MOTION FOR AN OPEN AMERICA STAY**

**INTRODUCTION**

Plaintiffs' combined reply and opposition brief in support of their claim for expedited FOIA processing ("Pl. Opp.") mis-characterizes not only defendants' position on the applicable legal standards, and the record on which plaintiffs rely for expedition, but the very nature of the ACLU itself as a litigation organization. The facts and law do not support expedition in this case.

Defendants have not argued that the Court "may consider only contemporaneous news articles that describe the precise information sought by plaintiffs." See Pl. Opp. at 1 and 4. It is not the date of the articles in the record that is of concern, but that they report on past events not specifically related to the subject of the FOIA requests. The law is clear that, under the "urgency to inform" standard, 28 C.F.R. § 16.5(d)(1)(ii), the FOIA request must pertain to a "matter of current exigency." See H.R. Rep. No. 104-795, at 26; *Al-Fayed v. Central Intelligence Agency*, 254 F.3d 300, 310 (D.C. Cir. 2001). In addition, the record must demonstrate a widespread

interest in the specific subject of the FOIA request. See *Electronic Privacy Information Center v. Department of Defense*, 355 F. Supp. 2d 98, 102 (D. D. C. 2004) (Kollar-Kotelly, J.)(citing *Al-Fayed*, 254 F.3d at 310-11).

Far from "parsing in tedious detail the least relevant portions" of the record, Pl. Opp. at 7, Defendants pointed out that these media reports concern past events related to investigations of possible terrorist attacks in 2004. The articles do not discuss surveillance of the Plaintiffs at all, and only marginally concern the Joint Terrorism Task Forces. Plaintiffs' record simply does not demonstrate an "intense and continuous" media or public interest in the subject of either FOIA request. See Pl. Opp. at 3.

Plaintiffs' effort to distinguish Judge Hamilton's decision in *ACLU-NC v. DOJ,* 2005 WL 588354 (N.D. Cal. Mar. 11, 2005)*,* is meritless. The FOIA request at issue there is closely related to the JTTF request here, and Judge Hamilton rejected the sufficiency of several of the same articles included in the record now before this Court. Plaintiffs' contention that this decision provides "no guidance whatsoever" here, Pl. Opp. at 6, is specious.

In addition, the ACLU's contention that it "primarily disseminates information" as required under the "urgency to inform" standard, 5 U.S.C. § 552(a)(6)(E)(iii), is meritless. The ACLU describes itself the nation's "largest public interest law firm" with 2,000 attorneys handling 6,000 cases annually – second only to the Justice Department in arguing cases before the Supreme Court. The fact that it also lobbies legislatures and expresses views on policy issues does not negate the fact that litigation is fairly characterized as the ACLU's "primary" activity.

Finally, Plaintiffs make little effort to rebut the facts set forth by Defendants in support of

a stay of proceedings.[1] Given the volume of Plaintiffs' requests, an *Open America* stay is warranted here.

As set forth further below, and in Defendants' opening brief, Plaintiffs' motion for a preliminary injunction should be denied, and Defendants' motion for partial summary judgment on Plaintiffs' claim for expedition should be granted, and Defendants' motion to stay proceedings should also be granted.

## ARGUMENT

**I.   THE RECORD DOES NOT DEMONSTRATE EITHER WIDESPREAD MEDIA INTEREST OR URGENT PUBLIC INTEREST IN THE SUBJECT OF THE FOIA REQUESTS.[2]**

Plaintiffs spend considerable time trying to rehabilitate their own record. They strive to "contextualize" reports of past investigative actions into evidence of a continuous and intense media and public interest in the subject of the FOIA requests. The record cannot do the work Plaintiffs ask of it.

Plaintiffs argue first that numbers matter – that they have cited 24 articles here versus only a "handful" relied on by this Court in *ACLU v DOJ*, 321 F. Supp. 2d 24, 32 and n. 11 (D. D.C. 2004), and the eight articles in the record of *ACLU-NC v. DOJ*, supra. See Pl. Opp. at 3 and 5. As this Court observed in the very footnote Plaintiffs cite, what matters is the quality of

---

[1] Indeed, it does not appear that Plaintiffs filed a statement of genuine issues of fact as required by Local Rule 56.1 in response to Defendants' Statement of Material Facts as to Which There is No Genuine Issue and, as such, the facts in Defendants' statement are admitted.

