UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

|  |  |  |
|---|---|---|
| AMERICAN CIVIL LIBERTIES UNION, et al. | ) | |
| | ) | |
| | ) | Civil Action No. |
| Plaintiffs | ) | 1:05cv01004-ESH |
| | ) | |
| v. | ) | |
| | ) | |
| FEDERAL BUREAU OF INVESTIGATION, et al. | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |

---

## DEFENDANTS' PARTIAL MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, defendants the Federal Bureau of Investigation, *et al.* respectfully move the Court to enter summary judgment on their behalf on all plaintiffs' claims pursuant to the Freedom of Information Act, 5 U.S.C. § 552, *et seq.* ("FOIA"), relating to defendants' processing of plaintiffs' "organizational" FOIA requests, described in Paragraph 23 of plaintiffs' Complaint, as defendants have fully complied with the FOIA in responding to plaintiffs' FOIA request. The accompanying Memorandum of Law more fully sets forth the reasons that support Defendant's Motion for Partial Summary Judgment.

This Motion is filed pursuant to the Court's Orders of November 1, 2005 and January 19, 2006.

//

//

//

Dated: February 24, 2006

Respectfully Submitted,

PETER D. KEISLER
Assistant Attorney General

KENNETH L. WAINSTEIN
United States Attorney

ELIZABETH J. SHAPIRO
Assistant Director
ANTHONY J. COPPOLINO
Special Litigation Counsel

   /s/ Steven Y. Bressler

STEVEN Y. BRESSLER D.C. Bar # 482492
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue N.W.  Room 7138
Washington, D.C.  20530
Tel.: (202) 514-4781
Fax: (202) 318-7609
Email: steven.bressler@usdoj.gov
Counsel for Defendants

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

|  |  |  |
|---|---|---|
| AMERICAN CIVIL LIBERTIES UNION, et al. | ) | |
| | ) | |
| | ) | |
| | ) | Civil Action No. |
| Plaintiffs | ) | 1:05cv01004-ESH |
| | ) | |
| v. | ) | |
| | ) | |
| FEDERAL BUREAU OF INVESTIGATION, | ) | |
| et al. | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |

---

**DEFENDANTS' STATEMENT OF FACTS
AS TO WHICH THERE IS NO GENUINE ISSUE**

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule of Civil Procedure

56.l, defendants respectfully submit the following material facts as to which there is no genuine

issue to be tried:

1.    On December 2, 2004, plaintiff the American Civil Liberties Union ("ACLU")

filed two FOIA requests that are the subject of this lawsuit, seeking access to FBI documents

created from January 1, 2000 to the present "prepared, received, transmitted, collected and/or

maintained by the FBI, the National Joint Terrorism Task Force, or any Joint Terrorism Task

Force ['JTTF'] relating to" plaintiffs in this action.  The first letter, addressed to FBIHQ, sought

documents created from January 1, 2000 to the present regarding 40 categories of records,

including the creation, purpose, composition and policies of the NJTTF.  See Exhibit A to the

First Hardy Declaration.  The second letter, addressed to FBIHQ and to field offices in New

York, Detroit, Boston, Los Angeles, Washington, Richmond and San Francisco, sought

documents related to the monitoring, surveillance, and investigation by JTTFs of ACLU, ACLU

Foundation, ADC, Code Pink, Greenpeace, MPAC, PETA, and UFPJ.  Plaintiffs requested

expedited processing in both of their December 2, 2004 letters pursuant to 28 C.F.R. §§

16.5(d)(I)(ii) and (iv).  See Exhibit B to First Declaration of Thomas Hardy.

2.      By eight separate letters dated December 23, 2004, FBIHQ acknowledged receipt

of plaintiffs' requests for each subject matter.  Plaintiffs were further notified that their multi-part

requests were also forwarded from the appropriate field offices to FBIHQ and would be handled

in conjunction with the FBIHQ request.  Plaintiffs were also advised of the assigned FOIPA

numbers, as follows: ACLU and ACLU Foundation, FOIPA No. 1010242; ADC, FOIPA

No.1010243; Code Pink, FOIPA No. 1010244; Greenpeace, FOIPA No. 1010245; MPAC,

FOIPA No. 1010246; PETA, FOIPA No. 1010247; UFPJ, FOIPA No. 1010248; and NJTTF,

FOIPA No. 1010249.  See Exhibit D to First Hardy Declaration.

3.      By letter dated March 3, 2005, FBIHQ advised plaintiffs that in response to

FOIPA No. 1010244 regarding Code Pink, a search of the automated indices to the Central

Records System had located no responsive records at FBIHQ and the Boston, Los Angeles, New

York, and Washington Field Offices.[1]  Plaintiffs were advised of their right to file an

administrative appeal with the Office of Information and Privacy ("OIP"), U.S. Department of

Justice ("DOJ").  See Exhibit F to First Hardy Declaration.

4.      By letter dated March 16, 2005, FBIHQ advised plaintiffs that in response to

FOIPA No. 1010247 regarding PETA, a search of the automated indices to the Central Records

---

[1]  This March 3, 2005 letter erroneously indicated that FBIHQ had searched for records
related to Code Pink in the Los Angeles, New York and Washington Field Offices, and FBIHQ.
In fact, as indicated supra, only the Boston Field Office was searched.

System had located no responsive records in the Richmond Field Office. Again, plaintiffs were advised of their right to file an administrative appeal with OIP, DOJ. See Exhibit G to First Hardy Declaration.

5.    Plaintiffs filed this Complaint on May 18, 2005 seeking declaratory judgment and an order for the FBI to produce the requested documents. Code Pink was not included in the complaint. See Compl.

6.    By letters dated May 25, 2005 and June 6, 2005, the FBI informed plaintiffs that their request for expedition of their December 2, 2004 FOIA requests had been denied both by DOJ and by the FBI. See Exhibits J and K to First Hardy Declaration.

7.    By letter dated June 27, 2005, FBIHQ released six pages in full regarding UFPJ, FOIPA No. 1010248. See Exhibit H to First Hardy Declaration.

8.    On July 5, 2005, the FBI moved for a stay pursuant to Open America, submitting the First Hardy Declaration dated July 1, 2005, which: (a) described the numerous FOIA requests filed by plaintiffs and other ACLU chapters across the country; (b) described the FBI and DOJ's response to plaintiffs' request for expedited processing; (c) provided background on the FBI's FOIA process and CRS; (d) described the status of the searches and processing of the plaintiffs' FOIA requests; and (e) described the backlog of FOIA requests and efforts made by the FBI to deal with that backlog. The FBI also opposed plaintiffs' motion for preliminary injunction. Third Hardy Decl. ¶ 13.

9.    On July 27, 2005, the FBI submitted the Second Hardy Declaration as well as the Declaration of Margaret P. Jackson ("Jackson Declaration"), both dated July 26, 2005, to explain, *inter alia*, that despite its reasonable interpretation of the scope of plaintiffs' December

2, 2004 requests, the FBI would nevertheless renew its search efforts to remedy any misunderstandings regarding the scope of the searches to be conducted.  See Exhibit A to Second Hardy Declaration.  See Third Hardy Decl. ¶ 14.

10.    Following a status conference with this Court on July 29, 2005, the parties engaged in further discussions regarding the scope of the searches for each of the requests.  As a result of these discussions, combined with the FBI's renewed search efforts, (see Second Hardy Declaration and Jackson Declaration), the universe of documents to be searched and scoped was further refined, and the results were reflected in the parties' Joint Status Report filed on August 29, 2005, which set forth a production schedule for documents related to ACLU, ADC, PETA, Greenpeace, UFPJ, and MPAC ("organizational requests") on or before October 1, 2005; and the production of documents regarding NJTTF policies, practices and procedures on or before January 6, 2006, with the balance of documents regarding NJTTF to be released on or before March 1, 2006.  The Court entered an Order on August 29, 2005 reflecting this schedule. See Third Hardy Decl. ¶ 15.  Defendants' Motion for Summary Judgment filed this date concerns only the organizational requests.

11.    As a result, in accordance with the Court's August 29, 2005, Order, on September 30, 2005 and October 1, 2005, the FBI completed its search and processing of a total of 3,310 pages related to the organizational requests – ACLU, ADC, PETA, Greenpeace, UFPJ, and MPAC – and released 2,407 pages, with redactions taken pursuant to FOIA Exemptions 1, 2, 3, 5, 6, 7(A), 7(C), 7(D), 7(E), and 7(F).

12.    On October 18, 2005, during a telephone status conference with the Court, agreement was reached on the scope and content of the FBI's Vaughn declarations.  Third Hardy

Decl. ¶ 17.  Pursuant to Cour Order, the FBI provided plaintiffs with a <u>Vaughn</u> declaration with respect to documents related to PETA, UFPJ, ACLU and Greenpeace on or about December 1, 2005, and it provided plaintiffs with a <u>Vaughn</u> declaration with respect to documents related to ADC and MPAC on or about December 22, 2005.  <u>See</u> <u>id.</u>

13.    After reviewing the documents released to date, plaintiffs submitted a list of a subset of these released documents which they determined should be addressed by the FBI in its <u>Vaughn</u> declaration.  Plaintiffs Bates stamped the documents (including deleted page sheets indicating both pages withheld in full and duplicate pages) consecutively "1" through "2459" with the following specific breakdown: UFPJ – Bates ##s 1-6; ACLU – Bates ##s 7-90; PETA – Bates ##s 91-298; ADC – Bates ##s 299-509; MPAC – Bates ##s 510-607; Greenpeace – Bates ##s 608-2459.  <u>See</u> Third Hardy Decl. ¶ 19 and Exhibit A thereto.

14.    Plaintiffs subsequently informed defendant's counsel that they would narrow the scope of the documents to be litigated in two ways: (1) plaintiffs stated they "do not wish to litigate any withholdings or redactions claimed under any of the following codes: (b)(2)-1, -2, -3 and -5; (b)(6)-1, -2, -3 and -6; (b)(7)(C)-1, -2, -3 and -6; and (b)(7)(D)-3 and -5;" and (2) "do not wish to litigate over the following documents:  ACLU Bates # 1481-1 to 1481-35; 1482-1 to 1482-13, and 1482-21 to 1482-40; 1896-1 and 1896-2; 140-1 to 140-7; and 159-1 to 159-13."  <u>See</u> Third Hardy Decl. ¶ 5 and Exhibit B thereto.  Following correspondence over several weeks, plaintiffs' counsel also informed counsel for defendants via electronic mail on the evening of February 22, 2006, that plaintiffs would not dispute 21 documents totaling 178 pages and identified on Exhibit A to the Third Hardy Decl. as Document Numbers 52, 79, 93, 99, 101, 102,

103, 104, 106, 108, 109, 110, 116, 117, 118, 119, 134, 150, 151, 156, and 159.  See Exhibit B to Fifth Hardy Decl.

15.    The FBI employed several mechanisms as part of its search efforts to identify documents responsive to plaintiffs' request.  The subject matter of the plaintiffs' FOIA request is relatively recent, and responsive records may not have yet been indexed to the FBI's Central Records System ("CRS").[2]  As a result, the FBI not only initiated a standard search of records in the CRS both for FBIHQ and for the requested field offices, but also engaged in individualized inquiries of offices at FBIHQ and the affected field offices via internal communications including Electronic Communication ("EC") dated January 4, 2005, and follow-up search memos and e-mails requesting affected personnel to conduct a thorough search of any documents in their possession, including tickler copies and e-mails responsive to plaintiffs' FOIA requests.  Any

_____

[2]  The FBI's Central Records System ("CRS") consists of administrative, applicant, criminal, personnel, and other files compiled for law enforcement purposes.  This system consists of a numerical sequence of files broken down according to subject matter.  The subject matter of a file may relate to an individual, organization, company, publication, activity, or foreign intelligence matter.  Certain records in this system are maintained at FBIHQ.  Records which are pertinent to specific field offices are maintained in those field offices.  Through the General Indices, FBIHQ and each field office can access the CRS.  The General Indices are arranged in alphabetical order and consist of an index on various subjects, including the names of individuals and organizations.  Only information considered pertinent, relevant or essential for future retrieval is indexed.  Without a "key" (index) to this mass of information, information essential to ongoing investigations could not be readily retrieved.  See Third Hardy Decl. ¶ 21 and notes thereto.

suggestions or logical leads regarding potentially responsive documents were followed.[3]    Third
Hardy Decl. ¶ 21.

16.    The documents found in the FBI's searches that related to ACLU/ACLU
Foundation as a whole represent information provided by sources and obtained through a variety
of sensitive law enforcement techniques.  Although the documents were "indexed" in ACS under
"ACLU" they are primarily cross-references to the ACLU, where ACLU is merely mentioned.
Third Hardy Decl. ¶ 22.

17.    The documents found in the FBI's searches that related to Greenpeace consist of
court documents; foreign law enforcement agency-derived information; a variety of third-party
documents; internal FBI Letterhead Memoranda ("LHMs"), Electronic Communications
("ECs"), and internal FBI email traffic; and documents which originated with other government
agencies.  Many of the documents concern the criminal trespass arrests of approximately 20
Greenpeace members during demonstrations at the Vandenberg Air Force Base, the group's
demonstration at -- and interference with -- a power plant, and the group's demonstration at Thule
Air Force Base, Greenland, against missile defense systems testing.  The remaining documents
contain only passing references to Greenpeace but they were "indexed" under "Greenpeace" and
therefore were identified during the search process.  Third Hardy Decl. ¶ 23.

18.    The documents found in the FBI's searches that related to PETA as a whole
represent information related to sources, a variety of tax forms; draft documents for internal FBI

---

[3]  The FBI conducted searches for documents in the following offices : <u>ACLU and ACLU
Foundation</u> -- FBIHQ, New York, Los Angeles, and Washington Field Offices ("WFO");
<u>Greenpeace</u> - FBIHQ, New York, Los Angeles, WFO; <u>PETA</u> -- FBIHQ, Los Angeles, New York,
WFO, and Richmond Field Offices; and <u>UFPJ</u> -- FBIHQ, Boston, New York, WFO, and Los
Angeles Field Offices.  <u>See</u> Third Hardy Decl. ¶ 21 and notes thereto.

use only and drafts that did not originate with the FBI; referrals to other government agencies; and analyses of Title III-derived information. Other than the tax documents, these documents contain only passing references to PETA, although they too were indexed under PETA nevertheless. Third Hardy Decl. ¶ 24.

19.    The documents found in the FBI's searches that related to UFPJ consist of ECs regarding law enforcement investigations in which UFPJ is merely mentioned. Third Hardy Decl. ¶ 25.

20.    The documents found in the FBI's searches that related to MPAC consist of internal e-mails and Electronic Communications ("ECs") in connection with the work of the JTTFs, interviews of third party individuals, meeting memoranda, and reports which were provided by sources and obtained through a variety of sensitive law enforcement techniques. Fourth Hardy Decl. ¶ 5.

