IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ ) | |
| ) | |
| AMERICAN CIVIL LIBERTIES UNION, et al., ) | |
| ) | |
| Plaintiffs, _____ ) | |
| ) | |
| v. ) | Civ. A. No. 05-CV-1004 (ESH) |
| ) | |
| FEDERAL BUREAU OF INVESTIGATION, ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |
| _____ ) | |

**FIFTH DECLARATION OF DAVID M. HARDY**

I, David M. Hardy, declare as follows:

(1)     I am currently the Section Chief of the Record/Information Dissemination Section ("RIDS"), Records Management Division ("RMD"), at Federal Bureau of Investigation Headquarters ("FBIHQ") in Washington, D.C.  I have held this position since August 1, 2002. Prior to my joining the FBI, from May 1, 2001 to July 31, 2002, I was the Assistant Judge Advocate General of the Navy for Civil Law.  In that capacity, I had direct oversight of Freedom of Information ("FOIA") policy, procedures, appeals, and litigation for the Navy.  From October 1, 1980 to April 30, 2001, I served as a Navy Judge Advocate, at various commands and routinely worked with FOIA matters.  I am also an attorney who has been licensed to practice law in the State of Texas since 1980.

(2)     In my official capacity as Section Chief of RIDS, I supervise approximately 242 employees who staff a total of ten (10) Units and a field operational service center whose collective mission is to effectively plan, develop, direct and manage responses to requests for

access to FBI records and information pursuant to the FOIA; Privacy Act; Executive Order 12958, as amended; Presidential, Attorney General and FBI policies and procedures; judicial decisions and other Presidential and Congressional directives. My responsibilities also include the review of FBI information for classification purposes as mandated by Executive Order 12958, as amended,[1] and the preparation of affidavits/declarations in support of Exemption 1 claims asserted under the FOIA.[2] I have been designated by the Attorney General of the United States as an original classification authority and a declassification authority pursuant to Executive Order 12958, as amended, §§ 1.3 and 3.1. The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

(3) Due to the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to requests for information from its files pursuant to the provisions of the FOIA, 5 U.S.C. § 552 and the Privacy Act of 1974, 5 U.S.C. § 552a. Specifically, I am aware of the treatment which has been afforded the multi-part FOIA requests of plaintiffs American Civil Liberties Union ("ACLU"), the ACLU Foundation, the American-Arab Anti Discrimination Committee ("ADC"), the Muslim Public Affairs Council ("MPAC"), People for Ethical Treatment of Animals ("PETA"), Greenpeace, and United for Peace and Justice ("UFPJ"), hereinafter "plaintiffs," who collectively seek access to documents related to the Joint Terrorism Task Force ("JTTF"), the National Joint Terrorism Task Force ("NJTTF"), in connection with plaintiffs' groups and individuals.

---

[1] 60 Fed. Reg. 19825 (1995) and 68 Fed. Reg. 15315 (2003).

[2] 5 U.S.C. § 552 (b)(1).

(4)    This fifth declaration supplements, and hereby incorporates, my previous four declarations submitted in this case -- the First Declaration of David M. Hardy, dated July 1, 2005 ("First Hardy Decl."), Second Declaration of David M. Hardy, dated July 26, 2005 ("Second Hardy Decl."), Third Declaration of David M. Hardy dated December 2, 2005 ("Third Hardy Decl."), attached hereto as Exhibit C, and the Fourth Declaration of David M. Hardy, dated December 23, 2005 ("Fourth Hardy Decl."), attached hereto as Exhibit D.

(5)    In accordance with the Court's November 1, 2005 Order, the FBI prepared and submitted the Third Hardy Decl. with respect to documents related to PETA, UFPJ, ACLU and Greenpeace; and the FBI prepared and submitted the Fourth Hardy Decl. with respect to documents related to ADC and MPAC.  Plaintiffs subsequently informed defendant's counsel that they would narrow the scope of the documents to be litigated in two ways: (1) plaintiffs stated they "do not wish to litigate any withholdings or redactions claimed under any of the following codes: (b)(2)-1, -2, -3 and -5; (b)(6)-1, -2, -3 and -6; (b)(7)(C)-1, -2, -3 and -6; and (b)(7)(D)-3 and -5;" and (2) "do not wish to litigate over the following documents:  ACLU Bates # 1481-1 to 1481-35; 1482-1 to 1482-13, and 1482-21 to 1482-40; 1896-1 and 1896-2; 140-1 to 140-7; and 159-1 to 159-13."  <u>See</u> Memorandum to Tony Coppolino from Ben Wizner and Scott Michelman dated December 28, 2005, attached hereto as Exhibit B.  Following additional correspondence, plaintiffs advised that they no longer wish to litigate an additional 21 documents.  <u>See</u> E-mail to Steven Bressler from Ben Wizner and Scott Michelman dated February 22, 2006.

(6)    As a result of the foregoing, the purpose of this declaration, in conjunction with Exhibit A hereto (which consists of a detailed chart of all of the documents which plaintiffs

continue to challenge), is to consolidate the Third Hardy Decl. and the Fourth Hardy Decl.,

eliminate those documents and exemptions which plaintiffs no longer wish to challenge, and to

provide justifications for the remaining exemptions in the contested documents, in support of the

FBI's motion for summary judgment.  In total, this declaration addresses a total of approximately

646 pages and 167 documents concerning UFPJ, ADC, PETA, MPAC and Greenpeace which

remain in litigation.

### SUMMARY OF JUSTIFICATION CATEGORIES STILL CONTESTED

| | |
|---|---|
| **EXEMPTION (b)(1)** | **CLASSIFIED INFORMATION** |
| (b)(1) | Information Properly Classified by an FBI Classification Authority Pursuant to Executive Order 12958, As Amended |
| **EXEMPTION (b)(2)** | **INFORMATION RELATED SOLELY TO THE INTERNAL RULES AND PRACTICES OF AN AGENCY** |
| (b)(2)-4 | FBI Internal Investigative Techniques and Procedures [Cited in Conjunction with Exemptions (b)(7)(D)-4 and (b)(7)(E)-1] |
| **EXEMPTION (b)(3)** | **INFORMATION PROTECTED BY STATUTE** |
| (b)(3)-1 | Inner Workings of the Federal Grand Jury -- Federal Rules of Criminal Procedure 6(e) |
| (b)(3)-2 | Internal Revenue Code -- 26 U.S.C. § 6103 [May be cited in conjunction with Exemptions (b)(6)-4 and (b)(7)(C)-4] |
| **EXEMPTION (b)(5)** | **PRIVILEGED INFORMATION** |
| (b)(5)-1 | Deliberative Process and Attorney-Client Privileges |
| **EXEMPTION (b)(6)** | **CLEARLY UNWARRANTED INVASION OF PERSONAL PRIVACY** |

(b)(6)-4                         Names and/or Identifying Information of Third Parties of
                                 Investigative Interest or Who Provided Information to the
                                 FBI
                                 [May be cited in conjunction with Exemption (b)(7)(C)-4]

(b)(6)-5                         Names and/or Identifying Information of Third Parties
                                 Merely Mentioned
                                 [May be cited in conjunction with Exemption (b)(7)(C)-5]

**EXEMPTION (b)(7)(A)**          **PENDING LAW ENFORCEMENT
                                 INVESTIGATIONS**

(b)(7)(A)                        Information Pertaining to Pending Law Enforcement
                                 Investigations

**EXEMPTION (b)(7)(C)**          **UNWARRANTED INVASION OF PERSONAL
                                 PRIVACY**

(b)(7)(C)-4                      Names and/or Identifying Information of Third Parties of
                                 Investigative Interest or Who Provided Information to the
                                 FBI
                                 [May be cited in conjunction with Exemption (b)(6)-4]

(b)(7)(C)-5                      Names and/or Identifying Information of Third Parties
                                 Merely Mentioned
                                 [May be cited in conjunction with Exemption (b)(6)-5]

**EXEMPTION (b)(7)(D)**          **CONFIDENTIAL SOURCE INFORMATION**

(b)(7)(D)-1                      Names and/or Identifying Information Furnished by Third
                                 Parties with an Express Assurance of Confidentiality

(b)(7)(D)-2                      Names and/or Identifying Information Furnished by Third
                                 Parties with an Implied Assurance of Confidentiality

(b)(7)(D)-4                      Investigative Material Compiled by State, County or Local
                                 Law Enforcement Agencies and Provided to the FBI
                                 [May be cited in conjunction with (b)(2)-4 and (b)(7)(E)-1]

**EXEMPTION (b)(7)(E)**          **INVESTIGATIVE TECHNIQUES AND
                                 PROCEDURES**

(b)(7)(E)-1                      FBI  Internal Investigative Techniques and Procedures

[May be cited in conjunction with (b)(2)-4]

## JUSTIFICATION FOR REDACTIONS

(7)    The paragraphs that follow explain the FBI's rationale for withholding each

particular category of information under the specific exemption categories described above.

Pages that continue to be contested are attached hereto as Exhibit E.

## APPLICATION OF FOIA EXEMPTION (b)(1) and E.O. 12958, AS AMENDED

(8)    The FBI's analysis of the withholding of classified information contained in its

records in a FOIA context is based on the standards articulated in the FOIA statute, 5 U.S.C. §

552 (b)(1).  Exemption 1 protects from disclosure those records that are "(A) specifically

authorized under criteria established by an Executive Order to be kept Secret in the interest of

national defense or foreign policy; and (B) are in fact properly classified pursuant to such

Executive Order."

(9)    The FBI's analysis of whether Exemption 1 permits the withholding of agency

records consists of two significant steps.  First, the FBI must determine whether the information

contained in the records is information that satisfies the substantive and procedural criteria of the

applicable Executive Order governing the classification and protection of national security

information.  Only after those criteria have been satisfied may the FBI proceed to analyze

whether the documents are exempt under FOIA Exemption 1.

