IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| AMERICAN CIVIL LIBERTIES UNION, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civ. A. No. 05-CV-1004 (ESH) |
| | ) | |
| FEDERAL BUREAU OF INVESTIGATION, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## FOURTH DECLARATION OF DAVID M. HARDY

I, David M. Hardy, declare as follows:

(1)     I am currently the Section Chief of the Record/Information Dissemination Section ("RIDS"), Records Management Division ("RMD"), at Federal Bureau of Investigation Headquarters ("FBIHQ") in Washington, D.C. I have held this position since August 1, 2002. Prior to my joining the FBI, from May 1, 2001 to July 31, 2002, I was the Assistant Judge Advocate General of the Navy for Civil Law. In that capacity, I had direct oversight over Freedom of Information ("FOIA") policy, procedures, appeals, and litigation for the Navy. From October 1, 1980 to April 30, 2001, I served as a Navy Judge Advocate, serving at various commands and routinely working with FOIA matters. I am also an attorney who has been licensed to practice law in the State of Texas since 1980.

(2)     In my current capacity as Section Chief, I supervise the Freedom of Information/Privacy Acts Litigation Support Unit ("FOIPA LSU"). My responsibilities also include the review of FBI information for classification purposes as mandated by Executive

Order 12958, as amended,[1] and the preparation of affidavits/declarations in support of Exemption 1 claims asserted under the FOIA.[2] I have been designated by the Attorney General of the United States as an original classification authority and a declassification authority pursuant to Executive Order 12958, as amended, §§ 1.3 and 3.1. The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

(3)    Due to the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to requests for information from its files pursuant to the provisions of the FOIA, 5 U.S.C. § 552 and the Privacy Act of 1974, 5 U.S.C. § 552a. Specifically, I am aware of the treatment which has been afforded the multi-part FOIA requests of plaintiffs American Civil Liberties Union ("ACLU"), in particular, the American-Arab Anti Discrimination Committee ("ADC") and the Muslim Public Affairs Council ("MPAC") hereinafter "plaintiffs," who collectively seek access to documents related to the Joint Terrorism Task Force ("JTTF"), the National Joint Terrorism Task Force ("NJTTF"), in connection with plaintiffs' groups and individuals.[3]

(4)    On December 1, 2005, the FBI submitted to plaintiffs the Third Declaration of

---

[1] 60 Fed. Reg. 19825 (1995) and 68 Fed. Reg. 15315 (2003).

[2] 5 U.S.C. § 552 (b)(1).

[3] The Third Hardy Declaration discusses in detail the other plaintiffs involved. This declaration specifically discusses MPAC and ADC based on the Court's decision to prepare a Vaughn for these plaintiffs for December 22, 2005. Further, documents processed for NJTTF policies, procedures, and practices as well as investigative records will be coded January 6, 2005 and March 1, 2005 per production schedule set by the Court. A separate Vaughn declaration following the FBI's final release of the NJTTF documents will be prepared in March 2006.

David M. Hardy ("Third Hardy Declaration"), which addressed a total of 773 pages which have been identified by plaintiffs related to UFPJ, ACLU, PETA and Greenpeace, and provided justifications for the withholding of information from the documents withheld, either in part or in full, pursuant to the FOIA Exemptions 1, 2, 3, 5, 6, 7(A), 7(C), 7(D), 7(E) and 7(F).[4]  The purpose of this second Vaughn declaration is to address a total of 357 pages which have been identified by plaintiffs related to MPAC and ADC (ADC–related documents have been identified as ACLU Bates pages 299-509, and MPAC–related documents have been identified as ACLU Bates pages 510-607);[5] and to provide justifications for the withholding of information from the documents withheld, either in part or in full, pursuant to the FOIA Exemptions 1, 2, 3, 5, 6, 7(A), 7(C), 7(D), and 7(E), 5 U.S.C. §§ 552 (b)(1), (b)(2), (b)(3), (b)(6), (b)(7)(A), (b)(7)(C), (b)(7)(D), and (b)(7)(E).  Out of these 357 pages, 196 pages were released with redactions; 93 pages were withheld in full; 3  pages were released in full; and 65 pages were referred to the Department of Defense.

(5)    As a result of the FBI's search efforts, described in greater detail in the Third Hardy Declaration, ¶¶ 21-22,[6] the following pages were located for MPAC and ADC:  MPAC – 419 pages, and ADC -- 279 pages.   Specifically, the documents related to MPAC consist of

---

[4]  See Third Hardy Declaration, ¶¶ 5-25, for a discussion of the administrative and litigation history of plaintiffs' FOIA requests, as well as the FBI's search for, and description of, responsive documents.

[5]  See Exhibit A of Third Hardy Declaration for a detailed breakdown of those documents which plaintiffs requested to be Vaughned.

[6]  The FBI conducted searches for documents in the following offices : MPAC – FBIHQ, New York, Los Angeles, and Washington Field Offices ("WFO") and ADC - FBIHQ,  San Francisco, New York, Los Angeles, and "WFO."

internal e-mails and Electronic Communications ("ECs") in connection with the work of the

JTTFs, interviews of third party individuals, meeting memoranda, and reports which were

provided by sources and obtained through a variety of sensitive law enforcement techniques.

Moreover, the documents related to ADC consist of internal e-mails, incident reports and ECs

concerning interviews of third-party individuals and other government employees, and complaint

forms regarding law enforcement investigations.[7]

## EXPLANATION OF PROCESSING OF RESPONSIVE DOCUMENTS

(6)      All documents were processed to achieve maximum disclosure consistent with the

provisions of the FOIA.  Every effort has been made to provide plaintiffs with all material in

the public domain and with all reasonably segregable portions of releasable material.  It is

important to note that, due to the complexities and time pressures associated with reviewing,

processing and releasing documents in this case, and particularly given the nature of the

responsive documents, the FBI made a good faith attempt to process all of the documents in such

a way as to ensure internal consistency.

(7)      Copies of the documents identified by plaintiff and which relate to MPAC and

ADC contain, on their face, coded categories of exemptions which detail the nature of the

information withheld pursuant to the provisions of the FOIA.  The coded categories are provided

to aid in the review of the FBI's explanations of the FOIA exemptions used to withhold the

protected material.  The coded documents are attached hereto as **Exhibit A**.

---

[7]  Certain documents were designated as "O/S" or "out of scope" and by agreement
between the parties are not addressed in this <u>Vaughn</u> declaration.

## MECHANICS OF UTILIZING THE CODED FORMAT

(8)     Each withholding of information from these documents is accompanied by a code

that corresponds to a category within each of the exemptions used to withhold information.  For

example, if (b)(7)(C)-1 appears on the page, the "b)(7)(C)" designation refers to the use of the

exemption under the caption "Unwarranted Invasion of Personal Privacy."  The Subcategory "1"

narrows and specifically describes the material deleted, which, in this example, are the identities

of FBI employees.  The coded categories of exemptions used in the processing of plaintiffs'

request are as follows, and more detailed descriptions of the information withheld will be

provided herein:

## SUMMARY OF JUSTIFICATION CATEGORIES

**EXEMPTION (b)(1)**              **CLASSIFIED INFORMATION**

(b)(1)-1                          Information Properly Classified by an FBI Classification Authority
                                  Pursuant to Executive Order 12958, As Amended

**EXEMPTION (b)(2)**              **INFORMATION RELATED SOLELY
                                  TO THE INTERNAL RULES AND
                                  PRACTICES OF AN AGENCY**

(b)(2)-1                          Internal Telephone, Facsimile, Room Numbers and
                                  E-mail Addresses of FBI Employees
                                  [May be Cited in conjunction with Exemptions(b)(6)-1 and
                                      (b)(7)(C)-1]

(b)(2)-2                          Internal Telephone, Facsimile, Room Numbers and E-
                                  mail Addresses of Other Federal Government Employees
                                  [May be Cited in conjunction with Exemptions (b)(6)-2 and
                                      (b)(7)(C)-2]

(b)(2)-3                          Confidential Source Symbols or Numbers
                                  [May be Cited in conjunction with Exemption (b)(7)(D)-3]

(b)(2)-4                          FBI Internal Investigative Techniques and Procedures

[May be Cited in conjunction with Exemptions (b)(7)(D)-4
and (b)(7)(E)-1]

**EXEMPTION (b)(3)**                    **INFORMATION PROTECTED BY STATUTE**

(b)(3)-1                    Inner Workings of the Federal Grand Jury -- Federal Rule
of Criminal Procedure 6(e)

**EXEMPTION (b)(5)**                    **PRIVILEGED INFORMATION**

(b)(5)-1                    Deliberative Process and Attorney-Client Privileges

**EXEMPTION (b)(6)**                    **CLEARLY UNWARRANTED INVASION OF
PERSONAL PRIVACY**

(b)(6)-1                    Names and/or Identifying Information Pertaining to FBI
Employees
[May be Cited in conjunction with Exemptions (b)(2)-1 and
(b)(7)(C)-1]

(b)(6)-2                    Names and/or Identifying Information Pertaining to Non-FBI
Federal Government Employees
[May be Cited in Conjunction with Exemption (b)(7)(C)-2]

(b)(6)-3                    Names and/or Identifying Information of Local, County and State
Law Enforcement Employees
[May be Cited in conjunction with Exemption (b)(7)(C)-3]

(b)(6)-4                    Names and/or Identifying Information of Third Parties of
Investigative Interest or Who Provided Information to the FBI
[May be Cited in conjunction with Exemption (b)(7)(C)-4]

(b)(6)-5                    Names and/or Identifying Information of Third Parties Merely
Mentioned
[May be Cited in conjunction with Exemption (b)(7)(C)-5]

(b)(6)-6                    Names and/or Identifying Information of Foreign
Government/Law Enforcement Agency Officials
[May be Cited in conjunction with Exemptions (b)(2)-5,
(b)(7)(C)-6 and (b)(7)(D)-5]

**EXEMPTION (b)(7)(A)**    **PENDING LAW ENFORCEMENT INVESTIGATIONS**

(b)(7)(A)-1                     Information Pertaining to Pending Law Enforcement Investigations

**EXEMPTION (b)(7)(C)**      **UNWARRANTED INVASION OF PERSONAL PRIVACY**

(b)(7)(C)-1                     Names and/or Identifying Information Pertaining to FBI
                                Employees
                                [May be Cited in conjunction with Exemptions (b)(2)-1 and
                                (b)(6)-1]

(b)(7)(C)-2                     Names and/or Identifying Information Pertaining to Non-FBI
                                Federal Government Employees
                                [May be Cited in conjunction with Exemption (b)(6)-2]

(b)(7)(C)-3                     Names and/or Identifying Information of Local, County and State
                                Law Enforcement Employees
                                [May be Cited in conjunction with Exemptions (b)(6)-3 and
                                     (b)(7)(D)-3]

(b)(7)(C)-4                     Names and/or Identifying Information of Third Parties of
                                Investigative Interest or Who Provided Information to the FBI
                                [May be Cited in conjunction with Exemption (b)(6)-4]

(b)(7)(C)-5                     Names and/or Identifying Information of Third Parties Merely
                                Mentioned
                                [May be Cited in conjunction with Exemption (b)(6)-5]

(b)(7)(C)-6                     Names and/or Identifying Information of Foreign
                                Government/Law Enforcement Agency Officials
                                [May be Cited in conjunction with Exemption (b)(2)-5,(b)(6)-6
                                and (b)(7)(D)-5]

**EXEMPTION (b)(7)(D)**      **CONFIDENTIAL SOURCE INFORMATION**

(b)(7)(D)-1                     Names and/or Identifying Information Furnished by Third Parties
                                with Express Assurance of Confidentiality

(b)(7)(D)-2                     Names and/or Identifying Information Furnished by Third Parties
                                with Implied Assurance of Confidentiality

(b)(7)(D)-3                     Confidential Source Symbols or Numbers
                                [May be Cited in conjunction with (b)(2)-3]

**EXEMPTION (b)(7)(E)**      **INVESTIGATIVE TECHNIQUES AND**

## PROCEDURES

(b)(7)(E)-1                           FBI Internal Investigative Techniques and Procedures
                                      [May be Cited in conjunction with (b)(2)-4]

## JUSTIFICATION FOR REDACTIONS

(9)    The paragraphs that follow explain the FBI's rationale for withholding each

particular category of information under the specific exemption categories described above.  In

addition, **Exhibit B** attached hereto consists of a chart which provides additional details

regarding those pages which have been withheld in full.

