UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AMERICAN CIVIL LIBERTIES UNION, *et al.*,

Plaintiffs,

v.

FEDERAL BUREAU OF INVESTIGATION, *et al.*,

Defendants.

No. 05-cv-1004 (ESH)

**MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR
PARTIAL SUMMARY JUDGMENT**

Arthur B. Spitzer (D.C. Bar No. 235960)
American Civil Liberties Union
   of the National Capital Area
1400  20th Street, N.W. #119
Washington, D.C. 20036
Phone:  (202) 457-0800
Fax: (202) 452-1868

Ann Beeson
Ben Wizner
Scott Michelman
American Civil Liberties Union Foundation
125 Broad St.
New York, NY 10004
Phone: (212) 549-2500
Fax: (212) 549-2629

*Counsel for Plaintiffs*

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

ARGUMENT ...................................................................................................................... 3

    I.     THIS COURT SHOULD APPLY THE FREEDOM OF INFORMATION
        ACT CONSISTANTLY WITH ITS BROAD PURPOSES OF
        GOVERNMENT DISCLOSURE ......................................................................... 3

    II.    IN CAMERA REVIEW OF THE CONTESTED DOCUMENTS IS
        NECESSARY FOR THIS COURT TO CONDUCT A MEANINGFUL
        DE NOVO REVIEW OF THE GOVERNMENT'S EXTENSIVE
        EXEMPTION CLAIMS ...................................................................................... 6

        A.    In camera review is a vital tool to enable courts to conduct
            meaningful review and to compensate for the FOIA
            requester's information disadvantage ........................................................... 7

        B.    This Court has broad discretion to conduct in camera review
            for a variety of reasons ............................................................................... 9

        C.    This Court should conduct in camera review because of the
            strength of the public interest in disclosure of the government
            documents at issue ..................................................................................... 11

        D.    This Court should conduct in camera review because the
            government's *Vaughn* affidavits are insufficiently detailed ......................... 13

        E.    This Court should conduct in camera review because the scope
            of the redactions suggests that the breadth of the government's
            exemption claims is unjustified. ................................................................. 17

CONCLUSION.................................................................................................................. 24

**INTRODUCTION**

This litigation concerns a request filed under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, for records relating to FBI surveillance of domestic political and religious organizations.[1]  Plaintiffs seek disclosure of information that is critical to the public's understanding of the FBI's expanded investigative and surveillance authority under relaxed guidelines implemented by former Attorney General John Ashcroft.  These guidelines replaced those promulgated in response to scandalous revelations that the FBI had, under the leadership of J. Edgar Hoover, engaged in widespread political surveillance – including the infiltration of civil rights and peace groups, the burglary of political groups to gain information about their members and activities, and the compilation of massive amounts of information about the political associations and personal lives of American citizens.  The FOIA request at issue thus has serious implications for Americans' constitutionally protected rights of speech and association. And in the wake of the implementation of Attorney General Ashcroft's new guidelines, there has been growing public concern about the FBI's monitoring, surveillance, and infiltration of organizations on the basis of their members' national origin, racial and/or ethnic background, religious affiliation, organizational membership, political views or affiliation, or participation in protest activities or demonstrations.

Plaintiffs have made several good-faith efforts to narrow the scope of the present dispute, by restricting both the number of exemptions and the number of pages at issue.

---

[1] Plaintiffs do not dispute any of the purely factual statements in defendants' "Statement of Facts as to Which There is No Genuine Issue."  To the extent defendants' account of the factual and procedural background includes conclusory *legal* characterizations regarding the applicability of FOIA exemptions, plaintiffs dispute these purported "facts."  This disagreement is, of course, the subject of this brief.

Most recently, plaintiffs agreed to eliminate from this litigation an additional 21 documents, totaling 178 pages. *See* Exh. B to Fifth Hardy Decl.

The dispute now focuses primarily on the contents of the documents at issue rather than the legal interpretation of the FOIA exemptions. In accordance with the peculiar nature of FOIA litigation, plaintiffs find themselves litigating in the dark about whether the government has properly applied the exemptions it has claimed. Nonetheless, even without access to the unredacted documents, plaintiffs can identify several troubling aspects of the government's production that suggest it has redacted and withheld documents to an unjustified extent. In at least one instance, the government has provided plaintiffs with two copies of the same document redacted differently pursuant to different exemptions. Additionally, the government's *Vaughn* index explains neither the contents of the documents withheld, nor the applicability of the exemptions claimed, in sufficient detail to justify summary judgment in the government's favor.

Given the vital importance of this FOIA request – which seeks to answer serious questions about the government's respect for Americans' constitutionally protected freedoms of speech and association – and the troubling aspects of the government's production suggesting its over-reliance on the FOIA exemptions, this Court should order in camera review of at least a portion of the documents redacted and withheld. In camera review in this case is necessary for this Court to fulfill its statutory responsibility to conduct a de novo review of the government's exemption claims. Moreover, in camera review by an impartial arbiter is the only means by which to compensate for the plaintiffs' information disadvantage and provide a meaningful check on the government's natural tendency to interpret FOIA exemptions broadly in order to avoid disclosing

2

embarrassing documents on sensitive issues of great public interest.  The FOIA does not

exist to protect the government from embarrassment.  Quite the contrary: the FOIA exists

to enable the American people to learn what their government is up to, even if –

especially if – they may not approve of what they learn.  An informed citizenry is a

prerequisite to a healthy democracy.  As long as the government is permitted to interpret

and apply the FOIA exemptions without an external check, the FOIA's important

mandate of broad disclosure will be thwarted, and the American people will remain

detrimentally underinformed about the activities of their government.

