UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION, et al.<br><br>Plaintiffs<br><br>v.<br><br>FEDERAL BUREAU OF INVESTIGATION, et al.<br><br>Defendants | Civil Action No.<br>1:05cv01004-ESH |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
DEFENDANTS' PARTIAL MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

In their opposition to defendants' Motion for Partial Summary Judgment, plaintiffs do not really oppose any of defendants' arguments. Rather, plaintiffs simply ask this Court to conduct wide-ranging in camera review of the documents at issue. Such review is unnecessary: all of the Federal Bureau of Investigation ("FBI")'s invocation the Freedom of Information Act ("FOIA") exemptions were necessary and proper, as the detailed declarations of David M. Hardy, coded documents, and index submitted to the Court by defendants make clear.

In response to plaintiffs' organizational FOIA requests, in the fall of 2005 the FBI completed its search and processing of a total of 3,310 pages related to plaintiffs ACLU, ADC, PETA, Greenpeace, UFPJ, and MPAC, and released 2,407 pages with appropriate redactions. See Defendants' Statement of Material Facts Not in Dispute ¶ 11. Following discussions between the parties, the scope of dispute narrowed to approximately 650 pages with redactions

taken pursuant to FOIA Exemptions 1, 2, 3, 5, 6, 7(A), 7(C), 7(D), 7(E), and 7(F).  See Exhibit B to Fifth Hardy Decl.  The FBI withheld a limited, minimal amount of information pursuant to these well-recognized provisions to protect classified national security and other exempt information.  Plaintiffs appear hard-pressed to disagree: they have raised no arguments in opposition to summary judgment for defendants on their claims under FOIA exemptions 1, 2, 3, 7(A), or 7(D), or as to the attorney-client privilege under exemption 5.  Moreover, plaintiffs do not dispute the facts set forth by defendants, Pl. Mem. 1 n.1, nor do they dispute defendants' "legal interpretation of the FOIA exemptions," id. 2.  To the extent plaintiffs raise arguments in opposition to summary judgment at all, they do so only with respect to the personal privacy exemptions, 6 and 7(C), and the deliberative process privilege under Exemption 5.  With respect to the FBI's claims under those exemptions (as well as the other exemptions the FBI has invoked), a review of the Fifth Hardy Declaration, accompanying index and, where necessary, coded documents submitted by defendants establishes that all of the FBI's redactions were proper.  Plaintiffs' arguments to the contrary all suffer from the same, fatal flaw: they refer only to the brief descriptions of documents in Exhibit A to the Fifth Hardy Declaration, but never consider the additional, detailed information that the FBI has provided to plaintiffs and the Court in the Fifth Hardy Declaration itself, and in the complete, accompanying set of coded documents.

There is, therefore, no reason for the Court to delay awarding partial summary judgment to defendants as to plaintiffs' organizational FOIA requests.

## ARGUMENT

As set forth in our opening memorandum in support of partial summary judgment (Def. Mem.), defendants are entitled to summary judgment as to plaintiffs' organizational FOIA

requests. The FBI's submission of the Fifth Declaration of David M. Hardy and the attachments thereto, which include a set of coded documents (explained in the Declaration) and an index of withheld documents, fulfills the requirements of Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973). No more is required, and in camera review by the Court is therefore neither necessary nor appropriate.

I.  **The Declaration of David M. Hardy and the Accompanying Coded Documents and Index Support Summary Judgment for Defendants Under Vaughn.**

Plaintiffs argue that "the government's Vaughn affidavits are insufficiently detailed," Pl. Mem. 13, but in support they never actually cite to the FBI's Vaughn affidavit, the Fifth Hardy Declaration. Plaintiffs' specific criticisms of the FBI's submission (which primarily concern only deliberative process claims under Exemption 5 and personal privacy redactions under Exemptions 6 and 7(C)[1]) are misleading and beside the point, because plaintiffs fail to consider the totality of the FBI's detailed submission.

