UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> FEDERAL BUREAU OF INVESTIGATION, *et al.*, <br><br> Defendants. | Civil Action No. 05-1004 <br> (ESH) |

## MEMORANDUM OPINION

The American Civil Liberties Union, along with several other organizations ("ACLU" or "plaintiffs"), brought this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking documents from the Federal Bureau of Investigation ("FBI" or "defendant") related to the FBI's surveillance of certain domestic political and religious organizations.[1] (Compl. ¶ 2.) The FBI produced numerous documents to plaintiffs and now moves for partial summary judgment. The only issue before the Court is whether the FBI properly invoked various statutory exemptions under FOIA in withholding certain responsive documents.

## BACKGROUND

The following facts are not in dispute. The ACLU filed two FOIA requests with the FBI on December 2, 2004. The first sought "documents created from January 1, 2000 to the present

---

[1] Plaintiffs have also sought documents relating to the "function and activities" of the National Joint Terrorism Task Force ("NJTTF"). That request is not the subject of this Memorandum Opinion.

1

regarding . . . the creation, purpose, composition and policies" of the National Joint Terrorism Task Force ("NJTTF") from FBI headquarters.  (Def.'s Statement of Facts as to Which There is No Genuine Issue ("Def.'s Facts") ¶ 1.)  The second sought "documents related to the monitoring, surveillance, and investigation" by a Joint Terrorism Task Force of the ACLU, the ACLU Foundation, the American-Arab Anti-Discrimination Committee ("ADC"), Code Pink, Greenpeace, People for the Ethical Treatment of Animals ("PETA"), the Muslim Public Affairs Council ("MPAC"), and United for Peace and Justice ("UFPJ"), from FBI headquarters and several regional field offices.  (Def.'s Facts ¶ 1.)  Plaintiffs filed their Complaint on May 18, 2005, seeking an order from the Court instructing defendant to process its requests immediately and to produce any responsive documents to plaintiffs.[2]  (Compl. at 13.)

Negotiations between the ACLU and the FBI regarding the scope of plaintiffs' FOIA request occurred after the complaint was filed, and thereafter, the parties filed a Joint Status Report that set a deadline of October 1, 2005, for the production of documents regarding the organizations named in the Complaint ("organizational requests"), and a January 6, 2006 deadline for any documents relating to the NJTTF's policies, practices or procedures.  (Def.'s Facts ¶ 10.)  All other documents regarding the NJTTF were to be produced by March 1, 2006.  (Def.'s Facts ¶ 10.)  *See supra* note 1.  The Court approved the proposed schedule in an Order dated August 29, 2006.  (Def.'s Facts ¶ 10.)

Pursuant to the Court's Order, the FBI processed 3,310 pages related to the ACLU's organizational requests and produced 2,407 of those pages on September 30 and October 1, 2005.

---

[2] Plaintiffs were informed by the FBI on March 3, 2005, that a search had located no responsive documents regarding Code Pink.  Consequently, Code Pink was not included in plaintiffs' May 18 Complaint.

(Def.'s Facts ¶ 11.)  The remaining pages were either withheld in full or redacted pursuant to FOIA Exemptions 1, 2, 3, 5, 6, 7(A), and 7(C) - 7(F). (Def.'s Facts ¶ 11.)  The number of contested documents was reduced to approximately 650 pages by plaintiffs' decision not to contest certain categories of withholdings and redactions and to exclude from litigation a limited number of documents that had been withheld in full.  (Def.'s Facts ¶ 14.)

