IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| AMERICAN CIVIL LIBERTIES UNION, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civ. A. No. 05-CV-1004 (ESH) |
| | ) | |
| U.S. DEPARTMENT OF JUSTICE, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## SEVENTH DECLARATION OF DAVID M. HARDY

I, David M. Hardy, declare as follows:

(1)    I am currently the Section Chief of the Record/Information Dissemination Section

("RIDS"), Records Management Division ("RMD"), at Federal Bureau of Investigation

Headquarters ("FBIHQ") in Washington, D.C. I have held this position since August 1, 2002.

Prior to my joining the FBI, from May 1, 2001 to July 31, 2002, I was the Assistant Judge

Advocate General of the Navy for Civil Law. In that capacity, I had direct oversight of Freedom

of Information Act ("FOIA") policy, procedures, appeals, and litigation for the Navy. From

October 1, 1980 to April 30, 2001, I served as a Navy Judge Advocate at various commands and

routinely worked with FOIA matters. I am also an attorney who has been licensed to practice law

in the State of Texas since 1980.

(2)    In my official capacity as Section Chief of RIDS, I supervise approximately 234

1

employees who staff a total of ten (10) Units and a field operational service center whose

collective mission is to effectively plan, develop, direct, and manage responses to requests for

access to FBI records and information pursuant to the FOIA; Privacy Act; Executive Order

12958, as amended; Presidential, Attorney General and FBI policies and procedures; judicial

decisions; and Presidential and Congressional directives. My responsibilities also include the

review of FBI information for classification purposes as mandated by Executive Order 12958, as

amended,[1] and the preparation of affidavits/declarations in support of Exemption 1 claims

asserted under the FOIA.[2] I have been designated by the Attorney General of the United States as

an original classification authority and a declassification authority pursuant to Executive Order

12958, as amended, §§ 1.3 and 3.1. The statements contained in this declaration are based upon

my personal knowledge, upon information provided to me in my official capacity, and upon

conclusions and determinations reached and made in accordance therewith.

(3)    Due to the nature of my official duties, I am familiar with the procedures followed

by the FBI in responding to requests for information from its files pursuant to the provisions of

the FOIA, 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a. Specifically, I am

aware of the treatment which has been afforded the multi-part FOIA requests of plaintiffs

American Civil Liberties Union ("ACLU"), the ACLU Foundation, the American-Arab Anti

Discrimination Committee ("ADC"), the Muslim Public Affairs Council ("MPAC"), People for

Ethical Treatment of Animals ("PETA"), Greenpeace, and United for Peace and Justice

---

[1] 60 Fed. Reg. 19825 (1995) and 68 Fed. Reg. 15315 (2003).

[2] 5 U.S.C. § 552 (b)(1).

("UFPJ"), hereinafter "plaintiffs," who collectively seek access to documents related to the Joint Terrorism Task Force ("JTTF") and the National Joint Terrorism Task Force ("NJTTF"), in connection with plaintiffs' groups and individuals.

(4)    This seventh declaration supplements, and hereby incorporates, my previous six declarations submitted in this case -- the First Declaration of David M. Hardy, dated July 1, 2005, Second Declaration of David M. Hardy, dated July 26, 2005, Third Declaration of David M. Hardy dated December 2, 2005, Fourth Declaration of David M. Hardy, dated December 23, 2005, Fifth Declaration of David M. Hardy, dated February 24, 2006, and Sixth Declaration of David M. Hardy, dated March 24, 2006.

(5)    At a telephonic status conference held in this case on July 13, 2006, the parties and the Court agreed that defendants would submit a set of documents selected by the ACLU for the Court's in camera, ex parte review.  These 13 documents, consisting of a total of 37 pages, have been identified by the ACLU from a previous FBI production of documents which are responsive to plaintiffs' FOIA requests for documents related to the activities of the NJTTF.  In preparation for the submission of the 13 documents for the Court's in camera, ex parte review, defendants have taken the following actions to further assist the Court in this review process: (1) the FBI has provided more "context" for certain documents (i.e., if a sample document consists of pages 5-7 of a 20-page document, the FBI has added the cover page and surrounding pages of that document to provide further background for that document); (2) the FBI has prepared and is submitting this declaration to provide additional background explanation and assistance in the Court's review of the 13 documents chosen by plaintiffs regarding policies, procedures, and

3

practices as well as investigative records which the FBI withheld either in full or in part.

(6)     In preparation for this declaration, the FBI undertook a thorough, in depth review of the documents chosen by plaintiffs, and carefully revisited each of the redactions made. This careful re-review resulted in the reprocessing and release of additional information, as well as a determination that certain records that were previously released in part to plaintiffs were not responsive to plaintiffs' FOIA requests. (See References to Document No. 167 below).

(7)     This Vaughn declaration addresses only the 13 documents chosen by plaintiffs consisting of 37 pages --10 pages released with redactions and 27 pages withheld in full and which are attached hereto as Exhibit A, with additional pages added for context. (See yellow pages). This declaration provides justification for the information which has been withheld in these records pursuant to Exemptions 1, 2, 5, 6, 7(A), 7(C), 7(D), 7(E), and 7(F), 5 U.S.C. §§ 552 (b)(1), (b)(2), (b)(5),  (b)(6), (b)(7)(A), (b)(7)(C), (b)(7)(D), (b)(7)(E), and (b)(7)(F).

## EXPLANATION OF PROCESSING OF RESPONSIVE DOCUMENTS AND MECHANICS OF UTILIZING THE CODED FORMAT

(8 )     All documents have been thoroughly re-reviewed to ensure that the redacted information is being withheld consistent with current FOIA guidelines. Every effort has been made to provide plaintiffs with all material in the public domain and with all reasonably segregable portions of releasable material. To further describe the information withheld could identify the material sought to be protected, thus negating the purpose of the exemptions. A listing of the exemption categories and justifications for the withheld information is discussed below.

(9)     Each withholding of information from these documents is accompanied by a code

4

that corresponds to a category within each of the exemptions used to withhold information. For example, if (b)(7)(C)-1 appears on the page, the "(b)(7)(C)" designation refers to the use of the exemption under the caption "Unwarranted Invasion of Personal Privacy." The Subcategory "1" narrows and specifically describes the material deleted, which, in this example, are the identities of FBI employees.

## SUMMARY OF THE JUSTIFICATION CATEGORIES

(10)    Listed below are the categories used to explain the FOIA exemptions asserted to withhold protected material.

| | |
|---|---|
| **EXEMPTION (b)(1)** | **CLASSIFIED INFORMATION** |
| (b)(1) | Information Properly Classified by an FBI Classification Authority Pursuant to Executive Order 12958, As Amended |
| **EXEMPTION (b)(2)** | **INFORMATION RELATED SOLELY TO THE INTERNAL RULES AND PRACTICES OF AN AGENCY** |
| (b)(2)-1 | Internal Telephone, Facsimile, Room Numbers, and E-mail Addresses of FBI Employees |
| (b)(2)-2 | Information Related Solely to the Internal Personnel Rules and Practices of an Agency |
| **EXEMPTION (b)(5)** | **PRIVILEGED INFORMATION** |
| (b)(5)-1 | Deliberative Process and Attorney-Client Privileges |
| **EXEMPTION (b)(6)** | **CLEARLY UNWARRANTED INVASION OF PERSONAL PRIVACY** |
| (b)(6)-1 | Names and/or Identifying Information Pertaining to FBI Employees [Cited in conjunction with exemption (b)(7)(C)-1] |
| (b)(6)-2 | Names and/or Identifying Information of Third Parties of |

|  | Investigative Interest or Who Provided Information to the FBI [Cited in conjunction with exemption (b)(7)(C)-2] |
|---|---|
| (b)(6)-3 | Names and/or Identifying Information of Third Parties Merely Mentioned [Cited in conjunction with exemption (b)(7)(C)-3] |
| (b)(6)-4 | Names and/or Identifying Information of Non-FBI Employees [Cited in conjunction with exemption (b)(7)(C)-4] |

**EXEMPTION (b)(7)(A)**    **PENDING LAW ENFORCEMENT INVESTIGATIONS**

(b)(7)(A)    Information Pertaining to Pending Law Enforcement Investigations

**EXEMPTION (b)(7)(C)**    **UNWARRANTED INVASION OF PERSONAL PRIVACY**

(b)(7)(C)-1    Names and/or Identifying Information Pertaining to FBI Employees [Cited in conjunction with exemption (b)(6)-1]

(b)(7)(C)-2    Names and/or Identifying Information of Third Parties of Investigative Interest or Who Provided Information to the FBI [Cited in conjunction with exemption (b)(6)-2]

(b)(7)(C)-3    Names and/or Identifying Information of Third Parties Merely Mentioned [Cited in conjunction with exemption (b)(6)-3]

(b)(7)(C)-4    Names and/or Identifying Information of Non-FBI Employees [Cited in conjunction with exemption (b)(6)-4]

**EXEMPTION (b)(7)(D)**    **CONFIDENTIAL SOURCE INFORMATION**

(b)(7)(D)-2    Names and/or Identifying Information Furnished by Third Parties with an Implied Assurance of Confidentiality

**EXEMPTION (b)(7)(E)**    **INVESTIGATIVE TECHNIQUES AND PROCEDURES**

(b)(7)(E)-1    Internal Investigative Techniques and Procedures [May be cited in conjunction with (b)(2)-2]

**EXEMPTION (b)(7)(F)**     **ENDANGER LIFE OR PHYSICAL SAFETY OF AN INDIVIDUAL**

(b)(7)(F)-1                         Information Which If Released Could Reasonably Cause Harm and/or Endanger the Life or Physical Safety of any Individual[3]

## JUSTIFICATION FOR REDACTIONS

(11)     The paragraphs that follow explain the defendants' rationale for withholding each particular category of information under the specific exemption categories described above and a specific description of each document withheld under each exemption.

## APPLICATION OF FOIA EXEMPTION (b)(1) and E.O. 12958, AS AMENDED

(12)     The defendants' analysis of the withholding of classified information contained in its records in a FOIA context is based on the standards articulated in the FOIA statute, 5 U.S.C. § 552 (b)(1). Exemption 1 protects from disclosure those records that are "(A) specifically authorized under criteria established by an Executive Order to be kept Secret in the interest of national defense or foreign policy; and (B) are in fact properly classified pursuant to such Executive Order."

(13)     The FBI's analysis of whether Exemption 1 permits the withholding of agency records consists of two significant steps. First, the FBI must determine whether the information contained in the records is information that satisfies the substantive and procedural criteria of the applicable Executive Order governing the classification and protection of national security information. Only after those criteria have been satisfied may the FBI proceed to step two, which

---

[3] I have been advised that plaintiffs are no longer contesting the use of Exemption (b)(7)(F) by the defendants for the records responsive to their FOIA requests.

is to analyze whether the documents are exempt under FOIA Exemption 1.

(14)    First, therefore, I must determine whether the information in these records is information that satisfies the requirements of the current Executive Order which presently governs the classification and protection of information that affects the national security.[4]  I must further ensure that the information at issue complies with the various substantive and procedural criteria of the current Executive Order, E.O. 12958, as amended.  The current Executive Order which applies to the protection of national security information was amended on March 25, 2003.  I am bound by the requirements of E.O. 12958, as amended, when making classification determinations.

(15)    For information to be properly classified, and thus properly withheld from disclosure pursuant to Exemption 1, the information must meet the requirements set forth in E.O. 12958, as amended, § 1.1 (a):

> (a) an original classification authority is classifying the information;
> (b) the information is owned by, produced by or for, or is under the control of the United States Government;
> (c) the information falls within one or more of the categories of information listed in § 1.4 of this order; and
> (d) the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security, which includes defense against transnational terrorism, and the original classification authority is able to identify or describe the damage.

(16)    All information which I determined to be classified in this case, and which is under the control of the United States Government, is marked at the "Secret" level and

---

[4]  Section 6.1 (y) of E.O. 12958, as amended, defines "National Security" as "the national defense or foreign relations of the United States."

designated on the documents by an "(S)" symbol, since the unauthorized disclosure of this

information reasonably could be expected to cause serious damage to the national security.[5]  In

addition to these substantive requirements, certain procedural and administrative requirements of

E.O. 12958, as amended, must be followed before information can be considered to be properly

classified, such as, proper identification and marking of documents.  I made certain that all

procedural requirements of E.O. 12958, as amended, were followed in order to ensure that the

information was properly classified.  I made certain that:

> (a) each document was marked as required and stamped with the proper classification designation;[6]
> (b) each document was marked to indicate clearly which portions are classified and which portions are exempt from declassification as set forth in E.O. 12958, as amended, § 1.5 (d) and which portions are unclassified;[7]
> (c) the prohibitions and limitations on classification specified in E.O. 12958, as amended, § 1.7, were adhered to;
> (d) the declassification policies set forth in E.O. 12958, as amended, § 3.1 were followed; and
> (e) any reasonably segregable portion of these classified documents that did not meet the standards for classification under E.O. 12958, as amended, were declassified and marked for release, unless withholding was otherwise warranted under applicable law.[8]

(17)    With the above requirements in mind, I personally and independently examined

---

[5] See E.O. 12958, as amended, § 1.2 (a)(2).