[2] For efficiency, Defendants will address the quality of the record with respect to both applicable standards – widespread media interest, 16 C.F.R. § 16.5(d)(iv), and urgency to inform, id. § 16.5(d)(ii) and 5 U.S.C. § 552(a)(6)(E)(iii), although, as set forth below, the ACLU does not qualify for expedition under the latter standard since it does not primarily disseminate information.

the record, not its size.  See *ACLU v. DOJ*, 321 F. Supp. 2d at 32, n. 11 ("it is unworkable to measure the merit of a request for expedited processing under the 'media interest' standard by solely counting the number of news articles that the request cites").  Whatever number of articles are in the record, the content of the reports must demonstrate either widespread media interest or an urgent, current public interest in the subject of the FOIA requests.  The record here does not compare to the evidence cited by this Court in *ACLU v. DOJ* as to the current, public interest in the Patriot Act, even if fewer media reports were at issue in that case.  See Defs. MSJ at 30-32.

Next, Plaintiffs argue that Defendants would impose an "exceedingly narrow" standard by requiring that the media reports specifically concern the subject of the FOIA requests, including, for example, surveillance of the Plaintiffs.  See Pl. Opp. at 4-5.  But that is what the law requires.  See *EPIC v. DoD*, 355 F. Supp. 2d at 102; *Al-Fayed*, 254 F.3d at 310-111.  Defendants have not  suggested that the media reports must themselves "demonstrate[] . . . that the FBI has maintained files" on Plaintiffs, nor that the articles must contain "the precise information that plaintiffs were seeking."  Pl. Opp at 4.  Rather, the media reports must demonstrate a widespread media or urgent public interest in the specific *subject* of the FOIA requests.  A record that fails to refer to the subject of one request, and at best only marginally relates to the other, fails to support expedition.[3]

Plaintiffs seek to address a major flow with their record – that it describes past versus current events – by arguing that Defendants seek to "reap the benefit of their delayed [FOIA]

---

[3] Plaintiffs advance a strange, if novel, argument that the *absence* of any discussion of alleged surveillance of them in the record "highlights the urgency" of Plaintiffs' FOIA requests.  Pl. Opp. at 4.  Such a standard would permit expedition where there is *no* evidence of interest in the subject of the requests – something that is plainly not the law.

response by now disparaging the record as out of date." Pl. Opp. at 5. Again this misapprehends the issue. It is not that the media reports date from 2003 and 2004, but that the content of the reports describe past events – primarily efforts to investigate and detect possible terrorist threats in the summer of 2004.

Plaintiffs then try to characterize the actual content of the reports as consistent with their FOIA requests. See Pl. Opp. at 6-15. Defendants have identified the most relevant points about these articles: that they do not concern a matter of current exigency and bear little relationship to the specific subject of the FOIA requests. See Def. MSJ at 19-30. Without repeating that discussion, plaintiffs' characterization of the record warrants a few retorts.[4]

*(i) Articles Referring to JTTFs:* Plaintiffs argue that "several of the articles speak directly to national concerns over the organization and activity of the JTTFs – the precise subject matter of the requests." Pl. Opp. at 6.[5] The suggestion that these reports reflect "national" concerns is presumptuous. The Tiara, Bradley & Mayer, and Goldberg articles are primarily opinion essays that reflect the ACLU's own views (and input). Even if these reports bear some relationship to the JTTF request, that is not enough under the law. Because expedition is to be

---

[4] Plaintiffs again attempt to circumvent the standard of review by supplying more media reports for the Court to consider. The Court is precluded from doing so. 5 U.S.C. § 552(a)(6)(E)(iii) (judicial review "shall be based on the record before the agency at the time of the determination"). Moreover, these reports constitute media generated on December 2 and 3, 2004 by the ACLU FOIA requests themselves – publicity which the ACLU instigated. See Second Declaration of Anthony J. Coppolino and ACLU press releases attached thereto. Again, the issue is not whether the FOIA requests generated publicity, but whether there is demonstrable evidence in the record presented to the agency that the *subject* of the requests is of widespread media and urgent public interest.