21.    The documents found in the FBI's searches that related to ADC consist of internal e-mails, incident reports and ECs concerning interviews of third-party individuals and other government employees, and complaint forms regarding law enforcement investigations. Fourth Hardy Decl. ¶ 5.

22.    The FBI processed all documents responsive to plaintiffs' request to achieve maximum disclosure consistent with the provisions of the FOIA. Every effort was made to provide plaintiffs with all material in the public domain and with all reasonably segregable portions of releasable material. The FBI made a good faith attempt to process all of the documents in such a way as to insure internal consistency. Third Hardy Decl. ¶ 26.

Dated: February 24, 2006

Respectfully Submitted,

PETER D. KEISLER
Assistant Attorney General

KENNETH L. WAINSTEIN
United States Attorney

ELIZABETH J. SHAPIRO
Assistant Director
ANTHONY J. COPPOLINO
Special Litigation Counsel

  /s/ Steven Y. Bressler
STEVEN Y. BRESSLER D.C. Bar # 482492
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue N.W.  Room 7138
Washington, D.C.  20530
Tel.: (202) 514-4781
Fax: (202) 318-7609
Email: steven.bressler@usdoj.gov

Counsel for Defendants

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| AMERICAN CIVIL LIBERTIES UNION, et al. | ) | |
| | ) | |
| | ) | |
| | ) | Civil Action No. |
| Plaintiffs | ) | 1:05cv01004-ESH |
| | ) | |
| v. | ) | |
| | ) | |
| FEDERAL BUREAU OF INVESTIGATION, | ) | |
| et al. | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS'
PARTIAL MOTION FOR SUMMARY JUDGMENT**

PETER D. KEISLER
Assistant Attorney General

KENNETH L. WAINSTEIN
United States Attorney

ELIZABETH J. SHAPIRO
Assistant Director
ANTHONY J. COPPOLINO
Special Litigation Counsel
STEVEN Y. BRESSLER D.C. Bar # 482492
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue N.W.  Room 7138
Washington, D.C.  20530
Tel.: (202) 514-4781
Fax: (202) 318-7609
Email: steven.bressler@usdoj.gov

Attorneys for Defendants

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.      FOIA and Summary Judgment Standards of Review . . . . . . . . . . . . . . . . . . . . . 2

II.     The FBI Conducted Adequate Searches for Responsive Documents . . . . . . . . . . 3

III.    The FBI Properly Withheld Information Pursuant to the FOIA
        Exemptions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        A.      The FBI Properly Withheld Information Pursuant to
                Exemption 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

                1.      The Standard for Exemption 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

                2.      The Withheld Information Properly Falls Within the
                        Classification Categories. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

                        a.      The FBI Properly Withheld Information That
                                Would Disclose Intelligence Sources . . . . . . . . . . . . . . . . 8

                        b.      The FBI Properly Withheld Information That
                                Would Disclose Intelligence Activities, Operations,
                                and Methods . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

                                i.      The FBI Properly Withheld Classified File
                                        Numbers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

                                ii.     The FBI Properly Withheld Classified
                                        Information Concerning the Character
                                        of FBI Investigations . . . . . . . . . . . . . . . . . . . . . . 12

                                iii.    The FBI Properly Withheld the Classified
                                        Name of an FBI Operational Unit . . . . . . . . . . . . 13

iv.    The FBI Properly Withheld a Classified
Numerical Designator and Related
Intelligence Information . . . . . . . . . . . . . . . . . . . . 14

v.    The FBI Properly Withheld Classified
Information Identifying Foreign
Counterintelligence Targets . . . . . . . . . . . . . . . . 15

c.    The FBI Properly Withheld Information Provided
by a Foreign Government . . . . . . . . . . . . . . . . . . . . . . . 16

d.    The FBI Properly Withheld Foreign Relations
Information . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

B.    The FBI Properly Withheld Information Pursuant to Exemption 2    19

C.    The FBI Properly Withheld Information Pursuant to Exemption 3 . . . . . 22

    1.    The Standard Under Exemption 3 . . . . . . . . . . . . . . . . . . . . . . . . 22

    2.    The FBI Has Properly Withheld Federal Grand Jury
Information . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

    3.    The FBI Has Properly Withheld Taxpayer Information    24

D.    The FBI Properly Withheld Information Pursuant to Exemption 5 . . . . . 25

    1.    The FBI Properly Invoked the Deliberative Process Privilege . . 25

    2.    The FBI Properly Invoked The Attorney-Client Privilege . . . . . . 29

E.    The FBI Properly Withheld Information Pursuant to Exemption 6 . . . . . 30

F.    The FBI Properly Withheld Information Pursuant to Exemption 7 . . . . . 35

    1.    The FBI Properly Withheld Information That Could
Reasonably Be Expected to Interfere With Law
Enforcement Proceedings Pursuant to Exemption 7(A) . . . . . . . 35

    2.    The FBI Properly Withheld Information Identifying Third
Parties Pursuant to Exemption 7(C) . . . . . . . . . . . . . . . . . . . . . . . 39

3.    The FBI Properly Withheld Confidential Source Information
      Pursuant to Exemption 7(D) ............................ 42

4.    The FBI Has Properly Withheld Information Concerning its
      Investigative and Law Enforcement Techniques and
      Procedures Pursuant to Exemption 7(E) .................. 44

CONCLUSION ........................................................ 45

# TABLE OF AUTHORITIES

<u>Page(s)</u>

## CASES

ACLU Found. v. DOJ,
    833 F. Supp. 399 (S.D.N.Y. 1993) ................................................................. 44

ACLU v. DOJ,
    265 F. Supp. 2d 20 (D.D.C. 2003) .................................................................. 7

AFL-CIO v. FEC,
    177 F. Supp. 2d 48 (D.D.C. 2001) ................................................................. 41

A. Michael's Piano, Inc. v. FTC,
    18 F.3d 138 (2d Cir.), cert. denied 513 U.S. 1015 (1994) ............................................ 22

Abbotts v. NRC,
    766 F.2d 604 (D.C. Cir. 1985) ....................................................................... 6

Access Reports v. Department of Justice,
    926 F.2d 1192 (D.C. Cir. 1991) ..................................................................... 29

Alyeska Pipeline Service Co. v. Environmental Protection Agency,
    856 F.2d 309 (D.C. Cir. 1988) ...................................................................... 36

American Friends Serv. Comm. v. DOD,
    831 F. 2d 441 (3d Cir. 1987) ........................................................................ 10

Aronson v. IRS,
    973 F.2d 962 (1st Cir. 1992) ......................................................................... 24

Assassination Archives and Research Center v. CIA,
    177 F. Supp. 2d 1 (D.D.C. 2001) ..................................................................... 3

Assoc. of Retired R.R. Workers v. United States R.R. Retirement Bd.,
    830 F.2d 331 (D.C. Cir. 1987) ....................................................................... 23

Baldrige v. Shapiro,
    455 U.S. 345 (1982) .................................................................................. 2

Bast v. DOJ,
     665 F.2d 1251 (D.C. Cir. 1981) ................................................................. 39

Blanton v. U.S. Dep't of Justice,
     63 F. Supp. 2d 35 (D.D.C. 1999) ........................................................ 20, 44

CIA v. Sims,
     471 U.S. 159 (1985) ....................................................................... 9, 10, 22

Carter v. Dep't of Commerce,
     830 F.2d 388 ................................................................................................ 33

Center for Nat'l Sec. Studies v. DOJ,
     331 F.3d 918 (D.C. Cir. 2003) ........................................................... 2, 21

Chemical Mfrs. Ass'n v. Consumer Prod. Safety Comm'n,
     600 F. Supp. 114 (D.D.C. 1984) ............................................................ 27

City of Virginia Beach v. U.S. Dep't of Commerce,
     995 F.2d 1247 (4th Cir. 1993) ................................................................. 28

Coastal States Gas Corp. v. Department of Energy,
     617 F.2d 854 (D.C. Cir. 1980) ........................................................ 28, 30

Coleman v. FBI,
     13 F. Supp. 2d 75 (D.D.C. 1998) .......................................................... 44

Cong. News Syndicate v. DOJ,
     438 F. Supp. 538 (D.D.C. 1997) ........................................................... 33

Crooker v. Bureau of Alcohol, Tobacco & Firearms,
     670 F.2d 1051 (D.C. Cir. 1981) ...................................................... 19, 20

Davis v. DOJ,
     968 F.2d 1276 (D.C. Cir. 1992) ............................................................ 39

Delta Limited v. Customs and Border Protection Bureau,
     384 F. Supp. 2d 138 (D.D.C. 2005), vacated in part on other grounds, 393
     F. Supp. 2d 15 (D.D.C. 2005) ............................................................... 20

Department of the Interior,
     532 U.S. at 8-9 .......................................................................................... 26

Dow Jones & Co. v. U.S. Dep't of Justice,
        917 F.2d 571 (D.C. Cir. 1990) ................................................................. 42

Dudman Communications Corp. v. Dep't of the Air Force,
        815 F.2d 1565 (D.C. Cir. 1987) ............................................................. 28

EPA v. Mink,
        410 U.S. 73 (1973) .................................................................................. 26

Exxon Corp. v. Dep't of Energy,
        585 F. Supp. 690 (D.D.C. 1983) ............................................................ 27

Fisher v. DOJ,
        772 F. Supp. 7 (D.D.C. 1991), aff'd, 968 F.2d 92 (D.C. Cir. 1992) ............... 44

Fitzgibbon v. CIA,
        911 F.2d 755 (D.C. Cir. 1990) .......................................... 22, 23, 33, 41

Formaldehyde Inst. v. HHS,
        889 F.2d 1118 (D.C. Cir. 1989) ............................................................ 26

Founding Church of Scientology of Washington, D.C., Inc. v. Smith,
        721 F.2d 828 (D.C. Cir. 1983) ............................................................. 19

Founding Church of Scientology v. Bell,
        603 F.2d 945, Rule 6(e) ....................................................................... 24

Frugone v. CIA,
        169 F.3d 772 (D.C. Cir. 1999) ............................................................... 7

Gardels v. CIA,
        689 F.2d 1100 (D.C. Cir. 1982) ........................................................ 3, 8

Goland v. CIA,
        607 F.2d 339 (D.C. Cir. 1978) .............................................................. 23

Gordon v. Federal Bureau of Investigation,
        388 F. Supp. 2d 1028 (N.D. Cal. 2005) ............................................... 20

Gould, Inc. v. GSA,
        688 F. Supp. 689 (D.D.C. 1988) ............................................................. 9

Grand Central Partnership, Inc. v Cuomo,
        166 F.3d at 482 (2d Cir. 1999) ........................................................ 26, 28

Grounds Saucer Watch v. CIA,
    692 F.2d 770 (D.C. Cir. 1981) ...................................................................... 3

Hale v. DOJ,
    973 F.2d 894 (10th Cir. 1992), vacated on other grounds, 509 U.S. 918
    (1993) ............................................................................................................ 2

Halkin v. Helms,
    598 F.2d 1 (D.C. Cir. 1978) ......................................................................... 9

Halperin v. CIA,
    629 F.2d 144 (D.C. Cir. 1980) ......................................................... 6, 8, 9, 12

Halpern v. FBI,
    No. 94-CV-365A(F), 2002 WL 31012157(August 31, 2001) ....................... 17

Hopkins v. Department of Health and Human Services,
    929 F.2d 81 (2d Cir. 1991) ......................................................................... 26

Hornbostel v. Department of the Interior,
    305 F. Supp. 2d 21 (D.D.C. 2003) .............................................................. 29

Hunt v. U.S. Marine Corps,
    935 F. Supp. 46 (D.D.C. 1996) ................................................................... 29

John Doe Agency v. John Doe Corp.,
    493 U.S. 146 (1989) ...................................................................................... 2

Judicial Watch v. Export-Import Bank,
    108 F. Supp. 2d 19 (D.D.C. 2000) .............................................................. 26

Kay v. Federal Communications Comm'n,
    976 F. Supp. 23 (D.D.C. 1997) ................................................................... 38

Librach v. Federal Bureau of Investigation,
    587 F.2d 372 (8th Cir. 1978) ...................................................................... 22

Linn v. DOJ,
    Civ. No. 92-1406, 1995 WL 631847 (D.D.C. August 22, 1995) ................... 18

Local 3, Int'l Brotherhood of Elec. Workers v. NLRB,
    845 F.2d 1177 (2d Cir. 1988) ...................................................................... 26

Mack v. Dep't of Navy,
    259 F. Supp. 2d 99 (D.D.C. 2003) .............................................................. 41

Malizia v. U.S. Dep't of Justice,
    519 F. Supp. 338 (S.D.N.Y. 1981) .............................................................. 17

Manna v. DOJ,
    51 F.3d 1158 (3d Cir. 1995) ..................................................................... 36

McErlean v. United States Dep't of Justice,
    Civ No. 97-7831-BSJ, 1999 WL 791680 (S.D.N.Y. Sept. 30, 1999) ............................ 14

Military Audit Project v. Casey,
    656 F.2d 724 (D.C. Cir. 1981) ............................................................. 6, 23, 24

Miller v. Casey,
    730 F.2d 773 (D.C. Cir. 1984) ..................................................................... 6

National Archives and Records Admin. v. Favish,
    124 S. Ct. 1570 (2004) ........................................................................... 41

Nat'l Labor Relations Bd. v. Sears, Roebuck & Co.,
    421 U.S. 132 (1975) .............................................................................. 25

Nation Magazine v. U.S. Customs Serv.,
    71 F. 3d 885 (D.C. Cir. 1995) ............................................................... 33, 39

National Ass'n of Retired Fed. Employees v. Horner,
    879 F.2d 873 (D.C. Cir. 1989), cert. denied, 494 U.S. 1078 (1990) ....................... 31, 35

National Labor Relations Bd. v. Robbins Tire and Rubber Co.,
    437 U.S. 214 (1978) ........................................................................ 36, 37

National Sec. Archive v. FBI,
    759 F. Supp. 872 (D.D.C. 1991) ............................................................ 10, 15

Navasky v. CIA,
    521 F. Supp 128 (S.D.N.Y. 1981) ................................................................. 17

New York Times Co. v. NASA,
    920 F.2d 1002 (D.C. Cir. 1990) .................................................................. 30

Oglesby v. U.S. Dep't. Army,
    920 F.2d 57, 68 (D.C. Cir. 1990) ................................................................. 4

PHE, Inc. v. Department of Justice,
    983 F.2d 248 (D.C. Cir. 1993) ................................................................... 44

Painting & Drywall Work Preservation Fund, Inc. v. HUD,
    936 F.2d 1300 (D.C. Cir. 1991) .................................................................. 31

Parker v. DOJ,
    934 F.2d 375 (D.C. Cir. 1991) .................................................................... 43

Perry v. Block,
    684 F.2d 121 (D.C. Cir. 1982) ...................................................................... 3

Phillippi v. CIA,
    655 F.2d 1325 (D.C. Cir. 1981) ............................................................... 9, 13

Quinon v. FBI,
    86 F. 3d 1222 (D.C. Cir. 1996) .............................................................. 33, 41