(10)    First therefore, I must determine whether the information in these records is

information that satisfies the requirements of the current Executive Order which presently

governs the classification and protection of information that affects the national security.[3]  I must

further ensure that the information at issue complies with the various substantive and procedural

criteria of the current Executive Order, E.O. 12958, as amended.  The current Executive Order

which applies to the protection of national security information was amended on March 25, 2003.

I am bound by the requirements of E.O. 12958, as amended, when making classification

determinations.

(11)    For information to be properly classified, and thus properly withheld from

disclosure pursuant to Exemption 1, the information must meet the requirements set forth in E.O.

12958, as amended, § 1.1 (a):

> (a) an original classification authority is classifying the information;
>
> (b) the information is owned by, produced by or for, or is under the control of the United States Government;
>
> (c) the information falls within one or more of the categories of information listed in § 1.4 of this order; and
>
> (d) the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security, which includes defense against transnational terrorism, and the original classification authority is able to identify or describe the damage.

(12)    All information which I determined to be classified in this case, and which is

under the control of the United States Government, is marked at the "Secret" level since the

unauthorized disclosure of this information reasonably could be expected to cause serious

damage to the national security.[4]  In addition to these substantive requirements, certain

---

[3]  Section 6.1 (y) of E.O. 12958, as amended, defines "National Security" as "the national defense or foreign relations of the United States."

[4]  See E.O. 12958, as amended, § 1.2 (a)(2).

procedural and administrative requirements of E.O. 12958, as amended, must be followed before

information can be considered to be properly classified, such as, proper identification and

marking of documents.  I made certain that all procedural requirements of E.O. 12958, as

amended, were followed in order to ensure that the information was properly classified.  I made

certain that:

> (a) each document was marked as required and stamped with the proper classification designation;[5]

> (b) each document was marked to indicate clearly which portions are classified and which portions are exempt from declassification as set forth in E.O. 12958, as amended, § 1.5 (d) and which portions are unclassified;[6]

> (c) the prohibitions and limitations on classification specified in E.O. 12958, as amended, § 1.7, were adhered to;

> (d) the declassification policies set forth in E.O. 12958, as amended, § 3.1 were followed; and

> (e) any reasonably segregable portion of these classified documents that did not meet the standards for classification under E.O. 12958, as amended, were declassified and marked for release, unless withholding was otherwise warranted under applicable law.[7]

## FINDINGS OF DECLARANT

(13)    With the above requirements in mind, I personally and independently examined

the information withheld from plaintiff pursuant to FOIA Exemption 1.  I determined that the

---

[5]  E.O. 12958, as amended, §§ 1.6 (a)(1)-(5).

[6]  E.O. 12958, as amended, § 1.6 (c).

[7]  5 U.S.C. § 552 (b) provides, in part, that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection."  In this case, the information at issue has been carefully examined and I have determined that no additional reasonably segregable portions may be declassified and released.

remaining portions of classified information withheld, warrant continued classification at the "Secret" level, pursuant to E.O. 12958, as amended, § 1.4, namely, (b) foreign government information, (c) intelligence activities (including special activities), intelligence sources or methods, or cryptology and (d) foreign relations and foreign activities.

## FOREIGN GOVERNMENT INFORMATION

(14)    The classified information withheld on ACLU Bates pages 515-30 and 516-1 identifies by name, a specific foreign government and contains detailed intelligence information provided by this foreign government.  This information is being withheld  to protect the relationship and the cooperative endeavors between this component and the FBI.  The exchange of information between this foreign government is with the expressed understanding that their information and relationship will be kept classified and not released to the public.  Release of such information could, therefore, be reasonably expected to damage the United States' relationship with the foreign government in question and to interfere with future cooperation.  I have determined that the withheld foreign government's identity and information is properly classified at the "Secret" level pursuant to E.O. 12958, as amended, § 1.4 (b) and (c) and exempt from disclosure pursuant to Exemption 1.

## FOREIGN RELATIONS OR FOREIGN ACTIVITIES

(15)    E.O. 12958, as amended, § 1.4 (d), exempts foreign relations or foreign activities of the United States, including confidential sources.  The classified information withheld on ACLU Bates pages 515-5, 515-30 and 516-1 identifies cooperative endeavors between the FBI and named foreign governments intelligence components.  Intelligence information is exchanged between these governments and the FBI with the express and/or written understanding that the

relationship will be held in strict confidence.  The retention of the confidential nature of this

exchange is essential to ensure continued liaison with the cooperating foreign governments in

question, which continues at the present time.  It also is indicative of peaceful and cooperative

relations between governments, both allies and foes, in conducting activities that are germane to

a peaceful coexistence.

(16)    Information that affects the foreign relations of the United States, much like

foreign government information, does not lose its sensitivity with the passage of time.  The

delicate liaison established between the United States and this foreign government could be

severely damaged should the United States decide to disclose these relationships.  The foreign

governments cooperation in the FBI investigation at issue has not been publicly revealed.  To do

so now would endanger the spirit of law enforcement intelligence cooperation that the FBI has

labored most strenuously to obtain.  The governments are not as likely to continue to trust the

United States if the FBI discloses its cooperation in violation of the confidentiality promise

given, and will be less willing to cooperate in the future if their past and continuing request for

confidentiality are not honored.

(17)    Classified information withheld on Bates pages 304-1, 304-2, 515-3, 515-5, 515-

7, 515-11, and 518-12 identifies sensitive intelligence information gathered by the United States

either about or from a foreign country.  This condition exists due in part to the delicate nature of

international diplomacy.  This information must be handled with care so as not to jeopardize the

fragile relationships that exist among the United States and certain foreign governments.  The

unauthorized disclosure of information concerning foreign relations or foreign activities of the

United States, including, as here, confidential cooperation with other nations, can reasonably be

expected to lead to diplomatic or economic retaliation against the United States; identify the

target, scope or time frame of intelligence activities of the United States in cooperation with

other nations, which may result in the curtailment or cessation of these activities; enable hostile

entities to assess United States intelligence gathering activities in or about a foreign country and

devise countermeasures against these activities; or compromise cooperative foreign sources

which may jeopardize their safety and curtail the flow of information from these sources.  Thus,

the foreign relations or foreign activities information withheld on ACLU Bates pages 304-1 to

304-2, 515-3 to 515-5, 515-7, 515-11, 515-30, 516-1 and 518-12 is properly classified at the

"Secret" level and withheld pursuant to E.O. 12958, as amended, § 1.4 (d), and exempt from

disclosure pursuant to Exemption 1.

## INTELLIGENCE ACTIVITIES AND METHODS

(18)     E.O. 12958, as amended, § 1.4 (c), exempts intelligence activities (including

special activities), intelligence sources and methods, or cryptology.  The information withheld on

ACLU Bates pages 87, 89-90, 92, 304-1 to 304-7, 305-1, 475-1 to 475-5, 512-1 to 512-2, 513-1,

515-2 to 515-11, 515-26 to 515-31, 515-35 to 515-42, 516-1, 516-6, 517-36 to 517-44, 518-1 to

518-35, 519-1 to 519-3, 519-5 to 519-6, 519-8, 519-10 to 519-44, 520-1 to 520-44, 521-1 to 521-

44, 522-1 to 522-7, 533, 534, 545 and 557 consists of intelligence activities and methods utilized

by the FBI for gathering intelligence data.  In addition, ACLU Bates pages 304-4, 304-7, 305-1,

517-37 to 517-44, 518-1, 518-2 to 518-17, 533, and 534 contain numerical symbol numbers with

detailed intelligence information gleaned from the intelligence activities and methods.  An

intelligence activity or method includes any intelligence action or technique utilized by the FBI

against a targeted individual or organization that has been determined to be of national security

interest.  An intelligence method is used to indicate any procedure (human or non-human) utilized to obtain information concerning such individual or organization.  An intelligence activity or method has two characteristics.  First, the intelligence activity or method and information generated by it is needed by U.S. Intelligence/Counterintelligence agencies to carry out their missions.  Second, confidentiality must be maintained with respect to the activity or method if the viability, productivity and usefulness of its information is to be preserved.

(19)     The classification redactions were made to protect from disclosure information that would reveal the actual intelligence activities and methods utilized by the FBI against specific targets of foreign counterintelligence investigations or operations; identify a target of a foreign counterintelligence investigation; or disclose the intelligence gathering capabilities of the activities or methods directed at specific targets.  The intelligence activities or methods detailed in the withheld information are effective means for the FBI to gather, store or disseminate intelligence information.  The criteria utilized by the FBI in these instances to decide what actions by an individual or organization warranted the commencement of an investigation, or caused a certain activity to be given investigative attention over others, could be revealed through disclosure of these intelligence methods.  Hostile entities could then develop countermeasures which could severely disrupt the FBI's intelligence-gathering capabilities.  The criteria applied and priorities assigned in these records are used in the FBI's present intelligence or counterintelligence investigations, and are in accordance with the Attorney General's guidelines on FBI intelligence and counterintelligence investigations.

(20)     The information on ACLU Bates pages 87 and 89-90 concerns one method and one intelligence activity that is very specific in nature and known to very few individuals.

Disclosure of the specific information would describe the method and intelligence activity which are still used by the FBI today to gather intelligence information. The release of this information could reasonably be expected to cause serious damage to the national security for the following reasons: (1) disclosure would allow hostile entities to discover the current methods and activities used; (2) disclosure would reveal current specific targets of the FBI's national security investigations; and (3) disclosure would reveal or determine the criteria used and priorities assigned to current intelligence or counterintelligence investigations. Hostile entities could then develop countermeasures which could severely disrupt the FBI's intelligence-gathering capabilities. This would severely damage the FBI's efforts to detect and apprehend violators of the United States' national security and criminal laws.