## APPLICATION OF FOIA EXEMPTION (b)(1) and E.O. 12958, AS AMENDED

(10)    The FBI's analysis of the withholding of classified information contained in its

records in a FOIA context is based on the standards articulated in the FOIA statute, 5 U.S.C. §

552 (b)(1).  Exemption 1 protects from disclosure those records that are "(A) specifically

authorized under criteria established by an Executive Order to be kept Secret in the interest of

national defense or foreign policy; and (B) are in fact properly classified pursuant to such

Executive Order."

(11)    The FBI's analysis of whether Exemption 1 permits the withholding of agency

records consists of two significant steps.  First, the FBI must determine whether the information

contained in the records is information that satisfies the substantive and procedural criteria of the

applicable Executive Order governing the classification and protection of national security

information.  Only after those criteria have been satisfied may the FBI proceed to analyze

whether the documents are exempt under FOIA Exemption 1.

(12)    First therefore, I must determine whether the information in these records is

-8-

information that satisfies the requirements of the current Executive Order which presently

governs the classification and protection of information that affects the national security.[8]  I must

further ensure that the information at issue complies with the various substantive and procedural

criteria of the current Executive Order, E.O. 12958, as amended.  The current Executive Order

which applies to the protection of national security information was amended on March 25, 2003.

I am bound by the requirements of E.O. 12958, as amended, when making classification

determinations.

(13)    For information to be properly classified, and thus properly withheld from

disclosure pursuant to Exemption 1, the information must meet the requirements set forth in E.O.

12958, as amended, § 1.1 (a):

> (a) an original classification authority is classifying the information;
>
> (b) the information is owned by, produced by or for, or is under the control of the United States Government;
>
> (c) the information falls within one or more of the categories of information listed in § 1.4 of this order; and
>
> (d) the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security, which includes defense against transnational terrorism, and the original classification authority is able to identify or describe the damage.

(14)    All information which I determined to be classified in this case, and which is

under the control of the United States Government, is marked at the "Secret" level since the

unauthorized disclosure of this information reasonably could be expected to cause serious

---

[8]  Section 6.1 (y) of E.O. 12958, as amended, defines "National Security" as "the national defense or foreign relations of the United States."

damage to the national security.[9] In addition to these substantive requirements, certain procedural and administrative requirements of E.O. 12958, as amended, must be followed before information can be considered to be properly classified, such as, proper identification and marking of documents. I made certain that all procedural requirements of E.O. 12958, as amended, were followed in order to ensure that the information was properly classified. I made certain that:

(a) each document was marked as required and stamped with the proper classification designation;[10]

(b) each document was marked to indicate clearly which portions are classified and which portions are exempt from declassification as set forth in E.O. 12958, as amended, § 1.5 (d) and which portions are unclassified;[11]

(c) the prohibitions and limitations on classification specified in E.O. 12958, as amended, § 1.7, were adhered to;

(d) the declassification policies set forth in E.O. 12958, as amended, § 3.1 were followed; and

(e) any reasonably segregable portion of these classified documents that did not meet the standards for classification under E.O. 12958, as amended, were declassified and marked for release, unless withholding was otherwise warranted under applicable law.[12]

## FINDINGS OF DECLARANT

---

[9] See E.O. 12958, as amended, § 1.2 (a)(2).

[10] E.O. 12958, as amended, §§ 1.6 (a)(1)-(5).

[11] E.O. 12958, as amended, § 1.6 (c).

[12] 5 U.S.C. § 552 (b) provides, in part, that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." In this case, the information at issue has been carefully examined and we have determined that no additional reasonably segregable portions may be declassified and released.

(15)    With the above requirements in mind, I personally and independently examined the information withheld from plaintiff pursuant to FOIA Exemption 1. I determined that the remaining portions of classified information withheld, warrant continued classification at the "Secret" level, pursuant to E.O. 12958, as amended, § 1.4, namely, (b) foreign government information, (c) intelligence activities (including special activities), intelligence sources or methods, or cryptology, and (d) foreign relations or foreign activities of the United States, including confidential sources as the unauthorized disclosure of this information could reasonably be expected to cause serious damage to the national security.

## FOREIGN GOVERNMENT INFORMATION

(16)    E.O. 12958, as amended, § 6.1 (r) defines foreign government information as: "(1) information provided to the United States Government by a foreign government or governments, an international organization of governments, or any element thereof, with the expectation that the information, the source of the information, or both, are to be held in confidence; (2) information produced by the United States Government pursuant to or as a result of a joint arrangement with a foreign government or governments, or an international organization of governments, or any element thereof, requiring that the information, the arrangement or both, are to be held in confidence; or (3) information received and treated as "foreign government information" under the terms of a predecessor order."

(17)    Many governments, unlike that of the United States, neither officially acknowledge the existence of some of their intelligence and security services, nor the scope of their activities or the sensitive information generated by them. The free exchange of information among United States intelligence and law enforcement services and their foreign counterparts is

predicated upon the understanding that these liaisons, and information exchanged therefrom, are to be kept in confidence. E.O. 12958, as amended, § 1.4 (b) authorizes the classification of foreign government information.

(18)    The release of official United States Government documents that show the existence of a confidential relationship with a foreign government reasonably could be expected to strain relations between the United States and the foreign governments and lead to diplomatic, political or economic retaliations. A breach of this relationship can be expected to have at least a chilling effect on the free flow of vital information to the United States intelligence and law enforcement agencies, which may substantially reduce their effectiveness. Although the confidential relationship of the United States with certain countries may be widely reported, they are not officially acknowledged.

(19)    Disclosure of such a relationship, predictably, will result in the careful analysis and possible compromise of the information by hostile intelligence services. The hostile service may be able to uncover friendly foreign intelligence gathering operations directed against it or its allies. This could lead to the neutralization of friendly allied intelligence activities or methods, the death of live sources, cause embarrassment to the supplier of the information, or result in economic or diplomatic retaliation against both the United States and the supplier of the information.

(20)    Even if the government from which certain information is received is not named in or identifiable from the material it supplies, the danger remains that if the information were to be made public, the originating government would likely recognize the information as material it supplied in confidence. Thereafter, it would be reluctant to entrust the handling of its

-12-

information to the discretion of the United States.

(21)    The classified information withheld on ACLU Bates pages 515-30 and 516-1

identifies by name, a specific foreign government and contains detailed intelligence information

provided by this foreign government. I have determined that the withheld foreign government

information is properly classified at the "Secret" level pursuant to E.O. 12958, as amended, § 1.4

(b) and exempt from disclosure pursuant to Exemption 1.

### FOREIGN RELATIONS OR FOREIGN ACTIVITIES

(22)    E.O. 12958, as amended, § 1.4 (d), exempts foreign relations or foreign activities

of the United States, including confidential sources. The classified information withheld

identifies cooperative endeavors between the FBI and named governments intelligence

components. Intelligence information is exchanged between these governments and the FBI with

the express and/or written understanding that the relationship will be held in strict confidence.

The retention of the confidential nature of this exchange is essential to ensure continued liaison

with cooperating foreign governments, which continues at the present time. It also is indicative

of peaceful and cooperative relations between governments, both allies and foes, in conducting

activities that are germane to a peaceful coexistence.

(23)    Information that affects the foreign relations of the United States, much like

foreign government information, does not lose its sensitivity with the passage of time. The

delicate liaison established between the United States and this foreign government could be

severely damaged should the United States decide to disclose these relationships. The foreign

governments cooperation in the FBI investigation at issue has not been publicly revealed. To do

so now would endanger the spirit of law enforcement intelligence cooperation that the FBI has

-13-

labored most strenuously to obtain. The governments are not as likely to continue to trust the United States if the FBI discloses its cooperation in violation of the confidentiality promise given, and will be less willing to cooperate in the future if their past and continuing request for confidentiality are not honored.

(24)    Information that identifies intelligence information gathered by the United States either about or from a foreign country is sensitive. This condition exists due in part to the delicate nature of international diplomacy. This information must be handled with care so as not to jeopardize the fragile relationships that exist among the United States and certain foreign governments. The unauthorized disclosure of information concerning foreign relations or foreign activities of the United States can reasonably be expected to lead to diplomatic or economic retaliation against the United States; identify the target, scope or time frame of intelligence activities of the United States in or about a foreign country, which may result in the curtailment or cessation of these activities; enable hostile entities to assess United States intelligence gathering activities in or about a foreign country and devise countermeasures against these activities; or compromise cooperative foreign sources which may jeopardize their safety and curtail the flow of information from these sources. Thus, the foreign relations or foreign activities information withheld on ACLU Bates pages 304-1, 304-2, 515-3, 515-4, 515-5, 515-7, 515-11, 515-30 516-1 and 518-12 is properly classified at the "Secret" level and withheld pursuant to E.O. 12958, as amended, § 1.4 (d), and exempt from disclosure pursuant to Exemption 1.

## INTELLIGENCE ACTIVITIES AND METHODS

(25)     E.O. 12958, as amended, § 1.4 (c), exempts intelligence activities (including special activities), intelligence sources and methods, or cryptology. The information withheld on ACLU Bates pages 304-1, 304-2, 304-3, 304-4, 304-5, 304-6, 304-7, 305-1, 475-1, 475-2, 475-3, 475-4, 475-5, 512-1, 512-2, 513-1, 515-2, 515-3, 515-4, 515-5, 515-6, 515-7, 515-8, 515-9, 515-10, 515-11, 515-26, 515-27, 515-29, 515-26, 515-28, 515-29, 515-30, 515-31, 515-35, 515-36, 515-37, 515-38, 515-39, 515-41, 515-42, 516-1, 516-6, 517-36, 517-37, 518-18, 518-19, 518-20, 518-21, 518-22, 518-23, 518-24, 518-25, 518-26, 518-27, 518-28, 518-29, 518-30, 518-31, 518-32, 518-33, 518-34, 518-35, 519-1, 519-2, 519-3, 519-5, 519-6, 519-8, 519-10, 520-31, 520-32, 520-33, 520-34, 520-35, 520-36, 520-37, 520-38, 520-39, 520-40, 520-41, 520-42, 520-43, 520-44, 521-1, 521-2, 521-3, 521-4, 521-5, 521-6, 521-7, 521-8, 521-9, 521-10, 521-11, 521-12, 521-13, 521-14, 521-15, 521-16, 521-17, 521-18, 521-19, 521-20, 521-21, 521-22, 521-23, 521-24, 521-25, 521-26, 521-27, 521-28, 521-29, 521-30, 521-31, 521-32, 521-33, 521-34, 521-35, 521-36, 521-43, 521-44, 522-1, 522-2, 522-3, 522-4, 522-5, 522-6, 522-7, 533, 534, 545 and 557 consists of intelligence activities and methods utilized by the FBI for gathering intelligence data. In addition, ACLU Bates pages 304-4, 304-7, 305-1, 517-37, 517-38, 517-39, 517-40, 517-41, 517-42, 517-43, 517-44, 518-1, 518-2, 518-3, 518-4, 518-5, 518-6, 518-7, 518-8, 518-9, 518-10, 518-11, 518-12, 518-13, 518-14, 518-15, 518-16, 518-17, 533, and 534 contain numerical symbol numbers with detailed intelligence information from the intelligence activities and methods. An intelligence activity or method includes any intelligence action or technique utilized by the FBI against a targeted individual or organization that has been determined to be of national security interest. An intelligence method is used to indicate any procedure (human or

-15-

non-human) utilized to obtain information concerning such individual or organization. An intelligence activity or method has two characteristics. First, the intelligence activity or method and information generated by it is needed by U.S. Intelligence/ Counterintelligence agencies to carry out their missions. Second, confidentiality must be maintained with respect to the activity or method if the viability, productivity and usefulness of its information is to be preserved.