For these reasons, as elaborated below, the government is not entitled to summary

judgment in the absence of in camera review of the documents at issue.


**ARGUMENT**

**I.    THIS COURT SHOULD APPLY THE FREEDOM OF INFORMATION
       ACT CONSISTENTLY WITH ITS BROAD PURPOSE OF
       GOVERNMENT DISCLOSURE.**

The Freedom of Information Act is grounded in the "fundamental principle of

public access to Government documents," *John Doe Agency v. John Doe Corp.*, 493 U.S.

146, 151 (1989), and in the American public's right to know  "what their Government is

up to." *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749,

773 (1989) (citation and internal quotation marks omitted).  The central purpose of the

statute is "to ensure an informed citizenry, vital to the functioning of a democratic

society, needed to check against corruption and to hold the governors accountable to the

governed."  *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978).

Accordingly, the drafters of the FOIA intended "that the courts interpret this legislation

broadly, as a disclosure statute and not as an excuse to withhold information from the public." 112 Cong. Rec. 13654 (June 20, 1966) (statement of then-Rep. Donald Rumsfeld).

The FOIA directs government agencies to disclose certain types of records upon request. *See* 5 U.S.C. § 552(a)(3). The statute contains nine exemptions from its broad mandate of disclosure. *See* 5 U.S.C. § 552(b). "'But these limited exemptions do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act.' Accordingly, these exemptions 'must be narrowly construed.'" *John Doe Agency*, 493 U.S. at 152 (quoting *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976)).

Even where a FOIA exemption applies, "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). It has "long been a rule in this Circuit that non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Schiller v. NLRB*, 964 F.2d 1205, 1209 (D.C. Cir. 1992) (citation and internal quotation marks omitted). "The segregability requirement applies to all § 552 documents and all exemptions in the FOIA." *Id.* (citations, internal quotation marks, and source's brackets omitted). So important is the segregability requirement to the FOIA's broad disclosure mandate that trial courts have an affirmative duty to consider the issue of segregability sua sponte. *Trans-Pacific Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1028 (D.C. Cir. 1999); *see also Billington v. U.S. Dep't of Justice*, 233 F.3d 581, 586 (D.C. Cir. 2000). In fact, "[i]t is error for a district court to simply approve the withholding of an entire document without entering a finding

on segregability, or the lack thereof." *Schiller*, 964 F.2d at 1210 (citations and internal

quotation marks omitted).

In a FOIA case, "[t]he government is entitled to summary judgment if no material

facts are in dispute and if it demonstrates either that withheld or redacted documents are

not required to be disclosed under § 552(a) or are exempt from disclosure under §

552(b)." *Billington*, 233 F.3d at 583-84. "Very importantly, 'the burden is on the agency

to sustain its action.'" *Founding Church of Scientology of Washington, D.C., Inc. v. NSA*,

610 F.2d 824, 830 (D.C. Cir. 1979) (quoting 5 U.S.C. § 552(a)(4)(B)). Consequently,

when the government contends that documents are exempt from disclosure, "[t]he

government bears the burden of proving that the withheld information falls within the

exemptions it invokes," *Center for Nat. Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d

918, 925 (D.C. Cir. 2003), "even when the underlying facts are viewed in the light most

favorable to the requester," *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1350 (D.C.

Cir. 1983).

In order to meet its burden of proving that the documents at issue have been

properly withheld, the government must submit a declaration and index setting forth the

bases for its exemption claims. *See Vaughn v. Rosen*, 484 F.2d 820, 826-28 (D.C. Cir.

1973). In light of the tendency of federal agencies to "claim the broadest possible

grounds for exemption for the greatest amount of information," defendant agencies are

required to produce "a relatively detailed analysis" of the withheld material "in

manageable segments" without resort to "conclusory and generalized allegations of

exemptions." *See id.* at 826-27. The government must "specifically identify[] the

reasons why a particular exemption is relevant and correlat[e] those claims with the

particular part of a withheld document to which they apply." *King v. U.S. Dep't of Justice*, 830 F.2d 210, 219 (D.C. Cir. 1987).

The FOIA directs trial courts to review de novo the applicability of the exemptions claimed by the government.   5 U.S.C. § 552(a)(4)(B).

II.    **IN CAMERA REVIEW OF THE CONTESTED DOCUMENTS IS NECESSARY FOR THIS COURT TO CONDUCT A MEANINGFUL DE NOVO REVIEW OF THE GOVERNMENT'S EXTENSIVE EXEMPTION CLAIMS.**

In reviewing the validity of a government's exemption claim, a court "may examine the contents of such agency records in camera to determine whether such records or any part thereof shall be withheld." 5 U.S.C. § 552(a)(4)(B).   The decision whether to undertake in camera review is left to the trial court's discretion. *Spirko v. U.S. Postal Serv.*, 147 F.3d 992, 996 (D.C. Cir. 1998).  Where the quantity of documents at issue is large, the court may undertake in camera review of a portion of the documents and rule on the entire FOIA request by extrapolating from its findings on the limited sample. *See, e.g., Bonner v. U.S. Dep't of State*, 928 F.2d 1148, 1151 (D.C. Cir. 1991) (sampling is an "appropriate procedure to test an agency's FOIA exemption claims" over "a large number of documents"); *Meeropol v. Meese*, 790 F.2d 942, 958 (D.C. Cir. 1986); *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1479, 1490 (D.C. Cir. 1984).  Where a limited sample is reviewed, the sample may be a portion of the documents designated as representative or a portion selected at random. *Compare Bonner*, 928 F.2d at 1151 (representative), *with Weisberg*, 745 F.2d at 1490 (random).