The purpose of a Vaughn submission is three-fold: "it forces the government to analyze carefully any material withheld, it enables the trial court to fulfill its duty of ruling on the applicability of the exemption, and it enables the adversary system to operate by giving the

---

[1] While the Court must, of course, conduct a de novo review, plaintiffs' afterthought statement in a footnote at the close of their brief that, despite their silence on the bulk of the FBI's redactions, they do not "acquiesce[] in [any of] the government's . . . exemption claims," Pl. Mem. at 24 n.6, is insufficient to present or preserve any argument. Cf. City of Waukesha v. E.P.A., 320 F.3d 228, 251 n.22 (D.C. Cir. 2003) (argument raised in opening brief "only summarily, without explanation or reasoning," held waived); Tribune Co. v. FCC, 133 F.3d 61, 69 n. 8 (D.C. Cir. 1998) (noting "requirement that . . . parties' arguments be sufficiently developed lest waived"); Railway Labor Ass'n v. United States R.R. Ret. Bd., 749 F.2d 856, 859 n.6 (D.C. Cir. 1984) (declining to resolve issue "on the basis of briefing which consisted of only three sentences in the [plaintiff]'s brief and no discussion of the relevant statutory text, legislative history, or relevant case law") (citing Carducci v. Regan, 714 F.2d 171, 177 (D.C. Cir. 1983).

requester as much information as possible, on the basis of which he can present his case to the trial court." Lykins v. DOJ, 725 F.2d 1455, 1463 (D.C. Cir. 1984). It is not the form, but the function of the index that is important. Keys v. DOJ, 830 F.2d 337, 349 (D.C. Cir. 1987). The D.C. Circuit has rejected a requirement that every single deletion be given an individualized justification. Id. Rather, generic terms are appropriate "so long as they have been defined aptly for purposes of resolving FOIA claims." Id.[2]

Accordingly, declarations, coded documents and indices such as those provided here satisfy these requirements, as they facilitate meaningful review under FOIA. See, e.g., Canning v. DOJ, 848 F. Supp. 1037, 1043-44 (D.D.C. 1994) (finding that coded format facilitated meaningful review by plaintiff and court); Branch v. FBI, 658 F. Supp. 204, 206 (D.D.C. 1987) (finding that coded format provided adequate record for review, where "[t]he code identifies the FOIA exemption asserted and describes the nature of the withheld information, and can be cross-referenced to the declarations explaining why the information may be withheld"); cf. Fiduccia v. DOJ, 185 F.3d 1035, 1043-44 (9th Cir. 1999) (finding "redacted documents . . . an entirely satisfactory (perhaps superior) alternative to a Vaughn index or affidavit performing this function."). The declaration, coded documents *and* index submitted here, taken together (as they should be), provide plaintiff and the Court with the exemptions asserted, describe the nature of

---

[2]   By the same token, plaintiffs are simply incorrect that "the government *must* submit a declaration *and* index setting forth the bases for its exemption claims." Pl. Mem. 5 (emphasis added). See, e.g., Maydak v. D.O.J., 218 F.3d 760, 766 (D.C. Cir. 2000) (noting that both the D.C. Circuit and the Supreme Court have "permit[ted] the satisfaction of the government's burden of proof under many . . . exemptions . . . through generic, categorical showings" and the D.C. Circuit has specifically upheld exemption 5 assertions "based on something less than a Vaughn index."), quoted in parenthetical in Tax Analysts v. I.R.S., --- F. Supp. 2d ----, Civ. No. 05-934-ESH, 2006 WL 122209, *3 (D.D.C. January 9, 2006) (Huvelle, J.) (upholding exemption 5 claim without Vaughn index).

the information withheld, and provide additional cross-references to the declaration that explains why the information is withheld. This amply satisfies the requirements of the FOIA under Vaughn.

Plaintiffs' criticisms of the FBI's index, however, are made out-of-context, without reference to the balance of the FBI's Vaughn submission, i.e., the Fifth Hardy Declaration itself and the accompanying set of coded documents (Exhibit E to the Fifth Hardy Decl.). Rather, plaintiffs' purported analysis of the FBI's submission is limited to a series of context-free quips concerning *only* the index filed with the Fifth Hardy Decl. Plaintiffs' criticisms are specious.