After having reached an impasse regarding the remaining disputed documents, defendant filed a Partial Motion for Summary Judgment ("Def.'s Mot.") on February 24, 2006,  with respect to the ACLU's organizational requests.  The ACLU filed a Memorandum in Opposition to Defendant's Motion ("Pls.' Opp."), advocating that the Court conduct an *in camera* review of the disputed documents to ensure the propriety of the FBI's withholdings and redactions.  (Pls.' Opp. at 6-23.)  In addition to the ACLU's argument that *in camera* review is necessary to protect its interests under FOIA, plaintiffs raise a limited number of specific concerns regarding defendant's *Vaughn* index with respect to redactions and withholdings under FOIA Exemptions 5, 6 and 7(C).  (Pls.' Opp. at 17-24.)  Although the decision to conduct *in camera* review is left to "the broad discretion of the trial judge," *Ctr. for Auto Safety v. E.P.A.*, 731 F.2d 16, 20 (D.C. Cir. 1984), at a status conference held March 31, 2006, the Court concluded, given the importance of the issues raised by this case, that it would undertake an *in camera* review of a representative sample of the disputed documents.  *See Allen v. C.I.A.*, 636 F.2d 1287, 1299 (D.C. Cir. 1980) (*in camera* inspection particularly appropriate in matters of "strong public interest") (overruled on other grounds in *Founding Church of Scientology of Washington, D.C. v. Smith*, 721 F.2d 828 (D.C. Cir. 1983)); *see also Spirko v. U.S. Postal Serv.*, 147 F.3d 992, 996 (D.C. Cir. 1998) (*in camera* review appropriate when needed "to make a responsible . . . determination

on the claims of exemption" (internal quotation marks omitted)).  Having now reviewed some two hundred pages, the Court finds that, with two exceptions, the FBI has properly invoked the contested FOIA exemptions, and therefore it grants defendant's motion for partial summary judgment.

**ANALYSIS**

**I.     FOIA: General Principles and Standard of Review**

FOIA was enacted in 1966 to implement a "general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language." *Dep't of the Air Force v. Rose*, 425 U.S. 352, 360-61 (1976) (quoting S. Rep. No. 89-813 (1965)).  Thus, an agency must promptly make available any records requested by members of the public, unless the agency can establish that the information is properly withheld under one or more of the nine exemptions set forth in the statute.  *See* 5 U.S.C. § 552(b).  These exemptions are exclusive and should be narrowly construed.  *Rose*, 425 U.S. at 361.  When a challenge is made to an agency's decision to withhold information, the burden of proof rests on the agency to sustain its decision, and the reviewing court is directed to "determine the matter de novo."  5 U.S.C. § 552(a)(4)(B).

At the same time, of course, it must be recognized that FOIA represents a carefully considered balance between the right of the public to know what their government is up to and the often compelling interest that the government has in keeping certain information private, whether to protect particular individuals or the national interest as a whole.  *See John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152-53 (1989) ("The Act's broad provisions favoring disclosure, coupled with the specific exemptions, reveal and present the 'balance' Congress has struck.")  As such, the exemptions must be given "meaningful reach and application."  *Id.* at 152.

In a FOIA case, the agency generally meets its burden by providing affidavits describing the material withheld and the reasons that it fits within one or more of the exemptions. And, especially when considering claims under Exemption 1 where national security concerns are at issue, the reviewing court must give "substantial weight" to such affidavits. *King v. Dep't of Justice*, 830 F.2d 210, 217 (D.C. Cir. 1987). In such cases, summary judgment may be granted based on an agency's affidavits if they contain "reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Halperin v. C.I.A.*, 629 F.2d 144, 148 (D.C. Cir. 1980).

The Court's *in camera* review consisted of 57 documents totaling 220 pages, including the 34 documents that the ACLU requested the Court to examine.[3] (Pls.' Opp. at 25 n.7.) In conducting its review, the Court considered not only the content of the document but also the FBI's *Vaughn* index and the 5th Declaration of David M. Hardy ("5th Hardy Decl."), which, when considered in tandem, explain the FBI's basis for invoking each exemption. The Court has also examined the documents with an eye toward ensuring that "[a]ny reasonably segregable portion of a record" responsive to plaintiffs' request that does not fall within a statutory exemption has been produced. 5 U.S.C. § 552(b).

## II.     Exemption 1

---

[3] The plaintiffs requested the Court to review 34 documents, totaling 103 pages, or in the alternative, to review a random sample consisting of 1 out of every 8 pages. (Pls.' Opp. at 25 n.7.) The government submitted these designated documents, as well as an additional 23 documents consisting of an additional 117 pages. (Def.'s Notice of Submission of Documents for *In Camera*, *Ex Parte* Inspection by the Court at 2.)