[6] E.O. 12958, as amended, §§ 1.6 (a)(1)-(5).

[7] E.O. 12958, as amended, § 1.6 (c).

[8] 5 U.S.C. § 552 (b) provides, in part, that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection."  In this case, the information at issue has been carefully examined and I have determined that no additional reasonably segregable portions may be declassified and released.

the information withheld from plaintiff pursuant to FOIA Exemption 1. I determined that the remaining portions of classified information withheld, warrant continued classification at the "Secret" level, pursuant to E.O. 12958, as amended, § 1.4.

(18)    E.O. 12958, as amended, § 1.4 (c), exempts intelligence activities (including special activities), intelligence sources and methods, or cryptology. The information withheld on ACLU-NJTTF Bates pages 2733, 2734 and 2740 consists of intelligence activities and methods utilized by the FBI for gathering intelligence data. An intelligence activity or method includes any intelligence action or technique utilized by the FBI against a targeted individual or organization that has been determined to be of national security interest. An intelligence method is used to indicate any procedure (human or non-human) utilized to obtain information concerning such individual or organization. An intelligence activity or method has two characteristics. First, the intelligence activity or method and information generated by it is needed by U.S. Intelligence/Counterintelligence agencies to carry out their missions. Second, confidentiality must be maintained with respect to the activity or method if the viability, productivity, and usefulness of its information is to be preserved.

(19)    The classification redactions were made to protect from disclosure information that would reveal the actual intelligence activities and methods utilized by the FBI against specific targets of foreign counterintelligence investigations or operations; identify a target of a foreign counterintelligence investigation; or disclose the intelligence gathering capabilities of the activities or methods directed at specific targets. The intelligence activities or methods detailed in the withheld information are effective means for the FBI to gather, store, or disseminate

10

intelligence information. The criteria utilized by the FBI in these instances to decide what actions by an individual or organization warranted the commencement of an investigation, or caused a certain activity to be given investigative attention over others, could be revealed through disclosure of these intelligence methods. Hostile entities could then develop countermeasures which could severely disrupt the FBI's intelligence-gathering capabilities. The criteria applied and priorities assigned in these records are used in the FBI's present intelligence or counterintelligence investigations, and are in accordance with the Attorney General's guidelines on FBI intelligence and counterintelligence investigations.

(20)    The FBI protected the following categories of information specific to intelligence activities and methods because disclosure reasonably could be expected to cause serious damage to the national security. First, the withheld information contains numbers that are assigned to a specific intelligence activity or method. Second, the withheld information contains the character of the case, which identifies the specific type of intelligence activity directed at a specific target. In addition, the withheld information on certain pages identifies the target of a national security investigation along with the character of the case. Third, the withheld information identifies targets of foreign counterintelligence investigations. In addition, the withheld information identifies targets of foreign counterintelligence investigations with a file number. A more detailed discussion of each of these categories as well as a description of the documents at issue is contained within the paragraphs below.

(21)    ***Specific Description of Documents***

(a)    Exemption (b)(1) has been asserted in conjunction with Exemptions

(b)(2)-2, (b)(6)-1, (b)(6)-3, (b)(7)(A), (b)(7)(C)-1, (b)(7)(C)-3, (b)(7)(E)-1, and (b)(7)(F)-1 to

protect certain pages of a 45-page document prepared by the NJTTF concerning the Correctional

Intelligence Initiative ("CII").  The CII is a pending law enforcement investigation, with its own

discreet investigation number.  Through the CII each local JTTF liaises with correctional officials

to gather intelligence concerning the radicalization and recruitment of inmates in United States

correctional facilities by Islamic extremists.  This document contains information classified

Secret; names of FBI employees and third parties merely mentioned in the documents, which if

released would cause a clearly unwarranted invasion of personal privacy, and for some of those

named individuals could reasonably cause harm and /or endanger their life or physical safety;

information related solely to the internal personnel rules and practices of the FBI, such as

practices relating to the CII; and internal investigative techniques and procedures used by the FBI

in carrying out the CII.  (Document No. 291, NJTTF-ADMIN-2708-2711, 2717).

        (b)     Exemption (b)(1) has been asserted in conjunction with Exemptions

(b)(2)-2, (b)(6)-2, (b)(6)-3, (b)(7)(C)-2, (b)(7)(C)-3, (b)(7)(E)-1, and (b)(7)(F)-1 to protect certain

portions of an Electronic Communication ("EC") from the FBI Office of the General Counsel

("OGC"), National Security Law Branch ("NSLB"), to a certain Counterterrorism Director's

Office dated November 10, 2005.  This EC discusses the OGC opinion that a matter regarding

the failure of a certain FBI office to follow particular guidelines set forth in the Foreign

Intelligence Collection and Foreign Counterintelligence Investigations and by Executive Order

12863, as amended, need not be reported to the Intelligence Oversight Board ("IOB").  This

document contains information classified Secret; as well as information regarding a pending FBI

investigation;  names and/or identifying information of third parties of investigative interest or

who provided information to the FBI with an implied assurance of confidentiality and third

parties merely mentioned in the documents, which if released would cause a clearly unwarranted

invasion of the personal privacy  and, for some of those named individuals could reasonably

cause harm and /or endanger their life or physical safety; information related solely to the internal

personnel rules and practices of the FBI, such as practices relating to the CII; and internal

investigative techniques and procedures used by the FBI in carrying out the CII.  (Document No.

292, NJTTF-INV-2733-2734).

        (c)     Exemption (b)(1) has been asserted in conjunction with Exemptions

(b)(2)-2, (b)(6)-1, (b)(7)(C)-1, (b)(7)(E)-1, and (b)(7)(F)-1 to protect certain portions of an EC

from a particular Field Office to the OGC, NSLB dated January 30, 2004.  This EC contains a

report of a potential IOB violation by a certain FBI FO in connection with a JTTF case initiated

by the FBI on January 3, 2004.   This document contains information classified Secret; as well as

information regarding a pending FBI investigation; names and/or identifying information of FBI

employees, which if released would cause a clearly unwarranted invasion of personal privacy,

and for some of those named individuals could reasonably cause harm and /or endanger their life

or physical safety; information related solely to the internal personnel rules and practices of the

FBI, such as practices relating to the CII; and internal investigative techniques and procedures

used by the FBI in carrying out the CII.  (Document No. 295, NJTTF-INV-2740).

### A. File Numbers

    (22)    The classified information withheld on ACLU-NJTTF Bates pages 2709-2710,

and 2740 consists of FBI file numbers assigned to specific intelligence activities, including

channelization and dissemination instructions.  The release of this information would lead to

exposure of the particular intelligence activities and methods at issue.  Individual file numbers

are assigned by FBIHQ and Field Offices and can contain a geographical prefix of the originating

office and case number, which includes the numerical characterization of the type of

investigation followed by a chronological number assigned to a specific investigation/activity.

(23)     The disclosure of an intelligence file number in the aggregate could enable a

hostile analyst to attribute any information released from the documents containing such a file

number to that particular file.  A hostile analyst could identify the specific intelligence activity by

supplying further missing pieces.  Hence, a partial mosaic of the activity begins to appear as

more information is identified with the file leading to the exposure of actual current activities or

methods.  Disclosure of this file number will allow a hostile analyst, or anyone not privileged to

this information, to patch bits and pieces of information together until the actual use of the

application of the source or method can be determined.  The identification of these intelligence

sources or methods, which continue to furnish positive intelligence information to date, will

severely limit its application.  In addition, disclosure will inform hostile intelligence of the

possible range of our intelligence capabilities, as well as the probable intelligence that the FBI

has gathered, or can collect, concerning them.  This knowledge provides potential or actual

violators of the United States' national security laws a means of deflection or avoidance of lawful

regulations.  Disclosure could allow countermeasures to be implemented, making future

operations more difficult, or compromise other ongoing planned intelligence operations.

Accordingly, the release of the file numbers can lead to the exposure of the actual intelligence activity or method utilized in FBI investigations, and can reasonably be expected to cause serious damage to national security. The file numbers are properly classified at the "Secret" level and withheld pursuant to E.O. 12958, as amended, § 1.4 (c) and exempt from disclosure pursuant to Exemption 1.

### B.  Character of Case

(24)    The classified information withheld on ACLU-NJTTF Bates page 2708-2711, 2717, 2733-34, and 2740 identifies the character of a case for a specific type of intelligence activity directed at a specific organization of national security interest. ACLU-NJTTF Bates page 2708-2711, 2717, and 2740 identify the specific geographic locations of national security interest for the case characterization.   Disclosure of the characterization of the case could reasonably be expected to cause serious damage to the national security, as it would (a) disclose a particular intelligence or counterintelligence investigation; (b) disclose the nature, scope or thrust of the investigation and (c) reveal the manner of acquisition of the intelligence or counterintelligence information.  This would allow the subjects of an ongoing national security investigation to implement countermeasures that would hamper the effectiveness of the investigation. This information is properly classified at the "Secret" level and withheld pursuant to E.O. 12958, as amended, § 1.4 (c) and exempt from disclosure pursuant to Exemption 1.

### C.  Foreign Counterintelligence Investigations

(25)    The classified information withheld on ACLU-NJTTF Bates pages 2708-2711, 2717, 2733, and 2740 contain the target's identity with the character of the case and identify

targets of investigations with the case file numbers.

(26)    The disclosure of this information could reasonably be expected to cause serious damage to the national security, as it would: (a) reveal the actual intelligence activity or method utilized by the FBI against a specific target; (b) disclose the intelligence gathering capabilities of the activity or method; and (c) provide an assessment of the intelligence source penetration of a specific target during a specific period of time. The release of this information could permit hostile governments to appraise the scope, focus, location, target, and capabilities of the FBI's intelligence gathering methods and activities, and allow hostile agents to devise countermeasures to circumvent these intelligence activities or methods and render them useless in providing intelligence information. This would severely disrupt the FBI's intelligence gathering capabilities. This information is properly classified at the "Secret" level and withheld pursuant to E.O. 12958, as amended, § 1.4 (c) and exempt from disclosure pursuant to Exemption 1.

### DEFENDANTS' BURDEN OF ESTABLISHING EXEMPTION (b)(1) CLAIMS

(27)    The classified information withheld in this case pursuant to Exemption 1 was examined in light of the body of information available to me concerning the national defense of the United States. This information was not examined in isolation. Instead, each individual piece of information was evaluated with careful consideration given to the impact that disclosure of this information could have on other sensitive information contained elsewhere in the United States intelligence community's files. Equal consideration was given to the impact that other information either in the public domain or likely known or suspected by present or potential adversaries of the United States, would have upon the information I examined.

(28)    In those instances where, in my judgment, the disclosure of this information could reasonably be expected to cause serious damage to the national security, and its withholding outweighed the benefit of disclosure, I exercised my prerogative as an original classification authority and designated that information as classified in the interest of national security, and invoked Exemption 1 of the FOIA to prevent disclosure. Likewise, the justifications for the withheld classified information were prepared with the intent that they be read with consideration given to the context in which the classified information is found. This context includes not only the surrounding unclassified information, but also other information already in the public domain, as well as information likely known or suspected by other hostile intelligence entities. It is my judgment that any greater specificity in the descriptions and justifications set forth with respect to intelligence sources, activities and methods, could reasonably be expected to jeopardize the national security of the United States.

## EXEMPTION (b)(2) – INFORMATION RELATED SOLELY TO THE INTERNAL RULES AND PRACTICES OF AN AGENCY

(29)    5 U.S.C. § 552 (b)(2) exempts from disclosure information "related solely to the internal personnel rules and practices of an agency." This exemption protects routine internal administrative matters and functions of the FBI which have no effect on the public at large and which is predominantly internal information. This exemption also protects information, the disclosure of which would risk circumvention of agency regulations or statutes. Disclosure of this information could impede the effectiveness of the internal operations of the FBI and risk the circumvention of a regulation or a law.