[5] For this proposition, plaintiffs cite the articles by Taiara (#11), Abbott (#14), Eckhoff & Siebert (##16, 17), Bradley & Mayer (#3), and Goldberg (#20), Pl. Opp. at 6-7. See Exhibits A1 and A2 to the Hardy Declaration.

narrowly applied, *Al-Fayed*, 254 F.3d at 310, the record relied upon must stand as evidence of an actual widespread media and urgent public interest in the matter. These reports reflect little more than speculation in some quarters about JTTF activities.[6]

*(ii) Articles Referring to Questioning of Muslim and Arab Americans*: Plaintiffs' effort to connect media reports about the FBI's questioning of Muslim and Arab Americans to the specific FOIA requests of the American-Arab Anti-Discrimination Committee (ADC) and the Muslim Public Affairs Council (MPAC) lacks credibility. The ADC and MPAC requests concerned surveillance of their own organizations. See Exhibit B to Hardy Declaration. It is meritless to infer that the questioning of Arab and Muslim Americans in 2004, in an acknowledged effort to elicit cooperation in gathering information about terrorist attacks before the election, see Defs. MSJ at 20-21, specifically relates to FOIA requests about the political surveillance of two particular organizations. Indeed, the very articles cited by Plaintiffs describe the FBI's activities as an "outreach program" in which FBI agents made appointments to cultivate sources in the Muslim community. See *FBI's Home Visits Have Some Muslims Feeling Harassed, Alienated* (August 4, 2004) by Kelly Thornton, www.Signonsandeigo.com, (Exh. A1 to Hardy Declaration, Article # 12). The Department of Justice was reported to have put out a press release about the matter. See *Interviews of Muslims to Broaden; FBI Hopes to Avert A*

---

[6] Plaintiffs describe as a "red herring" Defendants' observation that the record is filled with the ACLU's own concerns." See Pl. Opp. at 9. Defendants' point is that, to the extent these reports reflect the views of the ACLU and those it is working with, they should be discounted as evidence of an urgent interest in the matter by the public at large. The law could not be that a FOIA requestor may demonstrate an urgent public interest by citing its own concerns. And, contrary to plaintiffs' assertion, if "each and every article in the record originated as an ACLU press release," Pl. Opp. at 9-10, that would very much render them suspect as a basis for expedition.

*Terrorist Attack* by Mary Beth Sheridan, <u>Washington Post</u>, July 17, 2004, (Exh. A2 to Hardy Declaration, Article #15). Such media reports do not remotely constitute evidence of "political surveillance" of ADC or MPAC that would support expedition of their FOIA requests.

Plaintiffs' assertion that these articles "contextualize" the 2004 events as examples "of an ongoing and systematic effort" by the JTTFs is likewise unsupported. The central "context" of the reports, as Plaintiffs' own parenthetical citations indicate, is yet another prior event – the FBI's efforts immediately after the 9/11 attacks to question Muslim Americans. The 2004 activity was cast as a second effort to inquire of these communities. <u>See</u>, <u>e.g</u>., Sheridan, <u>Washington Post</u> (Article #15); Schmitt and Horowitz, *FBI Starts to Question Muslims in U.S. About Possible Attacks,* July 18, 2004, www.latimes.com (Exh. A2 to the Hardy Declaration, Article # 13).

Moreover, even if these reports could be viewed as related to the current activities of the JTTFs, their relationship to the Plaintiffs' FOIA request would remain tenuous at best. The news reports in the record concerning the questioning Muslim and Arab Americans contain only brief, passing references to JTTFs. <u>See</u>, <u>e.g.</u> Sheridan (Article #15) ("The FBI is carrying out the interviews in collaboration with the regional Joint Terrorism Task Forces"); <u>Schmitt</u> (Article #15) (one reference to calls from "the local Joint Terrorism Task Force"). The stories do not discuss, let alone demonstrate, widespread interest or urgent concern with the overall policies, activities, and procedures of the national and local JTTFs. <u>See</u> *ACLU-NC v. DOJ*, slip op. at 21 (Exhibit A to First Coppolino Declaration).

*(iii) Articles Referring to the 2004 Conventions*: Similarly unavailing is Plaintiffs' contention that reports about the FBI's investigation of possible violent protests at the 2004

7

political conventions relate to their FOIA requests.  Contrary to Plaintiffs' contention, a "fair reading" of these articles indicates that they focus on the 2004 conventions.  The very first paragraph of the New York Times article that Plaintiffs cite, see Pl. Opp. at 11, states:

> The Federal Bureau of Investigation has been questioning political demonstrators across the country, and in rare cases even subpoenaing them, *in an aggressive effort to forestall what officials say could be violent and disruptive protests at the Republican National Convention in New York.*