Reed v. NLRB,
    927 F.2d 1249 (D.C. Cir. 1991), cert. denied, 502 U.S. 1047 (1992) ............................ 31

Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.,
    421 U.S. 168 (1975) .............................................................................. 25, 26

Russell v. Dep't of the Air Force,
    682 F.2d 1045 (D.C. Cir. 1982) ................................................................. 28

SafeCard Serv., Inc. v. SEC,
    926 F.2d 1197 (D.C. Cir. 1991) ................................................................. 41

Salisbury v. United States,
    690 F.2d 966 (D.C. Cir. 1982) ........................................................... 6, 7, 9, 12

Schell v. United States Dep't of Health and Human Servs.,
    843 F.2d 933 (6th Cir. 1988) .................................................................... 26

Schiffer v. FBI, 78 F.3d 1405 (9th Cir. 1996) .............................................................. 41

Schiller v. National Labor Relations Bd,
    964 F.2d 1205 (D.C. Cir. 1992) ............................................................. 19, 20

Schmerler v. FBI,
    900 F.2d 333 (D.C. Cir. 1990) ................................................................. 43

Schrecker v. DOJ,
    254 F.3d 162 (D.C. Cir. 2001) ................................................................... 9

Snyder v. CIA,

230 F. Supp. 2d 17 (D.D.C. 2002) ............................................................... 10

Solar Sources, Inc. v. United States,
       142 F.3d 1033 (7th Cir. 1998) ...................................................... 37, 38

Spannuaus v. DOJ,
       813 F.2d 1285 (4th Cir. 1987) ........................................................... 37

Stillman v. CIA,
       319 F.3d 546 (D.C. Cir. 2003) ............................................................. 6

Tax Analysts v. IRS,
       117 F.3d 607 (D.C. Cir. 1997) ........................................................... 24

Taylor v. Dep't of the Army,
       684 F.2d 99 (D.C. Cir. 1982) ......................................................... 7, 10

Texas Independent Producers Legal Action Ass'n v. IRS,
       605 F. Supp. 538 (D.D.C. 1984) .......................................................... 3

Tigue v. DOJ,
       312 F.3d 70 (2d Cir. 2002), cert. denied 538 U.S. 1056 (2003) ............... 25, 28

Town of Norfolk v. U.S. Army Corps of Engineers,
       968 F.2d 1438 (1st Cir. 1992) ........................................................... 28

U.S. Dep't of Defense v. FLRA,
       510  U.S. 487 (1994) ...................................................................... 33

U.S. Department of Justice v. Landano,
       508 U.S. 165 (1993) ...................................................................... 42

U.S. Department of Justice v. Reporters Comm. for Freedom of the Press,
       489 U.S. 749 (1989) .............................................................. 31, 33, 34

United States Dep't of State v. Washington Post Co.,
       456 U.S. 595 (1982) ...................................................................... 30

United States Dep't of the Air Force v. Rose,
       425 U.S. 352 (1976) ...................................................................... 31

Upjohn Co. v. United States,
       449 U.S. 383 (1981) ...................................................................... 29

Vaughn v. Rosen,

-x-

        523 F.2d 1136 (D.C. Cir. 1975) ................................................................... 27

Voinche v. Federal Bureau of Investigation,
        46 F. Supp. 2d 26 (D.D.C. 1999) ................................................................. 35

Voinche v. Federal Bureau of Investigation,
        940 F. Supp. 323 (D.D.C. 1996) ................................................................... 21

Washington Post Co. v. HHS,
        690 F. 2d 252 (D.C. Cir. 1982) ................................................................... 30

Weisberg v. Department of Justice, ,
        745 F.2d 1476 (D.C. Cir. 1984) ................................................................ 3, 4

Weissman v. CIA,
        565 F.2d 692 (D.C. Cir. 1997) ............................................................... 6, 24

Wiesenfelder v. Riley,
        959 F. Supp. 532 (D.D.C. 1997) ................................................................. 19

Williams v. FBI,
        69 F.3d 1155 (D.C. Cir. 1995) ................................................................... 42

Windels, Marx, Davies & Ives v. Dep't of Commerce,
        576 F. Supp. 405 (D.D.C. 1983) ................................................................... 3

Wolfe v. Department of Health and Human Servs.,
        839 F.2d 768 (D.C. Cir. 1988) ................................................................... 26

Zang v. FBI,
        756 F. Supp. 705 (W.D.N.Y. 1991) ........................................................ 10, 15

## STATUTES

The Freedom of Information Act, 5 U.S.C. § 552 ("FOIA") ............................................. passim

26 U.S.C. § 6103(a) ..................................................................................... 24

50 U.S.C. § 435 note at 91 (supp. 2004) ................................................................. 4

Pub. Law No. 93-502, 88 Stat. 1561 (1974) ............................................................. 26

Pub. L. No. 95-78 §2(a),  91 Stat. 319 (1977) .......................................................... 23

Pub. L. No. 99-570 § 1802, 100 Stat. 3207, 3207-48 (1986) .............................................. 36

## **EXECUTIVE ORDERS**

68 Fed. Reg. 15315, 15315 (March 25, 2003) ............................................................... 5

Exec. Order No. 12958, as amended ................................................................. passim

Exec. Order No. 13292 ............................................................................................ 4

## **MISCELLANEOUS**

H.R. Rep. 89-1497, 89th Cong., 2d Sess. 6 (1966) ...................................................... 2

## INTRODUCTION

Plaintiffs in this FOIA action, the American Civil Liberties Union and several other organizations, seek records from the Federal Bureau of Investigation ("FBI") and the Department of Justice concerning themselves. Specifically, plaintiffs requested under FOIA access to FBI documents created from January 1, 2000 to the present prepared, received, transmitted, collected and/or maintained by the FBI, the National Joint Terrorism Task-Force or any Joint Terrorism Task Force ("JTTF") relating to plaintiffs in this action, including documents related to any monitoring, surveillance, and investigation by JTTFs of ACLU, ACLU Foundation, ADC, Code Pink, Greenpeace, MPAC, PETA, and UFPJ. Third Declaration of David M. Hardy[1] ¶ 5.

The Department and FBI have responded to plaintiffs' FOIA request by searching through their relevant offices, files and automated systems, and have produced responsive materials to plaintiffs.[2] In making its FOIA production, the FBI (whose redactions of approximately 650 pages is in dispute and the subject of this Motion) withheld a limited, minimal amount of information pursuant to well-recognized exemptions for protecting classified national security and other exempt information. The FBI's invocation of these exemptions was necessary and proper, as the detailed declarations submitted with this motion make clear. The FBI is therefore entitled to summary judgment on plaintiffs' FOIA claim.

---

[1]    The First and Second Hardy Declarations were filed of record with this Court. See Docket Entries 16 & 20. The Third and Fourth Hardy Declarations were produced to plaintiffs, but not previously filed; they are submitted today as exhibits D and E to the Fifth Hardy Declaration, filed herewith.

[2]    The relevant background to defendants' motion is set forth in detail in defendants' Statement of Material Facts as to Which There is No Genuine Issue, filed herewith, which defendants incorporate herein by reference.

**ARGUMENT**

**I.      FOIA and Summary Judgment Standards of Review**

The Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), "represents a balance struck by Congress between the public's right to know and the government's legitimate interest in keeping certain information confidential." Center for Nat'l Sec. Studies v. DOJ, 331 F.3d 918, 925 (D.C. Cir. 2003) (citing John Doe Agency v. John Doe Corp., 493 U.S. 146, 152 (1989) (quoting H.R. Rep. 89-1497, 89th Cong., 2d Sess. 6 (1966))).  FOIA requires each federal agency to make available to the public a wide array of information, and sets forth procedures by which requesters may obtain such information.  See 5 U.S.C. § 552(a).  At the same time, FOIA exempts nine categories of information from disclosure, while providing that "[a]ny reasonably segregable portion of a record shall be provided . . . after deletion of the portions which are exempt under this subsection."  5 U.S.C. § 552(b).  Thus, while the FOIA requires agency disclosure under certain circumstances, the statute recognizes "that public disclosure is not always in the public interest."  Baldrige v. Shapiro, 455 U.S. 345, 352 (1982).  The nine FOIA exemptions "reflect Congress' recognition that the Executive Branch must have the ability to keep certain types of information confidential."  Hale v. DOJ, 973 F.2d 894, 898 (10th Cir. 1992), vacated on other grounds, 509 U.S. 918 (1993).  As the Supreme Court has stressed, the statutory exemptions must be construed "to have a meaningful reach and application."  John Doe, 493 U.S. at 152.

In determining whether an agency has met its burden of justifying nondisclosure of information in a FOIA action, the district court must accord substantial weight to affidavits submitted by the agency in support of claimed exemptions.  5 U.S.C. § 552(a)(4)(B).  Indeed, as

courts have recognized, in enacting the FOIA, Congress intended that courts give agency affidavits substantial weight in recognition of the agency's expertise, particularly in cases concerning questions of national security.  Gardels v. CIA, 689 F.2d 1100, 1104-05 (D.C. Cir. 1982); Assassination Archives and Research Center v. CIA, 177 F. Supp. 2d 1, 5-6 (D.D.C. 2001).

Accordingly, summary judgment is regularly granted in FOIA cases on the basis of agency affidavits.  Summary judgment is appropriate in a FOIA case unless the information provided by the agency is contradicted in the record or there is some evidence in the record of agency bad faith.  Gardels, 689 F.2d at 1104-05; Assassination Archives, 177 F. Supp. 2d at 5-6; Windels, Marx, Davies & Ives v. Dep't of Commerce, 576 F. Supp. 405, 409-11 (D.D.C. 1983).

## II.    The FBI Conducted Adequate Searches for Responsive Documents.

In evaluating the adequacy of a search, courts recognize that "[a]gency affidavits enjoy a presumption of good faith, which will withstand purely speculative claims about the existence of other documents." Grounds Saucer Watch v. CIA, 692 F.2d 770, 771 (D.C. Cir. 1981). Declarations should be "sufficiently detailed," but "[t]he standard, however, is not 'meticulous documentation [of] the details of an epic search.'" Texas Independent Producers Legal Action Ass'n v. IRS, 605 F. Supp. 538, 547 (D.D.C. 1984) (quoting Perry v. Block, 684 F.2d 121, 127 (D.C. Cir. 1982)).  "Rather, the agency need only provide affidavits explaining in 'reasonable detail' the scope and method of the search, in absence of countervailing evidence." Texas Independent Producers, 605 F. Supp. at 547 (quoting Perry).

An agency can show that it has discharged its obligations under the FOIA and is entitled to summary judgment by submitting declarations that "demonstrate that it has conducted a search

reasonably calculated to uncover all relevant documents." Weisberg v. Department of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984) (internal quotations omitted); see also Oglesby v. U.S. Dep't. Army, 920 F.2d 57, 68 (D.C. Cir. 1990) ("In order to obtain summary judgment the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."). Failure to uncover a responsive document does not render the search inadequate: "[T]he issue to be resolved is not whether there might exist any . . . documents possibly responsive to the request, but rather whether the search for those documents was adequate." Weisberg, 745 F.2d at 1485 (internal citations omitted).

As defendants' declarations demonstrate, the FBI conducted searches reasonably calculated to uncover documents responsive to Plaintiffs' requests. See generally Third Hardy Decl. ¶¶ 21-25. Plaintiffs apparently agree, and have informed defendants, through counsel, that plaintiffs do not challenge the adequacy of the FBI's searches.

## III.   The FBI Properly Withheld Information Pursuant to the FOIA Exemptions.

### A.   The FBI Properly Withheld Information Pursuant to Exemption 1.

As detailed his five declarations, David M. Hardy, Section Chief of the Record/Information Dissemination Section, Records Management Division at the FBI, has been designated by the Attorney General of the United States as an original classification authority and a declassification authority pursuant to sections 1.3 and 3.1 of the Executive Order 12958, as amended.[3]  See, e.g., Fifth Hardy Decl. ¶ 2.  Mr. Hardy has personally reviewed all of the FBI's

---

[3]      E.O. 12958 was amended by E.O. 13292, effective March 25, 2003.  See Exec. Order No. 12958, 3 C.F.R. (1995), reprinted as amended in 50 U.S.C. § 435 note at 91 (supp. 2004); see also Exec. Order No. 13292, 68 Fed. Reg. 15315 (March 28, 2003).  All citations

documents at issue in this case, and has determined which documents contain classified

information.  Third Hardy Decl. ¶ 35.  Mr. Hardy has determined that the remainder of the

information withheld under Exemption (b)(1) in the disputed documents warrants classification

at the "Secret" level in the interest of national defense or foreign policy, pursuant to E.O. 12958

§ 1.4, because their release could be expected to:  (a) reveal sensitive foreign relations or foreign

activities information, see Fifth Hardy Decl. ¶¶ 14-17; (b) reveal intelligence activities and

methods, see Fifth Hardy Decl. ¶¶ 18-30; or (c) reveal intelligence sources, see Fifth Hardy Decl.

¶¶ 31-39.  Moreover, as detailed below, the FBI has met its burden under Exemption 1 and

established that all of the withheld information properly falls within one or more of these

classification categories established by the Executive Order.

> **1.    The Standard for Exemption 1**

Exemption 1 protects records that are:  (1) specifically authorized under criteria

established by an Executive Order to be kept secret in the interest of national defense or foreign

policy, and (2) are in fact properly classified pursuant to Executive Order.  See 5 U.S.C. § 552

(b)(1).  Section 1.2(a)(4) of E.O. 12958 states that an agency may classify information that fits

into one or more of the Executive Order's categories for classification when the appropriate

classification authority "determines that the unauthorized disclosure of the information

reasonably could be expected to result in damage to the national security."  68 Fed. Reg. 15315,

15315 (March 25, 2003).

An agency can demonstrate that it has properly withheld information under Exemption 1

if it establishes that it has met the requirements of the Executive Order.  Substantively, the

---

herein to E.O. 12958 are to the Order as amended by E.O. 13292.

agency must show that the records at issue logically fall within the exemption, i.e., that E.O. 12958 authorizes the classification of the information at issue. Procedurally, the agency must demonstrate that it followed the proper procedures in classifying the information. See Salisbury v. United States, 690 F.2d 966, 970-73 (D.C. Cir. 1982); Military Audit Project v. Casey, 656 F.2d 724, 737-38 (D.C. Cir. 1981). An agency meeting both tests is then entitled to summary judgment. See, e.g., Abbotts v. NRC, 766 F.2d 604, 606-08 (D.C. Cir. 1985); Miller v. Casey, 730 F.2d 773, 776 (D.C. Cir. 1984).