(21)    The FBI protected the following categories of information specific to intelligence activities and methods because disclosure reasonably could be expected to cause serious damage to the national security. First, the withheld information contains numbers that are assigned to a specific intelligence activity or method. Second, the withheld information contains the character of the case, which identifies the specific type of intelligence activity directed at a specific target. In addition, the withheld information on certain pages identifies the target of a national security investigation along with the character of the case. Third, the withheld information contains a designation for a foreign counterintelligence unit which targets specific individuals or organizations of national security interest. Fourth, the withheld information identifies targets of foreign counterintelligence investigations. In addition, the withheld information identifies targets of foreign counterintelligence investigations with a file number. A more detailed discussion of each of these categories is contained within the paragraphs below. ACLU Bates pages 89-90

-13-

contain a symbol number with detailed information.  A more detailed discussion of each of these categories is contained within the paragraphs below.

### A.  **File Numbers**

(22)    The classified information withheld on ACLU Bates pages 299 to 302, 304-3 to 304-5, 304-7, 305-1, 475-1, 475-3 to 475-5, 512-1 to 512-2, 513-1, 515-26, 515-28, 515-30, 515-35 to 515-38, 515-41, 516-1, 516-6, 517-36 to 517-37, 518-18 to 518-21, 518-35, 519-1 to 519-2, 519-5 to 519-6, 519-10, 520-31, 521-2 to 521-7, 521-34 to 521-35, 521-43 to 521-44, 522-1 to 522-6, 533, 534, 545, and 557 consists of FBI file numbers assigned to specific intelligence activities, including channelization and dissemination instructions.  Their release would lead to exposure of the particular intelligence activities and methods at issue.  Individual file numbers are assigned by FBIHQ and Field Offices and can contain a geographical prefix of the originating office and case number, which includes the numerical characterization of the type of investigation followed by a chronological number assigned to a specific investigation/activity.

(23)    The disclosure of an intelligence file number in the aggregate ~~will~~ **could** enable a hostile analyst to attribute any information released from the documents containing such a file number to that particular file.  A hostile analyst could identify the specific intelligence activity by supplying further missing pieces.  Hence, a partial mosaic of the activity begins to appear as more information is identified with the file leading to the exposure of actual current activities or methods.  Disclosure of this file number will allow a hostile analyst, or anyone not privileged to this information, to patch bits and pieces of information together until the actual use of the application of the source or method can be determined.  The identification of these intelligence sources or methods, which continue to furnish positive intelligence information to date, will

-14-

severely limit its application. In addition, disclosure will inform hostile intelligence of the possible range of our intelligence capabilities, as well as the probable intelligence that the FBI has gathered, or can collect, concerning them. This knowledge provides potential or actual violators of the United States' national security laws a means of deflection or avoidance of lawful regulations. Disclosure could allow countermeasures to be implemented, making future operations more difficult, or compromise other ongoing planned intelligence operations. Accordingly, the release of the file numbers can lead to the exposure of the actual intelligence activity or method utilized in FBI investigations, and can reasonably be expected to cause serious damage to national security. The file numbers are properly classified at the "Secret" level and withheld pursuant to E.O. 12958, as amended, § 1.4 (c) and exempt from disclosure pursuant to Exemption 1.

### B.  Character of Case

(24)    The classified information withheld on ACLU Bates pages 515-27, 515-36, 515-39, 519-6 identifies the character of a case for a specific type of intelligence activity directed at a specific organization of national security interest. ACLU Bates pages 87, 299, 515-26, 515-38 and 519-10 identify the specific geographic locations of national security interest for the case characterization. Disclosure of the characterization of the case could reasonably be expected to cause serious damage to the national security, as it would (a) disclose a particular intelligence or counterintelligence investigation; (b) disclose the nature, scope or thrust of the investigation and (c) reveal the manner of acquisition of the intelligence or counterintelligence information. This would allow the subjects of an ongoing national security investigation to implement countermeasures that would hamper the effectiveness of the investigation. This information is

-15-

properly classified at the "Secret" level and withheld pursuant to E.O. 12958, as amended, § 1.4 (c) and exempt from disclosure pursuant to Exemption 1.

### C. <u>Units</u>

(25)     The classified information withheld on ACLU Bates page 515-6 consists of the name of an operational unit that currently targets specific individuals and organizations of national security interest.  The disclosure of the operational unit name would enable hostile individuals or intelligence services to associate the presence of such operational unit in any FBI document or investigation with FBI counterintelligence activity, thus enabling the hostile individual or foreign intelligence service to determine the presence of the FBI's counterintelligence activity in a specific area.  Disclosure of the operational unit name would reveal the existence of a particular intelligence or counterintelligence operation, as well as the nature, objectives, scope or thrust of the investigation, which would allow hostile assessment of the area of target.  This knowledge provides potential or actual violators of United States' national security laws a means of deflection or avoidance of lawful regulations.  Disclosure will allow countermeasures to be implemented, making future operations more difficult, or compromise other ongoing planned intelligence operations.  This would severely disrupt the FBI's intelligence gathering capabilities and severely damage the FBI's efforts to detect and apprehend violators of the United States' national security and criminal laws and to fight the war on transnational terrorism.  This information is properly classified at the "Secret" level and withheld pursuant to E.O. 12958, as amended, § 1.4 (c) and exempt from disclosure pursuant to Exemption 1

### D.  Symbol Number With Detailed Information

(26)     The classified information withheld on ACLU Bates pages 89 and 90 consists of a numerical designator which serves as a single identifier for an intelligence method utilized to provide information on a specific individual or organization determined to be of national security interest.  A singular identifier is any word, term or phrase used in lieu of the true identity of a source.  This includes code names, code words, numerical designators and file numbers.  The numerical designator assigned to this specific source is unique to and solely used for this source.  The numerical designator is assigned sequentially and is usually prefixed with the geographic location of the FBI office from which the method is operated.  The disclosure of this information could permit a hostile analyst to correlate the documents and the information provided by the symbol numbered method from various documents.  By matching source identifiers, such as file numbers and numerical designators, with bits and pieces of information, one can discern the true nature of the intelligence method.  Public identification of a method will limit the effectiveness of such and permit the target to implement countermeasures.

(27)     Detailed information provided by this intelligence method is also withheld.  The method and intelligence activities described in the withheld information are effectively utilized at present as a means to collect intelligence information.  The release of this information could permit hostile governments to appraise the scope, focus, location, target and capabilities of the FBI's intelligence gathering methods and activities, and allow hostile agents to devise countermeasures to circumvent these methods and activities and render them useless in providing intelligence information.  This would severely disrupt the FBI's intelligence gathering capabilities.

(28)    The disclosure of this information could reasonably be expected to cause serious

damage to the national security and severely damage the FBI's efforts to detect and apprehend

violators of the United States' national security and criminal laws.  This information is properly

classified at the "Secret" level, pursuant to E.O. 12958 § 1.4 (c), as amended and exempt from

disclosure pursuant to Exemption 1.

### E.  Foreign Counterintelligence Investigations

(29)    The classified information withheld on ACLU Bates pages 512-1 to 512-2, 513-1,

515-2 to 515-11, 515-26 to 515-27, 515-29, 515-36, 515-38 to 515-39, 515-42, 522-3 and 522-7

identifies targets of current FBI foreign counterintelligence investigations.  In addition, ACLU

Bates pages 512-1, 513-1, 515-5 to 515-6, 515-26 to 515-27, 515-36, 515-38 to 515-39, 517-37,

518-18, 519-2, 519-6, 521-43 and 522-6 contain the target's identity with the character of the

case.  ACLU Bates pages 299, 304-5 to 304-6, 475-1 to 475-2, 513-1 to 515-2, 519-6, and 522-1

identify targets of investigations with the case file numbers.

(30)    The disclosure of this information could reasonably be expected to cause serious

damage to the national security, as it would: (a) reveal the actual intelligence activity or method

utilized by the FBI against a specific target; (b) disclose the intelligence gathering capabilities of

the activity or method; and (c) provide an assessment of the intelligence source penetration of a

specific target during a specific period of time.  The release of this information could permit

hostile governments to appraise the scope, focus, location, target and capabilities of the FBI's

intelligence gathering methods and activities, and allow hostile agents to devise countermeasures

to circumvent these intelligence activities or methods and render them useless in providing

intelligence information.  This would severely disrupt the FBI's intelligence gathering

-18-

capabilities.  This information is properly classified at the "Secret" level and withheld pursuant to

E.O. 12958, as amended, § 1.4 (c) and exempt from disclosure pursuant to Exemption 1.

**INTELLIGENCE SOURCE**

(31)    An intelligence source that requires continued classification is an individual who

provided or is currently providing information that pertains to national security matters, the

disclosure of which could reasonably be expected to result in damage to the FBI's intelligence

and counterintelligence gathering capabilities.

(32)    My review disclosed that the information pertaining to classified intelligence

sources is likely to identify the sources.  The withheld information and material provided by or

that pertains to sources are specific and, if disclosed, reasonably could be expected to reveal the

identity of the contributing source.  I considered a number of factors in reaching this conclusion,

including most importantly, the damage to the national security that would result by publicly

identifying sources utilized in intelligence investigations, and the FBI's ability to protect and

recruit intelligence sources in the future.

(33)    Disclosure of the identities of FBI intelligence sources, regardless of whether they

are active or inactive, alive or deceased, could reasonably be expected to cause current and

potential intelligence sources to fear that their identities will be publicly revealed at some point,

in spite of the FBI's present expressed or implied assurance of confidentiality.  The disclosure of

source's identities could jeopardize the physical well-being of the source's family or associates or

subject them to public ridicule and/or ostracism.