(26)    The classification redactions were made to protect from disclosure information that would reveal the actual intelligence activities and methods utilized by the FBI against specific targets of foreign counterintelligence investigations or operations; identify a target of a foreign counterintelligence investigation; or disclose the intelligence gathering capabilities of the activities or methods directed at specific targets. The intelligence activities or methods detailed in the withheld information are effective means for the FBI to gather, store or disseminate intelligence information. The criteria utilized by the FBI in these instances to decide what actions by an individual or organization warranted the commencement of an investigation, or caused a certain activity to be given investigative attention over others, could be revealed through disclosure of these intelligence methods. The criteria applied and priorities assigned in these records are used in the FBI's present intelligence or counterintelligence investigations, and are in accordance with the Attorney General's guidelines on FBI intelligence or counterintelligence investigations.

(27)    The information in these documents concerning activities and methods is very specific in nature and known to very few individuals. Disclosure of the specific information which describes these intelligence activities and methods withheld in this case are still used by the FBI today to gather intelligence information, could reasonably be expected to cause serious

-16-

damage to the national security for the following reasons: (1) disclosure would allow hostile entities to discover the current methods and activities used; (2) disclosure would reveal current specific targets of the FBI's national security investigations; and (3) disclosure would reveal or determine the criteria used and priorities assigned to current intelligence or counterintelligence investigations. Hostile entities could then develop countermeasures which could severely disrupt the FBI's intelligence-gathering capabilities. This would severely damage the FBI's efforts to detect and apprehend violators of the United States' national security and criminal laws.

(28)     The FBI protected the following categories of information specific to intelligence activities and methods because disclosure reasonably could be expected to cause serious damage to the national security. First, the withheld information contains file numbers that are assigned to a specific intelligence activity or method.[13] Second, the withheld information contains the character of the case, which identifies the specific type of intelligence activity directed at a specific target.[14] In addition, the withheld information on certain pages identifies the target of a national security investigation along with the character of the case.[15] Third, the withheld information contains a designation for a foreign counterintelligence unit which targets specific

---

[13] See Exhibit A, ACLU Bates pages 299, 300, 301, 302, 304-3, 304-4, 304-5, 304-7, 305-1, 475-1, 475-3, 475-4, 475-5, 512-1, 512-2, 513-1, 515-26, 515-28, 515-30, 515-35, 515-36, 515-37, 515-38, 515-41, 516-1, 545, 516-6, 517-36, 517-37, 518-18, 518-19, 518-20, 518-21, 518-35, 519-1, 519-2, 519-5, 519-6, 519-10, 520-31, 521-2, 521-3, 521-4, 521-5, 521-6, 521-7, 521-34, 521-35, 521-43, 521-44, 522-1, 522-2, 522-3, 522-4, 522-5, 522-6, 533, 534, 545, and 557.

[14] See Exhibit A, ACLU Bates pages 299, 515-27, 515-39, and 519-10.

[15] See Exhibit A, ACLU Bates pages 512-1, 513-1, 515-5, 515-6, 515-26, 515-27, 515-36, 515-38, 515-39, 517-37, 518-18, 519-2, 519-6, 521-43, and 522-6.

-17-

individuals or organizations of national security interest.[16]  Fourth, the withheld information

identifies targets of foreign counterintelligence investigations.[17]  In addition, the withheld

information identifies targets of foreign counterintelligence investigations with a file number.[18]

A more detailed discussion of each of these categories is contained within the paragraphs below.

### A. File Numbers

(29)    The classified information withheld on ACLU Bates pages 299, 300, 301, 302,

304-3, 304-4, 304-5, 304-7, 305-1, 475-1, 475-3, 475-4, 475-5, 512-1, 512-2, 513-1, 515-26,

515-28, 515-30, 515-35, 515-36, 515-37, 515-38, 515-41, 516-1, 545, 516-6, 517-36, 517-37,

518-18, 518-19, 518-20, 518-21, 518-35, 519-1, 519-2, 519-5, 519-6, 519-10, 520-31, 521-2,

521-3, 521-4, 521-5, 521-6, 521-7, 521-34, 521-35, 521-43, 521-44, 522-1, 522-2, 522-3, 522-4,

522-5, 522-6, 533, 534, 545, and 557 contains FBI file numbers assigned to specific intelligence

activities, including channelization and dissemination instructions.  Their release would lead to

exposure of the particular intelligence activities and methods at issue.  Individual file numbers

are assigned by FBIHQ and field offices and contain a geographical prefix of the originating

office and case number, which includes the numerical characterization of the type of

investigation followed by a chronological number assigned to a specific investigation/activity.

(30)    The disclosure of an intelligence file number in the aggregate will enable a hostile

analyst to attribute any information released from the documents containing such a file number to

---

[16] See Exhibit A, ACLU Bates page 515-6.

[17] See Exhibit A, ACLU Bates pages 515-2, 515-3, 515-4, 515-6, 515-9, 515-10, 515-11,
515-26, 515-29, 515-42, 522-3, and 522-7.

[18] See Exhibit A, ACLU Bates pages 299, 304-6, 475-2, 513-1, 515-2, 519-6, and 522-1.

that particular file. A hostile analyst can identify the specific intelligence activity by supplying further missing pieces. Hence, a partial mosaic of the activity begins to appear as more information is identified with the file leading to the exposure of actual current activities or methods. Disclosure of this file number will allow a hostile analyst, or anyone not privileged to this information, to patch bits and pieces of information together until the actual use of the application of the source or method can be determined. The identification of these intelligence sources or methods, which continues to furnish positive intelligence information to date, will severely limit its application. In addition, disclosure will inform hostile intelligence of the possible range of our intelligence capabilities, as well as the probable intelligence that the FBI has gathered, or can collect, concerning them. This knowledge provides potential or actual violators of the United States' national security laws a means of deflection or avoidance of lawful regulations. Disclosure will allow countermeasures to be implemented, making future operations more difficult, or compromise other ongoing planned intelligence operations. Accordingly, the release of the file numbers can lead to the exposure of the actual intelligence activity or method utilized in FBI investigations, and can reasonably be expected to cause serious damage to national security. The file numbers are properly classified at the "Secret" level and withheld pursuant to E.O. 12958, as amended, § 1.4 (c) and exempt from disclosure pursuant to Exemption 1.

### B. Character of Case

(31)    The classified information withheld on ACLU Bates pages 299, 515-27, 515-39, and 519-10 identifies the character of a case for a specific type of intelligence activity directed at a specific target of national security interest. Disclosure of the characterization could reasonably

-19-

be expected to cause serious damage to the national security, as it would (a) disclose a particular

intelligence or counterintelligence investigation; (b) disclose the nature, scope or thrust of the

investigation and (c) reveal the manner of acquisition of the intelligence or counterintelligence

information. This information is properly classified at the "Secret" level and withheld pursuant

to E.O. 12958, as amended, § 1.4 (c) and exempt from disclosure pursuant to Exemption 1.

### C. Units

(32)    The classified information withheld on ACLU Bates page 515-6 contains the

name of an operational unit that currently target specific individuals and organizations of national

security interest. The disclosure of the operational unit name would enable hostile intelligence

services to associate the presence of such operational unit in any FBI document or investigation

with FBI counterintelligence activity, thus enabling the foreign intelligence service to determine

the presence of the FBI's counterintelligence activity in a specific area. Disclosure of the

operational unit name would reveal the existence of a particular intelligence or

counterintelligence operation, as well as the nature, objectives, scope or thrust of the

investigation, which would allow hostile assessment of the area of target. This knowledge

provides potential or actual violators of United States' national security laws a means of

deflection or avoidance of lawful regulations. Disclosure will allow countermeasures to be

implemented, making future operations more difficult, or compromise other ongoing planned

intelligence operations. This would severely disrupt the FBI's intelligence gathering capabilities

and severely damage the FBI's efforts to detect and apprehend violators of the United States'

national security and criminal laws and to fight the war on transnational terrorism. This

information is properly classified at the "Secret" level and withheld pursuant to E.O. 12958, as

-20-

amended, § 1.4 (c) and exempt from disclosure pursuant to Exemption 1.

## D. <u>Foreign Counterintelligence Investigations</u>

(33)    The classified information withheld on ACLU Bates pages 515-2, 515-3, 515-4,

515-6, 515-9, 515-10, 515-11, 515-26, 515-29, 515-42, 522-3, and 522-7 identifies targets of

current FBI foreign counterintelligence investigations.  In addition, ACLU Bates pages 512-1,

513-1, 515-5, 515-6, 515-26, 515-27, 515-36, 515-38, 515-39, 517-37, 518-18, 519-2, 519-6,

521-43, and 522-6 contain the target's identity with the character of the case.  <u>See</u> <u>supra</u>.  ACLU

Bates pages 299, 304-6, 475-2, 513-1, 515-2, 519-6, and 522-1 identify targets of investigations

with the case file numbers.  <u>See</u> <u>supra</u>.

(34)    The disclosure of this information could reasonably be expected to cause serious

damage to the national security, as it would: (a) reveal the actual intelligence activity or method

utilized by the FBI against a specific target; (b) disclose the intelligence gathering capabilities of

the activity or method; and (c) provide an assessment of the intelligence source penetration of a

specific target during a specific period of time.  The release of this information could permit

hostile governments to appraise the scope, focus, location, target and capabilities of the FBI's

intelligence gathering methods and activities, and allow hostile agents to devise countermeasures

to circumvent these intelligence activities or methods and render them useless in providing

intelligence information.  This would severely disrupt the FBI's intelligence gathering

capabilities.  This information is properly classified at the "Secret" level and withheld pursuant to

E.O. 12958, as amended, § 1.4 (c) and exempt from disclosure pursuant to Exemption 1.

## <u>INTELLIGENCE SOURCE</u>

(35)    An intelligence source that requires continued classification is an individual who

-21-

provided or is currently providing information that pertains to national security matters, the disclosure of which could reasonably be expected to result in damage to the FBI's intelligence and counterintelligence gathering capabilities.

(36)    My review disclosed that the information pertaining to classified intelligence sources is likely to identify the sources. The withheld information and material provided by or that pertains to sources are specific and, if disclosed, reasonably could be expected to reveal the identity of the contributing source. I considered a number of factors in reaching this conclusion, including most importantly, the damage to the national security that would result by publicly identifying sources utilized in intelligence investigations, and the FBI's ability to protect and recruit intelligence sources in the future.