Summary judgment without in camera review is appropriate only where the government's affidavits "provide specific information sufficient to place the documents

within the exemption category, if this information is not contradicted in the record, and if there is no evidence in the record of agency bad faith." *Center for Auto Safety v. EPA*, 731 F.2d 16, 22 (D.C. Cir. 1984); *see also Allen v. CIA*, 636 F.2d 1287, 1291 (D.C. Cir. 1980), *overruled on other grounds*, *Founding Church of Scientology of Washington, D.C., Inc. v. Smith*, 721 F.2d 828, 830 (D.C. Cir. 1983). "While in camera examination need not be automatic, in many situations it will plainly be necessary and appropriate." *Ray v. Turner*, 587 F.2d 1187, 1191 (D.C. Cir. 1978) (per curiam) (quoting the Conference Report on the 1974 FOIA amendments, S. Rep. No. 93-1200 at 2 (1974), *as reprinted in* 1974 U.S.C.C.A.N. 6285, 6287) (internal quotation marks omitted).

In this case, the government's affidavits – both what they say and what they fail to say – should leave this Court profoundly concerned that the government has redacted and withheld documents to an extent unjustified by the FOIA exemptions. In light of the serious questions about the propriety of the government's exemption claims, and because of the strong public interest in the FOIA request at issue, this Court should exercise its discretion to review in camera at least some portion of the documents at issue – either the entire group of documents, or a representative or random sample. The government's showing alone is insufficient to meet its burden to justify summary judgment in its favor.

    **A.**    **In camera review is a vital tool to enable courts to conduct meaningful review and to compensate for the FOIA requester's information disadvantage.**

As the D.C. Circuit has explained, Congress intended that "the de novo review mandated by the Freedom of Information Act be extremely thorough so as to insure that agencies do not impermissibly expand by unreviewed interpretations the particular types

of matters Congress has exempted from disclosure." *Allen*, 636 F.2d at 1297 (citation and internal quotation marks omitted).

Even in the context of traditional judicial deference to executive judgments regarding matters classified for national security reasons, "deference is not equivalent to acquiescence." *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 30 (D.C. Cir. 1998). Thus, after the Supreme Court interpreted FOIA exemption 1 to require complete deference to government claims that documents were properly classified, "Congress promptly responded by amending FOIA and clarifying its intent that courts act as an independent check on challenged classification decisions." *Goldberg v. U.S. Dep't of State*, 818 F.2d 71, 76 (D.C. Cir. 1987) (discussing legislative response to *EPA v. Mink*, 410 U.S. 73 (1973)). Today, courts according deference to executive claims regarding national security must do so "without relinquishing their independent responsibility" to undertake a thorough de novo evaluation of the government's exemption claims, reviewing documents in camera if necessary. *Id.* at 77.

Thorough judicial review of the government's exemption claims is particularly appropriate in light of the requester's informational disadvantage, peculiar to the context of FOIA litigation:

> [I]t is anomalous but obviously inevitable that the party with the greatest interest in obtaining disclosure is at a loss to argue with desirable legal precision for the revelation of the concealed information. Obviously the party seeking disclosure cannot know the precise contents of the documents sought; secret information is, by definition, unknown to the party seeking disclosure. . . .
>
> In a very real sense, only one side to the controversy (the side opposing disclosure) is in a position confidently to make statements categorizing information . . . .

*Vaughn*, 484 F.2d at 823; *see also Jones v. FBI*, 41 F.3d 238, 242 (6th Cir. 1994) ("[T]he plaintiff is handicapped in this endeavor by the fact that only the agency truly knows the content of the withheld material. Except in cases in which the court takes the entire set of responsive documents *in camera,* even the court does not know." (citations omitted)).

"In an effort to compensate" for this disadvantage on the part of FOIA requesters, "the trial court, as the trier of fact, may and often does examine the document *in camera* to determine whether the Government has properly characterized the information as exempt." *Vaughn*, 484 F.2d at 825.

**B.    This Court has broad discretion to conduct in camera review for a variety of reasons.**

The D.C. Circuit has approved in camera review of contested FOIA documents in a variety of circumstances.  The circuit has long held in camera review to be appropriate where "when agency affidavits are insufficiently detailed to permit meaningful review of exemption claims" or "when evidence of agency bad faith is before the court." *Lam Lek Chong v. U.S. Drug Enforcement Admin.*, 929 F.2d 729, 735 (D.C. Cir. 1991); *see also, e.g., Allen*, 636 F.2d at 1298.  At the same time, the court has made clear that these are not the only cases in which in camera review is justified.  *See, e.g., Spirko*, 147 F.3d at 996 ("[*i*]*n camera* inspection does not depend on a finding or even tentative finding of bad faith" (quoting *Ray,* 587 F.2d at 1195) (internal quotation marks omitted)).  On the contrary, as the circuit has repeatedly emphasized, trial courts have broad discretion over whether to conduct in camera review.  *See, e.g.*, *Carter v. U.S. Dep't of Commerce*, 830 F.2d 388, 392 (D.C. Cir. 1987); *Center for Auto Safety*, 731 F.2d at 20; *see also Spirko*, 147 F.3d at 996 ("With such broad discretion vested in the district court, this court has yet to identify particular circumstances under which *in camera* inspection would be

*inappropriate . . . .*" (emphasis in original)).  "The ultimate criterion is simply this: Whether the district judge believes that *in camera* inspection is needed in order to make a responsible de novo determination on the claims of exemption."  *Spirko*, 147 F.3d at 996 (quoting *Ray,* 587 F.2d at 1195) (internal quotation marks omitted); *see also Carter*, 830 F.2d at 392; *Center for Auto Safety,* 731 F.2d at 21.