For example, citing the index of documents provided as Exhibit A to the Fifth Hardy Decl., plaintiffs complain that the two-page "Document #99 [Bates pages 533-534], withheld in part under exemption 1, [is] described simply as 'Classified information on document remains classified. FBI Information.'" Pl. Mem. 16, quoting Exh. A to Fifth Hardy Decl. at 19. However, the coded documents and cross-referenced Fifth Hardy Declaration indicate that these pages are newspaper clippings with classified notations, and that the vast majority of each page has been released to plaintiffs. The only redactions are of classified file numbers; those redactions are described and explained by Mr. Hardy in his Fifth Declaration at ¶¶ 22-23.

Similarly, plaintiffs allege that "document #147 [Bates page numbers 2003-8 to 2003-16], withheld in full under some unspecified combination of exemptions 6, 7(A), 7(C), and 7(D), is identified only by its date and the page numbers of the original document: 'EC [electronic communication] dated 7/14/00, includes pp. 1, 4, 8, 10, 11, 12, 15, 16, 18.'" Pl. Mem. 14, quoting Exh. A to Fifth Hardy Decl. at 28. Plaintiffs claim this is "too vague to permit meaningful review." Id. Defendants have not asked the Court to base its review *solely* on

Exhibit A to the Fifth Hardy Decl. Rather, defendants have provided additional, specific information and context in the Fifth Hardy Decl. and coded documents. Reading the declaration, index and coded documents in conjunction, as intended, provides a more complete explanation of the FBI's redactions: Bates pages 2003-8 to 2003-16 have been withheld in full pursuant to Exemption 7(A) (with portions of the documents also withheld under Exemptions 6 and 7(C) and (D)) because those pages pertain to a pending law enforcement investigation. Mr. Hardy also provided a complete rationale for protecting this information. Fifth Hardy Decl. ¶¶ 65-69. As the index further explains, the document is a July 14, 2000 multi-page Electronic Communication ("EC") that references or discusses Greenpeace only on selected internal pages (1, 4, 8, 10, 11, 12, 15, 16 and 18). See Exh. A to Fifth Hardy Decl. at 28. The applicability of Exemption 7(A) may be demonstrated generically, based on the category of records involved, rather than on a document-by-document basis. See Robbins Tire, 437 U.S. at 236. Indeed, courts have routinely accepted affidavits in Exemption 7(A) cases that specify the distinct, generic categories of documents at issue and the harm that could result from their release, rather than requiring extensive, detailed itemizations of each document. See, e.g., Spannuaus v. DOJ, 813 F.2d 1285, 1288 (4th Cir. 1987) ("The Supreme Court has rejected the argument that [Exemption 7(A)] requires particularized showings of interference, holding instead that the Government may justify nondisclosure in a generic fashion."). The FBI satisfied its Exemption 7(A) burden as to electronic communications concerning ongoing investigations in the Fifth Hardy Declaration at ¶ 65 (describing documents as "a series of internal communications which represent discussions between FBI attorneys and FBI SAs regarding case-related issues arising in various pending investigations," specifically including discussion of "the names of the subjects

of pending investigations and the details concerning these investigations."). See also id. ¶¶67-68 (describing harms that would flow from premature disclosure).[3]

Similarly, plaintiffs challenge "another document (#27 [Bates pages 133-139]), redacted under exemption 5, [and] described only by its page numbers and its status as a draft: 'P. 2, 19, 25, 28, 34, 37, 46 of an FBI document. All pages have the word DRAFT printed in the middle.'" Pl. Mem. 14, quoting Exh. A to Fifth Hardy Decl. at 5. Again, however, reading the index in conjunction with the Fifth Hardy Declaration and set of coded documents provides a full explanation of the reasons for, and propriety of, the FBI's redactions. As is clear from the coded documents, Bates pages 133, 135, and 137-139 have been marked "out of scope" and, based on prior agreement between the parties, need not be addressed in the FBI's Vaughn submission. See Exh. B to Fifth Hardy Decl. The text of Bates pages 133 (which is out-of-scope) and 136 were withheld in full as a draft containing no segregable information pursuant to Exemption (b)(5)-1, as explained in the Fifth Hardy Declaration at ¶¶ 50, 52, as were portions of Bates pages 134 and 138 (which are also out-of-scope).[4]