Exemption 1 to FOIA authorizes the withholding of records "specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and . . . [are] in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). While an agency's declarations setting forth the reasons that information falls within this exemption are entitled to substantial weight, they must nevertheless afford the requester an ample opportunity to contest, and the court to review, the soundness of the withholding. *Campbell v. Dep't of Justice*, 164 F.3d 20, 30 (D.C. Cir. 1998) (observing that "deference is not equivalent to acquiescence"); *Goldberg v. Dep't of State*, 818 F.2d 71, 76-77 (D.C. Cir. 1987) (noting that Exemption 1 does not relieve the courts of their "independent responsibility" to review the agency's decision).

Therefore, to justify summary judgment, an agency affidavit invoking Exemption 1 must provide "detailed and specific" information demonstrating both why the material has been kept secret and why such secrecy is allowed by the terms of an existing executive order. *Campbell*, 164 F.3d at 30; *King*, 830 F.2d at 217. If the declarations provide the requisite specificity, however, and are neither contradicted by other record evidence nor contaminated by indications of bad faith, the reviewing court should not ordinarily second-guess the agency's judgment. *Miller v. Casey*, 730 F.2d 773, 776 (D.C. Cir. 1984) (Courts must "accord substantial weight to an agency's affidavit concerning the details of the classified status of the disputed record."). Instead, the court must recognize that the executive branch departments responsible for national security and national defense have unique insights and special expertise concerning the kind of disclosures that may be harmful. *See Krikorian v. Dep't of State,* 984 F.2d 461, 464 (D.C. Cir. 1993); *Salisbury v. United States*, 690 F.2d 966, 970 (D.C. Cir. 1982); *Military Audit Project v.*

*Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). In other words, while a court is ultimately to make its own decision, that decision must take seriously the government's predictions about the security implications of releasing particular information to the public, at least where those predictions are sufficiently detailed and do not bear any indicia of unreliability. The Executive Order in effect in this case is Executive Order 12958. The FBI has invoked Exemption 1 with respect to 24 documents responsive to plaintiffs' FOIA request.[4] Executive Order 12958 authorizes the classification of documents that, *inter alia*, contain information that "falls within one or more of the categories of information listed in § 1.4 of [E.O. 12958]." E.O. 12958, as amended, § 1.1(a). The FBI has withheld documents under several of the categories listed in § 1.4 of E.O. 12958, including "foreign government information, " E.O. 12958 § 1.4(b); "intelligence activities and methods," *id*. § 1.4(c); and "foreign relations or foreign activities," *id*. § 1.4(d).[5] After reviewing the documents, the Court is satisfied that, with respect to all but one document,[6] the FBI has properly invoked Exemption 1 in order to protect against the disclosure of intelligence sources, operations, and methods, *see Snyder v. C.I.A.*, 230 F. Supp.2d 17, 23 (D.D.C. 2002) (Exemption 1 properly invoked to prevent "disclosure of . . . information [that] could reveal the names and location of covert foreign CIA installations . . . or divulge cryptonyms, which in the aggregate, could be used to detect certain individuals or locations"); to

---

[4] The documents for which the FBI has asserted Exemption 1, all of which were reviewed *in camera* by the Court, are numbers 16-18, 61, 62, 65, 67, 70, 76-78, 80, 83-86, 91-94, and 96-99.

[5] A list of the specific bates-numbered pages withheld under each category can be found at pages 9-22 of the 5th Hardy Declaration.

[6] Because this document (#91) involves issues that relate to Exemptions 6 and 7, in addition to Exemption 1, the Court will discuss it in the context of those exemptions.

prevent the publication of classified file numbers, numerical designators, and names of classified operational units; and to prevent the identification of counterintelligence targets, cooperating foreign governments, and foreign relations information. *See Maliza v. Dep't of Justice*, 519 F. Supp. 338, 343 (S.D.N.Y. 1981) ("Unauthorized disclosure of foreign government information is presumed to cause at least identifiable damage to the national security."). The 5th Hardy Declaration explains in detail which category from § 1.4 of E.O. 12958 applies to each document and why (5th Hardy Decl. at 6-22), and the FBI's explanation is confirmed by the Court's *in camera* review of these documents. The Court therefore finds that the FBI has met its burden to show that materials withheld under Exemption 1 are: "(1) specifically authorized under criteria established by an Executive Order to be kept secret in the interest of national defense or foreign policy, and (2) are in fact properly classified pursuant to Executive Order." 5 U.S.C. § 552(b)(1).