**(b)(2)-1    Internal Telephone, Facsimile, Room Numbers and E-Mail Addresses of FBI Employees**

(30)    Exemption (b)(2)-1 has been asserted, at times in conjunction with Exemptions (b)(6)-1 and (b)(7)(C)-1, to protect the internal business telephone numbers, facsimile numbers, room numbers and e-mail addresses of FBI Special Agents ("SAs") and FBI Professional Support employees (including the direct dial telephone numbers of these employees) responsible for conducting investigations of individuals who pose a threat to the United States in terrorism and espionage cases and support employees responsible for providing legal advice to FBI SAs conducting investigations of these individuals. Furthermore, Exemption (b)(2)-1 has been asserted to protect the unit within which an FBI employee was assigned.

(31)    **Specific Description of Documents:**

(a)    Exemption (b)(2)-1 has been asserted in conjunction with Exemptions (b)(5)-1, (b)(6)-1, and (b)(7)(C)-1 to protect certain portions of an e-mail from an attorney in the FBI OGC to other employees of the FBI concerning a request for legal guidance on the issuance of a National Security Letter under the Electronic Communications Privacy Act to a certain University. This document contains internal telephone numbers and e-mail addresses of FBI employees; the names of FBI employees, which if released would cause a clearly unwarranted invasion of the personal privacy; and information withheld under the deliberative process and attorney-client privileges. (Document No. 172, NJTTF-ADMIN-1244).

(b)    Exemption (b)(2)-1 has been asserted in conjunction with Exemptions (b)(2)-2, (b)(5)-1, (b)(6)-1, (b)(7)(A), (b)(7)(C)-1, and (b)(7)(E)-1 to protect certain pages of an EC from Counterterrorism/NJTTF to the Administrative Law Unit, OGC, containing a draft

18

Privacy Impact Assessment ("PIA") for a particular project of the NJTTF.  In addition to being

withheld in full under the deliberative process and under the attorney-client privileges, these

pages of the draft document in the EC are being withheld because they contain FBI internal

internet site addresses; information regarding pending FBI investigations; the names of FBI

employees, which if released would cause a clearly unwarranted invasion of the personal privacy;

information withheld under the deliberative process and attorney-client privileges;  and internal

investigative techniques and procedures for the project specified in the PIA.  (Document No. 274,

NJTTF-ADMIN-2562-2564).

     (32)    The business telephone numbers, facsimile numbers, room numbers, and the unit

to which an FBI Professional Support employee is assigned relate directly to the internal

practices of the FBI in that they are used by these individuals during the performance of their

official duties.  Disclosure of the telephone numbers of FBI SAs and FBI Professional Support

employees could subject these individuals to harassing telephone calls which could disrupt

official business (including impeding the ability of these employees to conduct and conclude law

enforcement investigations in a timely manner).  In addition, disclosure of the internal facsimile

numbers of the FBI could cause these offices to be inundated with faxes which could also disrupt

official business.  Lastly, disclosure of the room numbers and the unit to which FBI Professional

Support employees are assigned could likewise subject these individuals to harassing inquiries

which could disrupt official business.

     (33)    Routine internal administrative information such as the telephone numbers,

facsimile numbers, room numbers and unit to which an FBI employee is assigned, as referenced

above, serves no public benefit, and there is no indication that there is a genuine public interest in the disclosure of this information. Accordingly, because the internal business telephone numbers, facsimile numbers, room numbers and unit to which an FBI employee is assigned are solely related to the FBI's internal practices, because disclosure would not serve any public benefit, and because disclosure would impede the FBI's effectiveness, the defendants properly withheld this information pursuant to Exemption 2. Exemption (b)(2)-1 may be cited in conjunction with Exemptions (b)(6)-1 and (b)(7)(C)-1.

**(b)(2)-2    Information Related Solely to the Internal Personnel Rules and Practices of the FBI**

(34)    Exemption (b)(2)-2 has been asserted, at times in conjunction with Exemptions (b)(7)(E)-1, to protect information consisting of specific internal investigatory techniques and procedures.

(35)    **Specific Description of Documents:**

(a)    Exemption (b)(2)-2 has been asserted in conjunction with Exemptions (b)(6)-1, (b)(7)(C)-1, (b)(7)(E)-1, and (b)(7)(F)-1 to protect certain portions of a particular question and corresponding answer in a document entitled "Department of Justice Responses to Questions for the Record Concerning the USA Patriot Act (P.L. 107-56): Committee on the Judiciary, United States House of Representatives." The question regarding the cooperation between the Justice Department and "officials outside of the law enforcement community," was provided to plaintiffs in full. The answer to this question was provided to plaintiffs with limited redactions made to protect identifying information of FBI employees which if released would cause a clearly unwarranted invasion of personal privacy, and for some of those individuals,

20

could reasonably cause harm and /or endanger their life or physical safety; and internal investigative techniques and procedures. (Document No. 102, NJTTF-ADMIN-496).

    (b)    Exemption (b)(2)-2 has been asserted in conjunction with Exemptions (b)(2)-1, (b)(5)-1, (b)(6)-1, (b)(7)(A), (b)(7)(C)-1, and (b)(7)(E)-1 to protect certain pages of an EC from Counterterrorism/NJTTF to the Administrative Law Unit, OGC, containing a draft PIA for a particular project of the NJTTF. In addition to being withheld in full under the deliberative process and attorney-client privileges, these pages of the draft document in the EC are being withheld because they contain FBI Intranet addresses; information regarding pending FBI investigations; names, phone numbers, and office numbers of FBI employees, which if released would cause a clearly unwarranted invasion of personal privacy; information concerning the maintenance of an FBI database; and internal investigative techniques and procedures for the project specified in the PIA. (Document No. 274, NJTTF-ADMIN- 2562-2564).

    (c)    Exemption (b)(2)-2 has been asserted in conjunction with Exemptions (b)(7)(A) and (b)(7)(E)-1 to protect certain pages of a PowerPoint presentation created by the NJTTF on the CII. The CII is a pending law enforcement investigation, with its own discreet investigation number. Through the CII, each local JTTF liaisess with correctional officials to gather intelligence concerning the radicalization and recruitment of inmates in United States correctional facilities by Islamic extremists. This document contains information regarding a pending FBI investigation; information related solely to the internal personnel rules and practices of the FBI, such as practices relating to the CII; and internal investigative techniques and procedures used by the FBI in carrying out the CII. (Document No. 287-289, NJTTF-ADMIN-

2675, 2678-2679, 2681).

(d)    Exemption (b)(2)-2 has been asserted in conjunction with Exemptions (b)(7)(A) and (b)(7)(E)-1 to protect certain pages of a briefing paper created by the NJTTF on the CII.  The CII is a pending law enforcement investigation, with its own discreet investigation number.  Through the CII, each local JTTF liaisess with correctional officials to gather intelligence concerning the radicalization and recruitment of inmates in United States correctional facilities by Islamic extremists.  This document contains information regarding a pending FBI investigation; information related solely to the internal personnel rules and practices of the FBI, such as practices relating to the CII; and internal investigative techniques and procedures used by the FBI in carrying out the CII.  (Document No. 290, NJTTF-ADMIN-2684).

(e)    Exemption (b)(2)-2 has been asserted in conjunction with Exemptions (b)(6)-1, (b)(6)-2, (b)(6)-3, (b)(7)(A), (b)(7)(C)-1, (b)(7)(C)-2, (b)(7)(C)-3, (b)(7)(D)-2, (b)(7)(E)-1, and (b)(7)(F)-1 to protect certain pages of a 45 page document prepared by the NJTTF concerning the CII.  The CII is a pending law enforcement investigation, with its own discreet investigation number.  Through the CII, each local JTTF liaisess with correctional officials to gather intelligence concerning the radicalization and recruitment of inmates in United States correctional facilities by Islamic extremists.  This document contains information classified Secret; as well as information regarding a pending FBI investigation;  names and/or identifying information of FBI employees, third parties of investigative interest or who provided information to the FBI with an implied assurance of confidentiality, and third parties merely mentioned in the documents, which if released would cause a clearly unwarranted invasion of

22

personal privacy, and for some of those named individuals could reasonably cause harm and /or endanger their life or physical safety; information related solely to the internal personnel rules and practices of the FBI, such as practices relating to the CII; and internal investigative techniques and procedures used by the FBI in carrying out the CII.. (Document No. 291, NJTTF-ADMIN-2704-2706, 2710-2713, 2716-2717, 2719-2720).

      (f)    Exemption (b)(2)-2 has been asserted in conjunction with Exemptions (b)(1), (b)(6)-1, (b)(6)-2, (b)(6)-3, (b)(7)(C)-1, (b)(7)(C)-2, (b)(7)(C)-3, (b)(7)(E)-1, and (b)(7)(F)-1 to protect certain portions of an EC from the FBI OGC, NSLB, to a certain Counterterrorism Director's Office dated November 10, 2005. This EC discusses the OGC opinion that a matter regarding the failure of a certain FBI office to follow particular guidelines set forth in the Foreign Intelligence Collection and Foreign Counterintelligence Investigations and by Executive Order 12863, as amended, need not be reported to the IOB. This EC contains information classified Secret, in addition to locations, names of FBI employees, third parties of investigative interest or who provided information to the FBI, and third parties merely mentioned in the documents, which if released would cause a clearly unwarranted invasion of personal privacy and, for some of those named individuals could reasonably cause harm and /or endanger their life or physical safety; and information related solely to the internal personnel rules and practices of the FBI. (Document No. 292, NJTTF-INV-2732-2734).

      (g)    Exemption (b)(2)-2 has been asserted in conjunction with Exemptions (b)(1), (b)(6)-1, (b)(7)(C)-1, (b)(7)(E)-1, and (b)(7)(F)-1 to protect certain portions of an EC from a certain Field Office to the OGC, NSLB dated January 30, 2004. This EC contains a report of a

potential IOB violation by a particular FBI FO in connection with a JTTF case initiated by the FBI on January 3, 2004. This EC contains information classified Secret; names of FBI employees, which if released would cause a clearly unwarranted invasion of personal privacy, and for some of those named individuals, could reasonably cause harm and /or endanger their life or physical safety; and information related solely to the internal personnel rules and practices of the FBI. (Document No. 295, NJTTF-INV-2740).

(36)     To describe information withheld under Exemption (b)(2)-2 in further detail on the public record would identify that very information which the FBI seeks to protect pursuant to these exemptions. The revelation of these details could enable the targets of these techniques to avoid detection or develop countermeasures to circumvent the ability of the FBI to effectively use this important national security law enforcement technique. Accordingly, the FBI has properly withheld this information pursuant to Exemption 2.

## EXEMPTION (b)(5) – PRIVILEGED INFORMATION

(37)     Exemption 5, 5 U.S.C. § 552 (b)(5), allows the FBI to protect information contained in "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." This exemption has been construed to exempt those documents or information normally privileged in the civil discovery context, including, as is the case here, the deliberative process privilege and the attorney-client privilege.

### (b)(5)-1     Deliberative Process and Attorney/Client Privileges

(38)     The deliberative process privilege protects the internal deliberations of an agency

24

by exempting from release recommendations, analyses, speculation and other non-factual information prepared in anticipation of agency decision-making. The general purpose of the deliberative process privilege is to prevent injury to the quality of agency decisions. Thus, material that contains or was prepared in connection with the formulation of opinions, advice, evaluations, deliberations, policy formulation, proposals, conclusions, or recommendations may properly be withheld. Release of this type of information would have an inhibitive effect upon the development of policy and administrative direction of an agency because it would chill the full and frank discussion between agency personnel regarding a decision. If agency personnel knew that their preliminary opinions, evaluations and comments would be released for public consumption, they may be more circumspect in what they put in writing, and thereby, impede a candid discussion of the issues surrounding a decision.

(39)   To invoke the deliberative process privilege, an agency must show that an allegedly exempt document or particular information is both (a) "predecisional" – antecedent to the adoption of agency policy; and the agency must also pinpoint the agency decision or policy to which the document or information contributed or identify a decision-making process to which a document or information contributed – and (b) "deliberative" – a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters, reflects the give and take of the consultative process, and bears on the formulation or exercise of agency policy-oriented judgment. Furthermore, an agency must identify the role of a contested document or information in a specific deliberative process.

25

(40)    **Specific Description of Documents:**

(a)    Exemption (b)(5)-1 has been asserted in conjunction with Exemptions (b)(6)-1, and (b)(7)(C)-1 to protect certain portions of an e-mail from an attorney in the FBI OGC to other employees of the FBI concerning a request for legal guidance on the handling of student records. This document contains the names of FBI employees, which if released would cause a clearly unwarranted invasion of personal privacy, and information withheld under the deliberative process and attorney-client privileges. (Document No. 1, NJTTF-ADMIN-1).