*FBI Goes Knocking for Political Troublemakers* by Eric Lichtblau  (August 16, 2004) (Exh. A1 to Hardy Declaration, Article #8) (emphasis added).  The articles goes on to mention convention protests in no less than thirteen of its paragraphs.  Similarly, the Denver Post article that plaintiffs cite, see Pl. Opp. at 11, is actually headlined "*Activists Decry Pre-Convention Security Tactics,*" and refers to convention protests throughout.  See *Activists Decry Pre-Convention Security Tactics,* by Susan Green, Denver Post, August 26, 2004 (Exh. A1 to Hardy Declaration, Article #7).  Clearly, this aspect of Plaintiffs' record does not show that "media attention to FBI and JTTF monitoring and surveillance of political protest activities has been robust," see Pl. Opp. at 10, but that the media covered the FBI's efforts to monitor the 2004 convention protests for possible violence.  That is not the subject of either FOIA request.

      Plaintiffs' reliance on a document produced under FOIA concerning United for Peace and Justice does not demonstrate that expedition is warranted here.  See Pl. Opp. at 2, 12 and Exh. A thereto.  That document again concerns the FBI's efforts to monitor potentially violent protests at the 2004 conventions.  It states that one of the groups organizing the protests is known to have participated in prior illegal and disruptive demonstrations, including one in 1999 at the World Trade Organization meetings that turned violent.  See Exhibit A to Plaintiffs'

8

Opposition. The memo then attaches UFPJ's own memo regarding protests at the RNC. Id. If the FOIA requests at issue in this case concerned the FBI actions to monitor potentially violent protests at the 2004 conventions, then media reports on this topic might be relevant to expedition of such a request. The "correlation" necessary for expedition, see Pl. Opp. at 12, must be between the specific subject of the FOIA requests and the record submitted. The record here – in particular articles concerning the 2004 convention protests – bears little relationship to the particular FOIA requests at issue.

     Plaintiffs' assertion that some articles "cast FBI and JTTF monitoring and surveillance of political protest activity in broader terms," Pl. Opp. at 13, is likewise meritless. The first article Plaintiffs cite here does not mention the JTTFs at all. See *FBI Scrutinizes Antiwar Rallies,* by Eric Lichtblau, November 23, 2003, New York Times (Exhibit A2 to Hardy Declaration, Article # 23). That articles concerns a 2003 FBI memo conveying intelligence information about anti-war protestors to local law enforcement, and also cites the ACLU's own concerns that revised FBI investigative guidelines will bring about a return to the "abuses of the Hoover era." Id. This concern may be motivating the ACLU's FOIA requests, but the record on which the ACLU relies here, including this article from 2003, simply does not demonstrate a "continued and intense" media or public interest in either the investigative activities of the JTTFs in general, or alleged political surveillance of the Plaintiffs in particular. Expedition under the FOIA requires more than inferring a general connection between the subject of media reports and a FOIA request. Moreover, the fact that the subject of a request bears upon important issues, such as alleged political surveillance and investigative activities, is not sufficient to warrant expedition

where there evidence of widespread media or urgent public interest in the matter is lacking.[7]

Finally, plaintiffs' effort to distinguish Judge Hamilton's decision in *ACLU-NC v. DOJ*, supra, which they say provides "no guidance whatsoever" here, see Pl. Opp. at 6, is meritless. That case is squarely on point in several respects. It concerned an ACLU affiliate, a remarkably similar FOIA request for records of a local JTTF, and reliance on several of the same articles in support of expedition. To dismiss the court's analysis on the ground that the FOIA request there concerned only JTTF activities in Northern California is disingenuous. The significance of Judge Hamilton's decision is that she found several of the same articles at issue here, which generally concern questioning of Muslim and Arab Americans in 2004, or the political convention protests, to have no specific relationship to a FOIA request about the organization, funding, policies, or procedures of a local JTTF. *ACLU-NC v. DOJ*, slip op. at 21. That conclusion is directly pertinent here despite a difference in the scope of the requests and additional media reports in the record.

## II. THE ACLU IS NOT PRIMARILY ENGAGED IN THE DISSEMINATION OF INFORMATION.

In order to gain the benefit of expedition under FOIA Section 552(a)(6)(E)(iii), the American Civil Liberties Union argues that "its principle mission is *not* to litigate important civil rights and civil liberties cases." See Pl. Opp. at 17 (emphasis added). The ACLU's preferred