Agency decisions to withhold classified information under FOIA are reviewed de novo by the district court, and the agency bears the burden of proving its claim for exemption. See 5 U.S.C. § 552(a)(4)(B); Miller, 730 F.2d at 776. Nevertheless, because agencies have "unique insights" into the adverse effects that might result from public disclosure of classified information, the courts must accord "substantial weight" to an agency's affidavits justifying classification. Military Audit Project, 656 F.2d at 738; cf. Miller, 730 F.2d at 776 (court must "accord substantial weight to an agency's affidavit concerning the details of the classified status of the disputed record"). Indeed, "the court is not to conduct a detailed inquiry to decide whether it agrees with the agency's opinions." Halperin v. CIA, 629 F.2d 144, 148 (D.C. Cir. 1980); see Weissman v. CIA, 565 F.2d 692, 697 (D.C. Cir. 1997) ("Few judges have the skill or experience to weigh the repercussions of disclosure of intelligence information"). To do so would violate the principle of according substantial weight to the expert opinion of the agency. Cf. Stillman v. CIA, 319 F.3d 546, 548 (D.C. Cir. 2003) (in non-FOIA case, criticizing district court for withholding deference ordinarily owed to national security officials).

2.    **The Withheld Information Properly Falls Within the Classification Categories.**

The FBI has established that it followed proper procedures to classify the documents at issue. See Fifth Hardy Decl. ¶ 12. The issue before the Court is whether the FBI has adequately shown that the withheld or redacted information falls within the classification categories established by the Executive Order. As detailed below, the FBI has properly withheld classified information that would disclose foreign government information and/or intelligence sources, activities, operations and methods because such disclosure would cause serious and specific harm to national security. The FBI's determination of potential harms, discussed below, merits "substantial weight" from the Court. See ACLU v. DOJ, 265 F. Supp. 2d 20, 27 (D.D.C. 2003) (Huvelle, J.). "'Executive departments responsible for national defense and foreign policy matters have unique insights into what adverse affects [sic] might occur as a result of public disclosure of a particular classified record." Salisbury, 690 F.2d at 970 (quoting S. Rep. No. 1200, 93rd Cong., 2d Sess. 12 (1974)); see also Frugone v. CIA, 169 F.3d 772, 775 (D.C. Cir. 1999) ("[m]indful that courts have little expertise in either international diplomacy or counterintelligence operations, we are in no position to dismiss the CIA's facially reasonable concerns"); Taylor v. Dep't of the Army, 684 F.2d 99, 109 (D.C. Cir. 1982) (agency's determination should be accorded "'utmost deference'") (quoting Halkin v. Helms, 598 F.2d 1, 9 (D.C. Cir. 1978)). Thus, as this Court has observed, it "must take seriously the government's predictions about the security implications of releasing particular information to the public . . ." ACLU, 265 F. Supp. 2d at 28.[4]

_____

[4] Speculation as to the harms likely to result from disclosure is necessarily just that – speculation – but the Court of Appeals has recognized that to require an *actual* showing of harm

**a.    The FBI Properly Withheld Information That Would Disclose Intelligence Sources.**

Section 1.4(c) of Executive Order 12958 exempts intelligence sources from disclosure. An "intelligence source" is an "individual who provided or is currently providing information that pertains to national security matters, the disclosure of which could reasonably be expected to result in damage to the FBI's intelligence and counterintelligence-gathering capabilities." Fifth Hardy Decl. ¶ 31. Mr. Hardy identified and classified identifying information that reasonably could be expected to reveal an intelligence source's identity as well as detailed information from the source that could reveal the source's identity. Fifth Hardy Decl. ¶¶ 34-39. Mr. Hardy explained that disclosure of this classified information poses a risk not only to the intelligence source, but also jeopardizes the FBI's effectiveness in protecting our national security now and in the future:

> Disclosure of the identities of FBI intelligence sources, regardless of whether they are active or inactive, alive or deceased, could reasonably be expected to cause current and potential intelligence sources to fear that their identities will be publicly revealed at some point, in spite of the FBI's present expressed or implied assurance of confidentiality. The disclosure of source's identities could jeopardize the physical well-being of the source's family or associates or subject them to public ridicule and/or ostracism. . . . Public identification of a source will limit the effectiveness of such and have a chilling effect on the FBI's ability to recruit future sources.

Fifth Hardy Decl. ¶¶ 33, 37. Courts afford substantial deference to the government's assessment that disclosure of source information will damage national security interests because the area is "necessarily a region for forecasts in which [the government's] informed judgment as to potential future harm should be respected." Gardels v. CIA, 689 F.2d, 1100, 1106 (D.C. Cir. 1982). The source information described by Mr. Hardy and withheld by the FBI is accordingly protected by

---

would be judicial "overstepping." Halperin, 629 F.2d at 149.

Exemption 1.  Schrecker v. DOJ, 254 F.3d 162, 166 (D.C. Cir. 2001) (protecting intelligence

sources because release would harm national security by "dissuading current and future sources

from cooperating").

As Mr. Hardy explained, the FBI also properly withheld under Exemption 1 specific

information concerning intelligence source symbol numbers with detailed information furnished

by the source because release of that information could compromise the sources' identities by

permitting "a hostile analyst to correlate . . . source identifiers . . with bits and pieces of

information [to] discern the true identity of the intelligence source."  Fifth Hardy Decl. ¶ 37; see

also generally Fifth Hardy Decl. ¶¶ 35-39.   "[T]he FOIA does not require the [government] to

lighten the task of our adversaries around the world by providing them with documentary

assistance from which to piece together the truth."  Phillippi v. CIA, 655 F.2d 1325, 1332 (D.C.

Cir. 1981).[5]   See also, e.g., Snyder, 230 F. Supp. 2d 17, 23 (D.D.C. 2002) (finding Exemption 1

---

[5]        Mr. Hardy's careful review in this case is consistent with the recognition that the
collection and preservation of information affecting the national security "is more akin to the
construction of a mosaic than it is to the management of a cloak and dagger affair."  Halkin v.
Helms, 598 F.2d 1, 8 (D.C. Cir. 1978).  One item's significance may frequently depend upon
many other items of information.  Indeed, this possibility is explicitly recognized in Executive
Order 12958, which provides, "[c]ompilations of items of information which are individually
unclassified may be classified if the compiled information reveals an additional association or
relationship that meets the standards for classification under this order; and is not otherwise
revealed in the individual items of information."  E.O. 12958, § 1.7(e).
        In fact, "the realities of intelligence work . . . often involves seemingly innocuous sources
. . . ." CIA v. Sims, 471 U.S. 159, 176 (1985).  Indeed, "[e]ach individual piece of intelligence
information, much like a piece of a jigsaw puzzle, may aid in piecing together bits and pieces of
other information even when the individual piece is not of obvious importance itself."  Halperin,
629 F.2d at 150; see also Gould, Inc. v. GSA, 688 F. Supp. 689, 698 (D.D.C. 1988)
("Information drawn from a number of different sources can be benign when separately
considered . . . [but] [w]hen combined . . . these various pieces of information can indeed become
accusatory "); Salisbury, 690 F.2d at 971 (acknowledging "mosaic-like nature of intelligence
gathering").  Thus, "what may seem trivial to the uninformed, may appear of great moment to
one who has a broad view of the scene and may put the questioned item in its proper context."

satisfied by government explanation that "disclosure of the withheld information could reveal the names and location of covert foreign CIA installations . . . or divulge cryptonyms, which in the aggregate, could be used to detect certain individuals or locations"); <u>Zang v. FBI</u>, 756 F. Supp. 705, 710 (W.D.N.Y. 1991) (holding that FBI properly withheld code names that corresponded to intelligence sources under Exemption 1).

 For all of these reasons, the FBI properly withheld information identifying intelligence sources.

**b.** **The FBI Properly Withheld Information That Would Disclose Intelligence Activities, Operations, and Methods**

 Section 1.4(c) of the Executive Order exempts disclosure of intelligence activities, operations, and methods. An intelligence activity, operation, or method includes "any intelligence action or technique utilized by the FBI against a targeted individual or organization that has been determined to be of national security interest. An intelligence method is used to indicate any procedures (human or non-human) utilized to obtain information concerning such individual or organization." Fifth Hardy Decl. ¶ 18. An intelligence activity or method "is needed by U.S. intelligence/counterintelligence agencies to carry out their missions" and "confidentiality must be maintained with respect to the activity or method if the viability, productivity and usefulness of its information is to be preserved." <u>Id.</u> Mr. Hardy explained that pertinent Exemption 1 redactions were made to prevent specific and serious harms, <u>i.e.</u>:

---

<u>Sims</u>, 471 U.S. at 178-79 (quoting <u>Halkin</u>, 598 F.2d at 9). Courts have upheld the withholding of information on grounds that it could be compiled in a way such that sensitive information would be released. <u>See</u>, <u>e.g.</u>, <u>Taylor v. Dep't of the Army</u>, 684 F.2d 99, 104-05 (D.C. Cir. 1982); <u>National Sec. Archive v. FBI</u>, 759 F. Supp. 872, 877 (D.D.C. 1991); <u>American Friends Serv. Comm. v. DOD</u>, 831 F. 2d 441, 444-45 (3d Cir. 1987).

-10-

to protect from disclosure information that would reveal the actual intelligence activities and methods utilized by the FBI against specific targets of foreign counterintelligence investigations or operations; identify a target of a foreign counterintelligence investigation; or disclose the intelligence gathering capabilities of the activities or methods directed at specific targets. . . . The criteria utilized by the FBI in these instances to decide what actions by an individual or organization warranted the commencement of an investigation, or caused a certain activity to be given investigative attention over others, could be revealed through disclosure of these intelligence methods.  Hostile entities could then develop countermeasures which could severely disrupt the FBI's intelligence-gathering capabilities.

Id. ¶ 19.

The FBI invoked Exemption 1 to withhold information regarding intelligence activities and/or methods,[6] including:  (1) numbers that are assigned to a specific intelligence activity or method; (2) information concerning the character of the case, i.e., identifying the specific type of intelligence activity directed at a specific target, in some cases also identifying the target of a national security investigation; (3) a designation for a foreign counterintelligence unit which targets specific individuals or organizations of national security interest; and (4) information identifying targets of foreign counterintelligence investigations, either directly or with a file number.  As discussed below and in the Fifth Hardy Declaration, such information satisfies the requirements of Exemption 1 because it meets one of the criteria established by E.O. 12958, and because it has been properly classified at the SECRET level.

---

[6]     The FBI has properly withheld such information on ACLU Bates pages 512-1 to 512-2, 513-1, 519-6, 521-36, 521-37 to 521-44, and 522-1 to 522-2.

### i.    The FBI Properly Withheld Classified File Numbers.

The FBI has properly classified FBI file numbers assigned to specific intelligence

activities.[7]  As Mr. Hardy explained,

> The disclosure of an intelligence file number in the aggregate could enable a hostile
> analyst to attribute any information released from the documents containing such a file
> number to that particular file.  A hostile analyst could identify the specific intelligence
> activity by supplying further missing pieces.  Hence, a partial mosaic of the activity
> begins to appear as more information is identified with the file leading to the exposure of
> actual current activities or methods.  Disclosure of this file number will allow a hostile
> analyst, or anyone not privileged to this information, to patch bits and pieces of
> information together until the actual use of the application of the source or method can be
> determined.

See Fifth Hardy Decl. ¶¶ 22-23.  Because their disclosure could reasonably be expected to cause

these specific and serious harms to national security, the file numbers are properly classified at

the "Secret" level and withheld pursuant to E.O. 12958, as amended, § 1.4 (c) and exempt from

disclosure pursuant to Exemption 1.  The fact that apparently harmless pieces of information,

when assembled together, could reveal a damaging picture is specifically recognized in section

1.7(e) of E.O. 12958.  See also, e.g., Halperin, 629 F.2d at 150; Salisbury, 690 F.2d at 971;

Gould, Inc., 688 F. Supp. a, 698.

### ii.    The FBI Properly Withheld Classified Information Concerning the Character of FBI Investigations

The FBI has properly classified and withheld information that would reveal the character

---

[7]    Such information has been redacted on ACLU Bates pages 299 to 302, 304-3 to
304-5, 304-7, 305-1, 475-1, 475-3 to 475-5, 512-1 to 512-2, 513-1, 515-26, 515-28, 515-30, 515-
35 to 515-38, 515-41, 516-1, 516-6, 517-36 to 517-37, 518-18 to 518-21, 518-35, 519-1 to 519-2,
519-5 to 519-6, 519-10, 520-31, 521-2 to 521-7, 521-34 to 521-35, 521-43 to 521-44, 522-1 to
522-6, 533, 534, 545, and 557.

and, in some cases, geographic location of particular national security investigations.[8] As Mr.

Hardy explained, disclosure of the character of a case:

> could reasonably be expected to cause serious damage to the national security, as it would (a) disclose a particular intelligence or counterintelligence investigation; (b) disclose the nature, scope or thrust of the investigation; and (c) reveal the manner of acquisition of the intelligence or counterintelligence information. This would allow the subjects of an ongoing national security investigation to implement countermeasures that would hamper the effectiveness of the investigation.

Fifth Hardy Decl. ¶ 24. FOIA does not oblige the FBI to provide the targets of its investigations

with descriptions of those investigations. Phillippi, 655 F.2d at 1332. The information

describing the character of intelligence or counterintelligence investigations is properly classified

at the "Secret" level, withheld pursuant to E.O. 12958 § 1.4 (c) & (d), and exempt from

disclosure under Exemption 1.

### iii.    The FBI Properly Withheld the Classified Name of an FBI Operational Unit

The FBI has properly classified the name of an operational unit that currently investigates

specific individuals and organizations of national security interest.[9] As Mr. Hardy explained:

> The disclosure of the operational unit name would enable hostile individuals or intelligence services to associate the presence of such operational unit in any FBI document or investigation with FBI counterintelligence activity, thus enabling the hostile individual or foreign intelligence service to determine the presence of the FBI's counterintelligence activity in a specific area. Disclosure of the operational unit name would reveal the existence of a particular intelligence or counterintelligence operation, as well as the nature, objectives, scope or thrust of the investigation, which would allow hostile assessment of the area of target. . . . Disclosure will allow countermeasures to be implemented, making future operations more difficult, or compromise other ongoing planned intelligence operations.

---

[8]     The FBI has withheld such information on ACLU Bates pates 87, 299, 515-26, 515-27, 515-36, 515-38, 515-39, 519-6, and 519-10.

[9]     This information was redacted on ACLU Bates page 515-6.

Fifth Hardy Decl. ¶ 25.  Because its disclosure could reasonably be expected to cause these

specific and serious harms to national security, the name of this FBI operational unit is thus

properly classified at the "Secret" level and withheld pursuant to E.O. 12958, as amended, § 1.4

(c) and exempt from disclosure pursuant to Exemption 1.   See McErlean v. United States Dep't

of Justice, Civ No. 97-7831-BSJ, 1999 WL 791680, at **5-6 (S.D.N.Y. Sept. 30, 1999) (holding

that the government correctly withheld classified information that "identifies an FBI investigative

unit which is assigned to, and specializes in, specific intelligence or counterintelligence

operations" because disclosure "would reveal an intelligence operation which is still ongoing

today").