(34)    The following categories of intelligence source information were withheld on

certain pages: (a) Intelligence source symbol numbers with detailed information furnished by the

source, (b) intelligence source file numbers, and (c) detailed intelligence source information.
Below is a more detailed discussion of each of the above categories.

### A. **Intelligence Source Symbol Numbers With Detailed Information**

(35)    The classified information withheld on ACLU Bates pages 521-36, and 521-43 to
521-44 contains a numerical designator for a human intelligence source and detailed information
provided to the FBI by the intelligence source.  A numerical designator serves as a singular
identifier for an intelligence source utilized to provide information on a specific individual or
organization determined to be of national security interest.  A singular identifier is any word,
term or phrase which could identify an intelligence source either released by itself or in the
aggregate.  This includes code names of sources, code names, numerical designators and file
numbers.  A singular identifier is used in lieu of the true identity of a source.  The numerical
designator is assigned to this specific source and is unique to and solely used for this source.  The
numerical designator is assigned sequentially and is usually prefixed with the geographic location
of the FBI office from which the source is operated.

(36)    The classified symbol numbers with detailed information consist of discontinued
human sources who provided information of value on individuals/or organizations of national
security interest.  This information is specific in nature and reflects a specific vantage point from
which the source is reporting and if disclosed, would identify the source.

(37)    The disclosure of this information could permit a hostile analyst to correlate the
documents and whatever information that can be gleaned from the documents.  By matching
source identifiers, such as file numbers and numerical designators, with bits and pieces of
information, one can discern the true identity of the intelligence source.  Public identification of a

source will limit the effectiveness of such and have a chilling effect on the FBI's ability to recruit future sources. This information is properly classified at the "Secret" level and withheld pursuant to E.O. 12958, as amended, § 1.4 (c) and exempt from disclosure pursuant to Exemption 1.

### B. Detailed Intelligence Source Information

(38)     The classified information withheld on ACLU Bates pages 512-1 to 512-2, 513-1, 519-6, 521-37 to 521-44, and 522-1 to 522-2 consists of detailed information provided by human intelligence sources targeted at a specific individual or organization of national security interest. The information is specific in nature and reflects a specific vantage point from which the source is reporting and if disclosed, would identify the intelligence source.

(39)     The disclosure of the detailed source information would reveal the identity of a human intelligence source. This information is properly classified at the "Secret" level and withheld pursuant to E.O. 12958, as amended, § 1.4 (c) and exempt from disclosure pursuant to Exemption 1.

### DEFENDANT'S BURDEN OF ESTABLISHING EXEMPTION (b)(1) CLAIMS

(40)     The classified information withheld in this case pursuant to Exemption 1 was examined in light of the body of information available to me concerning the national defense of the United States. This information was not examined in isolation. Instead, each individual piece of information was evaluated with careful consideration given to the impact that disclosure of this information could have on other sensitive information contained elsewhere in the United States intelligence community's files. Equal consideration was given to the impact that other

information either in the public domain or likely known or suspected by present or potential

adversaries of the United States, would have upon the information I examined.

(41)    In those instances where, in my judgment, the disclosure of this information could

reasonably be expected to cause serious damage to the national security, and its withholding

outweighed the benefit of disclosure, I exercised my prerogative as an original classification

authority and designated that information as classified in the interest of national security, and

invoked Exemption 1 of the FOIA to prevent disclosure.  Likewise, the justifications for the

withheld classified information were prepared with the intent that they be read with consideration

given to the context in which the classified information is found.  This context includes not only

the surrounding unclassified information, but also other information already in the public

domain, as well as information likely known or suspected by other hostile intelligence entities.  It

is my judgment that any greater specificity in the descriptions and justifications set forth with

respect to intelligence sources, activities and methods, could reasonably be expected to

jeopardize the national security of the United States.  Exemption (b)(1)-1 is asserted on the

following ACLU Bates pages: 87, 89-90, 92, 299-302, 304-1 to 304-7, 305-1, 475-1 to 475-5,

512-1 to 512-2, 513-1, 515-2 to 515-11, 515-26 to 515-31, 515-35 to 515-42, 516-1, 516-6, 517-

36 to 517-44, 518-1 to 518-35, 518-43, 519-1 to 519-3, 519-5 to 519-6, 519-8, 519-10 to 519-44,

520-1 to 520-44, 521-1 to 521-44, 522-1 to 522-7, 533, 534, 545, and 557.

## EXEMPTION (b)(2) – INFORMATION RELATED SOLELY TO THE INTERNAL RULES AND PRACTICES OF AN AGENCY

(42)    5 U.S.C. § 552 (b)(2) exempts from disclosure information "related solely to the

internal personnel rules and practices of an agency."  This exemption protects routine internal

-22-

administrative matters and functions of the FBI which have no effect on the public at large and which is predominantly internal information.  This exemption also protects information, the disclosure of which would risk circumvention of agency regulations or statutes.  Disclosure of this information could impede the effectiveness of the internal operations of the FBI and risk the circumvention of a regulation or a law.

**(b)(2)-4        FBI Internal Investigative Techniques and Procedures**

(43)    Exemption (b)(2)-4 has been asserted, at times in conjunction with Exemptions (b)(7)(D)-4 and (b)(7)(E)-1, to protect information consisting of specific internal investigatory techniques and procedures used in the furtherance of the FBI's domestic terrorism investigations and/or prosecutions.  These techniques are reflected in various internal FBI documents as well as information obtained in the course of active investigations by virtue of the application of those techniques.  To describe this information in further detail on the public record would identify that very information which the FBI seeks to protect pursuant to these exemptions.  The revelation of these details could enable the targets of  these techniques to avoid detection or develop countermeasures to circumvent the ability of the FBI to effectively use important national security law enforcement techniques.  Accordingly, the FBI has properly withheld this information pursuant to Exemption (b)(2)-4 in conjunction with Exemptions (b)(7)(D)-4 and (b)(7)(E)-1.  Exemption (b)(2)-4 has been cited on the following ACLU Bates pages:  194, 220-221, 475-4, 512-1 to 512-2, 513-1, 515-3, 515-5, 515-6, 515-23 to 515-25, 515-32 to 515-33, 515-40 to 515-42, 516-1 to 516-5, 516-9 to 516-41, 517-1 to 517-35, and 543.[8]

---

[8]  The FBI has revisited its assertion of Exemption (b)(2)-4 as to ACLU Bates pages 1-2, 50-51, 193-6 to 193-15, 250, 292, 515-12 to 515-17, 519-3, 519-5, and 1057-1058 and has decided to withdraw the assertion of Exemption 2 as to those pages.

**EXEMPTION (b)(3)**
**INFORMATION PROTECTED BY STATUTE**

(44)   5 U.S.C. § 552 (b)(3) exempts from disclosure information which is:

specifically exempted from disclosure by statute . . . provided that such statute (A)
requires that the matters be withheld from the public in such a manner as to leave
no discretion on the issue, or (B) establishes particular criteria for withholding or
refers to particular types of matters to be withheld.

**(b)(3)-1        Inner Workings of the Federal Grand Jury -- Federal Rules of**
**Criminal Procedure 6(e)**

(45)     Exemption (b)(3)-1 has been asserted in conjunction with Rule 6(e) of the Federal

Rules of Criminal Procedure to withhold Federal Grand Jury information.  It is well-established

that Rule (6)(e) embodies a broad, sweeping policy of preserving the secrecy of grand jury

material regardless of the substance in which the material is contained.  In the  documents

responsive to plaintiffs' requests, only that information which explicitly discloses matters

occurring before a Federal Grand Jury has been withheld pursuant to Exemption (b)(3).

Specifically, Federal Grand Jury subpoenas, as well as the names, identifying information of

individuals subpoenaed to testify before the Federal Grand Jury, information that identifies

specific records subpoenaed by the Federal Grand Jury, and Federal Grand Jury meetings were

withheld pursuant to this exemption.  Accordingly, any such disclosure would clearly violate the

secrecy of the grand jury proceedings and could reveal the inner workings of the federal grand

jury that considered this case.  Exemption (b)(3)-1 has been cited on the following ACLU Bates

pages: 86 (FD 302 dated 6/18/03 regarding grand jury subpoena issued to major corporation to

provide subscriber information for a specific phone number); 162 (write-up dated 8/28/00

regarding convening of federal grand jury with regard to third-party individual); 187 (chart listing

-24-

investigations being conducted by FBI Field offices, and contains grand jury information on third

party individuals and groups); 189-1 to 189-9 (analysis of Title III on a particular house from

November, 2002 to March 2003, including surveillance of persons being called for grand jury);

190 (grand jury information related to domestic terrorism activities); and 313-1 to 313-7 (private

corporation response to federal grand jury subpoena).

> **(b)(3)-2        Internal Revenue Code -- 26 U.S.C. § 6103**

(46)     Exemption (b)(3)-2 has been asserted in conjunction with 26 U.S.C. § 6103 of the

Internal Revenue Code, and at times in conjunction with Exemptions (b)(6)-4 and (b)(7)(C)-4, to

protect tax records and related information of third parties.  It is well-established that the

withholding of tax return information is appropriate under this exemption since individuals are

generally not entitled to access to tax returns or return information of other taxpayers.

Exemption (b)(3)-2 has been cited on the following ACLU Bates pages: 159-14 to 159-38.  The

documents at issue include PETA's FY 2001 schedule of donations (ACLU Bates pages 159-14

to 159-22), PETA's book asset detail from 1988 through 2001 (ACLU Bates pages 159-23 to

159-25), and tax information concerning another group, FUR Commission.com (ACLU Bates

pages 159-26 to 159-38).