(37)    Disclosure of the identities of FBI intelligence sources, regardless of whether they are active or inactive, alive or deceased, can reasonably be expected to cause current and potential intelligence sources to fear that their identities will be publicly revealed at some point, in spite of the FBI's present expressed or implied assurance of confidentiality. The disclosure of source's identities could jeopardize the physical well-being of the source's family or associates or subject them to public ridicule and/or ostracism.

(38)    The following categories of intelligence source information were withheld on certain pages: (a) Intelligence source symbol numbers with detailed information furnished by the

source.[19] (b) intelligence source file number,[20] and (c) detailed intelligence source information.[21]
Below is a more detailed discussion of each of the above categories.

### A. Intelligence Source Symbol Numbers With Detailed Information

(39)    The classified information withheld on ACLU Bates pages 521-36, 521-43, and
521-44 contains a numerical designator for a human intelligence source and detailed information
provided to the FBI by the intelligence source.  A numerical designator serves as a singular
identifier for an intelligence source utilized to provide information on a specific individual or
organization determined to be of national security interest.  A singular identifier is any word,
term or phrase which could identify an intelligence source either released by itself or in the
aggregate.  This includes code names of sources, code names, numerical designators and file
numbers.  A singular identifier is used in lieu of the true identity of a source.  The numerical
designator is assigned to this specific source and is unique to and solely used for this source.  The
numerical designator is assigned sequentially and is usually prefixed with the geographic location
of the FBI office from which the source is operated.

(40)    The classified symbol numbers with detailed information consist of discontinued
human sources who provided information of value on individuals/or organizations of national
security interest.  This information is specific in nature and reflects a specific vantage point from
which the source is reporting and if disclosed, would identify the source.

---

[19] See Exhibit A, ACLU Bates pages 521-36, 521-43, and 521-44.

[20] See Exhibit A, ACLU Bates page 521-36.

[21] See Exhibit A, ACLU Bates pages 512-1, 513-1, 519-6, 521-37, 521-38, 521-39, 521-40, 521-41, 521-42, 521-43, 522-1, 521-44, and 522-2.

(41)     The disclosure of this information could permit a hostile analyst to correlate the documents and whatever information that can be gleaned from the documents.  By matching source identifiers, such as file numbers and numerical designators, with bits and pieces of information, one can discern the true identity of the intelligence source.  Public identification of a source will limit the effectiveness of such and have a chilling effect on the FBI's ability to recruit future sources.  This information is  properly classified at the "Secret" level and withheld pursuant to E.O. 12958, as amended, § 1.4 (c) and exempt from disclosure pursuant to Exemption 1.

### B.  Intelligence Source File Number

(42)     The classified information withheld on ACLU Bates page 521-36 contains a file number assigned by a FBI field office to an intelligence source for the  channelization/ dissemination of intelligence information gathered by or attributed to this source.  See supra.

(43)     The release of this file number could reasonably be expected to cause serious damage to the national security, as it would result in the disclosure of the source's identity and thereby, neutralize the source, and compromise information previously provided by the source.  This information is properly classified at the "Secret" level and withheld pursuant to E.O. 12958, as amended, § 1.4 (c) and exempt from disclosure pursuant to Exemption 1.

### C.  Detailed Intelligence Source Information

(44)     The classified information withheld on ACLU Bates pages 512-1, 513-1, 519-6, 521-37, 521-38, 521-39, 521-40, 521-41, 521-42, 521-43, 522-1, 521-44, and 522-2 contains detailed information provided by human intelligence sources targeted at a specific individual or organization of national security interest.  The information is specific in nature and reflects a

-24-

specific vantage point from which the source is reporting and if disclosed, would identify the intelligence source.

(45)    The disclosure of the detailed source information would reveal the identity of a human intelligence source. This information is properly classified at the "Secret" level and withheld pursuant to E.O. 12958, as amended, § 1.4 (c) and exempt from disclosure pursuant to Exemption 1.

**DEFENDANT'S BURDEN OF ESTABLISHING
EXEMPTION (b)(1) CLAIMS**

(46)    The information withheld in this case pursuant to Exemption 1 was examined in light of the body of information available to me concerning the national defense and foreign relations of the United States. This information was not examined in isolation. Instead, each individual piece of information was evaluated with careful consideration given to the impact that disclosure of this information will have on other sensitive information contained elsewhere in the United States intelligence community's files. Equal consideration was given to the impact that other information either in the public domain or likely known or suspected by present or potential adversaries of the United States, would have upon the information I examined.

(47)    In those instances where, in my judgement, the disclosure of this information could reasonably be expected to cause serious damage to the national security, and its withholding outweighed the benefit of disclosure, I exercised my prerogative as an original classification authority and designated that information as classified in the interest of national security, and invoked Exemption 1 of the FOIA to prevent disclosure. Likewise, the justifications for the withheld classified information were prepared with the intent that they be

read with consideration given to the context in which the classified information is found. This context includes not only the surrounding unclassified information, but also other information already in the public domain, as well as information likely known or suspected by other hostile intelligence entities. It is my judgement that any greater specificity in the descriptions and justifications set forth with respect to foreign government information, intelligence sources, activities and methods, or information relating to foreign relations or foreign activities of the United States could reasonably be expected to jeopardize the national security of the United States. Exemption (b)(1)-1 is asserted on the following ACLU pages:  299-302, 304-1 to 304-7, 305-1, 475-1 to 475-5, 512-1, 512-2, 513-1, 533, 534, 515-2 to 515-11, 515-26 to 515-31, 515-35 to 515-39, 515-41 to 515-42, 516-1, 516-6, 517-36 to 517-44, 518-1 to 518-35, 518-43, 519-1 to 519-3, 519-5, 519-6, 519-8, 520-31 to 520-44, 521-1 to 521-44, 522-1 to 522-7, 545, 557, 533, and 534.

## EXEMPTION (b)(2) – INFORMATION RELATED SOLELY TO THE INTERNAL RULES AND PRACTICES OF AN AGENCY

(48)    5 U.S.C. § 552 (b)(2) exempts from disclosure information "related solely to the internal personnel rules and practices of an agency." This exemption protects routine internal administrative matters and functions of the FBI which have no effect on the public at large and which is predominantly internal information. This exemption also protects information, the disclosure of which would risk circumvention of agency regulations or statutes. Disclosure of this information could impede the effectiveness of the internal operations of the FBI and risk the circumvention of a regulation or a law.

**(b)(2)-1    Internal Telephone, Facsimile, Room Numbers and E-Mail Addresses of FBI Employees**

(49)    Exemption (b)(2)-1 has been asserted, at times in conjunction with Exemptions (b)(6)-1 and (b)(7)(C)-1, to protect to protect the internal business telephone numbers, facsimile numbers, room numbers and e-mail addresses of FBI Special Agents ("SAs") and FBI Professional Support employees (including the direct dial telephone numbers of these employees) responsible for conducting investigations of individuals who pose a threat to the United States in terrorism and espionage cases and support employees responsible for providing legal advice to FBI SAs conducting investigations of these individuals.  Furthermore, Exemption (b)(2)-1 has been asserted to protect the unit within which an FBI employee was assigned.  The business telephone numbers, facsimile numbers, room numbers, and the unit to which an FBI Professional Support employee is assigned relates directly to the internal practices of the FBI in that they are used by these individuals during the performance of their duties.  Disclosure of the telephone numbers of FBI SAs and FBI Professional Support employees could subject these individuals to harassing telephone calls which could disrupt official business (including impeding the ability of these employees to conduct and conclude law enforcement investigations in a timely manner).  In addition, disclosure of the internal facsimile numbers of the FBI could cause these offices to be inundated with faxes which could also disrupt official business.  Lastly, disclosure of the room numbers and the unit to which FBI Professional Support employees are assigned could likewise subject these individuals to harassing inquiries which could disrupt official business.

(50)    Routine internal administrative information such as the telephone numbers, facsimile numbers, room numbers and unit to which an FBI employee is assigned referenced above serves no public benefit, and there is no indication that there is a genuine public interest in the disclosure of this information.  Accordingly, because the internal business telephone

-27-

numbers, facsimile numbers, room numbers and unit to which an FBI employee is assigned are

solely related to the FBI's internal practices, because disclosure would not serve any public

benefit, and because disclosure would impede the FBI's effectiveness. Accordingly, the FBI

properly withheld this information pursuant to Exemption 2. Exemption (b)(2)-1 may be cited in

conjunction with Exemptions (b)6)-1 and (b)(7)(C)-1. Exemption (b)(2)-1 has been cited on the

following ACLU pages: 299, 313-1, 515-1, 515-32, 515-35, 515-36, 515-38, 516-2, 516-7, 516-

8, 516-9, 517-21, 517-24, 517-33, 518-38 to 518-42, 519-2, 519-6, 521-2, 522-3, 522-6, and 545.

### (b)(2)-2     Internal Telephone, Facsimile, Room Numbers and E-Mail of Other Federal Government Employees

(51)    Exemption (b)(2)-2 has been asserted, at times in conjunction with Exemptions

(b)(6)-2 and (b)(7)(C)-2, to protect the internal business telephone numbers, facsimile numbers,

room numbers, and e-mail addresses of non-FBI federal government employees. The business

telephone numbers, facsimile numbers, and room numbers relate directly to the internal practices

of the government in that they are used by these individuals during the performance of their

duties. Disclosure of the telephone numbers of these employees could subject these individuals

to harassing phone calls which could disrupt official business (including impeding the ability of

these employees to conduct and conclude law enforcement investigations in a timely manner). In

addition, disclosure of the internal facsimile numbers could cause these offices to be inundated

with faxes which could also disrupt official business. Lastly, disclosure of the room numbers

could likewise subject these individuals to harassing inquiries which could disrupt official

business.

(52)    Routine internal administrative information such as the telephone numbers,

facsimile numbers, and room numbers referenced above serves no public interest, and there is no indication that there is a genuine public interest in the disclosure of this information. Accordingly, the FBI properly withheld this information pursuant to Exemption 2. Exemption (b)(2)-2 may be cited in conjunction with Exemptions (b)(6)-2 and (b)(7)(C)-2. Exemption (b)(2)-2 has been cited on the following ACLU pages: 304-1, 304-2, 304-4, 304-7, 475-1 to 475-3, 515-8, and 515-27.

       **(b)(2)-3**      **Confidential Source Symbols or Numbers**

    (53)    Exemption (b)(2)-3 has been asserted, at times, in conjunction with Exemption (b)(7)(D)-3 to protect the permanent source symbol numbers of FBI sources. Permanent symbol numbers are assigned to confidential informants who report information to the FBI on a regular basis pursuant to an "express" grant of confidentiality. The symbol number is used as an administrative reporting tool to protect the actual, sensitive identity of an informant in documents generated by the FBI. A symbol number consists of a two-letter abbreviation which identifies the particular FBI field office where the symbol-numbered source is operating or has operated, followed by a sequentially assigned number. For example, using a fictitious symbol number, "NY 1234" for informant "JOHN DOE," the two letter abbreviation "NY" reveals that this is a source of the New York Field Office and the source is the $1,234^{th}$ symbol-numbered source of that office. The symbol number would be used in all written reports in which DOE provided information to the FBI. Therefore, every time "NY 1234" was released, the reader of the document would know that the source behind the symbol number was the same individual reporting. Thus, every time "NY 1234" was used by the FBI in a record, the number would always identify JOHN DOE.