The D.C. Circuit has recognized that in camera review is justified in a broad range of circumstances.  For example, there is a "greater call for in camera inspection" in "cases that involve a strong public interest in disclosure."  *Allen*, 636 F.2d at 1299; *see also Jones*, 41 F.3d at 243.  As the D.C. Circuit has explained:

> When citizens request information to ascertain whether a particular agency is properly serving its public function, the agency often deems it in its best interest to stifle or inhibit the probes. It is in these instances that the judiciary plays an important role in reviewing the agency's withholding of information. But since it is in these instances that the representations of the agency are most likely to be protective and perhaps less than accurate, the need for in camera inspection is greater.

*Allen*, 636 F.2d at 1299.

As noted above, the submission of conclusory affidavits by the agency is also cause for in camera review because, "[w]here the agency affidavits merely parrot the language of the statute and are drawn in conclusory terms, the court's responsibility to conduct de novo review is frustrated."  *Id.* at 1298; *see also Carter*, 830 F.2d at 392.  In fact, the D.C. Circuit has suggested that the agency's submission of "affidavits [that] are insufficiently detailed to permit meaningful review of exemption claims" constitutes a "circumstance[] under which it would be error for the district court *not* to review the documents in camera."  *Spirko*, 147 F.3d at 996 (emphasis in original); *see also Quinon v. FBI*, 86 F.3d 1222, 1229 (D.C. Cir. 1996) ("[W]here an agency's affidavits merely

state in conclusory terms that documents are exempt from disclosure, an *in camera* review is *necessary*." (emphasis added)).

A trial judge may even order in camera review merely "on the basis of an uneasiness, on a doubt he wants satisfied before he takes responsibility for a de novo determination." *Ray,* 587 F.2d at 1195; *see also Meeropol*, 790 F.2d at 958 (same). Government officials may "reflect an inherent tendency to resist disclosure, and judges may take this natural inclination into account." *Ray,* 587 F.2d at 1195. Thus as a general matter, "in cases in which a look at the withheld material itself would be useful, [the D.C. Circuit has] fully approved *in camera* examination of the withheld material by the trial court." *Spirko*, 147 F.3d at 996 (citation and internal quotation marks omitted).[2]

**C.    This Court should conduct in camera review because of the strength of the public interest in disclosure of the government documents at issue.**

The public interest in the contents of the withheld documents is exceptionally high. The FOIA request at issue seeks records related to the FBI's monitoring, surveillance, and infiltration of certain political and religious organizations. This information is critical to the public's understanding of the FBI's expanded investigative and surveillance authority under relaxed guidelines implemented by former Attorney General John Ashcroft. The subject of this request – increased FBI surveillance of groups and individuals on the basis of political and religious affiliation and activity – has

---

[2] One common criticism of camera review is that it reduces the adversary nature of the process because it "deprives the FOIA requester of an opportunity to present his interpretation of the withheld documents." *Quinon*, 86 F.3d at 1228; *see also, e.g.*, *Jones*, 41 F.3d at 243. But courts have also recognized that in camera can "compensate" for the requester's lack of knowledge by checking "whether the Government has properly characterized the information." *Vaughn*, 484 F.2d at 825; *see also Ray*, 587 F.2d at 1212 (Wright, C.J., concurring) ("In camera inspection increases the 'adversariness' of the proceeding or at least provides a minimal substitute for true 'adversariness' by allowing the court to test the accuracy of the agency's representations."). In any event, "there is no danger in the instant case of circumventing 'vigorous adversary proceedings' because plaintiff[s] request[] *in camera* inspection and defendant has always had full access to the documents at issue." *Jones*, 41 F.3d at 243.

11

serious implications for the constitutionally protected rights of speech and association;
accordingly, there has been increasing public concern about the nature and scope of the
FBI's information-gathering activities.

The strong public interest in this request is reflected in the widespread media
coverage of the issue of FBI surveillance both before and after the filing of this request.
Dozens of articles cited in support of plaintiffs' motion for a preliminary injunction
report on – and question the propriety of – the FBI's domestic intelligence-gathering
activities.  *See* Pl. Memo. in Support of Motion for Prelim. Inj. at 14-15 & Ex. A thereto,
at 12-13.  Plaintiffs' recent release of documents obtained through this request attracted
widespread television, radio, and newspaper coverage in over sixty media outlets around
the country.  *See* Egan Decl. & Exh. A thereto.

The documents released so far indicate that the public has good reason to be
concerned.  The documents reveal that the FBI is using counterterrorism resources to
monitor and infiltrate domestic political organizations that criticize business interests and
government policies, despite a lack of evidence that the groups are engaging in or
supporting violent action.  For example, documents indicate ongoing surveillance and
infiltration of plaintiff People for the Ethical Treatment of Animals (PETA), including
investigation of its participation in an animal rights conference in Washington, D.C., that
was open to the public.  *See* Exh. E. to Fifth Hardy Decl. at 174 (FBI apparently learning
information from PETA intern); *id.* at 236-43 (discussing animal rights conference and
efforts by FBI "source" to "further establish" himself or herself "within the animal
rights/Ruckus movements").  Another document indicates that the FBI is recording the
names of conference attendees affiliated with plaintiff American-Arab Anti-

Discrimination Committee (ADC).[3]  And other FBI documents released just this week

pursuant to a related FOIA request reveal that the FBI has been monitoring the activities

of the Thomas Merton Center, a peaceful political organization in Pittsburgh, solely on

the basis of its anti-war views and its association with "more than a few Muslims and

people of Middle Eastern descent."  Exh. B. to Egan Decl., second document, at 2; *see*

*also id.*, first document, at 1 (document entitled "International Terrorism Matters" reports

that an "investigation" has revealed that "[t]he Thomas Merton Center . . . has been

determined to be an organization which is opposed to the Untied States' war with Iraq";

the document goes on to discuss Thomas Merton Center events); *id.*, second document, at

1 (synopsis of document about Thomas Merton Center reflects that the FBI has

conducted "investigation of Pittsburgh anti-war activity").