Likewise, plaintiffs state that "a third document (#67 [Bates pages 512-1 to 512-2]), withheld under a host of exemptions (1, 2, 6, and 7(C)), is described *only* by its date, author, and

---

[3]     On portions of Document 147, as the coded document submission makes clear, the FBI also asserted Exemptions (b)(6)-4 and (b)(7)(C)-4 to protect names and/or identifying information of third parties of investigative interest or who provided information to the FBI; and names and/or identifying information furnished by third parties with an implied assurance of confidentiality pursuant to Exemption (b)(7)(D)-2. Mr. Hardy discussed these exemption claims and these documents further in his Fifth Declaration at ¶¶ 57-58, 72-73, & 79.

[4]     Exemptions 6 and 7(C) were also asserted as to limited, appropriate portions of these pages to protect personal privacy information. Mr. Hardy discussed these exemption claims and these documents further in his Fifth Declaration at ¶¶ 57-58, 72-73.

recipient: 'FBI EC dated 12/12/01 from Los Angeles Field Office to Los Angeles Field Office.'" Pl. Mem. 15 (emphasis added), quoting Exh. A to Fifth Hardy Decl. at 11. But that is not the *only* description of the document in the FBI's submission: Mr. Hardy attests that the redacted information on these pages[5] "consists of intelligence activities and methods utilized by the FBI for gathering intelligence data." Fifth Hardy Decl. ¶ 18. It also contains properly classified FBI file numbers, id. ¶ 22, identifies the target(s) of a current FBI counterintelligence investigation, id. ¶ 29 (discussing Bates page 512-1), and contains detailed information from an intelligence source that, if revealed, would compromise the source, id. ¶ 38. Accordingly, the information has been properly withheld under Exemption 1 pursuant to E.O. 12958, as amended, § 1.4 (c), which exempts intelligence activities (including special activities), intelligence sources and methods, or cryptology. See, e.g., Fifth Hardy Decl. ¶¶ 18-19.[6] These descriptions are sufficient to enable the Court's meaningful, de novo review, without the need to resort to additional, in camera review of the documents at issue.

Plaintiffs also complain that "documents (grouped together as #117 [Bates pages 795-821]), withheld in part under exemptions 6 and 7(C), is [*sic*] described as "Documents gathered for law enforcement purposes." Pl. Mem. 15, quoting Exh. A to Fifth Hardy Decl. at 23. Again,

---

[5]    As the index explains, these two pages are a portion of a December 12, 2001 FBI EC between FBI officials in the Los Angeles Field Office. Exh. A to Fifth Hardy Decl. at 11.

[6]    Mr. Hardy also explained that these pages contain "information consisting of specific internal investigatory techniques and procedures used in the furtherance of the FBI's domestic terrorism investigations and/or prosecutions" that cannot be described further on the public record. Fifth Hardy Decl. ¶ 43 (describing, inter alia, Bates pages 512-1 to 512-2 and invoking Exemption 2). Portions of these pages also contain the names and/or identifying information of third parties of investigative interest or who provided information to the FBI, as to which Exemptions (b)(6)-4 and (b)(7)(C)-4 have been asserted. Id. ¶¶ 57-58, 72-73.

plaintiffs have ignored the cross-referenced portions of the Fifth Hardy Decl. and the coded documents. As is clear from viewing the coded documents, these pages are all law enforcement forms that contain individual descriptions. See Exh. E to Fifth Hardy Decl. at 795-821. As Mr. Hardy attested, these pages contain the names and/or other identifying information of third parties of investigative interest, or who provided information to the FBI. Fifth Hardy Decl. ¶¶ 58, 73. Again, these sworn descriptions are sufficient to enable the Court's meaningful, de novo review.