### III.   Exemption 2

Exemption 2 authorizes an agency to withhold from disclosure information "related solely to the internal personnel rules and practices of the agency." 5 U.S.C. § 552(b)(2). Courts have divided Exemption 2 into two categories: "low 2" for materials related to trivial administrative matters of no genuine public interest and "high 2" for substantial internal matters. *Schiller v. NLRB,* 964 F.2d 1205, 1207 (D.C. Cir. 1992); *see also FOIA Update*, Vol. X, No. 3, at 3-4 ("OIP Guidance: Protecting Vulnerability Assessments Through Application of Exemption Two"). The FBI has invoked Exemption 2 with respect to 14 documents, including 8 documents which were reviewed *in camera*.[7] The Court's review of these documents satisfies it that the

---

[7] The Court reviewed documents 65, 67, 68, 70, 77, 78, 105, and 131. Documents 51, 53, 75, 79, 82, and 101 were not selected by plaintiffs as part of the representative sample of

material withheld relates to the internal practices of the agency, including investigative techniques. Plaintiffs have not asserted any specific challenge to any document withheld under Exemption 2, and the Court is convinced that the information contained therein is "predominantly internal." *Schiller v. N.L.R.B.*, 964 F.2d 1205, 1207 (D.C. Cir. 1992). Thus, the agency has met its "burden of establishing the applicability of the claimed exemption." *Assassination Archives & Research Ctr. v. C.I.A.*, 334 F.3d 55, 57 (D.C. Cir. 2003).

## IV.    Exemption 3

Exemption 3 of FOIA covers records that are "specifically exempted from disclosure by statute . . . provided that such statute either "(A) [requires withholding] in such a manner as to leave no discretion on the issue," or "(B) establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3); *see also Senate of the Commonwealth of Puerto Rico v. U.S. Dep't of Justice*, 823 F.2d 574, 582 (D.C. Cir. 1987). The FBI asserts two categories of withholdings under Exemption 3: grand jury material under Rule 6(e) of the Federal Rules of Criminal Procedure and tax information of third parties under 26 U.S.C. § 6103. (5th Hardy Decl. at 24-25.) Rule 6(e) of the Federal Rules of Criminal Procedure qualifies as a statute under this exemption because it was affirmatively enacted by Congress. *Fund for Const. Gov't v. Nat'l Archives and Records Serv.*, 656 F.2d 856, 867-68 (D.C. Cir. 1981). Rule 6(e)(2) prohibits disclosure of matters occurring before a grand jury. *In re Motions of Dow Jones & Co.*, 142 F.3d 496, 498-501 (D.C. Cir. 1998). FOIA Exemption 3 permits the withholding of materials that, if disclosed, would " 'tend to reveal some secret aspect of the

---

disputed documents.

grand jury's investigation[,]' such . . . as 'the identities of witnesses or jurors, the substance of the testimony, the strategy or directions of the investigation, the deliberations or questions of jurors, and the like.' " *Senate of the Commonwealth of Puerto Rico*, 823 F.2d at 582 (quoting *S.E.C. v. Dresser Indus., Inc.*, 628 F.2d 1368, 1382 (D.C. Cir. 1980) (*en banc*)). The FBI has also properly invoked Section 6103 of the Internal Revenue code as a non-disclosure statute for purposes of Exemption 3. Section 6103 provides that tax "[r]eturns and return information shall be confidential." 26 U.S.C. § 6103(a). *See Tax Analysts v. I.R.S.*, 117 F.3d 607, 611 (D.C. Cir. 1997); *Aronson v. I.R.S.*, 973 F.2d 962, 964 (1st Cir. 1992). The FBI withheld in part or in full documents 15, 35, 43-45, and 64 under Rule 6(e) and documents 32-34 under 26 U.S.C. § 6103. Of these, the Court reviewed and substantiated the agency's withholding with respect to document 35. Although plaintiffs do not specifically challenge any of these withholdings, based on the *Vaughn* index and 5th Hardy Declaration, the Court concludes that the defendant has adequately justified its invocation of Exemption 3.

**V.     Exemption 5**

Under § 552(b)(5), the disclosure requirements of FOIA are inapplicable to "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." *Id.* This provision has long been interpreted to include a deliberative process privilege serving a number of related ends, among them:

> assur[ing] that subordinates within an agency will feel free to provide the decisionmaker with their uninhibited opinions and recommendations without fear of later being subject to public ridicule or criticism; . . . protect[ing] against premature disclosure of proposed policies before they have been finally formulated or adopted; and . . . protect[ing] against confusing the issues and misleading the public

> by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's action.

*Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).

The deliberative process privilege therefore shields from disclosure records the government demonstrates to be both " 'predecisional' " -- that is, "generated *before* the adoption of an agency policy" -- and " 'deliberative,' " -- that is, "reflect[ive] [of] the give-and-take of the consultative process." *Id.* "The exemption thus covers recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Id.* at 866. "Factual material is not protected under the deliberative process privilege unless it is 'inextricably intertwined' with the deliberative material." *Judicial Watch, Inc. v. Dep't of Justice*, 432 F.3d 366, 372 (D.C. Cir. 2005) (quoting *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997) (per curiam)). "To establish that a document is predecisional, the agency need not point to an agency final decision, but merely establish what deliberative process is involved, and the role that the documents at issue played in that process." *Judicial Watch v. Export-Import Bank*, 108 F. Supp.2d 19, 35 (D.D.C. 2000). The exemption also covers material that would fall within the attorney-client privilege. *See Nat'l Labor Relations Bd. v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975); *see also Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184 (1975).

The FBI has invoked the attorney-client privilege for portions of only one document, number 60, which was reviewed *in camera* by the Court. That exemption was properly claimed. The agency further invoked the deliberative process privilege with respect to all or part of 21

documents, of which 11 were provided to the Court for *in camera* review.[8]  Some of these documents are drafts.  *See Exxon Corp. v. Dep't of Energy*, 585 F. Supp. 690, 698 (D.D.C. 1983) ("Draft documents, by their very nature, are typically predecisional and deliberative.").  Others are working proposals and briefing papers regarding policy that reflect predecisional discussion by FBI employees.  *Hornbostel v. Dep't of Interior*, 305 F. Supp.2d 21, 31 (D.D.C. 2003).  Ten of these documents were properly withheld.  Only one document (#73) has "reasonably segregable" portions that should have been produced to plaintiffs.  Because document 73 also contains material properly withheld under Exemptions 6 and 7(C), the Court will discuss it *infra*.

## VI.    Exemption 7(A)

Exemption 7(A) shields from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such records could . . . interfere with enforcement proceedings."  5 U.S.C. § 552(b)(7)(A).  Thus, an investigatory record must meet two criteria to fall within Exemption 7(A): first, it must be "compiled for law enforcement purposes," and second, its release must "interfere with enforcement proceedings." *Id*.

Defendant need not demonstrate how the release of the withheld documents would interfere with law enforcement proceedings on a document-by-document basis.  Rather, defendant may "group[] documents into relevant categories that are sufficiently distinct to allow a court to grasp 'how each . . . category of documents, if disclosed, would interfere with the

---

[8] The Court reviewed documents 6, 7, 9, 11, 12, 27, 60, 70, 73, 126, and 131.  The remaining documents categorized by the FBI as predecisional are 8, 10, 13, 26, 48, 49, 71, 81, 125, and 127.  A complete list of the corresponding bates numbers can be found in Def.'s Mot. at 27 n.17.

investigation.'" *Bevies v. Dep't of State*, 801 F.2d 1386, 1389 (D.C. Cir. 1986) (quoting *Campbell v. Dep't of Health & Human Servs.*, 682 F.2d 256, 265 (D.C. Cir. 1982)).

The categories relied upon, however, must be "functional" – "allowing the court to trace a rational link between the nature of the document and the alleged likely interference." *Crooker v. Bureau of Alcohol, Tobacco and Firearms*, 789 F.2d 64, 67 (D.C. Cir. 1986). In order to utilize this categorical approach, defendant must "conduct a document-by-document review" of all responsive documents to assign documents to the proper category and "explain to the court how the release of each category would interfere with enforcement proceedings." *Bevies*, 801 F.2d at 1389-90.