(b)    After further review, the FBI has determined that Document No. 167 is not responsive to plaintiffs FOIA requests, because it concerns the Joint Intelligence Task Force ("JITF") and not the JTTF or NJTTF. However, in light of its mistaken release as responsive, we describe the document below. Exemption (b)(5)-1 has been asserted in conjunction with Exemptions (b)(6)-1, (b)(6)-4, (b)(7)(C)-1, and (b)(7)(C)-4 to protect certain portions of an e-mail from an FBI employee to other FBI employees concerning a meeting between the FBI, the Defense Intelligence Agency, and the Joint Intelligence Task Force-Combating Terrorism. This document contains the names of FBI employees and names of non-FBI employees, which if released would cause a clearly unwarranted invasion of personal privacy and information withheld under the deliberative process privilege. (Document No. 167, NJTTF-ADMIN-1215-1216).

(c)    Exemption (b)(5)-1 has been asserted in conjunction with Exemptions (b)(2)-1, (b)(6)-1, and (b)(7)(C)-1 to protect certain portions of an e-mail from an attorney in the FBI OGC to other employees of the FBI concerning a request for legal guidance on the issuance

of a National Security Letter under the Electronic Communications Privacy Act to a certain University. This document contains internal telephone numbers and e-mail addresses of FBI employees; the names of FBI employees, which if released would cause a clearly unwarranted invasion of personal privacy; and information withheld under the deliberative process and attorney-client privileges. (Document No. 172, NJTTF-ADMIN-1243-1244).

       (d)    Exemption (b)(5)-1 has been asserted to protect a certain page of a draft PIA for an information system pertaining to the JTTF. This draft document is being withheld in full under the deliberative process privilege. (Document No. 263, NJTTF-ADMIN-2450).

       (e)    Exemption (b)(5)-1 has been asserted in conjunction with Exemptions (b)(2)-1, (b)(2)-2, (b)(6)-1, (b)(7)(A), (b)(7)(C)-1, and (b)(7)(E)-1 to protect certain pages of an EC from Counterterrorism/NJTTF to the Administrative Law Unit, OGC, containing a draft PIA for a particular project of the NJTTF. In addition to being withheld in full under the deliberative process and attorney-client privileges, these pages of the draft document in the EC are being withheld because they contain FBI Intranet addresses; information regarding pending FBI investigations; names, phone numbers, and office numbers of FBI employees, which if released would cause a clearly unwarranted invasion of personal privacy; information concerning the maintenance of an FBI database; and internal investigative techniques and procedures for the project specified in the PIA. (Document No. 274, NJTTF-ADMIN-2562-2564).

    (41)    In this case, the FBI has asserted Exemption 5, the deliberative process privilege to protect draft answers to questions posed to the FBI, and draft internal memoranda. These draft answers also reflect the preliminary assessments of FBI personnel regarding the issues on which

they have been asked to prepare an official response. Similarly, a draft internal communication reflects the preliminary assessments of FBI personnel regarding the proper use of investigatory tools. All of these drafts are both predecisional and deliberative. If draft documents that are not formally adopted by the agency are routinely released to the public, FBI personnel will be reluctant to provide candid recommendations necessary for efficient and proper decision-making.

(42)    Exemption 5 has also been asserted to protect internal deliberations that are reflected in a collection of internal e-mails among FBI Special Agents, FBI attorneys and other federal government employees, which reflect case-related discussions of issues that have arisen in connection with the use of the investigatory tools. In addition, these deliberations reflect preliminary advice, opinions and recommendations among FBI attorneys, Special Agents, and FBI field office attorneys, and in certain instances, with an Office of Intelligence Policy and Review employee, who was working in concert with the FBI on some of these issues. In these e-mails FBI personnel are discussing: (1) case-related questions regarding the use of certain investigatory tools in intelligence cases (2) requests for legal advice regarding the use of such tools, and (3) the development of procedures for implementing such investigatory tools.

(43)    The withheld communications are both predecisional and deliberative. They reflect the thoughts of individuals, rather than adopted policy of the FBI. These discussions are part of the give and take of agency deliberations. If e-mail messages such as these are routinely released to the public, FBI employees will be much more circumspect in their online discussions with each other. This lack of candor will seriously impair the FBI's ability to foster the forthright, internal discussions necessary for efficient and proper decision-making. Furthermore,

28

exempting such documents and information from disclosure also protects against public confusion that might result from disclosure of preliminary opinions and information that do not, in fact, reflect the final views or policies of the FBI. The deliberative process privilege is designed to protect not only documents and information but also the integrity of the deliberative process itself where the exposure of the process would result in harm.

(44)    The attorney-client privilege is appropriately asserted when legal advice of any kind is sought, from a professional legal adviser in his or her capacity as such; the communications relating to that purpose are made in confidence by the client; and are, at the client's insistence, permanently protected from disclosure by the client or by the legal adviser unless the attorney-client protection is waived. This privilege encompasses confidential communications made to the attorney not only by decision-making personnel but also by lower-echelon employees who possess information relevant to an attorney's advice-rendering function. In addition, the attorney-client privilege covers the two-way communications between a client and an attorney, and which relates to legal advice.

(45)    Certain of the above-described e-mail communications have also been withheld pursuant to Exemption 5, the attorney-client privilege, as they contain client-supplied information. These documents consist of internal e-mails, draft reports, and internal procedures, which reflect communications among FBI attorneys and FBI SAs and other FBI Professional Support employees and include discussions of hypothetical scenarios. The information contained in these documents reflects attorney advice, opinions, and recommendations offered at the employees' request by FBI attorneys. These communications/exchanges occurred by means of

29

the secure internal e-mail system of the FBI, based on client-supplied information regarding

investigative activities.  The redacted material reveals the candid exchanges of information

among FBI attorneys and FBI SAs and Professional Support employees seeking legal advice

regarding the FBI's role and responsibilities in various law enforcement investigations.

Disclosure of these communications would breach the confidential relationship between these

individuals and repress and stifle such critical communications in the future.  For these reasons,

the FBI asserts Exemption 5, the attorney-client privilege, to protect the confidential

communications among FBI attorneys and FBI SAs and Professional Support employees.

### EXEMPTION (b)(6)
### CLEARLY  UNWARRANTED INVASION OF PERSONAL PRIVACY

(46)    5 U.S.C. § 552(b)(6) exempts from disclosure:

personnel and medical files and similar files when the disclosure of such
information would constitute a clearly unwarranted invasion of personal privacy.

(47)    In asserting this exemption, each piece of information was scrutinized to

determine the nature and strength of the privacy interest of any individual whose name and/or

identifying information appears in the documents at issue.  In withholding the information, the

individual's privacy interest was balanced against the public's interest in disclosure.  In making

this analysis, public interest information was determined to be information which would shed

light on the FBI's performance of its mission to protect and defend the United States against

terrorist and foreign intelligence threats, to uphold and enforce the criminal laws of the United

States, and to provide leadership and criminal justice services to federal, state, municipal, and

international agencies and partners.  In each instance where information was withheld, it was

30

determined that individual privacy rights outweighed the public interest.

**(b)(6)-1        Names and/or Identifying Information Pertaining to FBI Employees**

(48)    Exemption (b)(6)-1 has been asserted, in conjunction with Exemptions (b)(7)(C)-1 and at times with (b)(2)-1, to protect the names and identifying information of FBI SAs responsible for conducting investigations of individuals who pose a threat to the United States in terrorism and espionage cases and support employees responsible for providing legal advice to FBI SAs conducting investigations of these individuals.  More specifically, the FBI protected the telephone numbers, facsimile numbers, e-mail addresses and room numbers of FBI SAs and Professional Support employees.

(49)    **Specific Description of Documents:**

(a)    Exemption (b)(6)-1 has been asserted in conjunction with Exemptions (b)(5)-1, and (b)(7)(C)-1 to protect certain portions of an e-mail from an attorney in the FBI OGC to other employees of the FBI concerning a request for legal guidance on the handling of student records.  This document contains the names of FBI employees, which if released would cause a clearly unwarranted invasion of personal privacy, and information withheld under the deliberative process and attorney-client privileges.  (Document No. 1, NJTTF-ADMIN-1).

(b)    Exemption (b)(6)-1 has been asserted in conjunction with Exemptions (b)(2)-2, (b)(7)(C)-1, (b)(7)(E)-1, and (b)(7)(F)-1 to protect certain portions of a particular question and corresponding answer in a document entitled "Department of Justice Responses to Questions for the Record Concerning the USA Patriot Act (P.L. 107-56):  Committee on the Judiciary, United States House of Representatives."  The question regarding the cooperation

31

between the Justice Department and "officials outside of the law enforcement community," was provided to plaintiffs in full. The answer to this question was provided to plaintiffs with limited redactions made to protect identifying information of FBI employees, which if released would cause a clearly unwarranted invasion of personal privacy, and for some of those individuals, could reasonably cause harm and /or endanger their life or physical safety; and internal investigative techniques and procedures. (Document No. 102, NJTTF-ADMIN-496).

(c)    After further review, the FBI has determined that Document No. 167 is not responsive to plaintiffs FOIA requests, because it concerns the JITF and not the JTTF or NJTTF. However, in light of its mistaken release as a responsive record, we describe the document below. Exemption (b)(6)-1 has been asserted in conjunction with Exemptions (b)(5)-1, (b)(6)-4, (b)(7)(C)-1, (b)(7)(C)-4 to protect certain portions of an e-mail from an FBI employee to other FBI employees concerning a meeting between the FBI, the Defense Intelligence Agency, and the Joint Intelligence Task Force-Combating Terrorism. This document contains the names of FBI employees and names of non-FBI employees, which if released would cause a clearly unwarranted invasion of personal privacy and information withheld under the deliberative process privilege. (Document No. 167, NJTTF-ADMIN-1215-1216).

(d)    Exemption (b)(6)-1 has been asserted in conjunction with Exemptions (b)(2)-1, (b)(5)-1, and (b)(7)(C)-1 to protect certain portions of an e-mail from an attorney in the FBI OGC to other employees of the FBI concerning a request for legal guidance on the issuance of a National Security Letter under the Electronic Communications Privacy Act to a certain University. This document contains internal telephone numbers and e-mail addresses of FBI

employees; the names of FBI employees, which if released would cause a clearly unwarranted invasion of personal privacy; and information withheld under the deliberative process and attorney-client privileges. (Document No. 172, NJTTF-ADMIN-1243-1244).

(e)    Exemption (b)(6)-1 has been asserted in conjunction with Exemptions (b)(2)-1, (b)(2)-2, (b)(5)-1, (b)(7)(A), (b)(7)(C)-1, and (b)(7)(E)-1 to protect certain pages of an EC from Counterterrorism/NJTTF to the Administrative Law Unit, OGC, containing a draft PIA for a particular project of the NJTTF. In addition to being withheld in full under the deliberative process and attorney-client privileges, these pages of the draft document in the EC are being withheld because they contain FBI Intranet addresses; information regarding pending FBI investigations; names, phone numbers, and office numbers of FBI employees, which if released would cause a clearly unwarranted invasion of personal privacy; information concerning the maintenance of an FBI database; and internal investigative techniques and procedures for the project specified in the PIA. (Document No. 274, NJTTF-ADMIN- 2562-2564).

(f)    Exemption (b)(6)-1 has been asserted in conjunction with Exemptions (b)(1), (b)(2)-2, (b)(6)-2, (b)(6)-3, (b)(7)(A), (b)(7)(C)-1, (b)(7)(C)-2, (b)(7)(C)-3, (b)(7)(D)-2, (b)(7)(E)-1, and (b)(7)(F)-1 to protect certain pages of a 45 page document prepared by the NJTTF concerning the CII. The CII is a pending law enforcement investigation, with its own discreet investigation number. Through the CII, each local JTTF liaisess with correctional officials to gather intelligence concerning the radicalization and recruitment of inmates in United States correctional facilities by Islamic extremists. This document contains information classified Secret, as well as information regarding a pending FBI investigation; names of FBI

33

employees and third parties, which if released would cause a clearly unwarranted invasion of personal privacy, and for some of those individuals, could reasonably cause harm and/or endanger their life or physical safety; and information related solely to the internal personnel rules and practices of the FBI, such as practices relating to the CII.  (Document No. 291, NJTTF-ADMIN-2706-2707, 2709, 2713-2716, 2721).

      (g)    Exemption (b)(6)-1 has been asserted in conjunction with Exemptions (b)(2)-2, (b)(7)(C)-1, and (b)(7)(E)-1, to protect certain portions of the first page of an EC from the FBI OGC, NSLB, to a certain Counterterrorism Director's Office dated November 10, 2005. This EC discusses the OGC opinion that a matter regarding the failure of a certain FBI office to follow particular guidelines set forth in the Foreign Intelligence Collection and Foreign Counterintelligence Investigations and by Executive Order 12863, as amended, need not be reported to the Intelligence Oversight Board.  This page of the EC contains names and other identifying information of FBI employees, that if released would cause a clearly unwarranted invasion of personal privacy;  information related solely to the internal personnel rules and practices of the FBI; and reveal internal investigative techniques and procedures.  (Document No. 292, NJTTF-INV-2732).