---

[7] Among the media reports Plaintiffs cite as reflecting a "broader concern" with "JTTF monitoring," see Pl. Opp. at 13, are several stories about an incident at Drake University in Iowa in which the JTTF is alleged to have investigated an anti-war forum. The reports themselves indicate there was no JTTF involvement there. See Def. MSJ at 27. Plaintiffs' contention that, even if there was nothing to these reports, they nonetheless demonstrate a widespread interest in the subject of JTTF activities, Pl. Opp. at 14, is untenable. Reports that indicate there was *no* JTTF involvement in the matter – that is, where there is no basis to the story itself – cannot possibly stand as evidence of widespread and urgent public interest in the JTTFs activities.

characterization is that it "seeks to preserve and defend the guarantees of the Bill of Rights and civil rights law" using litigation as "one major tactic." This is mere semantics. That the ACLU may do "a great deal more" than litigate – such as legislative lobbying, advocacy, and disseminating information through reports – is not the issue. See Pl. Opp. at 17. To be eligible for expedition under FOIA Section 552(a)(6)(E)(iii), the Court must assess the ACLU's "primary" activity.

The ACLU describes itself as the nation's "largest public interest law firm" utilizing over 2,000 staff and pro bono attorneys in 6,000 cases annually, and which appears in more cases before the Supreme Court than any entity except the Department of Justice. See Exh. C to First Coppolino Declaration. One could not describe an entity that "primarily" litigates more clearly.[8] Moreover, in its own background paper discussing the ACLU's historical activities, at least nine of twelve items highlighted concern high-profile litigation. Id. Likewise, over 80% of the items listed in the "news" section of the ACLU's website concern either litigation or legislative activities. Id., Exh. E. Indeed, the topics on which the ACLU does publish reports are virtually all related to subjects of intense litigation. See www.aclu.org/publications/publicationsmain.cfm (listing reports on "criminal justice, death penalty, free speech, immigrant rights, gay rights, prisons, privacy and technology, racial justice, reproductive rights, voting rights, women's rights").[9] This is ample evidence that the ACLU's primary activity is litigation, even though it

---

[8] The ACLU's statements on its website are admissions by a party-opponent under Rule 801(d)(2) of the Federal Rules of Evidence.

[9] The Court may also take notice of the fact that a search of the Westlaw database for all reported federal and state cases back to 1945 ("ALLCASES") lists the ACLU as a party in 402 matters.

also disseminates information that relates to its litigation, legislative, and advocacy efforts.

The ACLU is left to argue that the combination of its activities are akin to those of the Electronic Privacy and Information Center. See Pl. Opp. at 18 (arguing that ACLU and EPIC are both "advocacy organizations that employ multiple strategies"). The ACLU cannot win by association. Its own recitation of the facts indicates that EPIC utilizes far fewer than the 2,000 lawyers that ACLU does, and litigates far fewer than the 6,000 cases the ACLU litigates annually. See id. This is not merely a "reflection of size" but of function. Moreover, the status of EPIC's function was not clearly litigated, see *ACLU v. DOJ*, 321 F. Supp. 2d at 30, n. 5, and the Court's factual findings with respect to EPIC do not preclude the government from now directly challenging the status of other organizations under FOIA Section 552(a)(6)(E)(iii). EPIC describes itself as a "public interest *research* center," see www.epic.org ("What is EPIC"), and the Court's conclusions as to EPIC, based on the limited record in that case, should not govern here especially in light of the ACLU's own admission that it is the nation's public interest law firm.[10] The ACLU is not eligible for expedition under the "urgency to inform" standard.

### III.   AN *OPEN AMERICA* STAY IS WARRANTED HERE.

Plaintiffs argue that, even if expedition is not warranted, the Court should set a schedule for the production of documents and summary judgment in this case. See Pl. Opp. at 2. Where expedition is not supported as a matter of law, Plaintiffs should not be granted the same relief by

---

[10] ACLU's continued effort to link the "news media representative" standard for fee waivers under FOIA to the "primarily disseminates" standard for expedition, see Pl. Opp. at 19-20, is wrong as a matter of law. See Defs. MSJ at 15-16.

means of a litigation schedule.[11]

Plaintiffs make little effort to contest the basis for defendants' requested *Open America* stay of proceedings.[12]  Rather, Plaintiffs present two brief arguments that do not undermine the basis for a stay here.