### iv.    The FBI Properly Withheld a Classified Numerical Designator and Related Intelligence Information.

The FBI has also properly classified and withheld a numerical designator or "symbol

number" akin to a code name that serves as a single identifier for an intelligence method used to

provide information on a specific individual or organization of national security interest.[10]  Fifth

Hardy Decl. ¶ 26.  As Mr. Hardy explained:

> The numerical designator is assigned sequentially and is usually prefixed with the
> geographic location of the FBI office from which the method is operated.  The disclosure
> of this information could permit a hostile analyst to correlate the documents and the
> information provided by the symbol numbered method from various documents.  By
> matching source identifiers, such as file numbers and numerical designators, with bits and
> pieces of information, one can discern the true nature of the intelligence method.  Public
> identification of a method will limit the effectiveness of such and permit the target to
> implement countermeasures.

Id.  Because its disclosure could reasonably be expected to cause these specific and serious harms

to national security, the numerical designator is properly classified at the "Secret" level and

---

[10]    The withheld information is on ACLU Bates pages 89 and 90.

-14-

withheld pursuant to E.O. 12958, as amended, § 1.4 (c) and exempt from disclosure pursuant to Exemption 1. See, e.g., Nat'l Sec. Archive v. FBI, 759 F. Supp. 872, 877 (D.D.C. 1991) (holding that disclosure of code names and designator phrases could provide hostile intelligence analyst with "common denominator" permitting analyst to piece together seemingly unrelated data into snapshot of specific FBI counterintelligence activity) (decided under E.O. 12356); Zang, 756 F. Supp. at 710 (holding that FBI properly withheld code names that corresponded to intelligence sources under Exemption 1).

The FBI has also properly withheld detailed intelligence information obtained via the method in question. As Mr. Hardy explained, disclosure of this intelligence information "could permit hostile governments to appraise the scope, focus, location, target and capabilities of the FBI's intelligence gathering methods and activities, and allow hostile agents to devise countermeasures to circumvent these methods and activities and render them useless in providing intelligence information. This would severely disrupt the FBI's intelligence gathering capabilities." Fifth Hardy Decl. ¶ 27. Because revelation of this detailed information could be reasonably expected to give our enemies insight into FBI intelligence methods and activities, it is properly classified at the "Secret" level and withheld pursuant to E.O. 12958 § 1.4 (c) and exempt from disclosure pursuant to Exemption 1.

### iv. The FBI Properly Withheld Classified Information Identifying Foreign Counterintelligence Targets

The FBI has properly classified and withheld information identifying the targets of current foreign counterintelligence investigations.[11] Some of these pages also include

---

[11]    Such information was redacted from ACLU Bates pages 512-1 to 512-2, 513-1, 515-2 to 515-11, 515-26 to 515-27, 515-29, 515-36, 515-38 to 515-39, 515-42, 522-3 and 522-7.

descriptions of the character of the FBI's activity or case file numbers.  Fifth Hardy Decl. ¶ 29.

As Mr. Hardy explained:

> The disclosure of this information could reasonably be expected to cause serious damage to the national security, as it would: (a) reveal the actual intelligence activity or method utilized by the FBI against a specific target; (b) disclose the intelligence gathering capabilities of the activity or method; and (c) provide an assessment of the intelligence source penetration of a specific target during a specific period of time.  The release of this information could permit hostile governments to appraise the scope, focus, location, target and capabilities of the FBI's intelligence gathering methods and activities, and allow hostile agents to devise countermeasures to circumvent these intelligence activities or methods and render them useless in providing intelligence information.  This would severely disrupt the FBI's intelligence gathering capabilities.

Id. ¶ 30.  Because its disclosure could reasonably be expected to cause these specific and serious harms to national security, including the disruption of ongoing counterintelligence operations, information identifying the targets of ongoing foreign counterintelligence operations are properly classified at the "Secret" level and withheld pursuant to E.O. 12958, as amended, § 1.4 (c) and exempt from disclosure pursuant to Exemption 1.

For all of these reasons, the FBI properly withheld classified information that would reveal or identify the FBI's intelligence activities, operations, or methods.

### c.    The FBI Properly Withheld Information Provided by a Foreign Government

The FBI properly classified and withheld information provided by a foreign government.[12]  Section 1.4(d) of Executive Order 12958 exempts from disclosure information of the cooperative endeavors between the FBI and named foreign governments' intelligence components.  The withheld information:

---

[12]    Such information was redacted on ACLU Bates pages 515-30 and 516-1.

identifies by name, a specific foreign government and contains detailed intelligence
information provided by this foreign government.  This information is being withheld  to
protect the relationship and the cooperative endeavors between this component and the
FBI.  The exchange of information between this foreign government is with the expressed
understanding that their information and relationship will be kept classified and not
released to the public.  Release of such information could, therefore, be reasonably
expected to damage the United States' relationship with the foreign government in
question and to interfere with future cooperation.

Fifth Hardy Decl. ¶  14; see also Malizia v. U.S. Dep't of Justice, 519 F. Supp. 338, 343

(S.D.N.Y. 1981) ("Unauthorized disclosure of foreign government information is presumed to

cause at least identifiable damage to the national security.").  The FBI properly invoked

Exemption 1 to withhold properly classified information provided by a foreign government.  See

Halpern v. FBI, No. 94-CV-365A, 2002 WL 31012157, *7 (August 31, 2001) (holding that FBI

properly withheld information under Exemption 1 because disclosure would "identif[y] a foreign

government component that expects its cooperative endeavors with the FBI to remain

classified"); Malizia, 519 F. Supp. at 344 ("It is clear that, even without the presumption of

identifiable damage to the national security that is accorded foreign government information,

disclosure of such cooperation with foreign agencies could not only damage the (FBI's) ability to

gather information but could also impair diplomatic relations.") (internal citations omitted);

Navasky v. CIA, 521 F. Supp 128, 129-30 (S.D.N.Y. 1981) (holding that CIA declaration

"justif[ied] a finding that the disclosure of the classified information at issue could reasonably be

expected to cause identifiable damage to the national security in the field of foreign relations"

where CIA invoked Exemption 1 to withhold information relating to CIA's clandestine activities

in book publication and distribution were done in support of foreign policy objectives and aimed

at foreign targets).

For all of these reasons, the FBI's invocation of Exemption 1 to withhold information provided by a foreign government should be upheld by this Court.

#### d.    The FBI Properly Withheld Foreign Relations Information

The FBI properly classified and withheld information concerning the foreign relations and/or foreign activities of the United States.[13]  According to Mr. Hardy, the withheld information includes "sensitive intelligence information gathered . . . either about or from a foreign country," Fifth Hardy Decl. ¶ 17, and:

> identifies cooperative endeavors between the FBI and named foreign governments intelligence components.  Intelligence information is exchanged between these governments and the FBI with the express and/or written understanding that the relationship will be held in strict confidence.  The retention of the confidential nature of this exchange is essential to ensure continued liaison with the cooperating foreign governments in question, which continues at the present time.

Id. ¶ 15.  Section 1.4(d) of Executive Order 12958 exempts from disclosure foreign relations and activities information, including that concerning cooperative endeavors between the FBI and foreign governments' intelligence components.  Mr. Hardy goes on to detail the specific harms that could reasonably be expected to result from disclosure of this classified information, see Fifth Hardy Decl. ¶¶ 16-17, but it is enough to uphold the FBI's assertion of Exemption 1 over information concerning these confidential relationships with other nations that Mr. Hardy has established the confidential cooperation is understood among the nations and ongoing.  See, e.g., Linn v. DOJ, Civ. No. 92-1406, 1995 WL 631847, at *26 (D.D.C. August 22, 1995) (Exemption 1 withholding of information concerning cooperative relationship with foreign component was proper where FBI demonstrated "that the United States has a present

---

[13]    Such information was redacted on ACLU Bates pages 304-1 to 304-2, 515-3 to 515-5, 515-7, 515-11, 515-30, 516-1 and 518-12 .

understanding with the foreign government at issue that shared information will remain secret and that information concerning the relationship between the United States and that government will also remain secret"); see also Navasky, 521 F. Supp at 129-30 .

For these reasons, the FBI's invocation of Exemption 1 to withhold foreign relations and foreign activities information should be upheld.

**B.      The FBI Properly Withheld Information Pursuant to Exemption 2.**

Information that is "related solely to the internal personnel rules and practices of an agency" is exempt from disclosure pursuant to Exemption 2.  5 U.S.C. § 552(b)(2).  Exemption 2 applies to materials "'used for predominantly internal purposes.'"  Schiller v. National Labor Relations Bd, 964 F.2d 1205, 1207 (D.C. Cir. 1992) (quoting Crooker v. Bureau of Alcohol, Tobacco & Firearms, 670 F.2d 1051, 1073 (D.C. Cir. 1981) (en banc)).  This exemption has been held to protect two types of information:  (1) information the release of which would risk circumvention of agency regulations or statutes, see Crooker, 670 F.2d at 1074, and (2) "routine matters of merely internal interest," id. at 1069 (citation omitted).  See also Founding Church of Scientology of Washington, D.C., Inc. v. Smith, 721 F.2d 828, 831 n.4 (D.C. Cir. 1983) (material is exempt if it "relates to trivial administrative matters of no genuine public interest").  The former application of the exemption is known as "high 2," while the latter is known as "low 2." See Wiesenfelder v. Riley, 959 F. Supp. 532, 535 (D.D.C. 1997).  In this case, the FBI has asserted Exemption 2 in conjunction with Exemptions 7(D) and (E) to protect specific "high 2" internal investigatory techniques and procedures that cannot, consistent with national security, be

-19-

described further on the public record.[14]  Fifth Hardy Decl. ¶  43.

The withheld information – much of which is also protected under Exemptions 7(D) and (E) – clearly meets the criteria for protection under Exemption 2.  First, the information meets Exemption 2's threshold requirement because it is "predominantly internal," i.e., it is "used for predominantly internal purposes."  Schiller, 964 F.2d at 1207.  The information is "predominantly internal" because these techniques and procedures are internal information relating to law enforcement by the FBI.  See, e.g., Crooker, 670 F.2d at 1073-74 (finding exempt from disclosure ATF training manual on surveillance techniques); Delta Limited v. Customs and Border Protection Bureau, 384 F. Supp. 2d 138, 147-48 (D.D.C. 2005) (finding "procedures, guidelines and techniques utilized by the agency in an operational environment" were predominantly internal and exempt as "high 2" information), vacated in part on other grounds, 393 F. Supp. 2d 15 (D.D.C. 2005).

The disclosure of these techniques and procedures "could enable the targets of  these techniques to avoid detection or develop countermeasures to circumvent the ability of the FBI to effectively use this important national security law enforcement technique."  Fifth Hardy Decl. ¶  43.  More fundamentally, it qualifies as "high 2" information because the FBI has reasonably determined that disclosure of its law enforcement techniques would risk circumvention of counterterrorism law enforcement initiatives.  See id.  See also, e.g., Gordon v. Federal Bureau of Investigation, 388 F. Supp. 2d 1028, 1036-37 (N.D. Cal. 2005) (Exemptions 2 and 7(E) properly invoked over materials created in course of maintenance of terrorist watch lists because terrorists

---

[14]     Such information was redacted on ACLU Bates pages 194, 220-221, 475-4, 512-1 to 512-2, 513-1, 515-3, 515-5, 515-6, 515-23 to 515-25, 515-32 to 515-33, 515-40 to 515-42, 516-1 to 516-5, 516-9 to 516-41, 517-1 to 517-35, and 543.

could educate themselves about watch list procedures and devise ways to circumvent watch lists); Blanton v. U.S. Dep't of Justice, 63 F. Supp. 2d 35, 43 (D.D.C. 1999) (upholding FBI's invocation of Exemption 2 to withhold "information about administrative practices and procedures pertaining to internal functions and policies of the FBI as they relate to the 'use of specialized technical equipment,' the release of which might provide the public 'with insight into the internal handling' of investigations involving race crimes) (internal quotations refer to FBI's Vaughn declaration); Voinche v. Federal Bureau of Investigation, 940 F. Supp. 323, 332 (D.D.C. 1996) (finding proper withholding under Exemptions 2 and 7(E) information relating to the "safety procedures afforded to the Supreme Court and its Justices," among other things); cf. Center for Nat'l Security Studies, 331 F.3d at 928-29 (finding that even information that seems innocuous or trivial in isolation "could be of great use to al Qaeda in plotting future terrorist attacks" because it would allow knowledgeable persons to piece together a "composite picture" of September 11 attacks investigation and enable terrorists to devise countermeasures).

The FBI's predictive judgments about the risks of disclosure in this area are entitled to particular deference because disclosure implicates national security concerns. This is peculiarly within the expertise of the FBI and, thus, requires that the FBI's predictive judgment be afforded heightened deference. Indeed, the D.C. Circuit recently re-emphasized the need for such deference in a similar case involving counterterrorism law enforcement efforts:

> The need for deference in this case is just as strong as in earlier cases. America faces an enemy just as real as its former Cold War foes, with capabilities beyond the capacity of the judiciary to explore. Exemption 7(A) explicitly requires a predictive judgment of the harm that will result from disclosure of information . . . . It is abundantly clear that the government's top counterterrorism officials are well-suited to make this predictive judgment. Conversely, the judiciary is in an extremely poor position to second-guess the executive's judgment in this area of national security.

-21-

Center for Nat'l Security Studies, 331 F.3d at 928.  Just as this mandated deference is required in

the Exemption 7(A) context, it is no less so where, as here, the predictive judgment about a risk

to national security relates to Exemptions 2, 7(D) and 7(E).  See id. ("Judicial deference depends

on the substance of the danger posed by disclosure—that is, harm to national security—not the

FOIA exemption invoked.").

       In light of the judicial deference owed to the FBI's predictive judgment in this area, its

decision to withhold these materials was appropriate.  Indeed, even in cases that do not directly

implicate national security concerns, courts have consistently recognized that these sorts of

withholdings relating to protective law enforcement measures are entirely proper under

Exemption 2 and related FOIA exemptions, such as Exemption 7(E).  See, e.g., Librach v.

Federal Bureau of Investigation, 587 F.2d 372, 373 (8th Cir. 1978) (proper to withhold under

Exemption 7(E) documents pertaining to relocation of a witness because disclosure "would

jeopardize the effectiveness of the Witness Security Program").

       **C.    The FBI Properly Withheld Information Pursuant to Exemption 3.**

       As discussed below, the FBI has properly withheld federal grand jury and tax return

information pursuant to Exemption 3.

       **1.    The Standard Under Exemption 3**

       Exemption 3, 5 U.S.C. § 552(b)(3)(A) & (B), exempts items "specifically exempted from

disclosure by statute . . . provided that such statute requires that the matters be withheld from the

public in such a manner as to leave no discretion on the issue, or establishes particular criteria for

withholding or refers to particular types of matters to be withheld."  In examining an Exemption

3 claim, a court must first determine whether the claimed statute is a statute of exemption under

-22-

FOIA; and, second, whether the withheld material satisfies the criteria of the exemption statute.