> ## EXEMPTION (b)(5) – PRIVILEGED INFORMATION

(47)     Exemption 5, 5 U.S.C. § 552 (b)(5), allows the FBI to protect information

contained in "inter-agency or intra-agency memorandums or letters which would not be available

by law to a party other than an agency in litigation with the agency."  This exemption has been

construed to exempt those documents or information normally privileged in the civil discovery

context, including, as is the case here, the deliberative process privilege and the attorney-client

privilege.

**(b)(5)-1        Deliberative Process Privilege**

(48)    The deliberative process privilege protects the internal deliberations of an agency by exempting from release recommendations, analyses, speculation and other non-factual information prepared in anticipation of agency decision-making.  The general purpose of the deliberative process privilege is to prevent injury to the quality of agency decisions.  Thus, material that contains or was prepared in connection with the formulation of opinions, advice, evaluations, deliberations, policy formulation, proposals, conclusions or recommendations may properly be withheld.  Release of this type of information would have an inhibitive effect upon the development of policy and administrative direction of an agency because it would chill the full and frank discussion between agency personnel regarding a decision.  If agency personnel knew that their preliminary opinions, evaluations and comments would be released for public consumption, they may be more circumspect in what they put in writing, and thereby, impede a candid discussion of the issues surrounding a decision.

(49)    To invoke the deliberative process privilege, an agency must show that an allegedly exempt document or particular information is both (a) "predecisional" – antecedent to the adoption of agency policy; and the agency must also pinpoint agency decision or policy to which the document or information contributed or identify a decision-making process to which a document or information contributed – and (b) "deliberative" – a direct part of the deliberative process in that it makes recommendations or express opinions on legal or policy matters, reflects the give and take of the consultative process, and bears on the formulation or exercise of agency policy-oriented judgment.  Furthermore, an agency must identify the role of a contested

document or information in a specific deliberative process.

(50)    In this case, the FBI has asserted Exemption 5, the deliberative process privilege to protect draft answers to questions posed to the FBI, and draft internal memoranda.  These draft answers also reflect the preliminary assessments of FBI personnel regarding the issues on which they have been asked to prepare an official response.  Similarly, a draft internal Electronic Communication and draft internal form, reflect the preliminary assessments of FBI personnel regarding the proper use of the investigatory tools.  All of these drafts are both predecisional and deliberative.  If draft documents that are not formally adopted by the agency are routinely released to the public, FBI personnel will be reluctant to provide candid recommendations necessary for efficient and proper decision-making.

(51)    Exemption 5 has also been asserted to protect internal deliberations that are reflected in a collection of internal e-mails among FBI Special Agents, FBI attorneys and other federal government employees, which reflect case-related discussions of issues that have arisen in connection with the use of the investigatory tools.  In addition, these deliberations reflect preliminary advice, opinions and recommendations among FBI attorneys, Special Agents, and FBI field office attorneys, and in certain instances, with an Office of  Intelligence Policy and Review employee, who was working in concert with the FBI on some of these issues.  In these e-mails FBI personnel are discussing: (1) case-related questions regarding the use of certain investigatory tools in intelligence cases (2) requests for legal advice regarding the use of such tools, and (3) the development of procedures for implementing such investigatory tools.

(52)    The withheld communications  are both predecisional and deliberative.  They reflect the thinking of individuals, rather than adopted policy of the FBI.  E-mail communication

-27-

serves as a way for individual FBI employees to communicate with each other about current matters without having to leave their offices. These "discussions," which get memorialized online, are part of the exchange of ideas and suggestions that accompanies all decision-making and typically reflect the very preliminary assessments by FBI personnel about issues on which they may be asked to make recommendations. Before the advent of computers, these discussions probably would have occurred only orally with no record of their existence being kept. The fact that these discussions are now recorded should not obscure the fact that they are simply conversations among and between FBI personnel and, in some instances, with other federal government employees. These discussions are part of the give and take of agency deliberations. If e-mail messages such as these are routinely released to the public, FBI employees will be much more circumspect in their online discussions with each other. This lack of candor will seriously impair the FBI's ability to foster the forthright, internal discussions necessary for efficient and proper decision-making. Furthermore, exempting such documents and information from disclosure also protects against public confusion that might result from disclosure of preliminary opinions and information that do not, in fact, reflect the final views or policies of the FBI. The deliberative process privilege is designed to protect not only documents and information but also the integrity of the deliberative process itself where the exposure of the process would result in harm. Exemption (b)(5)-1 (deliberative process privilege) has been cited on the following ACLU Bates pages: 14 to 32, 50 to 51, 56, 59, 62 to 63, 76 to 77, 131, 133-139, 193-5 to 193-15, 255 to 256, 273, 276, 279 to 280, 282, 284 to 285, 515-12 to 515-17, 516-7 to 516-8, 660 to 669, 961, 963, 1055, and 1072.

**(b)(5)-1          Attorney-Client Privilege**

(53)     The attorney-client privilege is appropriately asserted when legal advice of any kind is sought, from a professional legal adviser in his or her capacity as such; the communications relating to that purpose are made in confidence by the client; and are, at the client's insistence, permanently protected from disclosure by the client or by the legal adviser unless the attorney-client protection is waived.  This privilege encompasses confidential communications made to the attorney not only by decision-making personnel but also by lower-echelon employees who possess information relevant to an attorney's advice-rendering function. In addition, the attorney-client privilege covers the two-way communications between a client and an attorney, and which relates to legal advice.

(54)     Certain of the above-described e-mail communications have also been withheld pursuant to Exemption 5, the attorney-client privilege, as they contain client-supplied information.  These documents consist of internal e-mails, draft reports, internal procedures, and MOUs ("Memoranda of Understanding"), which reflect communications among FBI attorneys and FBI SAs and other FBI support employees and include discussions of hypothetical scenarios. The information contained in these documents reflects attorney advice, opinions, and recommendations offered at the employees' request by FBI attorneys.  These communications/ exchanges occurred by means of the secure internal e-mail system of the FBI, based on client-supplied information regarding investigative activities.  The redacted material reveals the candid exchanges of information among FBI attorneys and FBI SAs and support employees seeking legal advice regarding the FBI's role and responsibilities in various law enforcement investigations.  Disclosure of these communications would breach the confidential relationship

-29-

between these individuals and repress and stifle such critical communications in the future.  For

these reasons, the FBI asserts Exemption 5, the attorney-client privilege, to protect the

confidential communications among FBI attorneys and FBI SAs and support employees.

Exemption (b)(5)-1 (attorney-client privilege) has been cited on the following ACLU Bates

pages: 255 to 256, 273 and 276.

### EXEMPTION (b)(6)
### CLEARLY  UNWARRANTED INVASION OF PERSONAL PRIVACY

(55)     5 U.S.C. § 552(b)(6) exempts from disclosure:

personnel and medical files and similar files when the disclosure of such
information would constitute a clearly unwarranted invasion of personal privacy.

(56)     In asserting this exemption, each piece of information was scrutinized to

determine the nature and strength of the privacy interest of any individual whose name and/or

identifying information appears in the documents at issue.  In withholding the information, the

individual's privacy interest was balanced against the public's interest in disclosure.  In making

this analysis, public interest information was determined to be information which would shed

light on the FBI's performance of its statutory duties.  In each instance where information was

withheld, it was determined that individual privacy rights outweighed the public interest.

**(b)(6)-4**          **Names and/or Identifying Information of Third Parties of**
                      **Investigative Interest or Who Provided Information to the FBI**

(57)     Exemption (b)(6)-4 has been asserted, in conjunction with Exemption (b)(7)(C)-4,

to withhold the names of third parties contained in various communications which reflect the

internal discussion of individuals who are the subjects of  law enforcement investigations or who

provided information regarding these investigations.  These individuals are of investigative

interest to the FBI or provided information of investigative interest to the FBI, and are discussed in numerous communications. Disclosure of the identities of these third parties in this context could cause unsolicited and unnecessary attention to be focused on them and disclosure may embarrass them. For these reasons, the FBI has determined that the third party individuals mentioned in the responsive communications maintain a strong privacy interest in not having their identities disclosed.

(58)    After identifying the substantial privacy interest of the third parties in the communications, the FBI balanced those interests against the public interest in disclosure. The FBI could identify no discernible public interest in the disclosure of this information because the disclosure of third parties' names and identifying information will not shed light on the operations and activities of the FBI. Accordingly, the FBI determined that the disclosure of this information would constitute a clearly unwarranted invasion of personal privacy. Thus, the FBI properly withheld the names of these third parties pursuant to Exemption (b)(6)-4. Exemption (b)(6)-4 has been cited on the following ACLU Bates pages: 1, 2, 5, 6, 7-1 to 7-5, 7-7 to 7-22, 19, 62, 79-1 to 79-2, 80-1 to 80-5, 81-1 to 81-2, 82-1 to 82-4, 83-1 to 83-4, 84-1 to 84-2, 85-1 to 85-8, 88, 93 to 95, 97, 98, 100 to 103, 121 to 128, 134, 138, 139, 145 to 147, 155, 162, 168, 170 to 175, 177-2, 179 to 181, 187, 189-1 to 189-9, 190 to 192, 193-5 to 193-11, 193-16, 194 to 196, 199, 220 to 222, 229 to 243, 249, 250, 253, 260, 262, 267, 271, 286, 294 to 297, 300, 301, 304-1 to 304-7, 311, 313-1 to 313-7, 475-1 to 475-5, 501, 502, 512-1, 512-2, 513-1, 515-3, 515-14, 515-16, 515-19 to 515-24, 515-26 to 515-32, 515-40 to 515-42, 516-1, 516-10 to 516-26, 516-28 to 516-30, 516-32, 516-33, 516-35 to 516-41, 517-1 to 517-4, 517-6, 517-7, 517-9 to 517-12, 517-14, 517-16 to 517-19, 517-21 to 517-35, 518-36 to 518-42, 518-44, 519-3, 521-34, 521-35,

-31-

525-3, 529, 536, 555, 557, 599, 622 to 624, 659 to 669, 685, 690, 693, 694, 730, 731, 738, 739, 741 to 758, 792, 793, 795 to 821, 949 to 953, 955, 956, 961, 963, 1055 to 1058, 1061 to 1063, 1126 to 1147, 1149 to 1170, 1172 to 1187, 1207 to 1226, 1249 to 1257, 1335-1 to 1335-11, 1478 to 1480, 1482-14 to 1482-20, 1712 to 1715, 1797 to 1802, 1809 to 1812, 1896-3,  2003-1 to 2003-5, 2003-7, 2003-9 to 2003-17, 2003-21, 2003-23 , 2003-25 to 2003-31,  2003-37, 2003-38, 2003-40 to 2003-44, 2004-1, 2004-2, 2004-4 to 2004-10, 2127 to 2130, 2130a, 2131, 2131a, 2132 to 2148, and 2150.