(54)    Release of these source symbol numbers would indicate both the scope and location of FBI informant coverage within a particular geographic area. If a particular symbol number such as "NY 1234" is released to the public at repeated times and in various documents, the identity of the source could be determined. Each release of information in which the symbol number is disclosed, reveals connections to dates, times, places, events and names from which the source's identity could be deduced. A person familiar with the facts being reported by DOE could easily identify NY 1234's identity as being JOHN DOE given enough instances in which NY 1234 provided information to the FBI. Releasing the symbol number, along with information provided by the source from the source's personal perspective concerning the matters being investigated by the FBI, would allow an individual with knowledge of such matters to extrapolate the source's true identity. This is especially true given the fact that regardless of the law enforcement investigative file in which the symbol number appears, NY 1234 would always be the symbol number used to protect the true identity of informant JOHN DOE. Thus, a confidential source symbol number is protected under FOIA Exemption (b)(2) since it is an internal administrative tool used by the FBI to protect informants' identities. The protection of these identifiers is essential to maintaining the integrity of the FBI's confidential source program where release could endanger the lives of informants or discourage cooperation by information sources. Accordingly, because these source symbol numbers are related solely to the FBI's internal practices, because disclosure would not serve any public interest, and because disclosure would impede the FBI's effectiveness, the FBI withheld this information pursuant to Exemption 2. Exemption (b)(2)-3 may be cited in conjunction with Exemption (b)(7)(D)-3. Exemption (b)(2)-3 has been cited on the following ACLU pages: 305-1, 515-27 to 515-31, 515-39 to 515-

-30-

42, 516-1, and 516-9.

**(b)(2)-4    FBI Internal Investigative Techniques and Procedures**

(55)    Exemption (b)(2)-4 has been asserted, at times in conjunction with Exemptions

(b)(7)(D)-4 and (b)(7)(E)-1, to protect information consisting of specific internal investigatory

techniques and procedures.  To describe this information in further detail on the public record

would identify that very information which the FBI seeks to protect pursuant to these

exemptions.  The revelation of these details could enable the targets of these techniques to avoid

detection or develop countermeasures to circumvent the ability of the FBI to effectively use this

important national security law enforcement technique.  Accordingly, the FBI has properly

withheld this information pursuant to Exemption (b)(2)-4 in conjunction with Exemptions

(b)(7)(D)-4 and (b)(7)(E)-1.  Exemption (b)(2)-4 has been cited on the following ACLU pages:

475-4, 475-5, 512-1 to 512-2, 513-1, 529, 599, 515-3, 515-5, 515-6, 515-12 to 515-17, 515-23 to

515-25, 515-32, 515-33, 516-41, 517-1 to 517-7, 517-9 to 517-19, 517-22, 517-24, 519-3, 519-5,

522-7, 522-8, 543, 599, 529, and  525-1 to 525-3.

### EXEMPTION (b)(3)
### INFORMATION PROTECTED BY STATUTE

(56)    5 U.S.C. § 552 (b)(3) exempts from disclosure information which is:

> specifically exempted from disclosure by statute . . . provided that
> such statute (A) requires that the matters be withheld from the
> public in such a manner as to leave no discretion on the issue, or
> (B) establishes particular criteria for withholding or refers to
> particular types of matters to be withheld.

**(b)(3)-1    Inner Workings of the Federal Grand Jury -- Federal Rule of
Criminal Procedure 6(e)**

(57)    Exemption (b)(3)-1 has been asserted in conjunction with Rule 6(e) of the Federal

Rules of Criminal Procedure to withhold Federal Grand Jury information. It is well-established that Rule (6)(e) embodies a broad, sweeping policy of preserving the secrecy of grand jury material regardless of the substance in which the material is contained. In the documents responsive to plaintiffs' requests, only that information which explicitly discloses matters occurring before a Federal Grand Jury has been withheld pursuant to Exemption (b)(3). Specifically, Federal Grand Jury subpoenas, as well as the names, identifying information of individuals subpoenaed to testify before the Federal Grand Jury, information that identifies specific records subpoenaed by the Federal Grand Jury, and Federal Grand Jury meetings were withheld pursuant to this exemption. Accordingly, any such disclosure would clearly violate the secrecy of the grand jury proceedings and could reveal the inner workings of the federal grand jury that considered this case. Exemption (b)(3)-1 has been cited on the following ACLU pages: 313-1 to 313-7, and 599.

## EXEMPTION (b)(5) – PRIVILEGED INFORMATION

(58)    Exemption 5, 5 U.S.C. § 552 (b)(5), allows the FBI to protect information contained in "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." This exemption has been construed to exempt those documents or information normally privileged in the civil discovery context, including, as is the case here, the deliberative process privilege and the attorney-client privilege.

### (b)(5)-1    Deliberative Process Privilege

(59)    The deliberative process privilege protects the internal deliberations of an agency by exempting from release recommendations, analyses, speculation and other non-factual

-32-

information prepared in anticipation of agency decision-making. The general purpose of the deliberative process privilege is to prevent injury to the quality of agency decisions. Thus, material that contains or was prepared in connection with the formulation of opinions, advice, evaluations, deliberations, policy formulation, proposals, conclusions or recommendations may properly be withheld. Release of this type of information would have an inhibitive effect upon the development of policy and administrative direction of an agency because it would chill the full and frank discussion between agency personnel regarding a decision. If agency personnel knew that their preliminary opinions, evaluations and comments would be released for public consumption, they may be more circumspect in what they put in writing, and thereby, impede a candid discussion of the issues surrounding a decision.

(60)     To invoke the deliberative process privilege, an agency must show that an allegedly exempt document or particular information is both (a) "predecisional" – antecedent to the adoption of agency policy; and the agency must also pinpoint agency decision or policy to which the document or information contributed . . . or . . . identify a decisionmaking process to which a document or information contributed – and (b) "deliberative" – a direct part of the deliberative process in that it makes recommendations or express opinions on legal or policy matters, reflects the give and take of the consultative process, and bears on the formulation or exercise of agency policy-oriented judgment. Furthermore, an agency must identify the role of a contested document or information in a specific deliberative process.

(61)     In this case, the FBI has asserted Exemption 5, the deliberative process privilege to protect draft answers to questions posed to the FBI, and draft internal memoranda. These draft answers also reflect the preliminary assessments of FBI personnel regarding the issues on which

-33-

they have been asked to prepare an official response. Similarly, a draft internal EC and draft internal form, reflect the preliminary assessments of FBI personnel regarding the proper use of the investigatory tools. All of these drafts are both predecisional and deliberative. If draft documents that are not formally adopted by the agency are routinely released to the public, FBI personnel will be reluctant to provide candid recommendations necessary for efficient and proper decision-making.

(62)    Exemption 5 has also been asserted to protect internal deliberations that are reflected in a collection of internal e-mails among FBI Special Agents, FBI attorneys and other federal government employees, which reflect case-related discussions of issues that have arisen in connection with the use of the investigatory tools. In addition, these deliberations reflect preliminary advice, opinions and recommendations among FBI attorneys, Special Agents, and FBI field office attorneys, and in certain instances, with an OIPR employee, who was working in concert with the FBI on some of these issues. In these e-mails FBI personnel are discussing: (1) case-related questions regarding the use of certain investigatory tools in intelligence cases (2) requests for legal advice regarding the use of such tools, and (3) the development of procedures for implementing such investigatory tools.

(63)    The withheld communications are both predecisional and deliberative. They reflect the thinking of individuals, rather than adopted policy of the FBI. E-mail communication serves as a way for individual FBI employees to communicate with each other about current matters without having to leave their offices. These "discussions," which get memorialized online, are part of the exchange of ideas and suggestions that accompanies all decision-making and typically reflect the very preliminary assessments by FBI personnel about issues on which

they may be asked to make recommendations. Before the advent of computers, these discussions probably would have occurred only orally with no record of their existence being kept. The fact that these discussions are now recorded should not obscure the fact that they are simply conversations among and between FBI personnel and, in some instances, with other federal government employees. These discussions are part of the give and take of agency deliberations. If e-mail messages such as these are routinely released to the public, FBI employees will be much more circumspect in their online discussions with each other. This lack of candor will seriously impair the FBI's ability to foster the forthright, internal discussions necessary for efficient and proper decision-making. Furthermore, exempting such documents and information from disclosure also protects against public confusion that might result from disclosure of preliminary opinions and information that do not, in fact, reflect the final views or policies of the FBI. The deliberative process privilege is designed to protect not only documents and information but also the integrity of the deliberative process itself where the exposure of the process would result in harm.

### Attorney-Client Privilege

(64)    The attorney-client privilege is appropriately asserted when legal advice of any kind is sought, from a professional legal adviser in his or her capacity as such; the communications relating to that purpose are made in confidence by the client; and are, at the client's instance, permanently protected from disclosure by the client or by the legal adviser unless the attorney-client protection is waived. This privilege encompasses confidential communications made to the attorney not only by decision-making personnel but also by lower-echelon employees who possess information relevant to an attorney's advice-rendering function.

-35-

In addition, the attorney-client privilege covers the two-way communications between a client and an attorney, and which relates to legal advice.

(65)     Certain of the above-described e-mail communications have also been withheld pursuant to Exemption 5, the attorney-client privilege, as they contain client-supplied information. These documents consist of internal e-mails, draft reports, internal procedures, and MOUs ("Memorandum of Understanding"), which reflect communications among FBI attorneys and FBI SAs and other FBI support employees and include discussions of hypothetical scenarios. The information contained in these documents reflects attorney advice, opinions, and recommendations offered at the employees' request by FBI attorneys. These communications/exchanges occurred by means of the secure internal e-mail system of the FBI, based on client-supplied information regarding investigative activities. The redacted material reveals the candid exchanges of information among FBI attorneys and FBI SAs and support employees seeking legal advice regarding the FBI's role and responsibilities in various law enforcement investigations. Disclosure of these communications would breach the confidential relationship between these individuals and repress and stifle such critical communications in the future. For these reasons, the FBI asserts Exemption 5, the attorney-client privilege, to protect the confidential communications among FBI attorneys and FBI SAs and support employees. Exemption (b)(5)-1 has been cited on the following ACLU pages: 515-12 to 515-17, and 516-7 to 516-8.

## EXEMPTION (b)(6)
## CLEARLY UNWARRANTED INVASION OF PERSONAL PRIVACY

(66)     5 U.S.C. § 552(b)(6) exempts from disclosure:

personnel and medical files and similar files when the disclosure of such information would constitute a clearly unwarranted invasion of personal privacy.

(67)    In asserting this exemption, each piece of information was scrutinized to determine the nature and strength of the privacy interest of any individual whose name and/or identifying information appears in the documents at issue. In withholding the information, the individual's privacy interest was balanced against the public's interest in disclosure. In making this analysis, public interest information was determined to be information which would shed light on the FBI's performance of its statutory duties. In each instance where information was withheld, it was determined that individual privacy rights outweighed the public interest.

**(b)(6)-1        Names and/or Identifying Information Pertaining to FBI Employees**

(68)    Exemption (b)(6)-1 has been asserted, at times in conjunction with Exemptions (b)(2)-1 and (b)(7)(C)-1, to protect the names and identifying information of FBI SAs responsible for conducting investigations of individuals who pose a threat to the United States in terrorism and espionage cases and support employees responsible for providing legal advice to FBI SAs conducting investigations of these individuals. More specifically, the FBI protected the telephone numbers, facsimile numbers, and room numbers of FBI SAs and Professional Support employees. Disclosure of the names, telephone numbers, fax numbers, and room numbers could subject these employees to unauthorized inquiries by members of the media and the general public who seek access to this type of information. Accordingly, the FBI determined that the FBI SAs and Professional Support employees referenced in the responsive records maintain a substantial privacy interest in not having their identities disclosed.