    As the D.C. Circuit has explained, "[w]hen citizens request information to

ascertain whether a particular agency is properly serving its public function, the agency

often deems it in its best interest to stifle or inhibit the probes. . . . [S]ince it is in these

instances that the representations of the agency are most likely to be protective and

perhaps less than accurate, the need for in camera inspection is greater."  *Allen*, 636 F.2d

at 1299.  Accordingly, the strong public interest in the subject of this FOIA request

weighs heavily in favor of in camera review of the documents in dispute.

    **D.**    **This Court should conduct in camera review because the**
          **government's *Vaughn* affidavits are insufficiently detailed.**

    As previously discussed, the inadequacy of the government's *Vaughn* affidavits is

a well-recognized justification for in camera review.  In fact, in camera review is

---

[3] This is apparent from the version of document #61 (pages 299-302) released to the ACLU, *available at* http://www.aclu.org/spyfiles/jttf/299_302.pdf.   Oddly, the version of same document attached to the government's summary judgment motion is redacted practically in its entirely.  *See* Exh. E. to Fifth Hardy Decl. at 299-302.

*required* when the *Vaughn* affidavits are too vague to permit meaningful review. *Spirko*, 147 F.3d at 996; *see also Quinon*, 86 F.3d at 1229. As the D.C. Circuit has admonished, "[t]o accept an inadequately supported exemption claim would constitute an abandonment of the trial court's obligation under the FOIA to conduct a *de novo* review." *King v. U.S. Dep't of Justice*, 830 F.2d 210, 219 (D.C. Cir. 1987) (footnote and internal quotation marks omitted).

"Specificity is the defining requirement of the *Vaughn* index and affidavit; affidavits cannot support summary judgment if they are conclusory, merely reciting statutory standards, or if they are too vague or sweeping." *Id.* (footnotes and internal quotation marks omitted). Judged against this standard, the government's *Vaughn* index and affidavits are plainly inadequate, and granting summary judgment in the absence of in camera review would be wholly inappropriate.[4]

The *Vaughn* index in this case is replete with vague descriptions that shed little or no light on the contents of the documents they purport to describe and that do not come close to satisfying the government's burden to "specifically identify[] the reasons why a particular exemption is relevant and correlat[e] those claims with the particular part of a withheld document to which they apply." *Id.* For example, document #147, withheld in full under some unspecified combination of exemptions 6, 7(A), 7(C), and 7(D), is identified only by its date and the page numbers of the original document: "EC [electronic communication] dated 7/14/00, includes pp. 1, 4, 8, 10, 11, 12, 15, 16, 18."

---

[4] The *Vaughn* index submitted with the government's motion for summary judgment is, for all its shortcomings, actually a marked improvement over the two indices that accompanied the government's two releases of documents in December 2005. Even at that time, the plaintiffs were willing to narrow the scope of the dispute by removing some documents from contention and conceding several categories of exemptions. *See* Exh. B to Fifth Hardy Decl., first document, at 1-2. Plaintiffs did not receive an initial version of the government's current (and still inadequate) *Vaughn* index until February 10, 2006. *See* Exh. B to Fifth Hardy Decl., second document, at 2. Within two weeks, the plaintiffs were able to eliminate an additional 21 documents, totaling 178 pages. *See* Exh. B to Fifth Hardy Decl., second document, at 1.

Exh. A. to Fifth Hardy Decl. (hereinafter "*Vaughn* index"), at 28.  Another document (#27), redacted under exemption 5, is described only by its page numbers and its status as a draft: "P. 2, 19, 25, 28, 34, 37, 46 of an FBI document.  All pages have the word DRAFT printed in the middle." *Vaughn* index at 5.  Likewise, a third document (#67), withheld under a host of exemptions (1, 2, 6, and 7(C)), is described only by its date, author, and recipient: "FBI EC dated 12/12/01 from Los Angeles Field Office to Los Angeles Field Office." *Vaughn* index at 11.  In all three of these instances, both the contents of the documents and the specific justification for redacting or withholding them under the cited exemptions remain a mystery.

In another instance, a set of documents (grouped together as #117), withheld in part under exemptions 6 and 7(C), is described as "Documents gathered for law enforcement purposes." *Vaughn* index at 23.  This wholly conclusory explanation speaks to only one of the two exemptions claimed, and even with respect to that exemption, the index "merely parrot[s] the language of the statute."  *Allen*, 636 F.2d at 1298; *cf.* 5 U.S.C. § 552(b)(7) (exempting "records or information compiled for law enforcement purposes").

And if it was "egregious" when, in another case, the government purported to justify withholding of 37-page document by describing it as "material collected by the United States Attorney's Office," *Kimberlin v. Dep't of Justice*, 139 F.3d 944, 950 (D.C. Cir. 1998), then certainly it is at the very least troubling that in this case the government has attempted to justify the partial withholding of 62 pages by describing the document in question (#132) only as "Investigative material compiled by various state, county, and local law enforcement agencies and provided to the FBI." *Vaughn* index at 25.