In sum, all of plaintiffs' criticisms of the FBI's submission suffer from the same, fatal flaw: they refer only to the brief descriptions of documents in Exhibit A to the Fifth Hardy Declaration, but *never* consider the document descriptions in the detailed, 86-paragraph, 49-page declaration itself. Nor do plaintiffs consider the coded documents submitted as Exhibit E to the Fifth Hardy Declaration, which label every single redaction made by the FBI and cross-reference it to the pertinent discussion in the declaration. The Court should, accordingly, give no weight to plaintiffs' partial analysis of the FBI's submission. That three-part submission, as discussed above, meets the requirements of the FOIA and Vaughn; no more is required. Cf. Keys, 830 F.2d at 349 (critical feature of Vaughn submission is function, not form).

## II.     The FBI Has Properly Invoked and Applied Exemptions 5, 6 and 7(C).

Based on limited examples of deliberative process and personal privacy redactions made by the FBI pursuant to Exemptions 5, 6 and 7(C), plaintiffs argue that the Court should not accord the usual presumption of good faith to the FBI's declaration and related submissions. Contra Grounds Saucer Watch v. CIA, 692 F.2d 770, 771 (D.C. Cir. 1981) ("Agency affidavits enjoy a presumption of good faith"). Plaintiffs are incorrect.

      A.      **The FBI Has Properly Redacted Deliberative Process Information Under Exemption 5.**

Plaintiffs challenge the FBI's redactions on "more than 60 pages pursuant to the deliberative process privilege[.]" Pl. Mem. 17. Plaintiffs fail to note that most of those pages are redacted only in part, or that those partially-redacted 60 pages are drawn from approximately 650 at issue. In any event, as defendants explained in their opening memorandum, their deliberative process withholdings[7] under Exemption 5 are entirely proper. Def. Mem. 25-29.

Plaintiffs' criticism of the index submitted in conjunction with the Fifth Hardy Declaration is, again, misplaced, because plaintiffs fail to consider the index in conjunction with the highly detailed information provided by the FBI in Mr. Hardy's declaration and the accompanying set of coded documents. See Pl. Mem. 18. Plaintiffs' out-of-context quotations of the brief document descriptions provided in the index thus fail to account for Mr. Hardy's explanation of the application of Exemption 5. See Fifth Hardy Decl. ¶¶ 50-52. It is clear from viewing the declaration, coded documents, and index as they are intended to be viewed – in conjunction with one another – that the withheld material properly includes (1) FBI drafts, see, e.g., Bates pages 14-32, 133-139, & 193-6 - 193-15, including draft answers to questions posed to the FBI, draft internal memoranda; (2) staff proposals, see, e.g., Bates pages 515-12 to 515-13; and (3) internal emails that contain federal employees' discussions, deliberations, and preliminary opinions as they discuss "(1) case-related questions regarding the use of certain investigatory tools in intelligence cases (2) requests for legal advice regarding the use of such tools, and (3) the development of procedures for implementing such investigatory tools." Fifth

---

      [7]      Plaintiffs do not challenge any of the FBI's attorney-client privilege withholdings also made pursuant to Exemption 5.

Hardy Decl. ¶ 51.  See, e.g., ACLU Bates pages 255-256, 262, 265, 267, 271, 273, 276, 279-280, 284-286 292, 294-297.