Defendant has explained how the release of these documents could interfere with various investigations by revealing the nature and scope of the investigations, investigative activities, the cooperation of particular individuals, the identity of potential witnesses, and the investigative steps taken to pursue interviews with individuals who have relevant information. (5th Hardy Decl. at 35-36.) Defendant has also explained that the release of this information could impede the success of the investigations and lead to the harassment or intimidation of individuals involved in the investigations. (*Id*.) The Court has reviewed 14 documents redacted in whole or in part under Exemption 7(A) and finds that the agency has properly invoked Exemption 7(A) with respect to these documents.[9] It further finds the *Vaughn* index and 5th Hardy Declaration to be adequate to support the FBI's invocation of Exemption 7(A) with respect to those documents

---

[9] The Court reviewed documents 19, 21, 22, 25, 28, 35, 61, 62, 70, 76-78, 80 and 87. A complete list of pages redacted pursuant to Exemption 7(A) can be found in the 5th Hardy Decl. at 36.

not reviewed *in camera*.

### VII.     Exemptions 6 and 7(C)

Exemption 6 permits withholding information "the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 7(C) protects from disclosure "records or information compiled for law enforcement purposes" but only to the extent that the production of such information "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Both exemptions require the Court to balance the privacy interests of the subjects of the requests with the public's interest in disclosure to determine whether defendant's non-disclosure is proper. *Davis v. U. S. Dep't of Justice*, 968 F.2d 1276, 1281 (D.C. Cir. 1992).

Defendant has invoked Exemptions 6 and 7(C) to protect the names and identifying data of third parties. Defendant bears the burden of establishing that the balance tips in favor of privacy, thereby justifying the withholding of the requested material under the asserted exemptions. 5 U.S.C. § 552(a)(4)(B). However, it is plaintiffs' burden to support its claim that disclosure of withheld information advances the public interest. *King*, 830 F.2d at 234. With respect to disclosure under FOIA, the public interest is limited to that which "sheds light on an agency's performance of its statutory duty" in order to inform the citizens "about what their government is up to." *U. S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989). Plaintiffs have not demonstrated how the disclosure of the individual identities of third parties would serve the public interest, and the Court's *in camera* review of 34

representative documents indicates no such interest.[10] Moreover, the individuals whose identities have been withheld have a significant privacy interest at stake, especially in view of the fact that disclosure could cast them in an unfavorable or negative light regardless of whether they were of investigative interest to the FBI.

Of the 34 documents reviewed under these exemptions, only two merit further discussion. As mentioned briefly *supra*, document 91, for which Exemptions 1, 6 and 7(C) were invoked, and document 73, for which Exemptions 5, 6 and 7(C) were invoked, contain material that is "reasonably segregable" from material covered by the exemptions and therefore must be produced. 5 U.S.C. § 552(a)(3); *Judicial Watch, Inc. v. Dep't of Energy*, 412 F.3d 125, 128 (D.C. Cir. 2005). Document 91 (ACLU Bates number 519-2 – 519-3) is described in the government's *Vaughn* index as an "EC dated 3/19/2002 . . . regarding an FBI investigation which is not a subject of the request – MPAC is incidentally mentioned in the serial." The document consists of 14 substantive paragraphs describing a public seminar held at the University of California, Irvine, and co-sponsored by plaintiff Muslim Public Affairs Council. Each paragraph is labeled as containing unclassified ("U" or "LES") or classified ("S") information. The information classified at the Secret level has been properly redacted in the version produced to plaintiffs. The second page of the document, however, contains unclassified information that was also redacted. As the government cannot rely on Exemption 1 for material that is not classified, the government's invocation of § 552(b)(1) for these paragraphs is improper.

---

[10] The Court reviewed the following documents for which Exemption 6 or 7(C) was claimed: 1, 2, 6, 16, 19, 20, 22-25, 27, 35-41, 60, 62, 65, 67, 68, 70, 73, 76-77, 78, 91, 104-106, 126, and 130. A complete list of bates numbered pages for which Exemption 6 or 7(C) was claimed can be found in the 5th Hardy Decl. at 31-33, 38-40.

The government has also invoked Exemptions 6 and 7(C) to prevent disclosure of these paragraphs. As discussed *supra*, Exemptions 6 and 7(C) are designed "to protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information." *U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 595, 599 (1982). Yet, much of the substance of the redacted portion relates to comments by an individual whose participation in the seminar was noted (and not redacted) on the first page of the document (Bates number 519-2). To the extent that a person may have retained a privacy interest in publicly made comments, that interest is certainly dissipated by the FBI's failure to redact his name from the entirety of the document. Therefore, the Court finds that the agency may only redact from document 91 that information which is classified or that which relates to individuals whose identities have not already been revealed to plaintiffs in the version of the document previously produced.