      (h)    Exemption (b)(6)-1 has been asserted in conjunction with Exemptions (b)(1), (b)(2)-2, (b)(7)(C)-1, (b)(7)(E)-1, and (b)(7)(F)-1 to protect certain portions of an EC from a certain Field Office to the OGC, NSLB dated January 30, 2004.  This EC contains a report of a potential IOB violation by a certain FBI FO in connection with a JTTF case initiated by the FBI on January 3, 2004.  This EC contains information classified Secret; names of FBI employees,

34

which if released would cause a clearly unwarranted invasion of personal privacy, and for some of those named individuals, could reasonably cause harm and /or endanger their life or physical safety; and information related solely to the internal personnel rules and practices of the FBI. (Document No. 295, NJTTF-INV-2740).

(50)   Disclosure of the names, telephone numbers, fax numbers, e-mail addresses and room numbers could subject these employees to unauthorized inquiries by members of the media and the general public who seek access to this type of information. Accordingly, the FBI determined that the FBI SAs and Professional Support employees referenced in the responsive records maintain a substantial privacy interest in not having their identities disclosed.

(51)   The FBI next examined the records at issue to determine whether there was any public interest that outweighed the substantial privacy interests of the FBI SAs and Professional Support employees. The FBI could not identify any discernible public interest. The disclosure of the names of FBI SAs and Professional Support employees would not demonstrate how the FBI performs its mission to protect and defend the United States against terrorist and foreign intelligence threats, to uphold and enforce the criminal laws of the United States, and to provide leadership and criminal justice services to federal, state, municipal, and international agencies and partners.. There have been no allegations that the FBI SAs or Professional Support employees engaged in any type of significant misconduct which would establish a public interest in the disclosure. Ultimately, disclosure of the names of FBI SAs and Professional Support employees would shed no light on the performance of the FBI's mission to protect and defend the United States against terrorist and foreign intelligence threats, to uphold and enforce the criminal

laws of the United States, and to provide leadership and criminal justice services to federal, state, municipal, and international agencies and partners.. Thus, disclosure of the names of these employees would constitute a clearly unwarranted invasion of their personal privacy; therefore, the FBI has properly asserted Exemption 6.

### (b)(6)-2    Names and/or Identifying Information of Third Parties of Investigative Interest or Who Provided Information to the FBI

(52)  Exemption (b)(6)-2 has been asserted, in conjunction with Exemption (b)(7)(C)-2, to withhold the names of third parties contained in various communications which reflect the internal discussion of individuals who are the subjects of law enforcement investigations or who provided information regarding these investigations. These individuals were of investigative interest to the FBI or provided information of investigative interest to the FBI, and are discussed in numerous communications.

(53)  **Specific Description of Documents:**

(a)    Exemption (b)(6)-2 has been asserted in conjunction with Exemptions (b)(1), (b)(2)-2, (b)(6)-1, (b)(7)(A), (b)(7)(C)-1, (b)(7)(C)-2, (b)(7)(D)-2, (b)(7)(E)-1, and (b)(7)(F)-1 to protect certain pages of a 45 page document prepared by the NJTTF concerning the CII. The CII is a pending law enforcement investigation, with its own discreet investigation number. Through the CII, each local JTTF liaisess with correctional officials to gather intelligence concerning the radicalization and recruitment of inmates in United States correctional facilities by Islamic extremists. This document contains information classified Secret; as well as information regarding a pending FBI investigation; names and/or identifying information of FBI employees and third parties of investigative interest or who provided

36

information to the FBI with an implied assurance of confidentiality, which if released would cause a clearly unwarranted invasion of personal privacy, and for some of those named individuals could reasonably cause harm and/or endanger their life or physical safety; information related solely to the internal personnel rules and practices of the FBI, such as practices relating to the CII; and reveal internal investigative techniques and procedures used by the FBI in carrying out the CII.  (Document No. 291, NJTTF-ADMIN-2706, 2718, 2720).

      (b)    Exemption (b)(6)-2 has been asserted in conjunction with Exemptions (b)(1), (b)(2)-2, (b)(6)-3, (b)(7)(C)-2, (b)(7)(C)-3, (b)(7)(E)-1, and (b)(7)(F)-1 to protect certain portions of an EC from the FBI OGC, NSLB, to a certain Counterterrorism Director's Office dated November 10, 2005.  This EC discusses the OGC opinion that a matter regarding the failure of a certain FBI office to follow particular guidelines set forth in the Foreign Intelligence Collection and Foreign Counterintelligence Investigations and by Executive Order 12863, as amended, need not be reported to the Intelligence Oversight Board.  This EC contains information classified Secret; as well names of third parties of investigative interest or who provided information to the FBI and third parties merely mentioned in the document, which if released would cause a clearly unwarranted invasion of personal privacy, and for some of those individuals, could reasonably cause harm and /or endanger their life or physical safety; and information related solely to the internal personnel rules and practices of the FBI, such as practices relating to the CII; and reveal internal investigative techniques and procedures used by the FBI in carrying out the CII.  (Document No. 292, NJTTF-INV-2733).

      (54)    Disclosure of the identities of third parties in this context could cause unsolicited

37

and unnecessary attention to be focused on them and disclosure may embarrass them. For these reasons, the FBI has determined that the third party individuals mentioned in the responsive communications maintain a strong privacy interest in not having their identities disclosed.

(55)     After identifying the substantial privacy interest of the third parties in the communications, the FBI balanced those interests against the public interest in disclosure. The FBI could identify no discernible public interest in the disclosure of this information because the disclosure of third parties' names and identifying information will not shed light on the operations and activities of the FBI. Accordingly, the FBI determined that the disclosure of this information would constitute a clearly unwarranted invasion of personal privacy. Thus, the FBI properly withheld the names of these third parties pursuant to Exemption 6.

**(b)(6)-3        Names and/or Identifying Information of Third Parties Merely Mentioned**

(56)     Exemption (b)(6)-3 has been asserted in conjunction with Exemption (b)(7)(C)-3 to withhold the names of third parties who are merely mentioned in various communications which reflect the FBI's internal discussion of individuals who are the subjects of law enforcement investigations. These individuals are not of investigative interest to the FBI, but are merely mentioned in these communications.

(57)     **Specific Description of Documents:**

(a)     Exemption (b)(6)-3 has been asserted in conjunction with Exemptions (b)(2)(2), (b)(6)-1, (b)(7)(A), (b)(7)(C)-1, (b)(7)(C)-3, (b)(7)(E)-1, and (b)(7)(F)-1 to protect certain pages of a 45 page document prepared by the NJTTF concerning the CII`. The CII is a pending law enforcement investigation, with its own discreet investigation number. Through the

CII, each local JTTF liaisess with correctional officials to gather intelligence concerning the radicalization and recruitment of inmates in United States correctional facilities by Islamic extremists. This document contains information regarding a pending FBI investigation; names of FBI employees and third parties merely mentioned in the document, which if released would cause a clearly unwarranted invasion of personal privacy, and for some of those individuals, could reasonably cause harm and /or endanger their life or physical safety; and information related solely to the internal personnel rules and practices of the FBI, such as practices relating to the CII; and reveal internal investigative techniques and procedures used by the FBI in carrying out the CII. (Document No. 291, NJTTF-ADMIN-2716-2717).

(b)    Exemption (b)(6)-3 has been asserted in conjunction with Exemptions (b)(1), (b)(2)-2, (b)(6)-2, (b)(7)(C)-2, (b)(7)(C)-3, (b)(7)(E)-1, and (b)(7)(F)-1 to protect certain portions of an EC from the FBI OGC, NSLB, to a certain Counterterrorism Director's Office dated November 10, 2005. This EC discusses the OGC opinion that a matter regarding the failure of a certain FBI office to follow particular guidelines set forth in the Foreign Intelligence Collection and Foreign Counterintelligence Investigations and by Executive Order 12863, as amended, need not be reported to the Intelligence Oversight Board. This EC contains information classified Secret; as well names of third parties of investigative interest or who provided information to the FBI and third parties merely mentioned in the document, which if released would cause a clearly unwarranted invasion of personal privacy, and for some of those individuals, could reasonably cause harm and /or endanger their life or physical safety; and information related solely to the internal personnel rules and practices of the FBI, such as

39

practices relating to the CII; and reveal internal investigative techniques and procedures used by the FBI in carrying out the CII. (Document No. 292, NJTTF-INV-2733-2734).

(58)    Disclosure of the identities of these third parties in this context could cause unsolicited and unnecessary attention to be focused on them and disclosure could embarrass them. For these reasons, the FBI has determined that the third party individuals merely mentioned in the responsive communications maintain a strong privacy interest in not having their identities disclosed.

(59)    After identifying the substantial privacy interest of the third parties merely mentioned in the communications, the FBI balanced those interests against the public interest in disclosure. The FBI could identify no discernible public interest in the disclosure of this information because the disclosure of third parties' names will not shed light on the operations and activities of the FBI. Accordingly, the FBI determined that the disclosure of this information would constitute a clearly unwarranted invasion of personal privacy. Thus, the FBI properly withheld the names and identifying information of these third parties merely mentioned in the responsive communications pursuant to Exemption 6.

**(b)(6)-4    Names and/or Identifying Information Pertaining to Non-FBI Federal Government Employees**

(60)    Exemption (b)(6)-4 has been asserted in conjunction with Exemption (b)(7)(C)-4 to protect the names and identifying information concerning non-FBI federal government employees.

(61)    **Specific Description of Documents:**

    (a)    After further review, the FBI has determined that Document No. 167 is not

responsive to plaintiffs FOIA requests, because it concerns the JITF and not the JTTF or NJTTF. However, in light of its mistaken release as responsive, we describe the document below. Exemption (b)(6)-4 has been asserted in conjunction with Exemptions (b)(5)-1, (b)(6)-1, (b)(7)(C)-1, and (b)(7)(C)-4 to protect certain portions of an e-mail from an FBI employee to other FBI employees concerning a meeting between the FBI, the Defense Intelligence Agency, and the Joint Intelligence Task Force-Combating Terrorism. This document contains the names of FBI employees and names of non-FBI employees, which if released would cause a clearly unwarranted invasion of personal privacy and information withheld under the deliberative process privilege. (Document No. 167, NJTTF-ADMIN-1215-1216).

(62)    The relevant inquiry here is whether public access to this information would violate a viable privacy interest of the subjects of such information. Disclosure of this identifying information could subject these employees to unauthorized inquiries and harassment which could constitute a clearly unwarranted invasion of their personal privacy. The rationale for protecting non-FBI federal employees is the same as that for FBI employees.

(63)    In balancing the legitimate privacy interests against any public interest in disclosure, the FBI has determined that there is a complete lack of any bona fide public interest in disclosure of this information because this type of information will not shed light on the operations and activities of the federal government. Accordingly, the FBI properly withheld this information pursuant Exemption 6.

## EXEMPTION 7 THRESHOLD

(64)    Exemption 7 of the FOIA protects from mandatory disclosure records or

41

information compiled for law enforcement purposes, but only to the extent that disclosure could

reasonably be expected to cause one of the harms enumerated in the subparts of the exemption.

See 5 U.S.C. § 552(b)(7). In this case, the harm that could reasonably be expected to result from

disclosure concerns interference with pending law enforcement proceedings, invasion of personal

privacy, revealing the identity of confidential sources, revealing sensitive law enforcement

techniques, and revealing information which if released could reasonably cause harm and/or

endanger the life or physical safety of any individual.[9] Before an agency can invoke any of the

harms enumerated in Exemption 7, it must first demonstrate that the records or information at

issue were compiled for law enforcement purposes. Law enforcement agencies such as the FBI

must demonstrate that the records at issue are related to the enforcement of federal laws and that

the enforcement activity is within the law enforcement duty of that agency. The various records

at issue in this case were compiled for criminal law enforcement purposes during the course of

the FBI's performance of its law enforcement mission, including the investigation of criminal

activities, and of preventing and deterring terrorist attacks within the United States and around

the world, and reducing the vulnerability of the United States to terrorism.

(65)    Because the records clearly meet the Exemption 7 threshold, the remaining

inquiry is whether their disclosure would interfere with pending law enforcement proceedings,

invade personal privacy, reveal the identity of confidential sources, reveal sensitive law

enforcement techniques, and/or reveal information which if released could reasonably cause

---

[9] I have been advised that plaintiffs are no longer contesting the use of Exemption (b)(7)(F) by the defendants for the records responsive to their FOIA requests.

harm and/or endanger the life or physical safety of any individual.