First, Plaintiffs argue first that the FBI's estimate of the necessary processing time is based on a "significant misreading" of the requests of particular organizations under which only certain FBI field offices were searched.  See Pl. Opp. at 20 and Declaration of Ben Wizner.  The source of this misunderstanding is Plaintiffs' poorly worded request, which appeared to limit their request for documents for certain organizations to specific FBI field offices.  See Second Declaration of David M. Hardy ¶ 3 and Exhibit B to the First Hardy Declaration.[13]  Despite conferring about the matter, the parties continued to have a misunderstanding about the scope of the request.  See Declaration of Margaret Payne Jackson, Federal Bureau of Investigation.  In any event, this matter has no bearing on the need for a stay since Plaintiffs' reading of their request would require a search of *additional* offices, and the FBI has agreed to expand its search

---

[11] Plaintiffs appear to have abandoned the relief sought in their motion for a preliminary injunction that the mass of documents at issue be processed and released within 27 days – a manifestly impossible task.  Even if expedition were appropriate, plaintiffs would be entitled only to processing "as soon as practicable," 5 U.S.C. § 552(a)(6)(E)(iii).

[12] As noted above, under Local Rule 56.1, the facts set forth Defendants' Statement of Material Facts as to Which There is No Genuine Issue are admitted unless the party opposing summary judgment provides a concise statement setting forth material facts as to which it contends there is a genuine issue, which Plaintiffs have not done.

[13] Footnote 1 to the request states that "This Request is addressed to the Detroit Field office only as it relates to Requestor American-Arab Anti-Discrimination Committee."  Footnote 3 states that "This Request is addressed to the Richmond Field office only as it relates to Requestor People for the Ethical Treatment of Animals."  See Exhibit B to the First Hardy Declaration.

13

in accordance with Plaintiffs' wishes.  See Second Hardy Decl. ¶ 4.[14]

Plaintiffs also argue that the FBI has not provided a time estimate for processing their request for NJTTF documents.  See Pl. Opp. at 20-21.  The FBI has already explained that this is the result of the substantial breadth of the JTTF request.  See Second Hardy Decl. ¶ 5.  The FBI is willing to confer about on narrowing this request, and this may reduce the time necessary to complete processing.  Id.  Nonetheless, the grounds plainly exist for a stay of proceedings given the scope of the NJTTF request.  If that request is reduced in scope, the Defendants would advise the Court of any revised processing schedule for this request.  Id.

Again, however, the Court should not effectively grant Plaintiffs expedition of their FOIA requests through the scheduling of this litigation where no entitlement to expedition exists under the law.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court: (i) deny Plaintiffs' motion for a preliminary injunction; (ii) grant Defendants' cross-motion for partial summary judgment on Plaintiffs' claim for expedited FOIA processing; and (iii) grant a stay of proceedings to permit further processing of the FOIA requests at issue.

Respectfully Submitted,

PETER D. KEISLER
Assistant Attorney General

KENNETH L. WAINSTEIN
United States Attorney

---

[14] Only two requests – the ADC and PETA requests – require additional searches.  See Exhibit A to the Second Hardy Declaration.

                              ELIZABETH J. SHAPIRO
                              (D.C. Bar No. 418925)
                              Assistant Branch Director
                              United States Department of Justice
                              Civil Division, Federal Programs Branch
                              20 Massachusetts Avenue, N.W. Room 7152
                              Telephone:  (202) 514-5302
                              Facsimile:  (202) 616-8470
                              Email:  Elizabeth.Shapiro@usdoj.gov

                               /s/ Anthony J. Coppolino
                              ANTHONY J. COPPOLINO
                              (D.C. Bar No. 417323)
                              Special Litigation Counsel
                              United States Department of Justice
                              Civil Division, Federal Programs Branch
                              20 Massachusetts Avenue, N.W. Room 6102
                              Telephone:  (202) 514-4782
                              Facsimile:  (202) 616-8460
Dated:  July 27, 2005             Email:  tony.coppolino@usdoj.gov

CERTIFICATE OF SERVICE

      I hereby certify that on July 27, 2005, the foregoing *Defendants' Reply to Plaintiffs' Opposition to Defendants' Motion for Partial Summary Judgment an Defendants' Motion for an Open America Stay* was filed electronically and served by means of the Court's ECF notice system, see Local Rule 5.4(d)(1) on:

Arthur B. Spitzer
artspitzer@aol.com,
courtfilings@aclu-nca.org
D.C. Bar No. 235960
American Civil Liberties Union of the
National Capital Area
1400 20th Street, N.W. #19
Washington, D.C. 20036

Ben Wizner
bwizner@aclu.org
Staff Attorney
American Civil Liberties Union
125 Broad St., 18th Flr.
New York, NY 10004

                                                /s/ Anthony J. Coppolino
                                            ANTHONY J. COPPOLINO