See CIA v. Sims, 471 U.S. 159, 167 (1985); A. Michael's Piano, Inc. v. FTC, 18 F.3d 138, 143

(2d Cir.), cert. denied 513 U.S. 1015 (1994); Fitzgibbon v. CIA, 911 F.2d 755, 761 (D.C. Cir.

1990).  Because the threshold issue for the application of Exemption 3 is based on the statute

invoked by the agency, the analysis is distinct from that employed to analyze other FOIA

exemptions.  As the D.C. Circuit has explained, "'Exemption 3 differs from other FOIA

exemptions in that its applicability depends less on the detailed factual contents of specific

documents; the sole issue for decision is the existence of a relevant statute and the inclusion of

withheld material within the statute's coverage.'"  Fitzgibbon, 911 F.2d at 761-62 (quoting

Assoc. of Retired R.R. Workers v. United States R.R. Retirement Bd., 830 F.2d 331, 336 (D.C.

Cir. 1987) and Goland, 607 F.2d at 350.

## 2.    The FBI Has Properly Withheld Federal Grand Jury Information.

The FBI has properly asserted Exemption 3 with respect to the specific federal grand jury

information described in paragraph 45 of the Fifth Hardy Declaration.[15]  Rule 6(e) of the Federal

Rules of Criminal Procedure provides that:

> A grand juror, an interpreter, a stenographer, an operator of a recording device, a typist
> who transcribes recorded testimony, an attorney for the government, or [other government

---

[15]    Exemption 3 has been asserted over redacted information on ACLU Bates pages
86 (FBI document regarding grand jury subpoena issued to major corporation to provide
subscriber information for a specific phone number); 162 (write-up dated 8/28/00 regarding
convening of federal grand jury with regard to third-party individual); 187 (chart listing
investigations being conducted by FBI Field offices and containing grand jury information on
third party individuals and groups); 189-1 to 189-9 (analysis of surveillance on a particular house
from, including surveillance of persons being called for grand jury); 190 (grand jury information
related to domestic terrorism activities); and 313-1 to 313-7 (private corporation response to
federal grand jury subpoena).  See Fifth Hardy Decl. ¶ 47.

personnel to whom disclosure is authorized] shall not disclose matters occurring before the grand jury, except as provided for in these rules.

Congress has adopted Rule 6(e) by legislation. See Fund for Constitutional Gov't, 656 F.2d at 867, referencing Pub. L. No. 95-78 §2(a), 91 Stat. 319 (1977). Thus, although rules of procedure promulgated by the Supreme Court generally do not qualify as "statutes" for purposes of FOIA exemption 3 (Founding Church of Scientology v. Bell, 603 F.2d 945, 952 (D.C. Cir. 1979)), Rule 6(e) is an Exemption 3 statute. Fund for Constitutional Gov't, 656 F.2d at 868.

The scope of Rule 6(e) is necessarily broad. It covers not only actual transcripts of proceedings, but also "information which would reveal 'the identities of witnesses [and] jurors, the substance of testimony, the strategy or direction of the investigation, the deliberations or questions of the jurors, and the like.'" Fund for Constitutional Government, 565 F.2d at 869, quoting SEC v. Dresser Industries, Inc., 628 F.2d at 1382. The rule plainly covers the grand jury information over which the FBI has asserted the Exemption, as described by Mr. Hardy. See Fifth Hardy Decl. ¶ 45.

### 3.    The FBI Has Properly Withheld Taxpayer Information.

The FBI has also properly asserted Exemption 3 over tax returns and other taxpayer information pursuant to Section 6103 of the Internal Revenue Code, which is a non-disclosure statute within the meaning of Exemption 3.[16] Tax Analysts v. IRS, 117 F.3d 607, 611 (D.C. Cir. 1997); Aronson v. IRS, 973 F.2d 962, 964 (1st Cir. 1992) (Breyer, C.J.). Section 6103 provides generally that tax "[r]eturns and return information shall be confidential" and are not to be disclosed except as specifically authorized under the Internal Revenue Code. 26 U.S.C.

---

[16]    Such information has been redacted on ACLU Bates pages 159-14 to 159-38.

§ 6103(a).  Therefore, the Code's prohibition on disclosure of tax information covers the documents at issue here, including PETA's FY 2001 schedule of donations (ACLU Bates pages 159-14 to 159-22), PETA's book asset detail from 1988 through 2001 (ACLU Bates pages 159-23 to 159-25), and tax information concerning another group, FUR Commission.com (ACLU Bates pages 159-26 to 159-38).  See Fifth Hardy Decl. ¶ 46.

### D.    The FBI Properly Withheld Information Pursuant to Exemption 5.

FOIA Exemption (b)(5) exempts from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party . . . in litigation with the agency."  5 U.S.C. § 552(b)(5).  Exemption (b)(5) incorporates the privileges available to an agency in civil litigation, including those applicable in this case—namely, the deliberative process privilege and the attorney-client privilege.  See Nat'l Labor Relations Bd. v. Sears, Roebuck & Co., 421 U.S. 132, 149 (1975); see also Renegotiation Bd. v. Grumman Aircraft Eng'g Corp., 421 U.S. 168, 184 (1975); Tigue v. DOJ, 312 F.3d 70, 76 (2d Cir. 2002), cert. denied 538 U.S. 1056 (2003).  "'Stated simply, agency documents which would not be obtainable by a private litigant in an action against the agency under normal discovery rules (e.g., attorney-client, work-product, executive privilege) are protected from disclosure under Exemption 5.'"  Tigue, 312 F.3d at 76 (quoting Grand Central Partnership, 166 F.3d at 481).

### 1.    The FBI Properly Invoked the Deliberative Process Privilege.

Documents covered by the deliberative process privilege include those "reflecting advisory opinions, recommendations and deliberations comprising part of a process by which government decisions and policies are formulated."  Nat'l Labor Relations Bd. , 421 U.S. at 150.  As the Supreme Court has explained:

> The deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance the quality of agency decisions by protecting open and frank discussion among those who make them within the Government.

Department of the Interior, 532 U.S. at 8-9 (internal quotation marks and citations omitted).

"[E]fficiency of Government would be greatly hampered if, with respect to legal and policy matters, all Government agencies were prematurely forced to 'operate in a fishbowl.'" EPA v. Mink, 410 U.S. 73, 87 (1973) (abrogated by statute on other grounds, Pub. Law No. 93-502, 88 Stat. 1561 (1974)).

An agency record must satisfy three conditions to qualify for the deliberative process privilege. It must be "inter-agency or intra-agency," 5 U.S.C. § 552(b)(5), and it "must be both 'predecisional' and 'deliberative.'" Grand Central Partnership v. Cuomo, 166 F.3d 473, 482 (2d Cir. 1999) (citations omitted). See also Hopkins v. HHS, 929 F.2d 81, 84 (2d Cir. 1991); Local 3, Int'l Brotherhood of Elec. Workers v. NLRB, 845 F.2d 1177, 1180 (2d Cir. 1988). A record is "predecisional" when it is "prepared in order to assist an agency decisionmaker in arriving at his decision." Renegotiation Board, 421 U.S. at 184; (cited in Grand Central P'ship, 166 F.3d at 482); see also Schell v. United States Dep't of Health and Human Servs., 843 F.2d 933, 940 (6th Cir. 1988) ("A document is predecisional when it is 'received by the decisionmaker on the subject of the decision prior to the time the decision is made.'") (citation omitted). "To establish that a document is predecisional, the agency need not point to an agency final decision, but merely establish what deliberative process is involved, and the role that the documents at issue played in that process." Judicial Watch v. Export-Import Bank, 108 F. Supp. 2d 19, 35 (D.D.C. 2000) (citing Formaldehyde Inst. v. HHS, 889 F.2d 1118, 1223 (D.C. Cir. 1989)). A record is

-26-

"deliberative" when "it reflects the give-and-take of the consultative process." Wolfe v.

Department of Health and Human Servs., 839 F.2d 768, 774 (D.C. Cir. 1988) (citation and

internal quotation marks omitted) (en banc).

"There should be considerable deference to the [agency's] judgment as to what

constitutes . . . 'part of the agency give-and-take—of the deliberative process—by which the

decision itself is made.'" Chemical Mfrs. Ass'n v. Consumer Prod. Safety Comm'n, 600 F.

Supp. 114, 118 (D.D.C. 1984) (quoting Vaughn v. Rosen, 523 F.2d 1136, 1144 (D.C. Cir.

1975)). The agency is best situated "to know what confidentiality is needed 'to prevent injury to

the quality of agency decisions . . . .'" Chemical Mfrs., 600 F. Supp. at 118 (quoting Nat'l Labor

Relations Bd. , 421 U.S. at 151).

In this case, the FBI properly determined that the withheld documents (or portions of

documents) are both pre-decisional and deliberative.[17] Specifically, the withheld material reflects

FBI drafts, see, e.g., ACLU Bates pages 14-32, 133-139, & 193-6 - 193-15, including draft

answers to questions posed to the FBI and draft internal memoranda, and internal emails that

contain federal employees' discussions, deliberations, and preliminary opinions as they discuss

"(1) case-related questions regarding the use of certain investigatory tools in intelligence cases

(2) requests for legal advice regarding the use of such tools, and (3) the development of

procedures for implementing such investigatory tools." Fifth Hardy Decl. ¶ 51. See, e.g.,

---

[17]    The FBI has redacted information pursuant to the deliberative process privilege on
ACLU Bates pages 14 to 32, 50 to 51, 56, 59, 62 to 63, 76 to 77, 131, 133-139, 193-5 to 193-15,
255 to 256, 273, 276, 279 to 280, 282, 284 to 285, 515-12 to 515-17, 516-7 to 516-8, 660 to 669,
961, 963, 1055, and 1072

ACLU Bates pages 255-256, 262, 265, 267, 271, 273, 276, 279-280, 284-286 292, 294-297.  As attested to by Mr. Hardy, these documents are all predecisional and deliberative.  Id. ¶ 52.

The categories of withheld documents set forth above, and described in more detail in the Fifth Hardy Declaration, generally qualify as deliberative in nature and exempt from withholding. Thus, for example, "[d]raft documents, by their very nature, are typically predecisional and deliberative." Exxon Corp. v. Dep't of Energy, 585 F. Supp. 690, 698 (D.D.C. 1983).  See also Grand Central Patnerships, Inc., 166 F.3d at 482 ("The privilege protects recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency.") (internal citations and quotations omitted); Dudman Communications Corp. v. Dep't of the Air Force, 815 F.2d 1565, 1568-69 (D.C. Cir. 1987); City of Virginia Beach v. U.S. Dep't of Commerce, 995 F.2d 1247, 1253 (4th Cir. 1993); Town of Norfolk v. U.S. Army Corps of Engineers, 968 F.2d 1438, 1458 (1st Cir. 1992).  This is because the process by which a draft evolves into the final version of a document is *inherently* predecisional and deliberative.  See, e.g., Dudman, 815 F.2d at 1569 (disclosure of "decisions to insert or delete material or to change a draft's focus or emphasis – would stifle the creative thinking and candid exchange of ideas necessary to produce good historical work"); see also Russell v. Dep't of the Air Force, 682 F.2d 1045, 1048 (D.C. Cir. 1982) (recognizing that disclosure of draft manuscript "could lead to confusion of the public").

Comments and suggestions on drafts are also predecisional and deliberative as they constitute agency employees' thoughts with respect to how the draft can be improved, as opposed to the agency's final decision, which is reflected in the final version of the document at issue, if any such final version exists.  See, e.g., City of Virginia Beach, 995 F.2d at 1253 (deliberative

process "protects 'recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency'") (quoting <u>Coastal States Gas Corp. v. Department of Energy</u>, 617 F.2d 854, 866 (D.C. Cir. 1980)); <u>Tigue</u>, 312 F.3d at 80.  By the same token, discussion and debate over email "reflects the give-and-take of the consultative process" by which agency decisions are made. <u>Coastal States Gas Corp.</u>, 617 F.2d at 866.

Plans, proposals and briefing papers, <u>see</u>, <u>e.g.</u>, ACLU Bates pages 50-51, also generally constitute privileged deliberative material.  Such papers are typically prepared to assist decisionmakers in making decisions or in communicating those decisions to the public and the press.  Disclosure of "work plans, status reports, briefings, opinion papers, and proposals" would "stifle the candor necessary in an agency's policy making process."  <u>Hornbostel v. Department of the Interior</u>, 305 F. Supp. 2d 21, 31 (D.D.C. 2003); <u>see also</u> <u>Access Reports v. Department of Justice</u>, 926 F.2d 1192, 1195-97 (D.C. Cir. 1991) (memorandum regarding "study of how to shepherd the FOIA bill through Congress" protected, as are "communications . . . contributing to deliberations about whether to introduce legislation"); <u>Hunt v. U.S. Marine Corps</u>, 935 F. Supp. 46, 52 (D.D.C. 1996) ("point papers" prepared in the "midst of [agency's] deliberative process to assist officers in their formulation of a final decision" exempt from disclosure).

### 2.    The FBI Properly Invoked The Attorney-Client Privilege.

The FBI has also applied Exemption 5 to withhold information protected by the attorney-client privilege.[18]  Fifth Hardy Decl. ¶¶ 53-54.  The purpose of the attorney-client privilege is "to

---

[18]    The FBI asserted the attorney-client privilege to redact information on ACLU Bates pages 255 to 256, 273 and 276.

encourage full and frank communication between attorneys and their clients," and thereby encourage "the observance of law and administration of justice." Upjohn Co. v. United States, 449 U.S. 383, 389 (1981). It is one of the oldest recognized privileges for confidential communications. Id.

Documents withheld by the FBI subject to the attorney-client privilege include internal emails, drafts, and memoranda of understanding reflecting attorney advice, opinions, and recommendations offered at FBI employees' request by FBI attorneys under an expectation of confidentiality. See Fifth Hardy Decl. ¶ 54. Because FBI officials and Agents were dealing with their "attorneys as would any private party seeking advice," Coastal States Gas Corp., 617 F.2d at 863, these records are protected by the attorney-client privilege and were properly withheld under Exemption 5.

E.      The FBI Properly Withheld Information Pursuant to Exemption 6.

The FBI withheld the names and/or identifying information of third-parties pursuant to Exemption 6, which protects "personnel or medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(6), in conjunction with Exemption 7. The Supreme Court has held that, regardless of the title of the file, Exemption 6 "[was] intended to cover detailed government records on an individual which can be identified as applying to that individual." United States Dep't of State v. Washington Post Co., 456 U.S. 595, 602 (1982).

The Supreme Court's broad construction of "similar files" effectuates Congress's primary purpose in enacting Exemption 6 – "to protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information." Id. at 599. An agency

may, therefore, protect personal information under Exemption 6, so long as the information is in a government file and "applies to a particular individual." Id. at 602; see also New York Times Co. v. NASA, 920 F.2d 1002, 1006 (D.C. Cir. 1990) (en banc). This "minimal" threshold "ensures that FOIA's protection of personal privacy is not affected by the happenstance of the type of agency record in which personal information is stored." Washington Post Co. v. HHS, 690 F. 2d 252, 259 (D.C. Cir. 1982).