### (b)(6)-5    Names and/or Identifying Information of Third Parties Merely Mentioned

(59)    Exemption (b)(6)-5 has been asserted in conjunction with Exemption (b)(7)(C)-5 to withhold the names of third parties who are merely mentioned in various communications which reflect the FBI's internal discussion of individuals who are the subjects of law enforcement investigations.  These individuals are not of investigative interest to the FBI, but are merely mentioned in these communications.  Disclosure of the identities of these third parties in this context could cause unsolicited and unnecessary attention to be focused on them and disclosure could embarrass them.  For these reasons, the FBI has determined that the third party individuals merely mentioned in the responsive communications maintain a strong privacy interest in not having their identities disclosed.

(60)    After identifying the substantial privacy interest of the third parties merely mentioned in the communications, the FBI balanced those interests against the public interest in disclosure.  The FBI could identify no discernible public interest in the disclosure of this information because the disclosure of third parties' names will not shed light on the operations

and activities of the FBI.  Accordingly, the FBI determined that the disclosure of this information

would constitute a clearly unwarranted invasion of personal privacy.  Thus, the FBI properly

withheld the names and identifying information of these third parties merely mentioned in the

responsive communications pursuant to Exemption (b)(6)-5.  Exemption (b)(6)-5 has been cited

on the following ACLU Bates pages: 7-1 to 7-5, 7-7 to 7-22, 19, 62, 79-1 to 79-2, 80-1 to 80-5,

81-1 to 81-2, 82-1 to 82-4, 83-1 to 83-4, 84-1 to 84-2, 85-1 to 85-8, 88, 300, 301, 304-1 to 304-7,

311, 313-3 to 313-7, 475-1 to 475-5, 501, 502, 515-1, 515-3, 515-4, 515-11, 515-14, 515-16,

515-23, 515-24, 515-26 to 515-32, 515-38, 515-40 to 515-42, 516-1, 516-9 to 516-30, 516-32  to

516-41, 517-1 to 517-15, 517-17 to 517-35, 518-36 to 518-44, 519-3, 519-9, 521-34, 521-35,

555, 557, 624, 1173, 1177, 1478 to 1479, 1715, 1797 to 1799, 1801, 1802, 2004-5, 2004-10,

2127 to 2130, 2130a, 2131, 2131a, 2132 to 2141, 2148, and 2150.

## EXEMPTION 7 THRESHOLD

(61)    Exemption 7 of the FOIA protects from mandatory disclosure records or

information compiled for law enforcement purposes, but only to the extent that disclosure could

reasonably be expected to cause one of the harms enumerated in the subparts of the exemption.

See 5 U.S.C. § 552(b)(7).  In this case, the harm that could reasonably be expected to result from

disclosure concerns interference with pending law enforcement proceedings, invasion of personal

privacy, revealing the identity of confidential sources, and revealing sensitive law enforcement

techniques.

(62)    Before an agency can invoke any of the harms enumerated in Exemption 7, it

must first demonstrate that the records or information at issue were compiled for law

enforcement purposes.  Law enforcement agencies such as the FBI must demonstrate that the

records at issue are related to the enforcement of federal laws and that the enforcement activity is within the law enforcement duty of that agency. The various records at issue in this case were compiled for criminal law enforcement purposes during the course of the FBI's performance of its law enforcement mission, including the investigation of criminal activities, and of preventing and deterring terrorist attacks within the United States and around the world, and reducing the vulnerability of the United States to terrorism.

(63)    Because the records clearly meet the Exemption 7 threshold, the remaining inquiry is whether their disclosure would interfere with pending law enforcement proceedings, invade personal privacy, reveal the identity of confidential sources, reveal sensitive law enforcement techniques.

**EXEMPTION (b)(7)(A)**
**PENDING LAW ENFORCEMENT INVESTIGATION**

(64)    5 U.S.C. § 552 (b)(7)(A) exempts from disclosure:

records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information (A) could reasonably be expected to interfere with enforcement proceedings . . . .

(65)    Application of this exemption requires the existence of law enforcement records; a pending or prospective law enforcement proceeding; and a reasonable expectation that release of the information would interfere with the enforcement proceeding. Furthermore, normally the assertion of this exemption to withhold documents involves documents found in an investigatory file. In this case, the information in question is contained in a series of internal communications which represent discussions between FBI attorneys and FBI SAs regarding case-related issues arising in various pending investigations. Specifically Exemption (b)(7)(A)-1 has been asserted

-34-

to protect the names of the subjects of pending investigations and the details concerning these investigations.

(66)     Based on its statutory authority, the FBI has established standard operating procedures by which to implement the FOIA and Privacy Act as efficiently as possible.  In that respect, when a FOIA/Privacy Act request is received for an on-going FBI investigation, the FBI in most instances asserts Exemption (b)(7)(A) for that request.  However, the FBI does review the materials responsive to the request and releases information contained within the file(s) which will not jeopardize future investigative or prosecutive efforts.  The FBI's review of the responsive records for the preparation of this declaration revealed that no material responsive could be released, as all information reviewed would jeopardize further investigations and/or prosecutive efforts.

(67)     Any release of information from the responsive files would be premature due to the harm which could ensue.  Once documents are released and are in the public domain, the information concerning the investigation could reach the individuals who are under investigation. This would allow these individuals to critically analyze the information in the documents pertinent to the investigation of themselves.  Such individuals possess the unique advantage of knowing the details surrounding the investigation, the identities of potential witnesses, direct and circumstantial evidence, etc., and could use the released information to their advantage.  In this regard, the following potential harms from the release of these documents exist:

(a) The identification of individuals, sources, and potential witnesses who possess information relative to the investigations and possible harm to, or intimidation of these individuals;

-35-

(b) The use of information released to counteract evidence developed by investigators;

(c) The identification of third parties who are also under investigation;

(d) The identification of the subject matter concerning classified information; and

(e) The locations in the United States, as well as foreign countries where the FBI is focusing the investigation and collection of investigative and source material.

(68)     Furthermore, the release of this information to third parties not directly involved in these matters could allow these third parties to interfere with the pending proceedings by harassment, intimidations, and creation of false evidence dispensing facts discussed during the FBI's investigation.  Once a release is made to a set of plaintiffs under the FOIA, the use and dissemination of the information to third parties is unrestricted.

(69)     Historically, the FBI has responded to requests for pending FBI investigatory files, or portions thereof, with great regard for the intent of the FOIA.  The FBI makes every effort to provide information which will not interfere with the pending law enforcement proceedings.  The FBI is continuously working in conjunction with other federal agencies in pending investigations; any waiver of FOIA Exemption (b)(7)(A) would inhibit the FBI's assistance to the justice system at the Federal level.  Exemption (b)(7)(A)-1 has been cited on the following ACLU Bates pages: 93 to 98, 124, 141-153, 155-158, 162, 195, 221, 299-302, 305-1, 515-2, 515-5 to 515-9, 515-23, 515-24, 515-26, 515-27, 515-32 to 515-34, 515-36, 515-38 to 515-42, 516-3 to 516-6, 516-9 to 516-41, 517-1 to 517-35, 518-35, 518-43, 545, 956, 1057, 1058, 2003-1, 2003-2, 2003-4 to 2003-44, and 2004-1 to 2004-10.

**EXEMPTION (b)(7)(C)**
**UNWARRANTED INVASION OF PERSONAL PRIVACY**

(70)     5 U.S.C. § 552 (b)(7)(C) exempts from disclosure

records or information compiled for law enforcement purposes, but only to the
extent that the production of such law enforcement records or information . . .
could reasonably be expected to constitute an unwarranted invasion of personal
privacy . . . .

(71)     In withholding information from disclosure pursuant to this exemption, the FBI is

required to balance the privacy interests of the individual mentioned in the documents against

any public interest in disclosure.  In asserting this exemption, each piece of information was

scrutinized to determine the nature and strength of each individual's privacy interest.  The FBI

identified the public interest in disclosure of the information to be whether the information in

question would inform plaintiffs or the general public about the FBI's performance of its mission

to enforce federal criminal and national security statutes and/or how the FBI actually conducts its

statutory duties, namely, its internal operations and investigations.  Every effort has been made to

release all segregable information contained in these pages without infringing upon the privacy

rights of the individuals mentioned in these documents.