(69)    The FBI next examined the records at issue to determine whether there was any

-37-

public interest that outweighed the substantial privacy interests of the FBI SAs and Professional

Support employees. The FBI could not identify any discernible public interest. The disclosure of

the names of FBI SAs and Professional Support employees would not demonstrate how the FBI

performs its statutory duties. There have been no allegations that the FBI SAs or Professional

Support employees engaged in any type of significant misconduct which would establish a public

interest in the disclosure. Ultimately, disclosure of the names of FBI SAs and Professional

Support employees would shed no light on the performance of the FBI's statutory duties. Thus,

disclosure of the names of these employees would constitute a clearly unwarranted invasion of

their personal privacy; therefore, the FBI has properly asserted Exemption 6. Exemption (b)(6)-1

has been cited on the following ACLU pages: 299, 313-1, 474, 501, 512-1, 513-1, 529, 533, 599,

515-2 to 515-11, 515-16, 515-23, 515-24, 515-26, 515-27, 515-32, 515-35, 515-36, 515-38, 516-

2, 516-7, 516-8, 516-9, 516-15, 516-17, 516-20, 516-23, 516-25, 516-28, 516-29, 516-32, 516-

33, 516-35, 516-36, 516-40, 517-3, 517-9, 517-14, 517-16, 517-17, 517-21, 517-22, 517-24, 517-

37, 518-18, 518-38 to 518-42, 519-1, 519-2, 519-5, 519-6, 521-2, 521-34, 521-43, 522-3, 522-5,

522-6, 543, 545, 555, 599, 529, 533, and 525-1 to 525-3

### (b)(6)-2        Names and/or Identifying Information Pertaining to Non-FBI Federal Government Employees

(70)    Exemption (b)(6)-2 has been asserted in conjunction with Exemption (b)(7)(C)-2

to protect the names and identifying information concerning non-FBI federal government

employees. The relevant inquiry here is whether public access to this information would violate

a viable privacy interest of the subjects of such information. Disclosure of this identifying

information could subject these employees to unauthorized inquiries and harassment which could

-38-

constitute a clearly unwarranted invasion of their personal privacy. The rationale for protecting

non-FBI federal employees is the same as that for FBI employees.

(71)    In balancing the legitimate privacy interests against any public interest in

disclosure, the FBI has determined that there is a complete lack of any bona fide public interest in

disclosure of this information because this type of information will not shed light on the

operations and activities of the federal government. Accordingly, the FBI properly withheld this

information pursuant Exemption 6. Exemption (b)(6)-2 has been cited on the following ACLU

pages: 475-1 to 475-5, 515-18, 515-27, and 515-39.

**(b)(6)-3    Names and/or Identifying Information of Local, County and State
Law Enforcement Employees**

(72)    Exemption (b)(6)-3 has been asserted in conjunction with Exemption (b)(7)(C)-3

to protect the identities of third parties who provided information to the FBI during the course of

their employment by local law enforcement agencies.

(73)    In this case, because the third parties provided information to the FBI during the

course of employment in furtherance of ongoing investigations, disclosure of information about

these third parties could reasonably be expected to constitute a clearly unwarranted invasion of

personal privacy. In addition, if the FBI disclosed the identities of these third parties, the

disclosure would have a chilling effect on the FBI's relationship with these individuals and other

individuals who provide valuable information to the FBI. In balancing the legitimate privacy

interests against any public interest in disclosure, the FBI has determined that there is a complete

lack of any public interest in disclosure of this information because this type of information will

not shed light on the operations and activities of the federal government. Accordingly, the FBI

has properly withheld this information pursuant to Exemption (b)(6)-3.  Exemption (b)(6)-3 has been cited on the following ACLU pages:  474, 501, 502, 513-1, 518-38 to 518-42, 519-6, and 525-1 to 525-3.

**(b)(6)-4        Names and/or Identifying Information of Third Parties of Investigative Interest or Who Provided Information to the FBI**

(74)    Exemption (b)(6)-4 has been asserted, at times in conjunction with Exemption (b)(7)(C)-4 and (b)(7)(F)-1, to withhold the names of third parties contained in various communications which reflect the internal discussion of individuals who are the subjects of law enforcement investigations or who provided information regarding these investigations.  These individuals are of investigative interest to the FBI or provided information of investigative interest to the FBI, and are discussed in numerous communications.  Disclosure of the identities of these third parties in this context could cause unsolicited and unnecessary attention to be focused on them and disclosure may embarrass them.  For these reasons, the FBI has determined that the third party individuals in the responsive communications maintain a strong privacy interest in not having their identities disclosed.

(75)    After identifying the substantial privacy interest of the third parties in the communications, the FBI balanced those interests against the public interest in disclosure.  The FBI could identify no discernible public interest in the disclosure of this information because the disclosure of third parties' names and identifying information will not shed light on the operations and activities of the FBI.  Accordingly, the FBI determined that the disclosure of this information would constitute a clearly unwarranted invasion of personal privacy.  Thus, the FBI properly withheld the names of these third parties pursuant to Exemption (b)(6)-4.  Exemption

-40-

(b)(6)-4 has been cited on the following ACLU pages: 300, 301, 304-1 to 304-7, 305-1, 311,

313-1 to 313-7, 475-1 to 475-5, 501, 502, 512-1, 512-2, 513-1, 529, 599, 515-3, 515-14, 515-16,

515-19 to 515-23, 515-26 to 515-32, 515-40 to 515-42, 516-1, 516-10 to 516-26, 516-28 to 516-

30, 516-32, 516-33, 516-35 to 516- 41, 517-1, 517-2, 517-3, 517-4, 517-6, 517-7, 517-9 to 517-

12, 517-14, 517-16 to 517-19, 517-21 to 517-35, 518-36to 518-42, 518-44, 519-3, 521-34, 521-

35, 536, 555, 557, 599, 529, and 525-3.

### (b)(6)-5    Names and/or Identifying Information of Third Parties Merely Mentioned

(76)    Exemption (b)(6)-5 has been asserted in conjunction with Exemption (b)(7)(C)-5

to withhold the names of third parties who are merely mentioned in various communications

which reflect the FBI's internal discussion of individuals who are the subjects of law enforcement

investigations. These individuals are not of investigative interest to the FBI, but are merely

mentioned in these communications. Disclosure of the identities of these third parties in this

context could cause unsolicited and unnecessary attention to be focused on them and disclosure

could embarrass them. For these reasons, the FBI has determined that the third party individuals

merely mentioned in the responsive communications maintain a strong privacy interest in not

having their identities disclosed.

(77)    After identifying the substantial privacy interest of the third parties merely

mentioned in the communications, the FBI balanced those interests against the public interest in

disclosure. The FBI could identify no discernible public interest in the disclosure of this

information because the disclosure of third parties' names will not shed light on the operations

-41-

and activities of the FBI. Accordingly, the FBI determined that the disclosure of this information would constitute a clearly unwarranted invasion of personal privacy. Thus, the FBI properly withheld the names and identifying information of these third parties merely mentioned in the responsive communications pursuant to Exemption (b)(6)-5. Exemption (b)(6)-5 has been cited on the following ACLU pages: 300, 301, 304-1 to 304-7, 305-1, 311, 313-3 to 313-7, 475-1 to 475-5, 501, 502, 515-1, 515-2, 515-3, 515-4, 515-11, 515-14, 515-16, 515-23, 515-24, 515-26 to 515-32, 515-38, 515-40, 515-41, 515-42, 516-1, 516-9 to 516-30, 516-32 to 516-41, 517-1 to 517-15, 517-17 to 517-35, 518-36 to 518-44, 519-3, 519-9, 521-34, 521-35, 555, and 557

**(b)(6)-6     Names and/or Identifying Information of Foreign Government/Law Enforcement Agency Officials**

(78)     Exemption (b)(6)-6 has been asserted in conjunction with Exemption (b)(7)(C)-6 to protect the names and identifying information of foreign government/law enforcement agency officials which appear in the documents at issue here. The relevant inquiry here is whether public access to this information would violate a viable privacy interest of the subjects of such information. Disclosure of this identifying information could subject these employees to unauthorized inquiries and harassment which would constitute a clearly unwarranted invasion of their personal privacy.

(79)     In balancing the legitimate privacy interests against any public interest in disclosure, the FBI has determined that there is a complete lack of any bona fide public interest in disclosure of this information because this type of information will not shed light on the operations and activities of the federal government. Accordingly, the FBI properly withheld this information pursuant Exemption 6. Exemption (b)(6)-6 has been cited on the following ACLU

pages: 515-27.

## EXEMPTION 7 THRESHOLD

(80)    Exemption 7 of the FOIA protects from mandatory disclosure records or

information compiled for law enforcement purposes, but only to the extent that disclosure could

reasonably be expected to cause one of the harms enumerated in the subparts of the exemption.

See 5 U.S.C. § 552(b)(7).  In this case, the harm that could reasonably be expected to result from

disclosure concerns interference with pending law enforcement proceedings, invasion of personal

privacy, revealing the identity of confidential sources, revealing sensitive law enforcement

techniques, and endangering the life or physical safety of individuals.

(81)    Before an agency can invoke any of the harms enumerated in Exemption 7, it

must first demonstrate that the records or information at issue were compiled for law

enforcement purposes.  Law enforcement agencies such as the FBI must demonstrate that the

records at issue are related to the enforcement of federal laws and that the enforcement activity is

within the law enforcement duty of that agency.  The various records at issue in this case were

compiled for criminal law enforcement purposes during the course of the FBI's performance of

its law enforcement mission, including the investigation of criminal activities, and of preventing

and deterring terrorist attacks within the United States and around the world, and reducing the

vulnerability of the United States to terrorism.

(82)    Because the records clearly meet the Exemption 7 threshold, the remaining

inquiry is whether their disclosure would interfere with pending law enforcement proceedings,

invade personal privacy, reveal the identity of confidential sources, reveal sensitive law

enforcement techniques, and endanger the life or physical safety of individuals.

-43-

**EXEMPTION (b)(7)(A)**
**PENDING LAW ENFORCEMENT INVESTIGATION**

(83)   5 U.S.C. § 552 (b)(7)(A) exempts from disclosure:

> records or information compiled for law enforcement purposes, but
> only to the extent that the production of such law enforcement
> records or information (A) could reasonably be expected to
> interfere with enforcement proceedings . . . .

(84)   Application of this exemption requires the existence of law enforcement records;

a pending or prospective law enforcement proceeding; and a reasonable expectation that release

of the information would interfere with the enforcement proceeding.  Furthermore, normally the

assertion of this exemption to withhold documents involves documents found in an investigatory

file.  In this case, the information in question is contained in a series of internal communications

which represent discussions between FBI attorneys and FBI SAs regarding case-related issues

arising in various pending investigations.  Specifically Exemption (b)(7)(A)-1 has been asserted

to protect the names of the subjects of pending investigations and the details concerning these

investigations.

(85)   Based on its statutory authority, the FBI has established standard operating

procedures by which to implement the FOIA and Privacy Act as efficiently as possible.  In that

respect, when a FOIA/Privacy Act request is received for an on-going FBI investigation, the FBI

in most instances asserts Exemption (b)(7)(A) for that request.  However, the FBI does review

the materials responsive to the request and releases information contained within the file(s)

which will not jeopardize future investigative or prosecutive efforts.  The FBI's review of the

responsive records for the preparation of this declaration revealed that no material responsive

could be released, as all information reviewed would jeopardize further investigations and/or

-44-

prosecutive efforts.