Similar examples of vague and uninformative descriptions abound throughout the government's index in this case. *See, e.g.*, *Vaughn* index at 10 (document #60, withheld in part under exemptions 5, 6, and 7(C), described simply as "Email traffic" with dates given); *id.* at 13 (document #75, withheld in part under exemptions 2, 6, 7(A), 7(C), 7(E), described simply as "Source-derived information"); *id.* at 19 (document #99, withheld in part under exemption 1, described simply as "Classified information on document remains classified. FBI Information."); *id.* at 24 (document #123, withheld in part under exemptions 6 and 7(C), described only as "P. 3 of FBI EC, document has mere mention of Greenpeace"); *id.* at 27 (document #144, withheld in full under exemptions 6, 7(A), and 7(D), described only as "Letter dated 6/24/04, from Pittsburgh to Mueller, et al").

"The reviewing court should not be required to speculate on the precise relationship between each exemption claim and the contents of the specific document." *Founding Church of Scientology of Washington, D.C., Inc. v. Bell*, 603 F.2d 945, 949 (D.C. Cir. 1979) (quoting *Ray*, 587 F.2d at 1197). Yet this is precisely what the government has asked this Court to do here.

Moreover, to facilitate the court's review of the agency's compliance with the segregability requirement, "[t]he withholding agency must supply 'a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and *correlating those claims with the particular part of a withheld document to which they apply.*'" *Schiller*, 964 F.2d at 1210 (quoting *King,* 830 F.2d at 224) (emphasis in *Schiller*). The government's *Vaughn* index in this case falls far short of this standard.

"The *Vaughn* index here submitted is, in a word, inadequate – wholly lacking in that specificity of description [this circuit] ha[s] repeatedly warned is necessary to ensure

16

meaningful review of an agency's claim to withhold information subject to a FOIA request." *King*, 830 F.2d at 223. Moreover, the index affords no basis for this Court to conclude that "reasonably segregable" nonexempt portions of the requested document have been disclosed. 5 U.S.C. § 552(b). In camera review is therefore "necessary" to test the validity of the government's exemption claims. *Quinon*, 86 F.3d at 1229.

> **E.    This Court should conduct in camera review because the scope of the redactions suggests that the breadth of the government's exemption claims is unjustified.**

As previously noted, a trial judge may order in camera review "on the basis of an uneasiness, on a doubt he wants satisfied before he takes responsibility for a de novo determination." *Ray,* 587 F.2d at 1195. The scope of the redactions in the documents at issue, combined with inconsistent redactions and inadequate explanations, should give rise to just such an "uneasiness" here.

For example, the government has justified numerous sizable redactions by reference to FOIA exemption 5, which exempts from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). This exemption applies to "inter-agency or intra-agency" documents that are both "predecisional" and "deliberative." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980). The government has redacted more than 60 pages pursuant to the deliberative process privilege. *See* Def. Memo. in Support of Motion for Partial Sum. Judg. (hereinafter "Def. Memo.") at 27 n.17.

The government's deliberative process redactions are questionable on their face. For example, the government has failed to demonstrate the predecisional nature of much

17

of the material it redacted.  "[T]o approve exemption of a document as predecisional, a court must be able 'to pinpoint an agency decision or policy to which the document contributed,'" *Senate of Puerto Rico v. U.S. Dep't of Justice*, 823 F.2d 574, 585 (D.C. Cir. 1987) (R.B. Ginsburg, J.) (quoting *Paisley v. CIA,* 712 F.2d 686, 698 (D.C. Cir. 1983), *vac'd in part and modified in part on other grounds*, 724 F.2d 201 (D.C. Cir. 1984)); *see also Hinckley v. United States*, 140 F.3d 277, 284 (D.C. Cir. 1998), or at the very least be able to identify a particular "decisionmaking process" to which the document contributed, *Access Reports v. Dep't of Justice*, 926 F.2d 1192 (D.C. Cir. 1991).  With respect to nearly all of the documents withheld under the deliberative process privilege, the government's *Vaughn* index does not enable this Court to identify either a particular decision or a particular decisionmaking process to which the document in question contributed.  Rather, the Court (and plaintiffs) are told merely that particular documents are "Prepared remarks," *Vaughn* index at 2 (document #8), "Whistle blower allegations," *id.* (document #10), "Questions and Answers," *id.* (documents #11 and #12), or even just "Email traffic," *id.* at 10 (document #60).  Under circuit law, "in order to carry its burden, the agency must describe not only the contents of the document but also enough about its context, *viz.* the agency's decisionmaking process, to establish that it is a pre-decisional part thereof." *SafeCard Services, Inc. v. SEC*, 926 F.2d 1197, 1204 (D.C. Cir. 1991).  The vague and general descriptions offered by the government do not remotely satisfy the government's burden to show that the deliberative process privilege applies.

The government's redactions are also suspect because it has redacted certain documents in their entirety without making any discernable effort to separate out factual

material that is not exempt.  It is well established that exemption 5's deliberative process privilege "does not protect purely factual material appearing in documents in a form that is severable without compromising the private remainder of the documents."  *Playboy Enters., Inc. v. Dep't of Justice*, 677 F.2d 931, 935 (D.C. Cir. 1982) (citation and internal quotation marks and punctuation omitted); *see also Soucie v. David*, 448 F.2d 1067, 1077-78 (D.C. Cir. 1971) ("Factual information may be protected only if it is inextricably intertwined with policy-making processes.").  For example, with respect to document #6, which the government describes as "Draft discussions of the USA Patriot Act provisions and ACLU's criticism of same," the government has redacted everything but multiple repetitions of the word "DRAFT."  *See Vaughn* index at 1; Exh. E. to Fifth Hardy Decl. at 14-32.  Perhaps any factual material contained within that draft was inextricably intertwined with policy recommendations; perhaps not.  But *Vaughn* requires agencies to "specify in detail which portions of the document are disclosable and which are allegedly exempt." 484 F.2d at 827.  This the agency surely has not done.