     As the D.C. Circuit has held, "[t]he exemption [of deliberative documents] . . . covers recommendations, *draft documents*, *proposals*, suggestions, and *other subjective documents which reflect the personal opinions of the writer* rather than the policy of the agency." Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 866 (D.C. Cir. 1980) (emphasis added) (also noting the deliberative process privilege "assures that subordinates within an agency will feel free to provide the decisionmaker with their uninhibited opinions and recommendations without fear of later being subject to public ridicule or criticism").  Indeed, "[d]raft documents, by their very nature, are typically predecisional and deliberative." Exxon Corp. v. Dep't of Energy, 585 F. Supp. 690, 698 (D.D.C. 1983); see also Dudman Communications Corp. v. Dep't of the Air Force, 815 F.2d 1565, 1569 (D.C. Cir. 1987) (disclosure of "decisions to insert or delete material or to change a draft's focus or emphasis – would stifle the creative thinking and candid exchange of ideas necessary to produce good historical work").  Thus, Mr. Hardy's explanation that the documents in question fit into these categories is sufficient under the law.  "To establish that a document is predecisional, the agency need not point to an agency final decision, but merely establish what deliberative process is involved, and the role that the documents at issue played in that process." Judicial Watch v. Export-Import Bank, 108 F. Supp. 2d 19, 35 (D.D.C. 2000) (citing Formaldehyde Inst. v. HHS, 889 F.2d 1118, 1223 (D.C. Cir. 1989)).  That is what the FBI has done here.

      **B.    The FBI Has Properly Redacted Names, Addresses and Other Identifying Information Under Exemptions 6 and 7(C).**

Plaintiffs also complain that the FBI's redactions of individuals' names, addresses, and other identifying information under Exemptions 6 and 7(C) "appears inconsistent with the scope of the redactions permitted" because the redactions sometimes include "entire paragraphs" or other apparently large blocks of text. Pl. Mem. 23. But (as plaintiffs are presumably aware), though names and addresses may be brief, *identifying information* properly redacted under these exemptions may fill even an "entire paragraph." As the coded documents make clear, however, the FBI was plainly "judicious with its redactor's pen," id., as the Exemption 6 and 7(C) redactions (when not within a block of text redacted under another exemption, such as Exemption 1, or because it is out-of-scope) are generally brief. See, e.g., Bates pages 1, 2, 77, 127, 128, 518-18, 519-2, 955. As Mr. Hardy attested, only names, addresses, and other identifying information has been redacted under Exemptions 6 and 7(C). Fifth Hardy Decl. ¶¶ 56-60, 71-75.

**III.    Two, Isolated Processing Errors Do not Give Rise to an Inference of Impropriety.**

Plaintiffs make much of two processing errors by the FBI, claiming it is evidence of carelessness, that it indicates the FBI is redacting documents "to an unjustified extent," and that it indicates the FBI's expert judgments as to the importance of protecting classified information "ring . . . hollow." See Pl. Mem. 23-24. As Mr. Hardy explains in his Sixth Declaration, filed herewith, the inconsistencies cited by plaintiffs resulted from isolated errors.

The version of Bates pages 299-302 that were included in the coded documents filed with the Court erroneously appeared to be redacted nearly in full due to error. Sixth Hardy Decl. ¶ 6.

The redactions of the document as originally presented to plaintiffs in the FBI's production were correct.[8]  A correct version of the document is filed herewith as Exhibit A to the Sixth Hardy Decl.

As plaintiffs also pointed out, similar information was treated inconsistently on two pages, Bates pages 519-2 and 529.  Sixth Hardy Decl. ¶ 7.  Based on the FBI's re-review of the documents at issue, these errors were isolated and the resulting disclosures were inadvertent. Sixth Hardy Decl. ¶ 7.  Accordingly, they should not give rise to any inference that the FBI has been careless or that its redaction decisions are untrustworthy.  To the contrary, these errors are unsurprising since, as this Court has recognized, "'no [large] search . . . will be free from error.'" Greenberg v. United States Dep't of Treasury, 10 F. Supp. 2d 3, 13 (D.D.C. 1998) (brackets in original), quoting Meeropol v. Meese, 790 F.2d 942, 953 (D.C. Cir. 1986).[9]

**IV.    In Camera Review is Neither Necessary Nor Appropriate.**

As explained supra, summary judgment for the FBI is entirely appropriate on the basis of the FBI's detailed submissions to date, and plaintiffs' arguments to the contrary are meritless. Plaintiffs' request that the Court conduct in camera review of the documents at issue (apparently including the many documents redacted under exemptions which the plaintiffs have not raised in their opposition) runs contrary to judicial efficiency and the law of this Circuit, and should be rejected.