Likewise, document 73 contains responsive material that is segregable from the exempt portions of the document. Document 73 is described in defendant's *Vaughn* index as "[e]-mail traffic dated 8/18-19/2004 from a Field Office to HQ regarding a proposed meeting." This is not entirely accurate. In fact, the e-mail traffic concerns a meeting that had already occurred. One portion of the e-mail describes the nature and substance of the meeting, while another section includes what might be described as prescriptive comments resulting from the meeting. The agency invoked Exemption 5 for the entire document, as well as Exemptions 6 and 7(C) with respect to the names contained therein. The Court agrees that the names of individuals contained in the document, including the recipients of the e-mail, were properly redacted. The agency fails, however, to adequately explain why the factual section of the e-mail, which is responsive to

plaintiffs' FOIA request, constitutes the agency's "deliberative process." The agency suggests that "[b]efore the advent of computers, these discussions probably would have occurred only orally with no record of their existence being kept." (5th Hardy Decl. at 28.) A blanket exemption under "deliberative process" for all e-mail traffic among agency employees, however, is certainly not permissible under FOIA, especially given the extent to which an agency's business must, in this era of the Internet, be conducted by e-mail. Indeed, while some communications that arguably fall within Exemption 5 may previously have been conducted orally, it is just as likely that others would have been memorialized in memorandum form and been subject to FOIA disclosure. It is the content, rather than the form of the document, that is critical to the Court's analysis under FOIA. Here, the agency has not demonstrated that the "factual material" contained in the e-mail "is 'inextricably intertwined' with the deliberative material." *Judicial Watch, Inc.*, 432 F.3d at 372 (quoting *In re Sealed Case*, 121 F.3d at 737). Therefore, the Court concludes that the FBI must produce document 73, except for the names of individuals which are protected under Exemptions 6 and 7(C) and the non-factual, deliberative discussion contained in the final full paragraph and concluding two sentences of the document which is protected by Exemption 5.

**VIII.    Exemptions 7(D) and 7(E)**

Exemption 7(D) permits the withholding or redacting of law enforcement records where disclosure "could reasonably be expected to disclose the identity of a confidential source . . . and, in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation . . . information furnished by a confidential source." 5 U.S.C. § 552(b)(7)(D). Having reviewed 10 documents redacted pursuant to Exemption 7(D), the Court

is satisfied that the agency has properly claimed this exemption to protect confidential source information.[11]

Exemption 7(E) protects from disclosure information compiled for law enforcement purposes where release of the information "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).  To determine that information is properly withheld under Exemption 7(E), the Court must find that: (1) the information was "compiled for law enforcement purposes," and (2) release of the information could reasonably be expected to risk circumvention of the law.  *FBI v. Abramson*, 456 U.S. 615 (1982); *see also Coleman v. F.B.I.*, 13 F. Supp.2d 75, 83 (D.D.C. 1998).  Here, there is no dispute that the information was compiled for law enforcement purposes, and the 5th Hardy Declaration demonstrates that release of this information could allow individuals "to develop countermeasures" that could defeat the effectiveness of the agency's domestic terrorism investigations.  (5th Hardy Decl. at 45.)  Additionally, the Court has reviewed 5 documents redacted pursuant to Exemption 7(E) and is satisfied that this exemption has been properly invoked.  The Court finds that these 5 documents, considered in tandem with the 5th Hardy Declaration, is an adequate basis for upholding the remaining documents for which the agency has sought 7(E) protection.

## CONCLUSION

Based on its *in camera* review of 57 documents (which constitute a generous

---

[11] These documents were numbers: 1, 2, 21, 76, 78, 104-106, 126 and 130.

representative sample of the disputed documents in this case), the briefs of the parties, defendant's *Vaughn* index, and the 5th Hardy Declaration, the Court will grant defendant's motion for partial summary judgment with the exception of documents 73 and 91, which defendant must produce to plaintiffs as set forth in this Opinion. A separate Order accompanies this Memorandum Opinion.

                                                                                                                                                                                                                                                           s/
                                            ELLEN SEGAL HUVELLE
                                            United States District Judge

Date: May 2, 2006