### EXEMPTION (b)(7)(A)
### PENDING LAW ENFORCEMENT INVESTIGATION

(66)    5 U.S.C. § 552 (b)(7)(A) exempts from disclosure:

records or information compiled for law enforcement purposes, but only to the
extent that the production of such law enforcement records or information (A)
could reasonably be expected to interfere with enforcement proceedings . . . .

(67)    Application of this exemption requires the existence of law enforcement records;

a pending or prospective law enforcement proceeding; and a reasonable expectation that release

of the information would interfere with the enforcement proceeding. Furthermore, normally the

assertion of this exemption to withhold documents involves documents found in an investigatory

file. In this case, the information in question is contained in a series of internal communications

which represent discussions between FBI attorneys and FBI SAs regarding case-related issues

arising in various pending investigations. Specifically Exemption (b)(7)(A) has been asserted to

protect the names of the subjects of pending investigations and the details concerning these

investigations.

(68)    **Specific Description of Documents:**

(a)    Exemption (b)(7)(A) has been asserted in conjunction with Exemptions

(b)(2)-1, (b)(2)-2, (b)(5)-1, (b)(6)-1, (b)(7)(C)-1, and (b)(7)(E)-1 to protect certain pages of an

EC from Counterterrorism/NJTTF to the Administrative Law Unit, OGC, containing a draft PIA

for a particular project of the NJTTF. In addition to being withheld in full under the deliberative

process and attorney-client privileges, these pages of the draft document in the EC are being

withheld because they contain FBI Intranet addresses; information regarding pending FBI

43

investigations; names, phone numbers, and office numbers of FBI employees, which if released would cause a clearly unwarranted invasion of personal privacy; information concerning the maintenance of an FBI database; and reveal internal investigative techniques and procedures for the project specified in the PIA. (Document No. 274, NJTTF-ADMIN- 2562-2564).

(b)    Exemption (b)(7)(A) has been asserted in conjunction with Exemptions (b)(2)-2 and (b)(7)(E)-1 to protect certain pages of a PowerPoint presentation created by the NJTTF on the CII. The CII is a pending law enforcement investigation, with its own discreet investigation number. Through the CII, each local JTTF liaisess with correctional officials to gather intelligence concerning the radicalization and recruitment of inmates in United States correctional facilities by Islamic extremists. This document contains information regarding a pending FBI investigation; information related solely to the internal personnel rules and practices of the FBI, such as practices relating to the CII; and reveal internal investigative techniques and procedures used by the FBI in carrying out the CII. (Document No. 287-289, NJTTF-ADMIN-2675, 2678-2679, 2681).

(c)    Exemption (b)(7)(A) has been asserted in conjunction with Exemptions (b)(2)-2 and (b)(7)(E)-1 to protect certain pages of a briefing paper created by the NJTTF on the CII. The CII is a pending law enforcement investigation, with its own discreet investigation number. Through the CII, each local JTTF liaisess with correctional officials to gather intelligence concerning the radicalization and recruitment of inmates in United States correctional facilities by Islamic extremists. This document contains information regarding a pending FBI investigation; information related solely to the internal personnel rules and practices

of the FBI, such as practices relating to the CII; and reveal internal investigative techniques and procedures used by the FBI in carrying out the CII. (Document No. 290, NJTTF-ADMIN-2684).

      (d)    Exemption (b)(7)(A) has been asserted in conjunction with Exemptions (b)(6)-1, (b)(6)-2, (b)(6)-3, (b)(7)(A), (b)(7)(C)-1, (b)(7)(C)-2, (b)(7)(C)-3 (b)(7)(D)-2, and (b)(7)(E)-1, and (b)(7)(F)-1 to protect certain pages of a 45 page document prepared by the NJTTF concerning the CII. The CII is a pending law enforcement investigation, with its own discreet investigation number. Through the CII, each local JTTF liaisess with correctional officials to gather intelligence concerning the radicalization and recruitment of inmates in United States correctional facilities by Islamic extremists. This document information classified Secret; information regarding a pending FBI investigation; names and/or identifying information of FBI employees, third parties of investigative interest or who provided information to the FBI with an implied assurance of confidentiality, and third parties merely mentioned in the documents, which if released would cause a clearly unwarranted invasion of personal privacy and, for some of those named individuals could reasonably cause harm and /or endanger their life or physical safety; information related solely to the internal personnel rules and practices of the FBI, such as practices relating to the CII; and reveal internal investigative techniques and procedures used by the FBI in carrying out the CII. (Document No. 291, NJTTF-ADMIN-2704-2721).

    (69)    Based on its statutory authority, the FBI has established standard operating procedures by which to implement the FOIA and Privacy Act as efficiently as possible. In that respect, when a FOIA/Privacy Act request is received for an on-going FBI investigation, the FBI in most instances asserts Exemption (b)(7)(A) to deny that request. However, the FBI does

45

review the materials responsive to the request and releases information contained within the file(s) which will not jeopardize future investigative or prosecutive efforts. The FBI's review of the responsive records for the preparation of this declaration revealed that no material responsive could be released, as all information reviewed would jeopardize further investigations and/or prosecutive efforts.

(70)    Any release of information from the responsive files would be premature due to the harm which could ensue. Once documents are released and are in the public domain, the information concerning the investigation could reach the individuals who are under investigation. This would allow these individuals to critically analyze the information in the documents pertinent to the investigation of themselves. Such individuals possess the unique advantage of knowing the details surrounding the investigation, the identities of potential witnesses, direct and circumstantial evidence, etc., and could use the released information to their advantage. In this regard, the following potential harms from the release of these documents exist:

> (a) The identification of individuals, sources, and potential witnesses who possess information relative to the investigations and possible harm to, or intimidation of these individuals;
>
> (b) The use of information released to counteract evidence developed by investigators;
>
> (c) The identification of third parties who are also under investigation;
>
> (d) The identification of the subject matter of classified information; and
>
> (e) The locations in the United States, as well as foreign countries where the FBI is focusing the investigation and collection of investigative and source material.

(71)    Furthermore, the release of this information to third parties not directly involved

in these matters could allow these third parties to interfere with the pending proceedings by harassment, intimidations, and creation of false evidence dispensing facts discussed during the FBI's investigation. Once a release is made to a set of plaintiffs under the FOIA, the use and dissemination of the information to third parties is unrestricted.

(72)    Historically, the FBI has responded to requests for pending FBI investigatory files, or portions thereof, with great regard for the intent of the FOIA. The FBI makes every effort to provide information which will not interfere with the pending law enforcement proceedings. The FBI is continuously working in conjunction with other federal agencies in pending investigations; any waiver of FOIA Exemption (b)(7)(A) would inhibit the FBI's assistance to the justice system at the Federal level.

**EXEMPTION (b)(7)(C)**
**UNWARRANTED INVASION OF PERSONAL PRIVACY**

(73)    5 U.S.C. § 552 (b)(7)(C) exempts from disclosure

> records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy . . . .

(74)    In withholding information from disclosure pursuant to this exemption, the FBI is required to balance the privacy interests of the individual mentioned in the documents against any public interest in disclosure. In asserting this exemption, each piece of information was scrutinized to determine the nature and strength of each individual's privacy interest. The FBI identified the public interest in disclosure of the information to be whether the information in question would inform plaintiffs or the general public about the FBI's performance of its mission

to enforce federal criminal and national security statutes and/or how the FBI actually conducts its statutory duties, namely, its internal operations and investigations. Every effort has been made to release all segregable information contained in these pages without infringing upon the privacy rights of the individuals mentioned in these documents.

**(b)(7)(C)-1     Names and/or Identifying Information Pertaining to FBI Employees**

(75)    Exemption (b)(7)(C)-1 has been asserted, in conjunction with Exemptions (b)(6)-1 and at times with (b)(2)-1, to protect the names and identifying information of FBI SAs responsible for conducting investigations of individuals who pose a threat to the United States in terrorism and espionage cases and support employees responsible for providing legal advice to FBI SAs conducting investigations of these individuals. More specifically, the FBI protected the telephone numbers, facsimile numbers, and room numbers of FBI SAs and Professional Support employees.

(76)    **Specific Description of Documents:**

(a)    Exemption (b)(7)(C)-1 has been asserted in conjunction with Exemptions (b)(5)-1, and (b)(6)-1 to protect certain portions of an e-mail from an attorney in the FBI OGC to other employees of the FBI concerning a request for legal guidance on the handling of student records. This document contains the names of FBI employees, which if released would cause a clearly unwarranted invasion of personal privacy, and information withheld under the deliberative process and attorney-client privileges. (Document No. 1, NJTTF-ADMIN-1).

(b)    Exemption (b)(7)(C)-1 has been asserted in conjunction with Exemptions (b)(2)-2, (b)(6)-1, (b)(7)(E)-1, and (b)(7)(F)-1 to protect certain portions of a particular question

48

and corresponding answer in a document entitled "Department of Justice Responses to Questions for the Record Concerning the USA Patriot Act (P.L. 107-56): Committee on the Judiciary, United States House of Representatives." The question regarding the cooperation between the Justice Department and "officials outside of the law enforcement community," was provided to plaintiffs in full. The answer to this question was provided to plaintiffs with limited redactions made to protect identifying information of FBI employees, which if released would cause a clearly unwarranted invasion of personal privacy, and for some of those individuals, could reasonably cause harm and /or endanger their life or physical safety; and reveal internal investigative techniques and procedures. (Document No. 102, NJTTF-ADMIN-496).

(c)     After further review, the FBI has determined that Document No. 167 is not responsive to plaintiffs FOIA requests, because it concerns the JITF and not the JTTF or NJTTF. However, in light of its mistaken release as a responsive record, we describe the document below. Exemption (b)(7)(C)-1 has been asserted in conjunction with Exemptions (b)(5)-1, (b)(6)-4, (b)(6)-1, (b)(7)(C)-4 to protect certain portions of an e-mail from an FBI employee to other FBI employees concerning a meeting between the FBI, the Defense Intelligence Agency, and the Joint Intelligence Task Force-Combating Terrorism. This document contains the names of FBI employees and names of non-FBI employees, which if released would cause a clearly unwarranted invasion of personal privacy and information withheld under the deliberative process privilege. (Document No. 167, NJTTF-ADMIN-1215-1216).

(d)     Exemption (b)(7)(C)-1 has been asserted in conjunction with Exemptions (b)(2)-1, (b)(5)-1, and (b)(6)-1 to protect certain portions of an e-mail from an attorney in the FBI

49

OGC to other employees of the FBI concerning a request for legal guidance on the issuance of a National Security Letter under the Electronic Communications Privacy Act to a certain University. This document contains internal telephone numbers and e-mail addresses of FBI employees; the names of FBI employees, which if released would cause a clearly unwarranted invasion of personal privacy; and information withheld under the deliberative process and attorney-client privileges. (Document No. 172, NJTTF-ADMIN-1243-1244).

(e)    Exemption (b)(7)(C)-1 has been asserted in conjunction with Exemptions (b)(2)-1, (b)(2)-2, (b)(5)-1, (b)(6)-1, (b)(7)(A), and (b)(7)(E)-1 to protect certain pages of an EC from Counterterrorism/NJTTF to the Administrative Law Unit, OGC, containing a draft PIA for a particular project of the NJTTF. In addition to being withheld in full under the deliberative process and attorney-client privileges, these pages of the draft document in the EC are being withheld because they contain FBI Intranet addresses; information regarding pending FBI investigations; names, phone numbers, and office numbers of FBI employees, which if released would cause a clearly unwarranted invasion of personal privacy; information concerning the maintenance of an FBI database; and reveal internal investigative techniques and procedures for the project specified in the PIA. (Document No. 274, NJTTF-ADMIN- 2562-2564).

(f)    Exemption (b)(7)(C)-1 has been asserted in conjunction with Exemptions (b)(1), (b)(2)-2, (b)(6)-1, (b)(6)-2, (b)(6)-3, (b)(7)(A), (b)(7)(C)-2, (b)(7)(C)-3, (b)(7)(D)-2, (b)(7)(E)-1, and (b)(7)(F)-1 to protect certain pages of a 45 page document prepared by the NJTTF concerning the CII. The CII is a pending law enforcement investigation, with its own discreet investigation number. Through the CII, each local JTTF liaisess with correctional

officials to gather intelligence concerning the radicalization and recruitment of inmates in United

States correctional facilities by Islamic extremists. This document contains information

classified Secret, as well as information regarding a pending FBI investigation; names and/or

identifying information of FBI employees, third parties of investigative interest or who provided

information to the FBI with an implied assurance of confidentiality, and third parties merely

mentioned in the documents, which if released would cause a clearly unwarranted invasion of

personal privacy, and for some of those named individuals could reasonably cause harm and/or

endanger their life or physical safety; information related solely to the internal personnel rules

and practices of the FBI, such as practices relating to the CII; and reveal internal investigative

techniques and procedures used by the FBI in carrying out the CII. (Document No. 291, NJTTF-

ADMIN-2706-2707, 2709, 2713-2716, 2721).