Exemption 6 requires an agency to balance the individual's right to privacy against the public's interest in disclosure. See United States Dep't of the Air Force v. Rose, 425 U.S. 352, 372 (1976). The agency must determine whether disclosure of the information threatens a protectible privacy interest; if so, the agency must weigh that privacy interest against the public interest in disclosure, if any. See Reed v. NLRB, 927 F.2d 1249, 1251 (D.C. Cir. 1991), cert. denied, 502 U.S. 1047 (1992).

The Supreme Court has also adopted a broad construction of the privacy interests protected by Exemption 6. In United States Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 763 (1989), the Court rejected a "cramped notion of personal privacy" under the FOIA's exemptions and instead emphasized that "privacy encompass[es] the individual's control of information concerning his or her person." More specifically, the Court noted that "[p]rivacy is the claim of individuals . . . to determine for themselves when, how, and to what extent information about them is communicated to others." Id. at 764 n.16 (citation omitted).[19] Privacy is of particular importance in the FOIA context because a disclosure required

---

[19]Although Reporters Committee was decided under Exemption 7(C), 5 U.S.C. § 552(b)(7)(C), which concerns privacy interests in law enforcement records, the definition of the public interest to be considered is the same as for Exemption 6. See Reed, 927 F.2d at 1251

by the FOIA is a disclosure to the public at large.  See Painting & Drywall Work Preservation

Fund, Inc. v. HUD, 936 F.2d 1300, 1302 (D.C. Cir. 1991) (finding that if information "must be

released to one requester, it must be released to all, regardless of the uses to which it might be

put").

　　　　The FBI properly invoked Exemption 6, in conjunction with Exemption 7(C) (discussed

infra), to protect personal information that is of no relevance to an understanding of FBI

activities.  Specifically, the FBI invoked Exemption 6 to protect the names of third parties

contained in various internal communications regarding individuals who are the subjects of  law

enforcement investigations or who provided information regarding these investigations,[20] see

Fifth Hardy Decl. ¶  57, and to protect the names of third parties not of investigative interest to

_____

(noting that Reporters Committee is controlling in the Exemption 6 context as well, citing
National Ass'n of Retired Fed. Employees v. Horner, 879 F.2d 873, 874 (D.C. Cir. 1989), cert.
denied, 494 U.S. 1078 (1990)).

[20]　　　Such names were redacted on ACLU Bates pages 1, 2, 5, 6, 7-1 to 7-5, 7-7 to 7-
22, 19, 62, 79-1 to 79-2, 80-1 to 80-5, 81-1 to 81-2, 82-1 to 82-4, 83-1 to 83-4, 84-1 to 84-2, 85-1
to 85-8, 88, 93 to 95, 97, 98, 100 to 103, 121 to 128, 134, 138, 139, 145 to 147, 155, 162, 168,
170 to 175, 177-2, 179 to 181, 187, 189-1 to 189-9, 190 to 192, 193-5 to 193-11, 193-16, 194 to
196, 199, 220 to 222, 229 to 243, 249, 250, 253, 260, 262, 267, 271, 286, 294 to 297, 300, 301,
304-1 to 304-7, 311, 313-1 to 313-7, 475-1 to 475-5, 501, 502, 512-1, 512-2, 513-1, 515-3, 515-
14, 515-16, 515-19 to 515-24, 515-26 to 515-32, 515-40 to 515-42, 516-1, 516-10 to 516-26,
516-28 to 516-30, 516-32, 516-33, 516-35 to 516-41, 517-1 to 517-4, 517-6, 517-7, 517-9 to
517-12, 517-14, 517-16 to 517-19, 517-21 to 517-35, 518-36 to 518-42, 518-44, 519-3, 521-34,
521-35, 525-3, 529, 536, 555, 557, 599, 622 to 624, 659 to 669, 685, 690, 693, 694, 730, 731,
738, 739, 741 to 758, 792, 793, 795 to 821, 949 to 953, 955, 956, 961, 963, 1055 to 1058, 1061
to 1063, 1126 to 1147, 1149 to 1170, 1172 to 1187, 1207 to 1226, 1249 to 1257, 1335-1 to 1335-
11, 1478 to 1480, 1482-14 to 1482-20, 1712 to 1715, 1797 to 1802, 1809 to 1812, 1896-3,  2003-
1 to 2003-5, 2003-7, 2003-9 to 2003-17, 2003-21, 2003-23 , 2003-25 to 2003-31,  2003-37,
2003-38, 2003-40 to 2003-44, 2004-1, 2004-2, 2004-4 to 2004-10, 2127 to 2130, 2130a, 2131,
2131a, 2132 to 2148, and 2150.

the FBI but who are merely mentioned in internal communications regarding individuals who *are* the subjects of law enforcement investigations,[21] see Fifth Hardy Decl. ¶ 59.

It is axiomatic that anything that would associate a third party with a criminal or national security investigation would invade the third party's privacy and damage his reputation.  Cf. Reporters Committee, 489 U.S. at 772-773 (revealing the existence of a criminal law enforcement record implicates the privacy interests of third parties about whom an agency receives a FOIA request).  Individuals have a "strong interest . . . in not being associated unwarrantedly with alleged criminal activity."  Fizgibbon v. CIA, 911 F. 2d 755, 767 (D.C. Cir. 1990). Indeed, "an individual whose name surfaces in connection with an investigation may, without more, become the subject of rumor and innuendo."  Cong. News Syndicate v. DOJ, 438 F. Supp. 538, 541 (D.D.C. 1997).  Those whose names may surface in an investigation, even if they are not targets, have a strong privacy interest:  "[p]ersons involved in [FBI] investigations – even if they are not the subject of the investigation – have a substantial interest in seeing that their participation remains secret."  Quinon v. FBI, 86 F. 3d 1222, 1230 (D.C. Cir. 1996) (internal citations omitted).  See also, e.g., Nation Magazine v. U.S. Customs Serv., 71 F. 3d 885, 896 (D.C. Cir. 1995) (portions of law enforcement investigatory records that would reveal subjects, witnesses, and/or informants are categorically exempt from disclosure under FOIA). See also Fifth Hardy Decl. ¶¶ 57, 59 (discussing individuals' privacy interests).

---

[21]    Such names were redacted on ACLU Bates pages 7-1 to 7-5, 7-7 to 7-22, 19, 62, 79-1 to 79-2, 80-1 to 80-5, 81-1 to 81-2, 82-1 to 82-4, 83-1 to 83-4, 84-1 to 84-2, 85-1 to 85-8, 88, 300, 301, 304-1 to 304-7, 311, 313-3 to 313-7, 475-1 to 475-5, 501, 502, 515-1, 515-3, 515-4, 515-11, 515-14, 515-16, 515-23, 515-24, 515-26 to 515-32, 515-38, 515-40 to 515-42, 516-1, 516-9 to 516-30, 516-32  to 516-41, 517-1 to 517-15, 517-17 to 517-35, 518-36 to 518-44, 519-3, 519-9, 521-34, 521-35, 555, 557, 624, 1173, 1177, 1478 to 1479, 1715, 1797 to 1799, 1801, 1802, 2004-5, 2004-10, 2127 to 2130, 2130a, 2131, 2131a, 2132 to 2141, 2148, and 2150.

Plaintiffs bear the burden of demonstrating that disclosure of names in FBI investigatory files would serve the public interest and would outweigh the established privacy interests of these third-parties.  See Carter v. Dep't of Commerce, 830 F.2d 388, 391-92 nn.8 & 13 (D.C. Cir. 1987).  The only relevant issue in the public interest inquiry is "the extent to which disclosure would serve the core purpose of the FOIA, which is contributing significantly to public understanding of the operations or activities of the government."  U.S. Dep't of Defense v. FLRA, 510 U.S. 487, 495 (1994) (internal quotation marks and citation omitted).  To date, plaintiffs have adduced nothing to meet this burden.

Against the significant privacy interests of third-parties whose names appear in FBI files, Mr. Hardy has weighed any public interest in the information and has concluded that the balance overwhelmingly favors non-disclosure.  See Fifth Hardy Decl. ¶¶ 58, 60.  The public interest purpose of the FOIA is "not fostered by disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct."  Reporters Committee, 489 U.S. at 773.  Because the focus of the FOIA is "on the citizens' right to be informed about what their government is up to," see id., an agency analyzes the public interest for Exemption 6 purposes by considering "the nature of the requested document and its relationship to the basic purpose of the Freedom of Information Act to open agency action to the light of public scrutiny."  Id. at 772.  When the subject of the information requested under the FOIA is a private citizen and "when the information is in the Government's control as a compilation, rather than as a record of 'what the Government is up to,' the privacy interest . . . is in fact at its apex while the FOIA-based public interest in disclosure is at its nadir."  Id. at 780.

-34-

The specific names of third parties provides no insight into what the agency was "up to." Information of the nature described in the supporting declaration is irrelevant to the work of the agency and cannot be said to "reveal [anything] about an agency's own conduct." See Reporters Committee, 489 U.S. at 773. The lack of public interest in the disclosure of the personal information of individuals cannot outweigh the substantial privacy interests at stake. "[S]omething, even a modest privacy interest, outweighs nothing every time." National Ass'n of Retired Federal Employees, 879 F.2d 873, 879.

The FBI has properly invoked Exemption 6 to withhold the names of third parties in its records and, accordingly, is entitled to summary judgment on all Exemption 6 redactions.

### F.    The FBI Properly Withheld Information Pursuant to Exemption 7.

Exemption 7 of FOIA, as amended, protects from disclosure "records or information compiled for law enforcement purposes" when they meet specified criteria. As Mr. Hardy verified, all the records in this case discussed below over which the FBI has asserted Exemption 7 meet this threshold requirement because they "were compiled for criminal law enforcement purposes during the course of the FBI's performance of its law enforcement mission, including the investigation of criminal activities, and of preventing and deterring terrorist attacks within the United States and around the world, and reducing the vulnerability of the United States to terrorism." Fifth Hardy Decl. ¶ 62.

### 1.    The FBI Properly Withheld Information That Could Reasonably Be Expected to Interfere With Law Enforcement Proceedings Pursuant to Exemption 7(A).

Exemption 7(A) of the FOIA authorizes the withholding of "records or information compiled for law enforcement purposes, but only to the extent that production of such law

-35-

enforcement records or information . . . could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A).  To satisfy its burden justifying the applicability of this Exemption, the government need only demonstrate that (1) a law enforcement proceeding is pending *or* prospective, and (2) release of the information could reasonably be expected to cause some articulable harm to the proceeding.  Voinche v. Federal Bureau of Investigation, 46 F. Supp. 2d 26, 31 (D.D.C. 1999).

With respect to the showing of harm to a law enforcement proceeding required to invoke Exemption 7(A), courts have long accepted that Congress intended the Exemption to apply whenever the government's case could be harmed by the premature release of evidence or information, *or* when disclosure could impede any necessary investigation prior to the enforcement proceeding.  See, e.g., National Labor Relations Bd. v. Robbins Tire and Rubber Co., 437 U.S. 214, 232 (1978) ("[T]he release of information in investigatory files prior to the completion of an actual, contemplated enforcement proceeding was precisely the kind of interference that Congress continued to want to protect against.").

Moreover, the Government's burden in demonstrating interference with law enforcement proceedings under Exemption 7(A) has been significantly relaxed by Congress.  Section 552(b)(7)(A) originally provided for the withholding of information that "*would* interfere with enforcement proceedings," but the Freedom of Information Reform Act of 1986 amended that language and replaced it with the phrase "*could reasonably be expected to* interfere with" enforcement proceedings.  See Pub. L. No. 99-570 § 1802, 100 Stat. 3207, 3207-48 (emphasis added).  Courts have repeatedly recognized that this change in the statutory language substantially broadens the scope of the exemption.  See, e.g., Manna v. DOJ, 51 F.3d 1158, 1164

n.5 (3d Cir. 1995) (purpose of 1986 amendment was "to relax significantly the standard for demonstrating interference with enforcement proceedings"); Alyeska Pipeline Service Co. v. Environmental Protection Agency, 856 F.2d 309, 311 n.18 (D.C. Cir. 1988) (holding that district court's improper reliance on pre-amendment version of Exemption 7(A) "required EPA to meet a higher standard than FOIA now demands").

Finally, it is well-established that the applicability of Exemption 7(A) may be demonstrated generically, based on the category of records involved, rather than on a document-by-document basis.  See Robbins Tire, 437 U.S. at 236.  Thus, courts have routinely accepted affidavits in Exemption 7(A) cases that specify the distinct, generic categories of documents at issue and the harm that could result from their release, rather than requiring extensive, detailed itemizations of each document.  See, e.g., Spannuaus v. DOJ, 813 F.2d 1285, 1288 (4th Cir. 1987) ("The Supreme Court has rejected the argument that [Exemption 7(A)] requires particularized showings of interference, holding instead that the Government may justify nondisclosure in a generic fashion."); see also  Solar Sources, Inc. v. United States, 142 F.3d 1033, 1037 (7th Cir. 1998) ("The Government need not establish that release of a particular document would *actually* interfere with an enforcement proceeding," but rather that "with respect to particular *kinds* of enforcement proceedings, disclosure of particular *kinds* of investigatory records while a case is pending would *generally* interfere with enforcement proceedings.") (first emphasis in original and subsequent emphases added) (quoting Robbins Tires, 437 U.S. at 236).

The Fifth Hardy Declaration amply satisfies the FBI's Exemption 7(A) burden.  As Mr. Hardy explains, the information over which the FBI has asserted Exemption 7(A)[22] is contained within "a series of internal communications which represent discussions between FBI attorneys and FBI SAs regarding case-related issues arising in various pending investigations," specifically including discussion of "the names of the subjects of pending investigations and the details concerning these investigations."  Fifth Hardy Decl. ¶ 65.  It is easy to see, and Mr. Hardy has explained, how the release of such information would "generally interfere with enforcement proceedings[.]"  See Solar Souces, 142 F.3d at 1037.  Premature release of the names of the targets of ongoing investigations "could reach the individuals who are under investigation [and] allow these individuals to critically analyze the information in the documents pertinent to the investigation of themselves."  Fifth Hardy Decl. ¶ 67.  Similarly, release of the details of a pending investigation could lead to that information reaching the target of the investigation, and such individuals would "possess the unique advantage of knowing the details surrounding the investigation, the identities of potential witnesses, direct and circumstantial evidence, etc., and could use the released information to their advantage."  Id.  In addition, "the release of this information to third parties not directly involved in these matters could allow these third parties to interfere with the pending proceedings by harassment, intimidations, and creation of false evidence dispensing facts discussed during the FBI's investigation."  Id. ¶ 68.  A target's knowledge of where to focus his efforts at evading law enforcement would plainly interfere with

---

[22]    Such information has been redacted on ACLU Bates pages 93 to 98, 124, 141-153, 155-158, 162, 195, 221, 299-302, 305-1, 515-2, 515-5 to 515-9, 515-23, 515-24, 515-26, 515-27, 515-32 to 515-34, 515-36, 515-38 to 515-42, 516-3 to 516-6, 516-9 to 516-41, 517-1 to 517-35, 518-35, 518-43, 545, 956, 1057, 1058, 2003-1, 2003-2, 2003-4 to 2003-44, and 2004-1 to 2004-10.

the FBI's law enforcement mission.  For this reason, courts have consistently upheld the applicability of Exemption 7(A) when disclosure could reveal the scope, direction, or nature of a law enforcement investigation or allow suspects to elude detection.  See e.g., Solar Sources, 142 F.3d at 1039 (holding that records related to criminal price-fixing investigation were properly exempt under 7(A) because disclosure could have resulted in "destruction of evidence, chilling and intimidation of witnesses, and revelation of the scope and nature of the Government's investigation"); Kay v. Federal Communications Comm'n, 976 F. Supp. 23, 39 (D.D.C. 1997) (records exempt under 7(A) because disclosure could "reveal the scope, direction, and nature" of the investigation, and could thereby allow the target to potentially circumvent the proceeding).