**(b)(7)(C)-4     Names and/or Identifying Information Third Parties of**
**Investigative Interest or Who Provided Information to the FBI**

(72)     Exemption (b)(7)(C)-4 has been asserted, at times in conjunction with Exemption

(b)(6)-4, to withhold the names of third parties contained in various communications which

reflect internal discussion of individuals who are the subjects of law enforcement investigations

or who provided information regarding these investigations.  These individuals are of

investigative interest to the FBI, and are discussed in numerous communications.  Disclosure of

-37-

the identities of these third parties in this context could cause unsolicited and unnecessary attention to be focused on them and disclosure could embarrass them.  For these reasons, the FBI has determined that the third party individuals mentioned in the responsive communications maintain a strong privacy interest in not having their identities disclosed.

(73)    After identifying the substantial privacy interest of the third parties in the communications, the FBI balanced those interests against the public interest in disclosure.  The FBI could identify no discernible public interest in the disclosure of this information because the disclosure of third parties' names and identifying information will not shed light on the operations and activities of the FBI.  Accordingly, the FBI determined that the disclosure of this information could constitute an unwarranted invasion of personal privacy.  Thus, the FBI properly withheld the names of these third parties merely mentioned in the responsive communications pursuant to Exemption 7(C).  Exemption (b)(7)(C)-4 has been cited on the following ACLU Bates pages: 1, 2, 5, 6, 7-1 to 7-5, 7-7 to 7-22, 19, 62, 79-1 to 79-2, 80-1 to 80-5, 81-1 to 81-2, 82-1 to 82-4, 83-1 to 83-4, 84-1 to 84-2, 85-1 to 85-8, 88, 93 to 95, 97, 98, 100 to 103, 121 to 128, 134, 138, 139, 145 to 147, 155, 162, 168, 170 to 175, 177-2, 179 to 181, 187, 189-1 to 189-9, 190 to 192, 193-5 to 193-11, 193-16, 194 to 196, 199, 220 to 222, 229 to 243, 249, 250, 253, 260, 262, 267, 271, 286, 294 to 297, 300, 301, 304-1 to 304-7, 311, 313-1 to 313-7, 475-1 to 475-5, 501, 502, 512-1, 512-2, 513-1, 515-3, 515-14, 515-16, 515-19 to 515-24, 515-26 to 515-32, 515-40 to 515-42, 516-1, 516-10 to 516-26, 516-28 to 516-30, 516-32, 516-33, 516-35 to 516-41, 517-1 to 517-4, 517-6, 517-7, 517-9 to 517-12, 517-14, 517-16 to 517-19, 517-21 to 517-35, 518-36 to 518-42, 518-44, 519-3, 521-34, 521-35, 525-3, 529, 536, 555, 557, 599, 622 to 624, 659 to 669, 685, 690, 693, 694, 730, 731, 738, 739, 741 to 758, 792, 793, 795 to

821, 949 to 953, 955, 956, 961, 963, 1055 to 1058, 1061 to 1063, 1126 to 1147, 1149 to 1170,

1172 to 1187, 1207 to 1226, 1249 to 1257, 1335-1 to 1335-11, 1478 to 1480, 1482-14 to 1482-

20, 1712 to 1715, 1797 to 1802, 1809 to 1812, 1896-3, 2003-1 to 2003-5, 2003-7, 2003-9 to

2003-17, 2003-21, 2003-23 , 2003-25 to 2003-31,  2003-37, 2003-38, 2003-40 to 2003-44, 2004-

1, 2004-2, 2004-4 to 2004-10, 2127 to 2130, 2130a, 2131, 2131a, 2132 to 2148, and 2150.

### (b)(7)(C)-5    Names and/or Identifying Information of Third Parties Merely Mentioned

(74)    Exemption (b)(7)(C)-5 has been asserted in conjunction with Exemption (b)(6)-5

to withhold the names of third parties who are merely mentioned in various communications

which reflect the internal discussion of individuals who are the subjects of  law enforcement

investigations.  These individuals are not of investigative interest to the FBI, but are merely

mentioned in these communications.  Disclosure of the identities of these third parties in this

context could cause unsolicited and unnecessary attention to be focused on them and disclosure

could embarrass them.  For these reasons, the FBI has determined that the third party individuals

merely mentioned in the responsive communications maintain a strong privacy interest in not

having their identities disclosed.

(75)    After identifying the substantial privacy interest of the third parties merely

mentioned in the communications, the FBI balanced those interests against the public interest in

disclosure.  The FBI could identify no discernible public interest in the disclosure of this

information because the disclosure of third parties' names will not shed light on the operations

and activities of the FBI.  Accordingly, the FBI determined that the disclosure of this information

could constitute an unwarranted invasion of personal privacy.  Thus, the FBI properly withheld

the names and identifying information of these third parties merely mentioned in the responsive

documents/e-mail pursuant to Exemption 7(C).  Exemption (b)(7)(C)-5 has been cited on the

following ACLU Bates pages: 7-1 to 7-5, 7-7 to 7-22, 19, 62, 79-1 to 79-2, 80-1 to 80-5, 81-1 to

81-2, 82-1 to 82-4, 83-1 to 83-4, 84-1 to 84-2, 85-1 to 85-8, 88, 300, 301, 304-1 to 304-7, 311,

313-3 to 313-7, 475-1 to 475-5, 501, 502, 515-1, 515-3, 515-4, 515-11, 515-14, 515-16, 515-23,

515-24, 515-26 to 515-32, 515-38, 515-40 to 515-42, 516-1, 516-9 to 516-30, 516-32  to 516-41,

517-1 to 517-15, 517-17 to 517-35, 518-36 to 518-44, 519-3, 519-9, 521-34, 521-35, 555, 557,

624, 1173, 1177, 1478 to 1479, 1715, 1797 to 1799, 1801, 1802, 2004-5, 2004-10, 2127 to 2130,

2130a, 2131, 2131a, 2132 to 2141, 2148, and 2150.

## EXEMPTION (b)(7)(D)
## CONFIDENTIAL SOURCE INFORMATION

(76)    5 U.S.C. § 552(b)(7)(D) provides protection for:

> records or information compiled for law enforcement purposes, but only to the
> extent that the production of law enforcement records or information . . . could
> reasonably be expected to disclose the identity of a confidential source, including
> a State, local or foreign agency or authority or any private institution which
> furnished information on a confidential basis, and, in the case of a record or
> information compiled by a criminal law enforcement agency conducting a lawful
> national security intelligence investigation, information furnished by a
> confidential source.

(77)    Numerous confidential sources report to the FBI on a regular basis and are

"informants" within the common meaning of the term.  These sources provide information under

a variety of circumstances, including either an express or an implied assurance of confidentiality.

Releasing the information provided by these sources may likely reveal a confidential source's

identity.  In this case, certain commercial/private companies provided information to the FBI

during the course of its intelligence investigations both with express and implied assurances of

-40-

confidentiality.  Release of certain information provided by these entities would, in and of itself, be revealing of the identities of these companies, thereby necessitating protection of  the information provided by these  sources.  In turn, release of a source's identity would forever eliminate that source as a future means of obtaining information.  In addition, when the identity of one source is revealed, that revelation has a chilling effect on the activities and cooperation of other sources.  It is only with the understanding of complete confidentiality (whether expressed or implied) that the aid of such sources can be enlisted, and only through this confidence that these sources can be persuaded to continue providing valuable assistance in the future.  Thus, the information provided by, as well as the identities of these sources, has been protected pursuant to Exemption 7(D).

### (b)(7)(D)-1    Names and/or Identifying Information Furnished by Third Parties with Express Assurance of Confidentiality

(78)    Exemption (b)(7)(D)-1 has been asserted to withhold names, identifying information and data provided to the FBI by commercial or non-governmental entities with an "express" assurance of confidentiality.  During the course of the FBI's intelligence investigations, certain commercial/private companies provided information to the FBI relating to the subjects of these investigations.  The FBI obtained this information pursuant to investigative authorities.  To disclose the fact that these companies provided information to the FBI during the course of an investigation could harm the commercial interests of the enterprise by deterring the public from employing their services.  Some of this information is also classified and to provide more detail regarding these sources may reveal the very classified information that the FBI is attempting to protect.  In addition, such a disclosure has wider implications.  If the FBI disclosed

the identities of confidential sources that provide information to the FBI on a continuing basis,

that revelation would have a chilling effect on the activities and cooperation of other FBI

confidential sources.  It is only with the understanding of complete confidentiality that the aid of

such sources can be enlisted, and only through this confidence that these sources can be

persuaded to continue providing valuable assistance in the future.  The FBI has released as much

segregable information as possible without disclosing these sources' identities.  Accordingly, the

FBI properly withheld this information pursuant to Exemption (b)(7)(D)-1.  Exemption

(b)(7)(D)-1 has been cited on the following ACLU Bates pages: 79-1 to 79-2, 80-1 to 80-5, 81-1

to 81-2, 82-1 to 82-4, 83-1 to 83-4, 84-1 to 84-2, 85-1 to 85-3, 146, 183, 193-6 to 193-11, 193-

16, 195, 221, 229, 236-243, 599, 659, 685, 690, 693, 694, 730 to 731, 738 to 758, 792 to 794,

1257, 2003-2, and 2003-15.

### (b)(7)(D) -2    Names and/or Identifying Information Furnished by Third Parties with Implied Assurance of Confidentiality

(79)    Exemption (b)(7)(D)-2 has been asserted to withhold information provided to the

FBI by commercial or non-governmental entities under circumstances from which an assurance

of confidentiality may be implied.  During the course of the FBI's intelligence investigations,

certain commercial/private companies provided information to the FBI relating to the subjects of

these investigations.  The FBI obtained this information pursuant to investigative authorities.  To

disclose the fact that these companies provided information to the FBI during the course of an

investigation could harm the commercial interests of the enterprise by deterring the public from

employing their services.  Some of this information is also classified and to provide more detail

regarding these sources may reveal the very classified information that the FBI is attempting to

protect.  In addition, such a disclosure has wider implications.  If the FBI disclosed the identities

of confidential sources that provide information to the FBI on a continuing basis, that revelation

would have a chilling effect on the activities and cooperation of other FBI confidential sources.