(86)    Any release of information from the responsive files would be premature due to the harm which could ensue.  Once documents are released and are in the public domain, the information concerning the investigation could reach the individuals who are under investigation. This would allow these individuals to critically analyze the information in the documents pertinent to the investigation of themselves.  Such individuals possess the unique advantage of knowing the details surrounding the investigation, the identities of potential witnesses, direct and circumstantial evidence, etc., and could use the released information to their advantage.  In this regard, the following potential harms from the release of these documents exist:

(a) The identification of individuals, sources, and potential witnesses who possess information relative to the investigations and possible harm to, or intimidation of these individuals;

(b) The use of information released to counteract evidence developed by investigators;

(c) The identification of third parties who are also under investigation;

(d) The identification of the subject matter concerning classified information; and

(e) The locations in the United States, as well as foreign countries where the FBI is focusing the investigation and collection of investigative and source material.

(87)    Furthermore, the release of this information to third parties not directly involved in these matters could allow these third parties to interfere with the pending proceedings by harassment, intimidations, and creation of false evidence dispensing facts discussed during the FBI's investigation.  Once a release is made to a set of plaintiffs under the FOIA, the use and dissemination of the information to third parties is unrestricted.

-45-

(88)    Historically, the FBI has responded to requests for pending FBI investigatory files,

or portions thereof, with great regard for the intent of the FOIA.  The FBI makes every effort to

provide information which will not interfere with the pending law enforcement proceedings.  The

FBI is continuously working in conjunction with other federal agencies in pending investigations;

any waiver of FOIA Exemption (b)(7)(A) would inhibit the FBI's assistance to the justice system

at the Federal level.  Exemption (b)(7)(A)-1 has been cited on the following ACLU pages:  299,

302, 515-2, 515-5, 515-7, 515-8, 515-9, 515-23, 515-24, 515-26, 515-27, 515-32, 515-33, 515-

34, 515-36, 515-38 to 515-42, 516-3 to 516-6, 516-9 to 516-41, 517-1 to 517-35, 518-35, 518-43,

and 545.


## EXEMPTION (b)(7)(C)
## UNWARRANTED INVASION OF PERSONAL PRIVACY

(89)    5 U.S.C. § 552 (b)(7)(C) exempts from disclosure

> records or information compiled for law enforcement purposes, but
> only to the extent that the production of such law enforcement
> records or information . . . could reasonably be expected to
> constitute an unwarranted invasion of personal privacy . . . .

(90)    In withholding information from disclosure pursuant to this exemption, the FBI is

required to balance the privacy interests of the individual mentioned in the documents against

any public interest in disclosure.  In asserting this exemption, each piece of information was

scrutinized to determine the nature and strength of each individual's privacy interest.  The FBI

identified the public interest in disclosure of the information to be whether the information in

question would inform plaintiffs or the general public about the FBI's performance of its mission

to enforce federal criminal and national security statutes and/or how the FBI actually conducts its

-46-

statutory duties, namely, its internal operations and investigations. Every effort has been made to release all segregable information contained in these pages without infringing upon the privacy rights of the individuals mentioned in these documents.

**(b)(7)(C)-1     Names and/or Identifying Information Pertaining to FBI Employees**

(91)    Exemption (b)(7)(C)-1 has been asserted, at times in conjunction with Exemptions (b)(2)-1 and (b)(6)-1, to protect the names and identifying information of FBI SAs responsible for conducting investigations of individuals who pose a threat to the United States in terrorism and espionage cases and support employees responsible for providing legal advice to FBI SAs conducting investigations of these individuals. More specifically, the FBI protected the telephone numbers, facsimile numbers, and room numbers of FBI SAs and Professional Support employees. Disclosure of the names, telephone numbers, fax numbers, and room numbers could subject these employees to unauthorized inquiries by members of the media and the general public who seek access to this type of information. Accordingly, the FBI determined that the FBI SAs and Professional Support employees referenced in the responsive records maintain a substantial privacy interest in not having their identities disclosed.

(92)    The FBI next examined the records at issue to determine whether there was any public interest that outweighed the substantial privacy interests of the FBI SAs and Professional Support employees. The FBI could not identify any discernible public interest. The disclosure of the names of FBI SAs and Professional Support employees would not demonstrate how the FBI performs its statutory duties. There have been no allegations that the FBI SAs or Professional Support employees engaged in any type of significant misconduct which would establish a public interest in the disclosure. Ultimately, disclosure of the names of FBI SAs and Professional

-47-

Support employees would shed no light on the performance of the FBI's statutory duties. Thus, disclosure of the names of these employees would constitute an unwarranted invasion of their personal privacy; therefore, the FBI has properly asserted Exemption 7(C). The rationale for protecting the identities of FBI SAs and Professional Support employees pursuant to (b)(7)(C)-1 is the same as the rationale for protecting the identities of FBI SAs and Professional Support employees pursuant to Exemption (b)(6)-1. Exemption (b)(7)(C)-1 has been cited on the following ACLU pages: 299, 313-1, 474, 501, 512-1, 513-1, 529, 533, 599, 515-2 to 515-11, 515-16, 515-23, 515-24, 515-26, 515-27, 515-32, 515-35, 515-36, 515-38, 516-2, 516-7, 516-8, 516-9, 516-15, 516-17, 516-20, 516-23, 516-25, 516-28, 516-29, 516-32, 516-33, 516-35, 516-36, 516-40, 517-3, 517-9, 517-14, 517-16, 517-17, 517-21, 517-22, 517-24, 517-37, 518-18, 518-38 to 518-42, 519-1, 519-2, 519-5, 519-6, 521-2, 521-34, 521-43, 522-3, 522-5, 522-6, 543, 545, 555, 599, 529, 533, and 525-1 to 525-3

### (b)(7)(C)-2     Names and/or Identifying Information Pertaining to Non-FBI Federal Government Employees

(93)     Exemption (b)(7)(C)-2 has been asserted in conjunction with Exemption (b)(6)-2 to protect the names and identifying information concerning non-FBI federal government employees. The relevant inquiry here is whether public access to this information would violate a viable privacy interest of the subjects of such information. Disclosure of this identifying information could subject these employees to unauthorized inquiries and harassment which could constitute an unwarranted invasion of their personal privacy. The rationale for protecting non-FBI federal employees is the same as that for FBI employees.

(94)     In balancing the legitimate privacy interests against any public interest in

-48-

disclosure, the FBI has determined that there is a complete lack of any bona fide public interest in disclosure of this information because this type of information will not shed light on the operations and activities of the federal government. Accordingly, the FBI properly withheld this information pursuant Exemption 7(C). Exemption (b)(7)(C)-2 has been cited on the following ACLU pages: 475-1 to 475-5, 515-18, 515-27, and 515-39.

**(b)(7)(C)-3    Names and/or Identifying Information of Local, County
and State Law Enforcement Employees**

(95)    Exemption (b)(7)(C)-3 has been asserted to protect the identities of third parties who provided information to the FBI during the course of employment at local law enforcement agencies. In this case, because the third parties provided information to the FBI during the course of employment in furtherance of ongoing investigations, disclosure of information about these third parties could reasonably be expected to constitute an unwarranted invasion of personal privacy. In addition, if the FBI disclosed the identities of these third parties, the disclosure would have a chilling effect on the FBI's relationship with these individuals and other individuals who provide valuable information to the FBI. In balancing the legitimate privacy interests against any public interest in disclosure, the FBI has determined that there is a complete lack of any public interest in disclosure of this information because this type of information will not shed light on the operations and activities of the federal government. Accordingly, the FBI has properly withheld this information pursuant to Exemption 7(C). Exemption (b)(7)(C)-3 has been cited on the following ACLU pages:   474, 501, 502, 513-1, 518-38 to 518-42, 519-6, and 525-1 to 525-3.

**(b)(7)(C)-4    Names and/or Identifying Information Third Parties of
Investigative Interest or Who Provided Information to the FBI**

-49-

(96)    Exemption (b)(7)(C)-4 has been asserted, at times in conjunction with Exemption (b)(6)-4 and (b)(7)(F)-1, to withhold the names of third parties contained in various communications which reflect internal discussion of individuals who are the subjects of law enforcement investigations or who provided information regarding these investigations. These individuals are of investigative interest to the FBI, and are discussed in numerous communications. Disclosure of the identities of these third parties in this context could cause unsolicited and unnecessary attention to be focused on them and disclosure could embarrass them. For these reasons, the FBI has determined that the third party individuals in the responsive communications maintain a strong privacy interest in not having their identities disclosed.

(97)    After identifying the substantial privacy interest of the third parties in the communications, the FBI balanced those interests against the public interest in disclosure. The FBI could identify no discernible public interest in the disclosure of this information because the disclosure of third parties' names and identifying information will not shed light on the operations and activities of the FBI. Accordingly, the FBI determined that the disclosure of this information would constitute an unwarranted invasion of personal privacy. Thus, the FBI properly withheld the names of these third parties merely mentioned in the responsive communications pursuant to Exemption 7(C). Exemption (b)(7)(C)-4 has been cited on the following ACLU pages: 300, 301, 304-1 to 304-7, 305-1, 311, 313-1 to 313-7, 475-1 to 475-5, 501, 502, 512-1, 512-2, 513-1, 529, 599, 515-1 to 515-11, 515-14, 515-16, 515-19 to 515-23, 515-26 to 515-32, 515-40 to 515-42, 516-1, 516-10 to 516-26, 516-28 to 516-30, 516-32, 516-33, 516-35 to 516-41, 517-1, 517-2, 517-3, 517-4, 517-6, 517-7, 517-9 to 517-12, 517-14, 517-16 to 517-19, 517-21 to 517-35, 518-36to 518-42, 518-44, 519-3, 521-34, 521-35, 536, 555, 557, 599,

529, and 525-3.

### (b)(7)(C)-5     Names and/or Identifying Information of Third Parties Merely Mentioned

(98)     Exemption (b)(7)(C)-5 has been asserted in conjunction with Exemption (b)(6)-5 to withhold the names of third parties who are merely mentioned in various communications which reflect the internal discussion of individuals who are the subjects of law enforcement investigations. These individuals are not of investigative interest to the FBI, but are merely mentioned in these communications. Disclosure of the identities of these third parties in this context could cause unsolicited and unnecessary attention to be focused on them and disclosure could embarrass them. For these reasons, the FBI has determined that the third party individuals merely mentioned in the responsive communications maintain a strong privacy interest in not having their identities disclosed.

(99)     After identifying the substantial privacy interest of the third parties merely mentioned in the communications, the FBI balanced those interests against the public interest in disclosure. The FBI could identify no discernible public interest in the disclosure of this information because the disclosure of third parties' names will not shed light on the operations and activities of the FBI. Accordingly, the FBI determined that the disclosure of this information would constitute an unwarranted invasion of personal privacy. Thus, the FBI properly withheld the names and identifying information of these third parties merely mentioned in the responsive e-mail pursuant to Exemption 7(C). Exemption (b)(7)(C)-5 has been cited on the following ACLU pages: 300, 301, 304-1 to 304-7, 305-1, 311, 313-3 to 313-7, 475-1 to 475-5, 501, 502, 515-1, 515-2, 515-3, 515-4, 515-11, 515-14, 515-16, 515-23, 515-24, 515-26 to 515-32, 515-38,

515-40, 515-41, 515-42, 516-1, 516-9 to 516-30, 516-32 to 516-41, 517-1 to 517-15, 517-17 to 517-35, 518-36 to 518-44, 519-3, 519-9, 521-34, 521-35, 555, and 557.