The government's claims under exemptions 6 and 7(C) are likewise troubling. Exemptions 6 and 7(C) permit the government to withhold, respectively, "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy," and "records or information compiled for law enforcement purposes" that "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. §§ 552(b)(6) & (b)(7)(C).  The government has redacted hundreds of pages under these exemptions, which the government tends to cite in tandem.  *See* Def. Memo. at 32 n.20, 33 n.21, 40 n.24, 41 n.25.

19

The applicability of both of these exemptions depends on a balancing of the privacy interest of the individual implicated by the document in question against the public interest in the release of the document. *Dep't of the Air Force v. Rose*, 425 U.S. 352, 372 (1976) (exemption 6); *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 776 (1989) (exemption 7(C)). While it is true that an invasion of privacy is "unwarranted" where a FOIA request for "law enforcement records or information about a private citizen . . . seeks no 'official information' about a Government agency, but merely records that the Government happens to be storing," *Reporters Comm.*, 489 U.S. at 780, "the mere fact that records pertain to an individual's activities does not necessarily qualify them for exemption" because "[s]uch records may still be cloaked with the public interest if the information would shed light on agency action." *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 894-95 (D.C. Cir. 1995).[5] And while exemptions 6 and 7(C) permit agencies to withhold the *names and addresses* of private individuals appearing in government files unless disclosure is "necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity," *id.* at 896 (citation and internal quotation marks omitted), the FOIA does not permit an agency to withhold "*all* of the material in an investigatory record solely on the grounds that the record includes some information which identifies a private citizen or provides that person's name and address," *id.* (emphasis in original). Instead, the proper course is to redact only the names, addresses, and other identifying information. *Id.*; *see*

---

[5] Although most of the cases cited throughout this discussion address exemption 7(C) and not exemption 6, any material that may not be withheld under exemption 7(C) a fortiori may not be withheld under exemption 6, because the privacy protections of the former exemption are broader than those of the latter. *See Reporters Comm.*, 489 U.S. at 756. Moreover, the D.C. Circuit has explicitly approved the application of the Supreme Court's exemption 7(C) jurisprudence in the exemption 6 context. *See Reed v. NLRB*, 927 F.2d 1249, 1251 (D.C. Cir. 1991).

*also Rose*, 425 U.S. at 381 (approving release of case summaries of Honor Code and Ethics Code violations at Air Force Academy, with redaction of names and identifying information of cadets involved).

In this case, plaintiffs do not seek the release of names or other identifying information of individuals in FBI files. However, plaintiffs are entitled to other information about investigation subjects, because with the names and identifying information redacted, the public interest in disclosure is strong. Directly on point is this Court's decision in *Steinberg v. United States Department of Justice*, 179 F.R.D. 366 (D.D.C. 1998). There the FOIA requester sought documents that "relate to a criminal investigation of alleged counter-terrorist activities." *Id.* at 370. Except for certain redactions "essential to preserve the anonymity of [government] sources," the court held that exemption 7(C) did not apply. *Id.* at 371. The public interest in disclosure was strong, the court explained, because "these documents 'tell us [something] about matters of substantive law enforcement policy that are properly the subject of public concern.' They indicate, for instance, what measures the government was willing to initiate in order to combat a perceived threat to its national security objectives." *Id.* at 370 (quoting *Reporters Committee*, 489 U.S. at 766 n.18) (alteration in *Steinberg*). On the other side of the balance, "it is self-evident that disclosure does not implicate the privacy interests of a third-party when the information in question does not actually 'concern[] his or her person.'" *Id.* at 370 (quoting *Reporters Committee*, 489 U.S. at 763) (alteration in *Steinberg*). Similar reasoning guided the Ninth Circuit's approach to exemption 7(C) in *Rosenfeld v. United States Department of Justice*, 57 F.3d 803 (9th Cir. 1995), in which the court affirmed a district court's refusal to permit the government to withhold, under

21

exemption 7(C), records of an FBI investigation of a civil liberties organization. The Ninth Circuit's analysis of the public interest at stake there was unequivocal: "It certainly serves FOIA's purpose to disclose publicly records that document whether the FBI abused its law enforcement mandate by overzealously investigating a political protest movement to which some members of the government then may have objected." *Id.* at 811-12. *See also Reporters Comm.*, 489 U.S. at 773 ("Official information that sheds light on an agency's performance of its statutory duties falls squarely within [FOIA's] purpose.").

Like the requesters in *Steinberg* and *Rosenfeld*, plaintiffs here seek to learn about the substance of federal law enforcement policy, including "what measures the government was willing to initiate in order to combat a perceived threat to its national security objectives," *Steinberg*, 179 F.R.D. at 370, and "whether the FBI abused its law enforcement mandate by overzealously investigating a political protest movement to which some members of the government then may have objected," *Rosenfeld*, 57 F.3d at 811-12. Disclosure of records responsive to this request, with names and identifying information redacted, will not invade anyone's privacy, because the documents will not identify any subject of an investigation. *See Steinberg*, 179 F.R.D. at 370. As the Supreme Court has observed, disclosure of personal information "constitutes only a *de minimis* invasion of privacy" when the identities of the individuals associated with that information are unknown. *U.S. Dep't of State v. Ray*, 502 U.S. 164, 176 (1991).