---

[8]    The FBI subsequently added a notation indicating that the redacted information is also protected by Exemption 7(A) on all four pages, rather than only two of the four; that addition caused the error.

[9]    All of the redactions on Bates pages 519-2 and 529 were proper, but defendants acknowledge that litigation concerning some of those redactions is now moot to the extent that plaintiffs have been given the underlying information.

Whether to conduct in camera review is left to "the broad discretion of the trial judge." Center for Auto Safety v. EPA, 731 F.2d 16, 20 (D.C. Cir. 1984). "The ultimate criterion is . . . [w]hether the district judge believes that in camera inspection is needed in order to make a responsible de novo determination on the claims of exemption." Id. (quoting Ray v. Turner, 587 F.2d 1187, 1195 (D.C. Cir. 1978)). But where, as here, an agency has met its burden with a sufficiently detailed submission, "in camera review is neither necessary nor appropriate." Hayden v. National Sec. Agency, 608 F.2d 1381, 1387 (D.C. Cir. 1979), cert. denied, 446 U.S. 937 (1980). Indeed, in camera review should not be "resorted to as a matter of course, simply on the theory that 'it can't hurt'." Quiñon v. Federal Bureau of Investigation, 86 F.3d 1222, 1228 (D.C. Cir. 1996)). See also Hayden, 608 F.2d 1381, 1387 (reliance on agency submissions in lieu of in camera review "is in accordance with congressional intent that courts give agency affidavits 'substantial weight,' in recognition of the agency's expertise. In this scheme, in camera review is a "last resort" . . .).

In considering whether to conduct in camera inspection, courts typically consider the six factors set forth by the D.C. Circuit in Allen v. CIA: "(a) judicial economy, (b) the conclusory nature of the agency affidavits, (c) bad faith on the part of the agency, (d) disputes concerning the contents of the documents, (e) whether the agency requests an in camera inspection, and (f) the strong public interest in disclosure." See Donovan v. FBI, 806 F.2d 55, 59 (2d Cir. 1986), citing Allen v. CIA, 636 F.2d 1287, 1291 (D.C. Cir. 1980) (overruled on other grounds in Founding Church of Scientology v. Smith, 721 F.2d 828 (D.C. Cir. 1983)).

As to the first factor, while judicial economy may be well served by in camera review in a case where only a few documents are at issue, it would not be advanced here where plaintiffs

14

purport to seek the Court's in camera review of 650 pages of documents, to evaluate claims under several FOIA exemptions. See Donovan, 806 F.2d at 59 ("Most often, an in camera inspection has been found to be appropriate when only a small number of documents are to be examined.").

As to the second factor, as discussed above, the FBI's submission is not "conclusory" but rather is sufficiently detailed as to every redaction when viewed as a whole and not (as by plaintiffs, see Pl. Mem. 13-17) only in small part, without reference to the whole.

As to the third factor, plaintiffs specifically do not accuse the FBI of bad faith, Pl. Mem. 24, let alone provide any evidence of impropriety.

Finally, plaintiffs have made no claim and presented no evidence that would give rise to a credible dispute over the contents of the documents, and the agency does not request in camera review because summary judgment is appropriate on the basis of the Fifth Hardy Declaration, coded documents and accompanying index.

Plaintiffs rely heavily on the last Allen factor – the public interest in disclosure – but their claim of substantial public interest is misplaced. Plaintiffs have provided the Court with a number of press clippings entitled "Highlights of ACLU in the News, *Spyfiles*." See Exh. A to Declaration of Jennifer Egan, filed with Pl. Mem. Upon examination, however, many of the clippings plaintiffs provide primarily, if not exclusively, concern an intelligence-gathering program undertaken by the National Security Agency ("NSA") directed at foreign terrorist threats against the United States, not political surveillance of plaintiffs (or anyone else) by the FBI.[10]

---

[10] The discussions on the Abrams Report and Lou Dobbs Tonight, and in "Bush Should Put an End to Domestic Spying Program," Copley News Service (all December 20, 2005) (continued...)