       (g)    Exemption (b)(7)(C)-1 has been asserted in conjunction with Exemptions

(b)(2)-2, (b)(6)-1, and (b)(7)(E)-1, to protect certain portions of the first page of an EC from the

FBI OGC, NSLB, to a certain Counterterrorism Director's Office dated November 10, 2005.

This EC discusses the OGC opinion that a matter regarding the failure of a certain FBI office to

follow particular guidelines set forth in the Foreign Intelligence Collection and Foreign

Counterintelligence Investigations and by Executive Order 12863, as amended, need not be

reported to the Intelligence Oversight Board. This page of the EC contains names and other

identifying information of FBI employees, that if released would cause a clearly unwarranted

invasion of personal privacy; information related solely to the internal personnel rules and

practices of the FBI; and reveal internal investigative techniques and procedures. (Document No.

292, NJTTF-INV-2732).

(h)    Exemption (b)(7)(C)-1 has been asserted in conjunction with Exemptions (b)(1), (b)(2)-2, (b)(6)-1, (b)(7)(E)-1, and (b)(7)(F)-1 to protect certain portions of an EC from a certain Field Office to the OGC, NSLB dated January 30, 2004.  This EC contains a report of a potential IOB violation by a certain FBI FO in connection with a JTTF case initiated by the FBI on January 3, 2004.  This EC contains information classified Secret; names of FBI employees, which if released would cause a clearly unwarranted invasion of personal privacy, and for some of those named individuals, could reasonably cause harm and /or endanger their life or physical safety; and information related solely to the internal personnel rules and practices of the FBI. (Document No. 295, NJTTF-INV-2740).

(77)    Disclosure of the names, telephone numbers, fax numbers, e-mail and room numbers could subject these employees to unauthorized inquiries by members of the media and the general public who seek access to this type of information.  Accordingly, the FBI determined that the FBI SAs and Professional Support employees referenced in the responsive records maintain a substantial privacy interest in not having their identities disclosed.

(78)    The FBI next examined the records at issue to determine whether there was any public interest that outweighed the substantial privacy interests of the FBI SAs and Professional Support employees.  The FBI could not identify any discernible public interest.  The disclosure of the names of FBI SAs and Professional Support employees would not demonstrate how the FBI performs its mission, which is to protect and defend the United States against terrorist and foreign intelligence threats, to uphold and enforce the criminal laws of the United States, and to

52

provide leadership and criminal justice services to federal, state, municipal, and international

agencies and partners.  There have been no allegations that the FBI SAs or Professional Support

employees engaged in any type of significant misconduct which would establish a public interest

in disclosure.  Ultimately, disclosure of the names of FBI SAs and Professional Support

employees would shed no light on the performance of the FBI's mission, which is to protect and

defend the United States against terrorist and foreign intelligence threats, to uphold and enforce

the criminal laws of the United States, and to provide leadership and criminal justice services to

federal, state, municipal, and international agencies and partners..  Thus, disclosure of the names

of these employees could constitute an unwarranted invasion of their personal privacy; therefore,

the FBI has properly asserted Exemption 7(C)-1.

### (b)(7)(C)-2    Names and/or Identifying Information of Third Parties of Investigative Interest or Who Provided Information to the FBI

(79)    Exemption (b)(7)(C)-2 has been asserted, in conjunction with Exemption (b)(6)-2,

to withhold the names of third parties contained in various communications which reflect the

internal discussion of individuals who are the subjects of law enforcement investigations or who

provided information regarding these investigations.

(80)    **Specific Description of Documents:**

(a)    Exemption (b)(7(C)-2 has been asserted in conjunction with Exemptions

(b)(1), (b)(2)-2, (b)(6)-1, (b)(6)-2, (b)(7)(A), (b)(7)(C)-1, (b)(7)(D)-2, (b)(7)(E)-1, and (b)(7)(F)-1

to protect certain pages of a 45 page document prepared by the NJTTF concerning the CII.  The

CII is a pending law enforcement investigation, with its own discreet investigation number.

Through the CII, each local JTTF liaisess with correctional officials to gather intelligence

53

concerning the radicalization and recruitment of inmates in United States correctional facilities by Islamic extremists. This document contains information classified Secret; as well as information regarding a pending FBI investigation; names and/or identifying information of FBI employees, third parties of investigative interest or who provided information to the FBI with an implied assurance of confidentiality, and third parties merely mentioned in the documents, which if released would cause a clearly unwarranted invasion of personal privacy, and for some of those named individuals could reasonably cause harm and/or endanger their life or physical safety; information related solely to the internal personnel rules and practices of the FBI, such as practices relating to the CII; and reveal internal investigative techniques and procedures used by the FBI in carrying out the CII. (Document No. 291, NJTTF-ADMIN-2706, 2718, 2720).

(b)      Exemption (b)(7)(C)-2 has been asserted in conjunction with Exemptions (b)(1), (b)(2)-2, (b)(6)-2, (b)(6)-3, (b)(7)(C)-3, (b)(7)(E)-1, and (b)(7)(F)-1 to protect certain portions of an EC from the FBI OGC, NSLB, to a certain Counterterrorism Director's Office dated November 10, 2005. This EC discusses the OGC opinion that a matter regarding the failure of a certain FBI office to follow particular guidelines set forth in the Foreign Intelligence Collection and Foreign Counterintelligence Investigations and by Executive Order 12863, as amended, need not be reported to the Intelligence Oversight Board. This EC contains information classified Secret; as well names of third parties of investigative interest or who provided information to the FBI and third parties merely mentioned in the document, which if released would cause a clearly unwarranted invasion of personal privacy, and for some of those individuals, could reasonably cause harm and /or endanger their life or physical safety; and

information related solely to the internal personnel rules and practices of the FBI, such as practices relating to the CII; and reveal internal investigative techniques and procedures used by the FBI in carrying out the CII. (Document No. 292, NJTTF-INV-2733).

(81)   Disclosure of the identities of these third parties in this context could cause unsolicited and unnecessary attention to be focused on them and disclosure may embarrass them. For these reasons, the FBI has determined that the third party individuals mentioned in the responsive communications maintain a strong privacy interest in not having their identities disclosed.

(82)   After identifying the substantial privacy interest of the third parties mentioned in the communications, the FBI balanced those interests against the public interest in disclosure. The FBI could identify no discernible public interest in the disclosure of this information because the disclosure of third parties' names and identifying information will not shed light on the operations and activities of the FBI. Accordingly, the FBI determined that the disclosure of this information could constitute an unwarranted invasion of personal privacy. Thus, the FBI properly withheld the names of these third parties pursuant to Exemption 7.

### (b)(7)(C)-3    Names and/or Identifying Information of Third Parties Merely Mentioned

(83)   Exemption (b)(7)(C)-3 has been asserted in conjunction with Exemption (b)(6)-3 to withhold the names of third parties who are merely mentioned in various communications which reflect the FBI's internal discussion of individuals who are the subjects of law enforcement investigations. These individuals are not of investigative interest to the FBI, but are merely mentioned in these communications.

55

(84)    **Specific Description of Documents:**

(a)    Exemption (b)(7)(C)-3 has been asserted in conjunction with Exemptions (b)(2)-2, (b)(6)-1, (b)(6)-3, (b)(7)(A), (b)(7)(C)-1, (b)(7)(E)-1, and (b)(7)(F)-1 to protect certain pages of a 45 page document prepared by the NJTTF concerning the CII. The CII is a pending law enforcement investigation, with its own discreet investigation number. Through the CII, each local JTTF liaisess with correctional officials to gather intelligence concerning the radicalization and recruitment of inmates in United States correctional facilities by Islamic extremists. This document contains information regarding a pending FBI investigation; names of FBI employees and third parties merely mentioned in the document, which if released would cause a clearly unwarranted invasion of personal privacy, and for some of those individuals, could reasonably cause harm and /or endanger their life or physical safety; and information related solely to the internal personnel rules and practices of the FBI, such as practices relating to the CII; and reveal internal investigative techniques and procedures used by the FBI in carrying out the CII.. (Document No. 291, NJTTF-ADMIN-2716-2717).

(b)    Exemption (b)(7)(C)-3 has been asserted in conjunction with Exemptions (b)(1), (b)(2)-2, (b)(6)-2, (b)(6)-3, (b)(7)(C)-2, (b)(7)(E)-1, and (b)(7)(F)-1 to protect certain portions of an EC from the FBI OGC, NSLB, to a certain Counterterrorism Director's Office dated November 10, 2005. This EC discusses the OGC opinion that a matter regarding the failure of a certain FBI office to follow particular guidelines set forth in the Foreign Intelligence Collection and Foreign Counterintelligence Investigations and by Executive Order 12863, as amended, need not be reported to the Intelligence Oversight Board. This EC contains

information classified Secret; as well names of third parties of investigative interest or who

provided information to the FBI and third parties merely mentioned in the document, which if

released would cause a clearly unwarranted invasion of personal privacy, and for some of those

individuals, could reasonably cause harm and /or endanger their life or physical safety; and

information related solely to the internal personnel rules and practices of the FBI, such as

practices relating to the CII; and reveal internal investigative techniques and procedures used by

the FBI in carrying out the CII. (Document No. 292, NJTTF-INV-2733-2734).

(85)     Disclosure of the identities of these third parties in this context could cause

unsolicited and unnecessary attention to be focused on them and disclosure could embarrass

them. For these reasons, the FBI has determined that the third party individuals merely

mentioned in the responsive communications maintain a strong privacy interest in not having

their identities disclosed.

(86)     After identifying the substantial privacy interest of the third parties merely

mentioned in the communications, the FBI balanced those interests against the public interest in

disclosure. The FBI could identify no discernible public interest in the disclosure of this

information because the disclosure of third parties' names will not shed light on the operations

and activities of the FBI. Accordingly, the FBI determined that the disclosure of this information

could constitute an unwarranted invasion of personal privacy. Thus, the FBI properly withheld

the names and identifying information of these third parties merely mentioned in the responsive

communications pursuant to Exemption 7.

### (b)(7)(C)-4    Names and/or Identifying Information Pertaining to Non-FBI Federal Government Employees

(87)    Exemption (b)(7)(C)-4 has been asserted in conjunction with Exemption (b)(6)-4 to protect the names and identifying information concerning non-FBI federal government employees.

(88)    **Specific Description of Documents:**

(a)    After further review, the FBI has determined that Document No. 167 is not responsive to plaintiffs FOIA requests, because it concerns the JITF and not the JTTF or NJTTF. However, in light of its mistaken release as responsive, we describe the document below. Exemption (b)(7)(C)-4 has been asserted in conjunction with Exemptions (b)(5)-1, (b)(6)-1, (b)(6)-4, and (b)(7)(C)-1 to protect certain portions of an e-mail from an FBI employee to other FBI employees concerning a meeting between the FBI, the Defense Intelligence Agency, and the Joint Intelligence Task Force-Combating Terrorism. This document contains the names of FBI employees and names of non-FBI employees, which if released would cause a clearly unwarranted invasion of personal privacy and information withheld under the deliberative process privilege. (Document No. 167, NJTTF-ADMIN-1215-1216).

(89)    The relevant inquiry here is whether public access to this information would violate a viable privacy interest of the subjects of such information. Disclosure of this identifying information could subject these employees to unauthorized inquiries and harassment which could constitute an unwarranted invasion of their personal privacy. The rationale for protecting non-FBI federal employees is the same as that for FBI employees.

(90)    In balancing the legitimate privacy interests against any public interest in

disclosure, the FBI has determined that there is a complete lack of any bona fide public interest in disclosure of this information because this type of information will not shed light on the operations and activities of the federal government. Accordingly, the FBI properly withheld this information pursuant Exemption 7.

### EXEMPTION (b)(7)(D)
### CONFIDENTIAL SOURCE INFORMATION

(91)     5 U.S.C. § 552(b)(7)(D) provides protection for:

> records or information compiled for law enforcement purposes, but only to the extent that the production of law enforcement records or information . . . could reasonably be expected to disclose the identity of a confidential source, including a State, local or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by a criminal law enforcement agency conducting a lawful national security intelligence investigation, information furnished by a confidential source.