For these reasons, the Court should grant summary judgment for the FBI as to all its Exemption 7(A) withholdings.

### 2.    The FBI Properly Withheld Information Identifying Third Parties Pursuant to Exemption 7(C).

Exemption 7(C) protects from disclosure "records or information compiled for law enforcement purposes" to the extent that the disclosure of law enforcement records or information "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).[23]  In applying Exemption 7(C), a court should "balance the privacy interests that would be compromised by disclosure against the public interest in release of the requested information."  Davis v. DOJ, 968 F.2d 1276, 1281 (D.C. Cir. 1992).  However, here as under Exemption 6, courts recognize the considerable stigma inherent in being associated with law enforcement proceedings and accordingly "do[] not require a balance tilted

---

[23] The Freedom of Information Reform Act of 1986 changed the language in this exemption from "would constitute" to "could reasonably be expected to constitute."

emphatically in favor of disclosure" when reviewing a claimed 7(C) exemption.  Bast v. DOJ,

665 F.2d 1251, 1254 (D.C. Cir. 1981).  Courts have also construed the public interest component

narrowly, noting that the public interest "must be assessed in light of FOIA's central purpose,"

which, as under Exemption 6, "is not fostered by disclosure about private individuals that is

accumulated in various government files but that reveals little or nothing about an agency's

conduct."  Nation Magazine, 71 F.3d at 894 (quotation marks and citation omitted).

    The FBI properly invoked Exemption 7(C), typically in conjunction with Exemption 6

(discussed supra), to protect personal information that is of no relevance to an understanding of

FBI activities.  Specifically, the FBI invoked Exemption 7(C) over the names of third parties

contained in various internal communications regarding individuals who are the subjects of  law

enforcement investigations or who provided information regarding these investigations,[24] see

Fifth Hardy Decl. ¶  72, and over the names of third parties not of investigative interest to the

FBI but who are merely mentioned in internal communications regarding individuals who *are* the

---

[24]    Such names were redacted on ACLU Bates pages 1, 2, 5, 6, 7-1 to 7-5, 7-7 to 7-22, 19, 62, 79-1 to 79-2, 80-1 to 80-5, 81-1 to 81-2, 82-1 to 82-4, 83-1 to 83-4, 84-1 to 84-2, 85-1 to 85-8, 88, 93 to 95, 97, 98, 100 to 103, 121 to 128, 134, 138, 139, 145 to 147, 155, 162, 168, 170 to 175, 177-2, 179 to 181, 187, 189-1 to 189-9, 190 to 192, 193-5 to 193-11, 193-16, 194 to 196, 199, 220 to 222, 229 to 243, 249, 250, 253, 260, 262, 267, 271, 286, 294 to 297, 300, 301, 304-1 to 304-7, 311, 313-1 to 313-7, 475-1 to 475-5, 501, 502, 512-1, 512-2, 513-1, 515-3, 515-14, 515-16, 515-19 to 515-24, 515-26 to 515-32, 515-40 to 515-42, 516-1, 516-10 to 516-26, 516-28 to 516-30, 516-32, 516-33, 516-35 to 516-41, 517-1 to 517-4, 517-6, 517-7, 517-9 to 517-12, 517-14, 517-16 to 517-19, 517-21 to 517-35, 518-36 to 518-42, 518-44, 519-3, 521-34, 521-35, 525-3, 529, 536, 555, 557, 599, 622 to 624, 659 to 669, 685, 690, 693, 694, 730, 731, 738, 739, 741 to 758, 792, 793, 795 to 821, 949 to 953, 955, 956, 961, 963, 1055 to 1058, 1061 to 1063, 1126 to 1147, 1149 to 1170, 1172 to 1187, 1207 to 1226, 1249 to 1257, 1335-1 to 1335-11, 1478 to 1480, 1482-14 to 1482-20, 1712 to 1715, 1797 to 1802, 1809 to 1812, 1896-3,  2003-1 to 2003-5, 2003-7, 2003-9 to 2003-17, 2003-21, 2003-23 , 2003-25 to 2003-31,  2003-37, 2003-38, 2003-40 to 2003-44, 2004-1, 2004-2, 2004-4 to 2004-10, 2127 to 2130, 2130a, 2131, 2131a, 2132 to 2148, and 2150.

subjects of law enforcement investigations,[25] see Fifth Hardy Decl. ¶ 74. Such information is properly withheld under Exemption 7(C).

As discussed supra, the third parties identified in the FBI's law enforcement records have a significant privacy interest in not being identified with FBI investigations. See, e.g., Fitzgibbon, 911 F.2d at 767; Schiffer v. FBI, 78 F. 3d 1405, 1410 (9th Cir. 1996); Quinon, 86 F. 3d 1222, 1230. Since the privacy concerns addressed by Exemption 7(C) are present, the Court must determine whether those privacy concerns outweigh the public interest in disclosure, i.e., whether disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(7)(C), and therefore whether the requested documents are protected under FOIA. There is no public interest at issue here which outweighs the third parties' privacy interests. See Fifth Hardy Decl. ¶¶ 73, 75. Indeed, "this Circuit has established a *categorical* rule that an agency must exempt from disclosure the names of and identifying information about private individuals appearing in an agency's law enforcement files unless that information is necessary to confirm or refute compelling evidence that the agency is engaged in illegal activity." AFL-CIO v. FEC, 177 F. Supp. 2d 48, 61 (D.D.C. 2001) (emphasis in original); see also Mack v. Dep't of Navy, 259 F. Supp. 2d 99, (D.D.C. 2003) ("our court of appeals has categorically held that the names and addresses of private individuals appearing in law enforcement files are exempt from disclosure unless they are necessary to confirm or refute

---

[25]     Such names were redacted on ACLU Bates pages 7-1 to 7-5, 7-7 to 7-22, 19, 62, 79-1 to 79-2, 80-1 to 80-5, 81-1 to 81-2, 82-1 to 82-4, 83-1 to 83-4, 84-1 to 84-2, 85-1 to 85-8, 88, 300, 301, 304-1 to 304-7, 311, 313-3 to 313-7, 475-1 to 475-5, 501, 502, 515-1, 515-3, 515-4, 515-11, 515-14, 515-16, 515-23, 515-24, 515-26 to 515-32, 515-38, 515-40 to 515-42, 516-1, 516-9 to 516-30, 516-32 to 516-41, 517-1 to 517-15, 517-17 to 517-35, 518-36 to 518-44, 519-3, 519-9, 521-34, 521-35, 555, 557, 624, 1173, 1177, 1478 to 1479, 1715, 1797 to 1799, 1801, 1802, 2004-5, 2004-10, 2127 to 2130, 2130a, 2131, 2131a, 2132 to 2141, 2148, and 2150.

compelling evidence of illegal agency activity"); Schiffer, 78 F. 3d at 1410 (recognizing "little to no" public interest in disclosure of persons in FBI file where no evidence of FBI wrongdoing). Plaintiffs have not advanced any public interest that would meet this rigorous standard.[26]

Accordingly, the Court should grant summary judgment for the FBI as to all of its Exemption 7(C) withholdings.

### 3.    The FBI Properly Withheld Confidential Source Information Pursuant to Exemption 7(D).

Informants are entitled to the protection of 5 U.S.C. § 552(b)(7)(D), which permits the withholding or redacting of law enforcement records the release of which "could reasonably be expected to disclose the identity of a confidential source . . . and, in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation . . . information furnished by a confidential source." Unlike 7(C), exemption 7(D) requires no balancing of public and private interests. See Dow Jones & Co. v. U.S. Dep't of Justice, 917 F.2d 571, 575-76 (D.C. Cir. 1990). The exemption applies if the agency establishes that a source has provided information under either an express or implied promise of confidentiality. See Williams v. FBI, 69 F.3d 1155, 1159 (D.C. Cir. 1995). A confidential source is one who "provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred." U.S. Department of Justice v. Landano, 508 U.S. 165, 172 (1993) (internal quotation and citation omitted).

---

[26]  A stated interest in the government's conduct with respect to a particular requester does not suffice to show a public interest because it "is simply not very probative of an agency's behavior or performance." SafeCard Serv., Inc. v. SEC, 926 F.2d 1197, 1205 (D.C. Cir. 1991). Cf. National Archives and Records Admin. v. Favish, 124 S. Ct. 1570, 1581 (2004) (discussing plaintiffs' burden under Exemption 7(C)).

In this case, the FBI has asserted Exemption 7(D) "to withhold names, identifying information and data provided to the FBI by commercial or non-governmental entities with an 'express' assurance of confidentiality,"[27] Fifth Hardy Decl. ¶ 78, "to withhold information provided to the FBI by commercial or non-governmental entities under circumstances from which an assurance of confidentiality may be implied,"[28] Id. ¶ 79, and " to withhold information compiled and provided to the FBI by local, county or state law enforcement agencies under an express grant of confidentiality,"[29] id. ¶ 80. The FBI has released as much segregable information as possible while still protecting the confidential sources' identities. Id. ¶¶ 78-80.

As to those sources with whom an agreement of confidentiality is implied, not express, Mr. Hardy explained that "[i]t is only with the understanding of complete confidentiality that the aid of these sources can be, and have been, enlisted, and only through this confidence that these sources can be persuaded to continue providing valuable assistance in the future." Id. ¶ 79.

Accordingly, the Court should grant summary judgment for the FBI as to all of its Exemption 7(D) redactions.[30]

---

[27]    Such information has been redacted on ACLU Bates pages 79-1 to 79-2, 80-1 to 80-5, 81-1 to 81-2, 82-1 to 82-4, 83-1 to 83-4, 84-1 to 84-2, 85-1 to 85-3, 146, 183, 193-6 to 193-11, 193-16, 195, 221, 229, 236-243, 599, 659, 685, 690, 693, 694, 730 to 731, 738 to 758, 792 to 794, 1257, 2003-2, and 2003-15.

[28]    Such information has been redacted on ACLU Bates pages 1, 2, 5, 7-1 to 7-22, 145, 194, 221, 515-28 to 515-31, 515-41, 515-42, 516-1, 622 to 624, 951 to 952, 961, 963, 1055, 1061 to 1063, 1335-8 to 1335-11, 2003-1 to 2003-4, 2003-7, and 2003-9.

[29]    Such information has been redacted on ACLU Bates pages 5, 96, 221, 1126 to 1143, 1145 to 1171, 1173 to 1187, 1249 to 1256, 1797-179, and 2003-15.

[30]    Although Mr. Hardy has explained the significant harms that would flow from disclosure of the confidential sources at issue, see Fifth Hardy Decl. ¶¶ 77-81, their magnitude is irrelevant to the legal analysis since the "judiciary is not to balance interests under Exemption

-43-

4.     **The FBI Has Properly Withheld Information Concerning its Investigative and Law Enforcement Techniques and Procedures Pursuant to Exemption 7(E)**

Exemption 7(E) protects from disclosure information compiled for law enforcement purposes where release of the information "would disclose techniques and procedures for law enforcement investigations or prosecutions," or where it would "disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). Congress intended that Exemption 7(E) protect from disclosure techniques and procedures used to prevent and protect against crimes as well as techniques and procedures used to investigate crimes after they have been committed. See, e.g., PHE, Inc. v. Department of Justice, 983 F.2d 248, 250-51 (D.C. Cir. 1993) (holding that portions of FBI manual describing patterns of violations, investigative techniques, and sources of information available to investigators were protected by Exemption 7(E)). Moreover, Exemption 7(E) may apply even when the identity of the techniques have been disclosed, but the manner and circumstances of the techniques are not generally known. See Blanton v. United States Dep't of Justice, 63 F. Supp. 2d 35, 50 (D.D.C. 1999) (quoting Coleman v. FBI, 13 F. Supp. 2d 75, 83 (D.D.C. 1998)).

The FBI has asserted Exemption 7(E), typically in conjunction with Exemption 2, to protect certain confidential FBI investigative techniques and procedures.[31] See Fifth Hardy Decl.

---

7(D)." Parker v. DOJ, 934 F.2d 375, 380 (D.C. Cir. 1991); see also Schmerler v. FBI, 900 F.2d 333, 336 (D.C. Cir. 1990) (same).

[31]     Such information has been redacted on ACLU Bates pages 1 to 2, 121 to 124, 193-12 to 193-15, 194, 292, 515-1, 515-3, 515-5 to 515-6, 515-8, 515-23 to 515-25, 515-32, 515-41 to 515-42, 525-2 to 525-3, and 543.

¶ 83. Such law enforcement techniques and procedures are *categorically* protected by the

Exemption, without any need for inquiry into the harm that would result from their disclosure.

Fisher v. DOJ, 772 F. Supp. 7, 12 n.9 (D.D.C. 1991), aff'd, 968 F.2d 92 (D.C. Cir. 1992)

(unpublished table decision).  See also discussion of Exemption 2, supra.; ACLU Found. v. DOJ,

833 F. Supp. 399, 407 (S.D.N.Y. 1993).

Accordingly, the Court should grant summary judgment for the FBI as to all of its

Exemption 7(E) redactions.

## CONCLUSION

For the foregoing reasons, the Court should enter summary judgment for defendants.

Dated: February 24, 2006

Respectfully Submitted,

PETER D. KEISLER
Assistant Attorney General

KENNETH L. WAINSTEIN
United States Attorney

ELIZABETH J. SHAPIRO
Assistant Director
ANTHONY J. COPPOLINO
Special Litigation Counsel

  /s/ Steven Y. Bressler
STEVEN Y. BRESSLER D.C. Bar # 482492
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue N.W.  Room 7138
Washington, D.C.  20530
Tel.: (202) 514-4781
Fax: (202) 318-7609
Email: steven.bressler@usdoj.gov
Counsel for Defendants

-45-