It is only with the understanding of complete confidentiality that the aid of these sources can be,

and have been, enlisted, and only through this confidence that these sources can be persuaded to

continue providing valuable assistance in the future.  The FBI has released as much segregable

information as possible without disclosing these sources' identities.  Accordingly, the FBI

properly withheld this information pursuant to Exemption (b)(7)(D)-2.  Exemption (b)(7)(D)-2

has been cited on the following ACLU Bates pages: 1, 2, 5, 7-1 to 7-22, 145, 194, 221, 515-28 to

515-31, 515-41, 515-42, 516-1, 622 to 624, 951 to 952, 961, 963, 1055, 1061 to 1063, 1335-8 to

1335-11, 2003-1 to 2003-4, 2003-7, and 2003-9.

### (b)(7)(D) -4     Investigative Material Compiled by State, County or Local Law Enforcement Agencies and Provided to the FBI

(80)     Exemption (b)(7)(D)-4 has been asserted, at times in conjunction with

Exemptions (b)(6)-3 and (b)(7)(C)-3, to withhold information compiled and provided to the FBI

by local, county or state law enforcement agencies under an express grant of confidentiality.

During the course of the FBI's intelligence investigations it received information from local,

county or state law enforcement agencies regarding the on-going investigations.  The FBI has

many agreements with local, county or state law enforcement agencies under which security

and/or criminal law enforcement information is exchanged.  The agreements specify the extent of

confidentiality requested by the respective local, county or state law enforcement agencies.  In

some circumstances, these local, county or state law enforcement agencies request confidentiality

for their identity and information provided, while in other circumstances, may request that its information be protected while it does not object to the disclosure of its relationship and interaction wit  the FBI.

(81)    In this case, the FBI has express confidentiality agreements with numerous law enforcement agencies which provided information to the FBI during the conduct of intelligence investigations.  The FBI's agreements with these law enforcement agencies provides that the FBI will not disclose their identities, as well as the information that they provided to the FBI.  If the FBI were to disclose the identities and the information provided by these law enforcement agencies under express assurances of confidentiality, such a disclosure would have a chilling effect on the FBI's relationship with these entities.  Furthermore, the disclosure would have a chilling effect on the FBI's relationship with other law enforcement entities which have entered into similar agreements with the FBI.  Accordingly, the FBI has properly withheld information provided by these local, county or state law enforcement agencies pursuant to Exemption 7(D). Exemption (b)(7)(D)-4 has been cited on the following ACLU Bates pages: 5, 96, 221, 1126 to 1143, 1145 to 1171, 1173 to 1187, 1249 to 1256, 1797-179, and 2003-15.

## EXEMPTION (b)(7)(E)
## INVESTIGATIVE TECHNIQUES AND PROCEDURES

(82)    5 U.S.C. § 552 (b)(7)(E) provides for the withholding of:

records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law . . . .

**(b)(7)(E)-1    Investigative Techniques and Procedures**

(83)    The FBI has asserted Exemption (b)(7)(E)-1, at times in conjunction with

Exemption (b)(2)-4, to protect several different types of law enforcement techniques and

procedures used in the furtherance of the FBI's domestic terrorism investigations and/or

prosecutions.  These techniques are reflected in various internal FBI documents as well as

information obtained in the course of active investigations by virtue of the application of those

techniques.  While the protection of Exemption 7(E) is generally limited to techniques and

procedures that are not well known to the public, even commonly known procedures may be

protected from disclosure if disclosure would reduce or nullify their effectiveness -- including in

such areas as scientific analysis, witness interview techniques, details of polygraph examinations,

the types of test and machine used and questions asked in sequence.

(84)    The revelation of these details would make the FBI more vulnerable: disclosure

would enable the targets of these techniques to reasonably impede the effectiveness of the FBI's

domestic terrorism investigations, to avoid detection and/or develop countermeasures to

circumvent the ability of the FBI to effectively use these fundamental law enforcement

techniques, thereby risking circumvention of the law.  Individuals who possess such knowledge

may be able to utilize this information to search for vulnerabilities, thus compromising the

effectiveness of the FBI's investigatory techniques.  Accordingly, the FBI has properly withheld

this information pursuant to Exemption (b)(7)(E)-1.  Exemption (b)(7)(E)-1 has been cited on the

following ACLU Bates pages: 121-123, 194, 515-3, 515-5, 515-6, 515-8, 515-23 to 515-25, 515-

32, 515-40 to 515-42, 516-1 to 516-5, 516-9 to 516-41, 517-1 to 517-35, and 543.[9]

## DOCUMENTS/INFORMATION ORIGINATING WITH OTHER AGENCIES

(85)     The Third Hardy Decl. and the Fourth Hardy Decl. discussed several referrals and consultations in connection with particular documents which contained information originating with other agencies:

•     By letter dated September 22, 2005, FBIHQ forwarded a referral package to the Department of Air Force, HAF/ICIOD (FOIA), regarding Greenpeace, consisting of 21 pages which originated with this agency, for direct response to plaintiffs.  These pages are identified as five (5) unclassified documents:  file number 266D-LA-226745, serial 4 (6 pages), serial 5 (2 pages), serial 55 (Attachment of 2 pages), serial 1A9 (2 pages), serial 213 (9 pages).  None of the documents which were referred to the Department of the Air Force were included in those documents which plaintiffs requested be Vaughned, and as a result are no longer part of this litigation.

•     By letter dated September 22, 2005, FBIHQ forwarded a referral package to the Executive Office for United States Attorneys ("EOUSA") regarding Greenpeace, consisting of 25 pages which originated with this DOJ component, for direct response to plaintiffs.  These pages are identified as unclassified documents: file number 266D-LA-227827, serial 198 (20 pages) and serial 214 (5 pages).  Although initially plaintiffs identified serial 198 as a document to be Vaughned – ACLU Bates Stamp ##s 1482-29 through 1482-40, in subsequent communications, see Exhibit B hereto, they have

_____

[9]  The FBI has revisited the assertion of Exemption (b)(7)(E)-1 on ACLU Bates pages 1-2, 50-51, 193-6 to 193-15, and 292 and has decided to withdraw its assertion of Exemption 7(E) as to those pages.

removed this document from consideration. Moreover, plaintiffs have not requested that Serial 214 be Vaughned. As a result, none of the EOUSA-originated documents are part of this litigation.

• ACLU Bates pages 2003-32 through 2003-36, documents related to Greenpeace, contain information which originated with the Department of Homeland Security ("DHS"). The FBI consulted with DHS processed these five pages, and a release was made in Exhibit A to the Fourth Hardy Decl. However, based on further negotiations between the parties, see Exhibit B hereto, these pages are no longer part of this litigation.

• Four pages were referred to the U.S. Office of Personnel Management ("OPM"), Office of the Inspector General, regarding PETA -- ACLU Bates pages 193-1 to 193-4. OPM has advised that it has made a partial release to plaintiffs, and has redacted certain individuals' names pursuant to Exemptions 6 and 7(C). OPM has prepared and submitted a separate Vaughn declaration to address these withholdings.

• The FBI has also consulted with the Secret Service, Department of Homeland Security ("DHS") regarding five pages related to Greenpeace (Bates stamped by the FBI as "SS-1 to SS-05"). A supplemental release of these pages was made as part of Exhibit C to the Fourth Hardy Decl. However, based on further negotiations between the parties, see Exhibit B hereto, these pages are no longer part of this litigation.

• In the Fourth Hardy Decl., the FBI advised that it had identified a draft document originating with the Department of Defense ("DoD"), Office of the Inspector General, concerning MPAC. These pages are identified as ACLU Bates pages 519-10 to 519-44, and 520-1 to 520-30. Following consultation with DoD, it was determined that the

document was in fact FBI's.  As a result, the FBI processed the document: one page is released in part (ACLU Bates page 519-10), and ACLU Bates pages 519-11 to 519-44 and 520-1 to 520-30 have been withheld in full pursuant to Exemptions (b)(5)-1, (b)(6)-4, (b)(6)-5, (b)(7)(C)-4, (b)(7)(C)-5, and (b)(7)(E)-1.  However, plaintiffs have indicated that they are no longer challenging this document.

## CONCLUSION

(86)    FBIHQ has processed and released all segregable information from the documents responsive to plaintiffs' requests.  The FBI has carefully examined the records related to UFPJ, ADC, ACLU, PETA, MPAC and Greenpeace and determined that the remaining contested information should continue to be withheld pursuant to coded FOIA Exemptions (b)(1), (b)(2)-4, (b)(3)-1, (b)(3)-2, (b)(5),  (b)(6)-4, (b)(6)-5, (b)(7)(A), (b)(7)(C)-4, (b)(7)(C)-5, (b)(7)(D)-1, (b)(7)(D)-2, (b)(7)(D)-4, and (b)(7)(E).  The FBI carefully examined the remaining pages withheld in full and in part, and determined that the information withheld from plaintiffs in this case, if disclosed, could reasonably be expected to damage national security, impede the effectiveness of the FBI's internal law enforcement procedures and practices, interfere with and damage attorney-client privileged communications, as well as chill internal intra and inter-agency deliberations, interfere with pending law enforcement investigations, cause unwarranted invasions of privacy interests of numerous individuals, disclose the identities of confidential sources, and disclose techniques and procedures for law enforcement investigations.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

and correct, and that Exhibits A through E attached hereto are true and correct copies.

Executed this _____ day of February, 2006.


DAVID M. HARDY
Section Chief
Record/Information Dissemination
  Section
Records Management Division
Federal Bureau of Investigation
Washington, D.C.