### (b)(7)(C)-6     Names and/or Identifying Information of Foreign Government/Law Enforcement Agency Officials

(100)   Exemption (b)(7)(C)-6 has been asserted in conjunction with Exemption (b)(6)-6 to protect the names and identifying information of foreign government/law enforcement agency officials. The relevant inquiry here is whether public access to this information would violate a viable privacy interest of the subjects of such information. Disclosure of this identifying information could subject these employees to unauthorized inquiries and harassment which could constitute an unwarranted invasion of their personal privacy. The rationale for protecting foreign government/law enforcement agency officials pursuant to Exemption (b)(7)(C)-6 is the same as that articulated for Exemption (b)(6)-6, supra.

(101)   In balancing the legitimate privacy interests against any public interest in disclosure, the FBI has determined that there is a complete lack of any bona fide public interest in disclosure of this information because this type of information will not shed light on the operations and activities of the federal government. Accordingly, the FBI properly withheld this information pursuant Exemption (b)(7)(C)-6. Exemption (b)(7)(C)-6 has been cited on the following ACLU pages: 515-27.

### EXEMPTION (b)(7)(D) CONFIDENTIAL SOURCE INFORMATION

(102)   5 U.S.C. § 552(b)(7)(D) provides protection for:

> records or information compiled for law enforcement purposes, but only to the extent that the production of law enforcement records or information . . . could reasonably be expected to disclose the

-52-

> identity of a confidential source, including a State, local or foreign
> agency or authority or any private institution which furnished
> information on a confidential basis, and, in the case of a record or
> information compiled by a criminal law enforcement agency
> conducting a lawful national security intelligence investigation,
> information furnished by a confidential source.

(103)    Numerous confidential sources report to the FBI on a regular basis and are

"informants" within the common meaning of the term.  These sources provide information under

a variety of circumstances, including either an express or an implied assurance of confidentiality.

Releasing the information provided by these sources may likely reveal a confidential source's

identity.  The release of a source's identity would forever eliminate that source as a future means

of obtaining information.  In addition, when the identity of one source is revealed, that revelation

has a chilling effect on the activities and cooperation of other sources.  It is only with the

understanding of complete confidentiality (whether expressed or implied) that the aid of such

sources can be enlisted, and only through this confidence that these sources can be persuaded to

continue providing valuable assistance in the future.  Thus, the information provided by, as well

as the identities of these sources has been protected pursuant to Exemption 7(D).

### (b)(7)(D)-1    Names and/or Identifying Information Furnished by Third Parties with Express Assurance of Confidentiality

(104)    Exemption (b)(7)(D)-1 has been asserted to withhold names, identifying

information and data provided to the FBI by commercial or non-governmental entities with an

"express" assurance of confidentiality.  During the course of the FBI's intelligence

investigations, certain commercial/private companies provided information to the FBI relating to

the subjects of these investigations.  The FBI obtained this information pursuant to investigative

authorities.  To disclose the fact that these companies provided information to the FBI during the

-53-

course of an investigation could harm the commercial interests of the enterprise by deterring the public from employing their services. Some of this information is also classified and to provide more detail regarding these sources may reveal the very classified information that the FBI is attempting to protect. In addition, such a disclosure has wider implications. If the FBI disclosed the identities of confidential sources that provide information to the FBI on a continuing basis, that revelation would have a chilling effect on the activities and cooperation of other FBI confidential sources. It is only with the understanding of complete confidentiality that the aid of such sources can be enlisted, and only through this confidence that these sources can be persuaded to continue providing valuable assistance in the future. The FBI has released as much segregable information as possible without disclosing these sources' identities. Accordingly, the FBI properly withheld this information pursuant to Exemption (b)(7)(D)-1. Exemption (b)(7)(D)-1 has been cited on the following ACLU pages: 599.

### (b)(7)(D) -2    Names and/or Identifying Information Furnished by Third Parties with Implied Assurance of Confidentiality

(105)   Exemption (b)(7)(D)-2 has been asserted to withhold information provided to the FBI by commercial or non-governmental entities under circumstances from which an assurance of confidentiality may be implied. During the course of the FBI's intelligence investigations, certain commercial/private companies provided information to the FBI relating to the subjects of these investigations. The FBI obtained this information pursuant to investigative authorities. To disclose the fact that these companies provided information to the FBI during the course of an investigation could harm the commercial interests of the enterprise by deterring the public from employing their services. Some of this information is also classified and to provide more detail

-54-

regarding these sources may reveal the very classified information that the FBI is attempting to protect. In addition, such a disclosure has wider implications. If the FBI disclosed the identities of confidential sources that provide information to the FBI on a continuing basis, that revelation would have a chilling effect on the activities and cooperation of other FBI confidential sources. It is only with the understanding of complete confidentiality that the aid of such sources can be enlisted, and only through this confidence that these sources can be persuaded to continue providing valuable assistance in the future. The FBI has released as much segregable information as possible without disclosing these sources' identities. Accordingly, the FBI properly withheld this information pursuant to Exemption (b)(7)(D)-2. Exemption (b)(7)(D)-2 has been cited on the following ACLU pages: 515-28 to 515-31, 515-41 to 515-42, and 516-1.

### (b)(7)(D)- 3     Confidential Source Symbols or Numbers

(106)   Exemption (b)(7)(D)-3 has been asserted in conjunction with Exemption (b)(2)-3 to withhold the information provided by source symbols or numbers contained in certain responsive documents. The redacted material describes the administrative aspect of using source symbols or numbers to protect the identity of FBI sources. Source symbols or numbers are assigned to confidential sources who have been developed, instructed, closely monitored and in many cases paid for their services. These sources report information to the FBI under an express grant of confidentiality. Within the FBI, knowledge of these sources' identities is limited to those FBI employees who have a legitimate need for the information. Also, sources to whom the FBI has assigned source symbols or numbers are not referred to by name in any document which contains information that they provided.

(107)   In this case, the FBI protected the source symbols or numbers of confidential

sources that provided information about the subjects of on-going intelligence investigations. The

sources' names are not referenced, and the informants' source symbols or numbers are cited

where the source is referenced in the responsive documents. The fact that a source symbol or

number was assigned is a positive indicator that supports an express assurance of confidentiality.

If the FBI disclosed these source symbols or numbers, the sources' identities could be ascertained

by a person knowledgeable of the events that gave rise to the FBI's investigation of plaintiffs. If

the FBI disclosed these source symbols or numbers, the sources, could be subjected to

embarrassment, humiliation, and physical/mental harm. In addition, such a disclosure has wider

implications. If the FBI disclosed the identities of confidential sources that entered into express

agreements of confidentiality, that revelation would have a chilling effect on the activities and

cooperation of other FBI confidential sources. It is only with the understanding of complete

confidentiality that the aid of such sources can be enlisted, and only through this confidence that

these sources can be persuaded to continue providing valuable assistance in the future. The FBI

has released as much segregable information as possible without disclosing these sources'

identities. Accordingly, the FBI properly withheld this information pursuant to Exemption

(b)(7)(D)-3. Exemption (b)(7)(D)-3 has been cited on the following ACLU pages: 515-27, 515-

39 to 515-42, and 516-9.

## EXEMPTION (b)(7)(E)
## INVESTIGATIVE TECHNIQUES AND PROCEDURES

(108)   5 U.S.C. § 552 (b)(7)(E) provides for the withholding of:

>        records or information compiled for law enforcement purposes, but
>        only to the extent that the production of such law enforcement
>        records or information would disclose techniques and procedures
>        for law enforcement investigations or prosecutions, or would

-56-

> disclose guidelines for law enforcement investigations or
> prosecutions if such disclosure could reasonably be expected to
> risk circumvention of the law . . . .

In order for this exemption to apply, the specifics and use of the technique or procedure at issue

must not be well-known to the public.

### (b)(7)(E)-1    FBI Internal Techniques and Procedures

(109)   The FBI has asserted Exemption (b)(7)(E)-1, at times in conjunction with

Exemption (b)(2)-4, to withhold information which affords "categorical"protection for

techniques and procedures used in law enforcement investigations or prosecutions.  While the

protection of Exemption 7(E) is generally limited to techniques and procedures that are not well

known to the public,  even commonly known procedures may be protected from disclosure if the

disclosure could reduce or nullify their effectiveness in scientific analysis or details of a

polygraph examination, the type of test and machine used and questions asked in sequence.

(110)   The revelation of these details could enable the targets of these techniques to

avoid detection or develop countermeasures to circumvent the ability of the FBI to effectively use

this important law enforcement technique.   Accordingly, the FBI properly withheld this

information pursuant to Exemption (b)(7)(E)-1.  Exemption (b)(7)(E) has been cited on the

following ACLU pages:  515-1, 515-3, 515-5, 515-6, 515-8, 515-23, 515-24, 515-25, 515-32,

515-41, and 515-42.

### DOCUMENTS/INFORMATION ORIGINATING WITH OTHER AGENCIES

(111)   The Third Hardy Declaration discussed several referrals and consultations in

connection with PETA, UFPJ, Greenpeace and ACLU-related documents.  The referral to the

Executive Office for the United States Attorneys ("EOUSA") regarding Greenpeace consisted of

25 pages. EOUSA has prepared a separate <u>Vaughn</u> declaration regarding these pages. Four pages were referred to the U.S. Office of Personnel Management ("OPM"), Office of the Inspector General, regarding PETA. OPM has advised that it has made a partial release to plaintiffs, and has redacted certain individuals' names pursuant to Exemptions 6 and 7(C). OPM will be preparing and submitting a separate <u>Vaughn</u> declaration to address these withholdings. The FBI has also consulted with the Secret Service, Department of Homeland Security ("DHS") regarding five pages related to Greenpeace. A supplemental release of these pages is reflected in Exhibit A.

(112)   In the course of preparing this <u>Vaughn</u> declaration for documents related to MPAC and ADC, the FBI discovered that it had reviewed and withheld a 65-page draft document originating with the Department of Defense ("DoD"), Office of the Inspector General, concerning MPAC. These pages are identified as ACLU Bates pages 519-10 through 520-30. Subsequently, the FBI referred this document to DoD for direct response. The FBI has requested that DoD review these pages and submit a separate <u>Vaughn</u> declaration as soon as possible.

(113)   In the course of preparing this Vaughn declaration, the FBI noted several pages on Greenpeace that were excluded in error from the original release. In an effort to correct this error, the FBI has included these processed pages at **Exhibit C**.

## CONCLUSION

(114)   FBIHQ has processed and released all segregable information from the documents responsive to plaintiffs' request. The FBI has carefully examined the records related to MPAC and ADC and released 196 pages with tailored redactions made pursuant to FOIA Exemptions 1, 2, 3, 5, 6, 7(A), 7(C), 7(D), and 7(E), 5 U.S.C. §§ 552 (b)(1), (b)(2), (b)(3), (b)(5), (b)(6),

-58-

(b)(7)(A), (b)(7)(C), (b)(7)(D), and (b)(7)(E).  Furthermore, the FBI carefully examined the

remaining pages withheld in full and in part, and determined that the information withheld from

plaintiffs in this case, if disclosed, could reasonably be expected to damage national security,

impede the effectiveness of the FBI's internal law enforcement procedures and practices,

interfere with and damage attorney-client privileged communications, as well as chill internal

intra and inter-agency deliberations, interfere with pending law enforcement investigations, cause

unwarranted invasions of privacy interests of numerous individuals, disclose the identities of

confidential sources, and disclose techniques and procedures for law enforcement investigations

or was considered to be out of scope of the requests.  Accordingly, the FBI has released all

reasonably segregable, nonexempt information in this case.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing

is true and correct, and that Exhibits A through C attached hereto are true and correct copies.

Executed this ___23rd___ day of December, 2005.

DAVID M. HARDY
Section Chief
Record/Information Dissemination
 Section
Records Management Division
Federal Bureau of Investigation
Washington, D.C.

-60-