The extensive scope of the government's redactions under exemptions 6 and 7(C) suggests that the government did not heed these principles. In numerous instances, the blocks of text redacted under these exemptions are so large that they appear to encompass

far more than the names and identifying information of individuals in FBI files. *See, e.g.*, Exh. E. to Fifth Hardy Decl. at 179-81 (exemption 6/7(C) redactions covering entire paragraphs); *id.* at 94 (exemption 6/7(C) redactions covering blocks of text up to a quarter of a page); *id.* at 95 (exemption 6/7(C) redactions covering a block of text larger than half the page). The extent of the government's redactions under exemptions 6 and 7(C) appears inconsistent with the scope of the redactions permitted under these exemptions. This inconsistency gives rise to strong doubts about whether the government has been as judicious with its redactor's pen as it should have.

Finally, the inconsistent redaction of documents raises questions about the level of care with which the government chose which documents to redact and how extensively to redact them. In at least one instance, the government has provided plaintiffs with two copies of the same document redacted differently. *Compare* Exh. E. to Fifth Hardy Decl. at 519-2, *with* Exh. E. to Fifth Hardy Decl. at 529. Also, some of claimed exemptions differ – the notations on the page 519-2 indicate that the government is claiming exemption 1 for that page, for example, while the government does not cite exemption 1 at all on page 529. The government's *Vaughn* index describes page 519-2 as "EC dated 3/19/2002 from Los Angeles Field Office to Los Angeles Field Office regarding an FBI investigation which is not a subject of the request – MPAC is incidentally mentioned in the serial." The *Vaughn* index contains no notation for page 529.

The government's inconsistent redactions should cause the Court concern that the government is redacting and withholding at least some documents to an unjustified extent. Certainly the government would be hard-pressed to justify redacting material on one copy of a document after it has disclosed the exact same material on another copy of

the same document.  The government's dire predictions about the national security consequences of disclosing material it has redacted pursuant to exemption 1, *see, e.g.*, Def. Memo. at 5 ("[R]elease [of information withheld under exemption 1] could be expected to (a) reveal sensitive foreign relations or foreign activities information; (b) reveal intelligence activities and methods; or (c) reveal intelligence sources." (citations omitted)), ring particularly hollow where the government has disclosed some of the same information elsewhere.  This instance of inconsistent redaction, along with the government's questionable interpretations of exemptions 5, 6, and 7(C), should give rise to an "uneasiness," or "a doubt" this Court should "want[] satisfied before [it] takes responsibility for a de novo determination." *Ray,* 587 F.2d at 1195.  To resolve this doubt, in camera review is the appropriate course of action.[6]

Plaintiffs do not accuse the government of bad faith.  Rather, plaintiffs note the D.C. Circuit's observation that even "[g]overnment officials who would not stoop to misrepresentation" may nonetheless "reflect an inherent tendency to resist disclosure, and judges may take this natural inclination into account." *Ray*, 587 F.2d at 1195.  To ensure that the public's right to obtain vital information about the workings of its government is fully vindicated, this Court should order in camera review of the documents.

## CONCLUSION

For the foregoing reasons, this Court should review in camera the withheld and redacted documents, or a portion thereof, in order to evaluate the validity of the

---

[6] By emphasizing the government's questionable interpretations of, and apparently excessive redactions under, three exemptions in particular, plaintiffs in no way suggest their acquiescence in the government's other exemption claims.  Given the weakness of the government's *Vaughn* index, plaintiffs' position is that summary judgment for the government, in the absence of in camera review, is inappropriate with respect to any of the documents.

governments' claimed exemptions.[7]  If the Court finds that the government has withheld

and/or redacted documents to an unjustified extent, the Court should deny the defendants'

motion for partial summary judgment and order the release of the appropriate documents

or portions thereof, and the reprocessing of the remaining documents.


Respectfully submitted,

/s/
_____
Arthur B. Spitzer (D.C. Bar No. 235960)
American Civil Liberties Union
   of the National Capital Area
1400  20th Street, N.W. #119
Washington, D.C. 20036
Phone:  (202) 457-0800
Fax: (202) 452-1868

Ann Beeson
Ben Wizner
Scott Michelman
American Civil Liberties Union Foundation
125 Broad St.
New York, NY 10004
Phone: (212) 549-2500
Fax: (212) 549-2629

*Counsel for Plaintiffs*

March 17, 2006

---

[7] Plaintiffs request that the Court review in camera all of the documents at issue.  If the Court is not so inclined, plaintiffs recommend the following set of 34 documents, totaling 103 pages, as an appropriately representative sample for in camera review: documents #1, 2, 6, 7, 9, 11, 12, 18, 19, 20, 21, 22, 23, 24, 25, 27, 28, 35, 36, 37, 38, 39, 40, 41, 60, 61, 73, 91, 104, 105, 106, 126, 130, and 131, which include Bates pages 1-6, 14-32, 50-51, 59, 63, 76, 92-98, 100-103, 121-125, 133-139, 141-143, 162, 168, 170-175, 177-2, 179-181, 255-256, 262, 265, 267, 271, 273, 276, 279-280, 284-286, 292, 294-297, 299-302, 515-16 to 515-17, 519-2 to 519-3, 685, 689-690, 693-694, 1061-1063, 1072.  In the alternative, plaintiffs propose that the Court review a random sample consisting of 1 out of every 8 pages.