The NSA program is not the subject of this litigation. Virtually *all* of plaintiffs' clips consist of or concern the ACLU's statements in the media, including statements by counsel of record in this case, sometimes in conjunction with statements by PETA. See id. As defendants explained in their opposition to plaintiffs' Motion for Preliminary Injunction, the ACLU's own statements in the media cannot credibly be cited as evidence of exigent public concern over the subject of ACLU's own FOIA requests.[11] See Defendants' Opposition to Motion for Preliminary Injunction at 23.

In camera review is, accordingly, "neither necessary nor appropriate" in this case. See Hayden, 608 F.2d at 1387. Moreover, even if the Court were to find that the defendant's submission is inadequate to permit the Court to conduct a de novo review as to certain documents, the Court still need not conduct in camera review, but should remand to the agency and order submission of a more detailed index. See, e.g., Campbell v. DOJ, 164 F.3d 20, 31 (D.C. Cir. 1998) ("On remand, the district court can either review the documents in camera or

---

[10](...continued)
exclusively concern the NSA program. The Situation with Tucker Carlson and The Situation Room, both also aired on December 20, 2005, primarily concern the NSA but contain mention of what plaintiffs characterized as FBI surveillance of plaintiff PETA. "The Squires of Surveillance," a satirical December 21, 2005 *New York Times* column by Maureen Dowd, primarily concerns the NSA and the war in Iraq, although it does reference PETA and a PETA advertising campaign featuring actress Pamela Anderson.

[11]     Plaintiffs also submit documents released by the FBI in response to another, unrelated FOIA request by the ACLU's Pennsylvania chapter, to imply the FBI was conducting political surveillance of "a Pittsburgh political organization," and, presumably, that the FBI is also conducting political surveillance of plaintiffs. Pl. Mem. 13, citing Exh. B to Egan Decl. These documents do not establish or indicate that the FBI is conducting politically-motivated surveillance of anyone; in any event, they are irrelevant to this action. The government's response to the Pennsylvania ACLU's FOIA request is not being challenged in this action (in fact, it is not the subject of litigation), and it is not before the Court.

require the FBI to provide a new declaration. . . . The latter course is favored where agency affidavits are facially inadequate[.]") (citation omitted); The Nation Magazine v. Customs Serv., 71 F.3d 885, 892, 895 (D.C. Cir. 1995) (remanding for Customs to provide additional information and affidavits); Meeropol, 790 F.2d at 960 (remanding to district court to order FBI to reprocess certain records); Greenberg v. Dep't of the Treasury, 10 F. Supp. 2d 3, 20 (D.D.C. 1998) (directing agency to produce new, more detailed Vaughn index); Branch, 658 F. Supp. at 206 (remand to order agency to submit more detailed index).[12]

---

[12] Nonetheless, should the Court wish to see unredacted versions of any of the documents at issue, defendants will promptly make them available to the Court upon the Court's request.

## CONCLUSION

For the foregoing reasons, the Court should enter summary judgment for defendants.

Dated: March 24, 2006

                Respectfully Submitted,

                PETER D. KEISLER
                Assistant Attorney General

                KENNETH L. WAINSTEIN
                United States Attorney

                ELIZABETH J. SHAPIRO
                Assistant Director

                ANTHONY J. COPPOLINO
                Special Litigation Counsel

                  /s/ Steven Y. Bressler
                STEVEN Y. BRESSLER D.C. Bar # 482492
                Trial Attorney
                United States Department of Justice
                Civil Division, Federal Programs Branch
                20 Massachusetts Avenue N.W.  Room 7138
                Washington, D.C.  20530
                Tel.: (202) 514-4781
                Fax: (202) 318-7609
                Email: steven.bressler@usdoj.gov
                Counsel for Defendants