(92)     Numerous confidential sources report to the FBI on a regular basis and are "informants" within the common meaning of the term. These sources provide information under a variety of circumstances, including an implied assurance of confidentiality. Releasing the information provided by these sources may likely reveal a confidential source's identity. In this case, certain commercial/private companies provided information to the FBI during the course of its intelligence investigations with implied assurances of confidentiality. Release of certain information provided by these entities would, in and of itself, reveal the identities of these companies, thereby necessitating protection of the information provided by these sources. In turn, release of a source's identity would forever eliminate that source as a future means of obtaining information. In addition, when the identity of one source is revealed, that revelation

has a chilling effect on the activities and cooperation of other sources. It is only with the understanding of complete confidentiality (whether expressed or implied) that the aid of such sources can be enlisted, and only through this confidence that these sources can be persuaded to continue providing valuable assistance in the future. Thus, the information provided by, as well as the identities of these sources, has been protected pursuant to Exemption 7(D).

### (b)(7)(D) -2    Names and/or Identifying Information Furnished by Third Parties with Implied Assurance of Confidentiality

(93)    Exemption (b)(7)(D)-2 has been asserted to withhold information provided to the FBI by commercial or non-governmental entities under circumstances from which an assurance of confidentiality may be implied.

(94)    **Specific Description of Documents:**

(a)    Exemption (b)(7)(D)-2 has been asserted in conjunction with Exemptions (b)(2)-2, (b)(6)-1, (b)(6)-2, (b)(7)(A), (b)(7)(C)-1, (b)(7)(C)-2, (b)(7)(E)-1, and (b)(7)(F)-1 to protect certain pages of a 45 page document prepared by the NJTTF concerning the CII. The CII is a pending law enforcement investigation, with its own discreet investigation number. Through the CII, each local JTTF liaisess with correctional officials to gather intelligence concerning the radicalization and recruitment of inmates in United States correctional facilities by Islamic extremists. This document contains information regarding a pending FBI investigation; names and/or identifying information of FBI employees and third parties of investigative interest or who provided information to the FBI with an implied assurance of confidentiality, which if released would cause a clearly unwarranted invasion of personal privacy, and for some of those named individuals could reasonably cause harm and/or endanger their life or physical safety;

60

information related solely to the internal personnel rules and practices of the FBI, such as

practices relating to the CII; and reveal internal investigative techniques and procedures used by

the FBI in carrying out the CII. (Document No. 291, NJTTF-ADMIN-2713 and 2718).

(95)    During the course of the FBI's intelligence investigations, certain

commercial/private companies provided information to the FBI relating to the subjects of these

investigations. The FBI obtained this information pursuant to investigative techniques. To

disclose the fact that these companies provided information to the FBI during the course of an

investigation could harm the commercial interests of the enterprise by deterring the public from

employing their services. Some of this information is also classified and to provide more detail

regarding these sources may reveal the very classified information that the FBI is attempting to

protect. In addition, such a disclosure has wider implications. If the FBI disclosed the identities

of confidential sources that provide information to the FBI on a continuing basis, that revelation

would have a chilling effect on the activities and cooperation of other FBI confidential sources.

It is only with the understanding of complete confidentiality that the aid of these sources can be,

and have been, enlisted, and only through this confidence that these sources can be persuaded to

continue providing valuable assistance in the future. The FBI has released as much segregable

information as possible without disclosing these sources' identities. Accordingly, the FBI

properly withheld this information pursuant to Exemption 7(D)-2.

## EXEMPTION (b)(7)(E)
## INVESTIGATIVE TECHNIQUES AND PROCEDURES

(96)    5 U.S.C. § 552 (b)(7)(E) provides for the withholding of:

records or information compiled for law enforcement purposes, but only to the

extent that the production of such law enforcement records or information would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law . . . .

### (b)(7)(E)-1    FBI Internal Investigative Techniques and Procedures

(97)    The FBI has asserted Exemption (b)(7)(E)-1, at times in conjunction with

Exemption (b)(2)-2, to protect several different types of law enforcement techniques and

procedures used in the furtherance of the FBI's domestic terrorism investigations and/or

prosecutions. These techniques are reflected in various internal FBI documents as well as

information obtained in the course of active investigations by virtue of the application of those

techniques.

(98)    **Specific Description of Documents:**

(a)    Exemption (b)(7)(E)-1 has been asserted in conjunction with Exemptions

(b)(2)-2, (b)(6)-1, (b)(7)(C)-1, and (b)(7)(F)-1 to protect certain portions of a particular question

and corresponding answer in a document entitled "Department of Justice Responses to Questions

for the Record Concerning the USA Patriot Act (P.L. 107-56): Committee on the Judiciary,

United States House of Representatives." The question regarding the cooperation between the

Justice Department and "officials outside of the law enforcement community," was provided to

plaintiffs in full. The answer to this question was provided to plaintiffs with limited redactions

made to protect identifying information of FBI employees which if released would cause a

clearly unwarranted invasion of personal privacy, and for some of those individuals, could

reasonably cause harm and /or endanger their life or physical safety; and reveal internal

investigative techniques and procedures. (Document No. 102, NJTTF-ADMIN-496).

(b)    Exemption (b)(7)(E)-1 has been asserted in conjunction with Exemptions (b)(2)-1, (b)(2)-2, (b)(5)-1, (b)(6)-1, (b)(7)(A), and (b)(7)(C)-1 to protect certain pages of an EC from Counterterrorism/NJTTF to the Administrative Law Unit, OGC, containing a draft PIA for a particular project of the NJTTF. In addition to being withheld in full under the deliberative process attorney-client privileges, these pages of the draft document in the EC are being withheld because they contain FBI Intranet addresses; information regarding pending FBI investigations; the names of FBI employees, which if released would cause a clearly unwarranted invasion of personal privacy; information withheld under the deliberative process and attorney-client privileges; and reveal internal investigative techniques and procedures for the project specified in the PIA. (Document No. 274, NJTTF-ADMIN- 2562-2564).

(c)    Exemption (b)(7)(E)-1 has been asserted in conjunction with Exemptions (b)(2)-2 and (b)(7)(A) to protect certain pages of a PowerPoint presentation created by the NJTTF on the CII. The CII is a pending law enforcement investigation, with its own discreet investigation number. Through the CII, each local JTTF liaisess with correctional officials to gather intelligence concerning the radicalization and recruitment of inmates in United States correctional facilities by Islamic extremists. This document contains information regarding a pending FBI investigation; information related solely to the internal personnel rules and practices of the FBI, such as practices relating to the CII; and reveal internal investigative techniques and procedures used by the FBI in carrying out the CII. (Document No. 287-289, NJTTF-ADMIN- 2675, 2678-2679, 2681).

63

(d)      Exemption (b)(7)(E)-1 has been asserted in conjunction with Exemptions (b)(2)-2 and (b)(7)(A) to protect certain pages of a briefing paper created by the NJTTF on the CII. The CII is a pending law enforcement investigation, with its own discreet investigation number. Through the CII, each local JTTF liaisess with correctional officials to gather intelligence concerning the radicalization and recruitment of inmates in United States correctional facilities by Islamic extremists. This document contains information regarding a pending FBI investigation; information related solely to the internal personnel rules and practices of the FBI, such as practices relating to the CII; and reveal internal investigative techniques and procedures used by the FBI in carrying out the CII. (Document No. 290, NJTTF-ADMIN-2684).

(e)      Exemption (b)(7)(E)-1 has been asserted in conjunction with Exemptions (b)(2)-2, (b)(6)-1, (b)(6)-2, (b)(6)-3, (b)(7)(A), (b)(7)(C)-1, (b)(7)(C)-2, (b)(7)(C)-3, (b)(7)(D)-2, and (b)(7)(F)-1 to protect certain pages of a 45 page document prepared by the NJTTF concerning the CII. The CII is a pending law enforcement investigation, with its own discreet investigation number. Through the CII, each local JTTF liaisess with correctional officials to gather intelligence concerning the radicalization and recruitment of inmates in United States correctional facilities by Islamic extremists. This document contains information classified Secret; as well as information regarding a pending FBI investigation; names and/or identifying information of FBI employees, third parties of investigative interest or who provided information to the FBI with an implied assurance of confidentiality, and third parties merely mentioned in the documents, which if released would cause a clearly unwarranted invasion of personal privacy, and for some of those named individuals could reasonably cause harm and/or endanger their life

or physical safety; information related solely to the internal personnel rules and practices of the FBI, such as practices relating to the CII; and reveal internal investigative techniques and procedures used by the FBI in carrying out the CII. (Document No. 291, NJTTF-ADMIN-2704-2706, 2710-2713, 2716-2717, 2719-2720).

(f)    Exemption (b)(7)(E)-1 has been asserted in conjunction with Exemptions (b)(1), (b)(2)-2, (b)(6)-1, (b)(6)-2, (b)(6)-3, (b)(7)(C)-1, (b)(7)(C)-2, (b)(7)(C)-3, and (b)(7)(F)-1 to protect certain portions of an EC from the FBI OGC, NSLB, to a certain Counterterrorism Director's Office dated November 10, 2005. This EC discusses the OGC opinion that a matter regarding the failure of a certain FBI office to follow particular guidelines set forth in the Foreign Intelligence Collection and Foreign Counterintelligence Investigations and by Executive Order 12863, as amended, need not be reported to the Intelligence Oversight Board. This EC contains information classified Secret, in addition to locations, names of FBI employees, third parties of investigative interest or who provided information to the FBI, and third parties merely mentioned in the documents, which if released would cause a clearly unwarranted invasion of personal privacy and, for some of those named individuals could reasonably cause harm and /or endanger their life or physical safety; and information related solely to the internal personnel rules and practices of the FBI. (Document No. 292, NJTTF-INV-2732-2734).

(g)    Exemption (b)(7)(E)-1 has been asserted in conjunction with Exemptions (b)(1), (b)(2)-2, (b)(6)-1, (b)(7)(C)-1, and (b)(7)(F)-1 to protect certain portions of an EC from a certain Field Office to the OGC, NSLB dated January 30, 2004. This EC contains a report of a potential IOB violation by a certain FBI FO in connection with a JTTF case initiated by the FBI

on January 3, 2004. This EC contains information classified Secret; names of FBI employees, which if released would cause a clearly unwarranted invasion of personal privacy, and for some of those named individuals, could reasonably cause harm and /or endanger their life or physical safety; and information related solely to the internal personnel rules and practices of the FBI. (Document No. 295, NJTTF-INV-2740).

(99)    While the protection of Exemption 7(E) is generally limited to techniques and procedures that are not well known to the public, even commonly known procedures may be protected from disclosure if disclosure would reduce or nullify their effectiveness -- including in such areas as scientific analysis, witness interview techniques, details of polygraph examinations, or the types of test and machine used and questions asked in sequence.

(100)   The revelation of these details would make the FBI more vulnerable: disclosure would enable the targets of these techniques to reasonably impede the effectiveness of the FBI's domestic terrorism investigations, to avoid detection and/or develop countermeasures to circumvent the ability of the FBI to effectively use these fundamental law enforcement techniques, thereby risking circumvention of the law. Individuals who possess such knowledge may be able to utilize this information to search for vulnerabilities, thus compromising the effectiveness of the FBI's investigatory techniques. Accordingly, the FBI has properly withheld this information pursuant to Exemption 7.

## CONCLUSION

(103)   FBIHQ has processed and released all segregable information from the documents responsive to plaintiffs' requests. The FBI has carefully examined those documents responsive

to plaintiff's FOIA request for Joint Terrorism Task Force and the National Joint Terrorism Task Force policies, procedures, and practices as well as investigative records, and determined that the remaining 13 contested documents should continue to be withheld in full or in part pursuant to FOIA Exemptions (b)(1), (b)(2), (b)(5), (b)(6), (b)(7)(A), (b)(7)(C), (b)(7)(D), (b)(7)(E) and (b)(7)(F).  The FBI carefully reexamined the remaining pages withheld in full, and determined that the information withheld from plaintiffs in this case, if disclosed, could reasonably be expected to damage national security, impede the effectiveness of the FBI's internal law enforcement procedures and practices, interfere with and damage attorney-client privileged communications, as well as chill internal intra and inter-agency deliberations, interfere with pending law enforcement investigations, cause unwarranted invasions of privacy interests of numerous individuals, disclose the identities of confidential sources, or disclose techniques and procedures for law enforcement investigations, and endanger lives.  After extensive re-review of the documents at issue, I have determined that there is no further reasonably segregable information to be released.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

and correct, and that Exhibit A provided to the Court in camera, ex parte is a true and correct

copy.

Executed this 3ʳᵈ day of August, 2006.

DAVID M. HARDY
Section Chief
Record/Information Dissemination
 Section
Records Management Division
Federal Bureau of Investigation
Washington, D.C.